No. 20-15114

# In the
# United States Court of Appeals for the Ninth Circuit

ROBERT W. AHLSTROM,

*Plaintiff - Appellant,*

vs.

DHI MORTGAGE COMPANY LTD. L.P.

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
HON. BETH LABSON FREEMAN JUDGE PRESIDING
DISTRICT COURT CASE NO. 19-CV-03435-BLF

## APPELLANT'S OPENING BRIEF

**SETAREH LAW GROUP**
Shaun Setareh, SBN 204514
Thomas Segal, SBN 222791
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

*Attorneys for Plaintiff/ Appellant*

## TABLE OF CONTENTS

**INTRODUCTION**…………………………………………………………………...1

**STATEMENT OF JURISDICTION**…………………………………………..………2

**STATEMENT OF ISSUES**……………………………………………………..…2

**STATEMENT OF THE CASE AND PROCEDURAL HISTORY**…...………………….3

1. The Subject Arbitration Agreement………………………………………………3
2. Appellant Ahlstrom's Employment with DHO Mortgage Company LTD………....5
3. Appellant Ahlstrom's First Lawsuit………………………………………………5
4. The Current Litigation…………………………………………………………7

**STANDARD OF REVIEW**……………………………………………………….8

**SUMMARY OF ARGUMENT**……..……………………………………………….8

**ARGUMENT**………………………………………………………………………..11

**I. CONTRACT FORMATION IS AN ISSUE THAT THE COURT MUST DECIDE EVEN IF THERE IS A DELEGATION CLAUSE IN THE ARBITRATION AGREEMENT** ……………………………………………………………….11

**II. EVEN IF THE DELEGATION CLAUSE CAN BE APPLIED TO CONTRACT FORMATION, THE DELEGATION CLAUSE HERE IS NOT A "CLEAR AND UNMISTAKABLE" DELEGATION AS REQUIRED TO ENFORCE IT. STATEMENT OF ISSUES**………………………………………………………..16

A. In Order to be Enforceable, A Delegation Provision Must Be Clear and Unmistakable……………………………………………………………..16

B. The Delegation Provision Here is Not Clear and Unmistakable Because it Contains Conflicting Language……………………………………………..16

C. The District Court Misread the Mohamed Case Which Does Not Support Its Finding That the Delegation Clause was Clear and Unmistakable……………19

**III. BECAUSE AN EXPRESS CONDITION TO FORMATION DID NOT OCCUR NO ARBITRATION AGREEMENT WAS EVER FORM**……………………23

A. This Court's Recent Teamsters Decision is Dispositive……………………...23

B. Because the Arbitration Agreement Specifies a Mode of Acceptance, and That Mode Did Not Occur, No Binding Arbitration Agreement was Formed………………………………………………………………….28

1. Arbitration is a Matter of Consent and Under California Law Consent Requires an Act or Omission……………………………….28

2. While the General Rule is that any Reasonable and Usual Method of Acceptance is Effective, This Does Not Apply Where a Particular Method is Prescribed……………………………………………………..29

3. Under the Plain Language of the Agreement There was No Effective Acceptance……………………………………………………………...29

4. Ahlstrom's Interpretation Must be Accepted because it is Consistent with the Language of the Contract and is Not Absurd……………..32

5. Any Doubt as to the Interpretation of the Agreement Must be Constructed Against the Party that Caused it to Exist……………..33

C. The District Courts Erroneous Interpretation of the Agreement Should be Reversed…………………………………………………………………34

## TABLE OF AUTHORITIES

*Artukovich v. Pacific State Pipe Co.*, 78 Cal.App.2d 1, 3 (1947)……………………30

*Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998)……………………………32

*Baker v. Osborne Development Corp*., 159 Cal.App.4th 884, 891 (2008)…………….17

*Bel-Aire West Landscape, Inc. v. Superior Court*, 149 Cal.App.4th 554, 561 (2007)…34

*Camping Const. Co. v. Council of Iron Workers,* 915 F.2d 1333, 1340 (9th Cir. 1990)……………………………………………………………………………..13

*City of Hope National Medical Center v. Genentech, Inc*., 4 Cal.4th 375, 398 (2008)..32

*Crossman's Estate*, 231 Cal.App.2d 370 (1964)………………………………………30

*Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007)…………………..26

*Dennison v. Rosland Capital, LLC*, 47 Cal.App.4th 204 (April 1, 2020)……………..17

*Dexter v. Ankiewicz*, 26 Cal.App.2d 326, 333 (1938)…………………………………28

*Dream Theater Inc. v. Dream Theater*, 124 Cal.App.4th 547, 555-556 (2004)……21,22

*Edwards v. Doordash Inc*., 888 F.3d 738, 743 (5th Cir. 2018)………………………...12

*Eiess v. USAA Federal Bank*, 404 F.Supp.3d 1240, 1248 (N.D. Cal. 2019)…………..14

*Epic Systems Corp. v. Lewis* ,136 S. Ct. 1612, 1619 (2018)………………………………..8

*First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)…………………15

*Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553, 570 (2004)……………………...16

*Granite Rock Co. v. Int'l Board of Teamsters,* 561 U.S. 287, 296 (2010)……………..10,15

*Gray v. Stewart*. 97 Cal.App.4th 1394, 1397 (2002)……………………………………28

*Hariman v. Tetik*, 56 Cal.2d 805, 810 (1961)…………………………………………...10

*Hartley v. Superior Court*, 196 Cal.App.4th 1249, 1256 (2011)………………………17

*Hillsborough LLC v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 2006 WL 2501580 *4 (2006)……………………………………………………………………..9

*International Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038 (9th Cir. May 1, 2020)………………………………………………………………………………9

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)……………………………………………………………………………...25

*Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016)…….12

*KUM Tat Ltd v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017)………...13

*Mastrobuono v. Sherman Lehman Hutton, Inc.*, 141 U.S. 52, 63 (1995)……………...32

*Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)………………..10,21,22

*Morris v. Ernst Young*, U.S. Supreme Court Case No. 16-300……………………………..6

*Parada v. Superior Court*, 176 Cal.App.4th 1554, 1561 (2009)………………………17

*Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425, 1442 (2012)………...10,16,18

*Phillips v. Shutts Petroleum*, 472 U.S. 797 (1985)……………………………………33

*Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997)………………….....8

*Rodriguez v. Blue Cross of California et al.*,162 Cal.App.4th 330, 341 (2008)……….25

*Roth v. Garcia-Marquez*, 942 F.2d 617, 626-627 (1991)…………………………......9,26

*Uber Text Messaging*, 2019 WL 2509337 *6 (N.D. Cal. 2019)………………………14

*U.S. v. 1.377 Acres of Land*, 352 F.3d 1259, 1264 (9th Cir. 2003)………………………….8

*Victoria v. Superior Court*, 40 Cal.3d 734, 835 (1985)………………………………..32

*Volt Info Sys, Inc. v. Bd of Trs. of Leland Stanford Junior Univers.*, 489 U.S. 468, 479 (1989)…………………………………………………………………………….27

*Wood v. Gunther*, 89 Cal.App.2d 718,881 (1949)……………………………………..27

**STATUTES**

U.S.C. § 4……………………………………………………………………………12

U.S.C. § 10…………………………………………………………………………..14

U.S.C. § 1291…………………………………………………………………………2

U.S.C. § 1332…………………………………………………………………………2

Code § 1581………………………………………………………………………….27

Code § 1582…………………………………………………………………………...9

Code § 1683………………………………………………………………………….31

Code § 1648………………………………………………………………………….31

Code § 1654………………………………………………………………………….32

Code § 3510………………………………………………………………………….30

## INTRODUCTION

In this wage and hour case, the district court wrongly granted a motion to compel arbitration. The district court erred in the first instance in delegating to the arbitrator the question of whether there was a binding arbitration agreement which Appellant contested. The district court ruled that the issue was for the arbitrator because of a delegation provision in the arbitration agreement which stated that all issues about contract formation or enforceability were to be decided by the arbitrator.

This was error for two reasons. First, a delegation provision cannot apply to an issue of contract formation. Instead contract formation is always an issue for the court. The Fifth and Sixth Circuits have both so held. And while this Court has not squarely addressed the issue, it has consistently held (in cases not involving delegation provisions) that the issue of contract formation is for the court, and no question can be sent to an arbitrator unless the court concludes that an agreement was formed. Second, a delegation provision which allows an arbitrator to decide arbitrability must be "clear and unmistakable." Here, the delegation provision is not clear and unmistakable, because there is conflicting language elsewhere in the agreement suggesting a court may decide whether the arbitration agreement is enforced. In fact, the paragraph containing exclusions from the arbitration agreement expressly excludes actions to compel arbitration or enforce the agreement. That is undeniably contrary to a delegation provision purporting to reserve those issues for the arbitrator.

The district court should have decided the issue of contract formation and denied the motion to compel arbitration on that basis. Based on the plain language of the arbitration agreement, a condition precedent to contract

formation had not occurred. The arbitration agreement had an opt-out clause providing that the agreement would become effective if the employee did not opt out within the contractual period **and** if the employee accepted or continued employment with "the Company" after the expiration of the contractual opt-out period. The arbitration agreement defines "the Company" as D.R. Horton Inc.

Thus, under the plain language of the arbitration agreement, a condition precedent to the agreement is that the employee have accepted or continued employment with D.R. Horton Inc. But Appellee Robert Ahlstrom was never employed by D.R. Horton Inc. but instead an affiliated but separate company DHI Mortgage Company Ltd. As such a condition precedent to the formation of the arbitration agreement was not met. This Court should reverse the district court and hold that there is no enforceable arbitration agreement in this case.

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. The district court dismissed the action on January 16, 2020. ER 15. Plaintiff timely filed a notice of appeal on January 27,2020. ER 1. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Is contract formation of an arbitration agreement an issue for the Court where the arbitration agreement contains a delegation provision stating that the arbitrator decides issues of formation?

2. Does the language of the arbitration agreement here, stating that actions to enforce the arbitration agreement and to compel arbitration are excluded from arbitration, conflict with the delegation provision stating that questions of arbitrability, formation and enforcement are for the arbitrator? Similarly,

does language in the arbitration agreement suggesting a court may find the agreement unenforceable conflict with the delegation provision? If so, does the conflicting language mean the delegation provision is unenforceable because it is not "clear and unmistakable"?

3. The arbitration agreement in this case states that the employee is deemed to have accepted it by not opting out **and** by accepting employment with a specific named company. Appellant never accepted employment with that company, but instead with an affiliated but legally separate company. Under those circumstances, where a condition precedent for accepting the arbitration agreement did not occur, is there an effective binding arbitration agreement?

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

**1. The Subject Arbitration Agreement.**

On July 24, 2015 Ahlstrom signed an arbitration agreement. ER 117-119.

The arbitration agreement defines "Employee" as the "undersigned employee" i.e. Ahlstrom; and the "Company" as "D.R. Horton, Inc." ER 117 (first unnumbered paragraph.)

Section 11 has an opt-out provision that states as follows:

> "Employee may opt out of this agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources Officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or

> continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement."
>
> ER 119.

Section 6 contains a purported "delegation clause" stating:

> "Except as noted in the following paragraph, the arbitrator, and not any federal, state or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement."
>
> ER 118.

Section 7 which is the "following paragraph" identified in the delegation provision states:

> "This Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative or group action or awarding relief to a group of employees in one proceeding, to the extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator."
>
> ER 118.

This paragraph is the only exception to the delegation provision

recognized in the delegation provision itself ("the following paragraph"). Arguably therefore, this paragraph does not conflict with the delegation provision, because the delegation provision calls it out as an exception. But the agreement contains other language indicating that a court can decide arbitrability in a manner inconsistent with the delegation clause.

Section 2 of the arbitration agreement enumerates exceptions to the arbitration requirement including:

> "actions to enforce this Agreement, compel arbitration, or enforce or vacate an Arbitrator's award under this Agreement." ER 117.

Section 9 of the arbitration agreement provides that:

> "Similarly, should a court determine that arbitration pursuant to this agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury, and instead agree and stipulate that the claim(s) at issue will be heard only by a judge." ER 118.

**2. Appellant Ahlstrom's Employment with DHI Mortgage Company LTD.**

Appellant was employed as a loan officer with DHI Mortgage Company Ltd, and not D.R. Horton Inc.; the entity identified in the Arbitration agreement. ER 110.

Appellant alleges that DHI misclassified Plaintiff and the putative class as exempt employees and failed to provide them with meal and rest breaks, failed to pay overtime and double-time wages, and earned commissions. ER 48.

**3. Appellant Ahlstrom's First Lawsuit**

On August 2, 2017 Appellant filed a putative class action complaint against DHI Mortgage Company G.P. Inc., and D.R. Horton Inc. in the United States District Court for the Northern District of California. Motion for Judicial Notice, Exhibit 1. On October 10, 2017 Defendants filed a motion to compel arbitration. Motion for Judicial Notice Exhibit 2. In support of the motion, Defendants submitted a declaration from its VP of Human Resources Paula Hunter-Perkins who stated that Ahlstrom was employed by DHI Mortgage Company, Ltd. rather than the named Defendants in the case. Motion for Judicial Notice Exhibit 3.

The parties agreed to stay the case pending the decision of the U.S. Supreme Court in *Morris v. Ernst Young*, U.S. Supreme Court Case No. 16-300. Motion for Judicial Notice Exhibit 4.

On September 11, 2018 Defendants refiled their motion to compel arbitration. Motion for Judicial Notice Exhibit 5. On September 25, 2018 Ahlstrom opposed the motion arguing that under the plain language of the arbitration provision, employment with D.R. Horton, Inc. was a condition to an effective arbitration agreement, and by Defendants' own admission DHI Mortgage Company LTD was the employer. Motion for Judicial Notice Exhibit 6. On November 30, 2018, the district court entered an order granting the motion. Motion for Judicial Notice, Exhibit 7. The district court concluded that the fact that Ahlstrom was actually employed by DHI Mortgage Company LTD and not D.R. Horton was immaterial given that DHI was not named in the lawsuit: "Had Plaintiff sued DHI, Ltd. and had DHI Ltd. attempted to enforce the [arbitration agreement], a different analysis would be required." *Id.*

Both sides in this case agree that Ahlstrom's employer was DHI Mortgage Company LTD, not D.R. Horton Inc. ER 26-27, 44.

**4. The Current Litigation.**

On March 27, 2019 Ahlstrom filed a putative class action complaint in the Superior Court for the State of California, County of Alameda that named DHI Mortgage Company LTD as the employer. ER 121. On June 17, 2019, DHI removed the action to the United States District Court for the Northern District of California. ER 121.

On July 22, 2019 DHI filed a motion to compel arbitration. ER 35. On January 16, 2020, the district court granted the motion. ER 25.

In opposing the motion, Ahlstrom argued that the issue of whether a valid arbitration agreement was formed could not be delegated to the arbitrator. ER 27. Ahlstrom also argued that because of conflicting language elsewhere in the agreement, the delegation provision was not "clear and unmistakable" as is required for an enforceable delegation. ER 27-28.

Ahlstrom argued that the district court should decide the issue and should hold that Ahlstrom never accepted the arbitration provision, because the Opt-Out provision contained two conditions for acceptance of the agreement, and one of those conditions, accepting or continuing employment with D.R. Horton Inc. did not occur. ER 30.

The district court held that: "This issue turns solely on questions of contract interpretation and formation, and therefore this case must be sent to the arbitrator pursuant to the [agreement's] delegation provision." ER 19. The district court reasoned that: "Delegating whether the [agreement] was formed to the arbitrator is not a violation of the FAA so long as the delegation provision is valid, as is the case here," ER 20.

The district court rejected Ahlstrom's argument that the delegation provision was not "clear and unmistakable." ER 20-21. The district court reasoned that the conflicting provisions Ahlstrom pointed to were not actually

conflicting. Ahlstrom argued that Paragraph 2 of the arbitration agreement conflicts with the delegation provision because it excludes from the arbitration agreement: "actions to enforce this Agreement [or] compel arbitration." ER 27. The district court rejected this argument stating that: "The Court disagrees. Paragraph 2 is a carve-out provision. Ahlstrom does not explain how the carve-out provision indicates that a court decides arbitrability." ER 21.

Ahlstrom argued that Paragraph 9 stating that the parties still waive their right to jury trial even if a court finds the agreement unenforceable conflicted with the delegation provision. The district court rejected the argument that this was a conflict reasoning that: "It is clear that the parties intended that when a court determines that it should adjudicate the arbitrability issue and finds a dispute falls outside the scope of arbitration, a right to jury trial is waived." ER 22.

## STANDARD OF REVIEW

An order compelling arbitration is reviewed de novo. *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997). The district court's interpretation of contractual language is also reviewed de novo. *U.S. v. 1.377 Acres of Land*, 352 F.3d 1259, 1264 (9th Cir. 2003).

## SUMMARY OF ARGUMENT

The United States Supreme Court has made clear that courts must enforce arbitration provisions "according to their terms." *Epic Systems Corp. v. Lewis* ,136 S. Ct. 1612, 1619 (2018). Here, the defendant employer drafted an arbitration agreement with an opt out provision that very clearly states that the Employee is deemed to have accepted the agreement if he or she does not opt out **and** if he or she continues or accepts employment with D.R. Horton, Inc (described in the agreement as "the Company") within 30 days of receipt of the agreement.

Therefore, the arbitration provision in this case never became effective according to its terms. This is because Appellant Robert Ahlstrom indisputably never accepted employment with D.R. Horton Inc. but instead with DHI Mortgage Company LTD. The arbitration agreement requires that Ahlstrom accept employment with Company X for the agreement to become effective, but Ahlstrom in fact accepted employment with Company Y. Acceptance of employment with D.R. Horton, Inc. is a condition precedent to the obligation to arbitrate which did not occur.

This Court's recent decision in *International Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038 (9th Cir. May 1, 2020) is dispositive. This Court explained that where an arbitration agreement contains a condition precedent to formation of the agreement, and that condition is not met, there is not an enforceable arbitration agreement. And the arbitration agreement here contains language materially identical to language that this Court has previously held indicates a condition precedent to contract formation. *Roth v. Garcia-Marquez*, 942 F.2d 617, 626-627 (1991)

As the California Court of Appeal has explained in affirming an order denying a motion to compel arbitration: "Where a contract does prescribe the manner in which acceptance is to be communicated, "no other will suffice". *Hillsborough LLC v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 2006 WL 2501580 *4 (2006) citing 1 Witkin Contracts, § 189, p. 223, citing Civ. Code § 1582. The result should be no different here. The subject arbitration agreement expressly requires acceptance of or continued employment with D.R. Horton Inc. Since that never occurred, there was never an effective arbitration agreement.

The district court in this case held that because of a delegation clause in the arbitration agreement, all issues related to contract formation or

enforceability were for the arbitrator to decide. Appellant argued that issues of contract formation were for the court to decide not the arbitrator. The Fifth and Sixth Circuits have held that this is true even where there is a delegation provision. While this Court has not addressed the specific issue, it has stated that unless a contract was formed, there is no basis to send any question to an arbitrator. *Teamsters supra* at 1042. As the U.S. Supreme Court has said: "It is well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Board of Teamsters,* 561 U.S. 287, 296 (2010). Therefore, the district court's decision that the issue should be delegated to the arbitrator was error.[1]

Appellant also argued that under California case law such as *Peleg v. Neiman Marcus Group, Inc*., 204 Cal.App.4th 1425, 1442 (2012) the delegation provision was unenforceable because it conflicted with other language in the agreement, and therefore, the "clear and unmistakable" language required for an effective delegation was not present. The district court disagreed, citing to this Court's decision in *Mohamed v. Uber Techs, Inc.,* 848 F.3d 1201, 1209 (9th Cir. 2016) which held that venue provisions in an arbitration agreement did not conflict with a delegation provision. However, the conflicting provisions in the arbitration agreement here are not venue provisions which can be construed as providing the venue where parties can seek confirmation of an arbitration award. Instead, the conflicting provisions at issue here expressly contemplate a court determining whether the arbitration agreement is enforceable. As such, the conflicting language at

[1] There may be no dispute that this is a contract formation issue. It is because the issue is whether there was an effective acceptance of the agreement, given the non-existence of one of the conditions for acceptance. *See Hariman v. Tetik*, 56 Cal.2d 805, 810 (1961): "questions of law and fact regarding offer and acceptance . . . occur in any problem of contract formation."

issue here is materially identical to the language that California appellate decisions have recognized creates a conflict, and materially distinguishable from the language at issue in *Mohamed.*

In addition, the arbitration agreement is inoperative because it was never accepted by its own terms. Under California law, when a contract prescribes a method of acceptance, then failure to follow the prescribed method means that there is no valid contract. Here, the prescribed method of acceptance requires that the employee accept or continue employment with D.R. Horton. That did not occur, so there is no acceptance.

Therefore, the district court's decision should be reversed. The district court erred in holding that the delegation provision was enforceable or that it could be applied to the issue of contract formation. And, on the merits, no effective arbitration provision was ever formed.

## ARGUMENT

### I. CONTRACT FORMATION IS AN ISSUE THAT THE COURT MUST DECIDE EVEN IF THERE IS A DELEGATION CLAUSE IN THE ARBITRATION AGREEMENT

The district court found that under the text of the delegation provision, contract formation issues were reserved to the arbitrator. As the district court explained:

> "The [arbitration agreement] has a delegation provision which is 'an agreement to arbitrate threshold issues concerning the arbitration agreement . . . ." Such a provision is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other . . . Accordingly, delegating whether the [arbitration agreement] was formed to the arbitrator is

not a violation of the FAA so long as the delegation provision is valid . . . ."

ER 20.

The text of the Federal Arbitration Act expressly requires a district court before ordering arbitration to determine that: "the making of the agreement for arbitration . . .  is not in issue" and to hold a trial if it is in issue. 9 U.S.C. § 4. Therefore, under the plain language of the FAA contract formation issues are for a district court not for the arbitrator.

The Fifth Circuit has expressly addressed the issue of whether contract formation issues are decided by the court when there is a delegation provision. As the Fifth Circuit explained "If the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step – an analysis of contract formation – as it always does." *Kubala v. Supreme Production Services, Inc.,* 830 F.3d 199, 202 (5th Cir. 2016); *accord Edwards v. Doordash Inc*., 888 F.3d 738, 743 (5th Cir. 2018): "If the party seeking arbitration argues that there is a delegation clause , the court performs the first step – an analysis of contract formation."

The result does not change because the delegation clause here expressly referenced contract formation. In *Kubala, supra* at 204 the delegation clause purported to delegate to the arbitrator questions concerning the "existence" of the agreement. Similarly, in *Edwards, supra* at 746 the arbitration provision incorporated AAA Rule 7 which purports to allow the arbitrator to rule on challenges to the "existence" of the arbitration agreement.

As the Sixth Circuit has also said in a case involving a delegation provision: "We refuse defendants' invitation for us to merge challenges to

the validity of an agreement ('whether it is legally binding') with challenges to the existence of an agreement in the first instance ("whether it was in fact agreed to" or "was ever concluded"). *In re Automotive Parts Antitrust Litig.*, 951 F.3d 377, 385. (6th Cir. February 24, 2020).

This Court does not appear to have squarely addressed whether a delegation provision can be used to send contract formation issues to an arbitrator. However, this Court's statements about the role of a court in deciding contract formation in the arbitration context, are consistent with the reasoning of the Fifth and Sixth Circuits.

As this Court has said: "[We] must determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting **any** question to an arbitrator." *Camping Const. Co. v. Council of Iron Workers*, 915 F.2d 1333, 1340 (9th Cir. 1990). (Emphasis added). This Court recently reiterated this principle: "The federal policy favoring arbitration of labor disputes plays a role only after a court has been satisfied that an arbitration agreement was 'validly formed.'. . . In sum, the federal policy favoring arbitration is no substitute for party agreement, or lack thereof." *Teamsters supra* at 1042.

As this Court has also said: "although challenges to the *validity* of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very *existence* of the contract are, in general, properly directed to the court." *KUM Tat Ltd v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017).

The U.S. Supreme Court has also signaled that a delegation provision does not apply to contract formation. In *Granite Rock supra* at 299 the Court stated:

"Our precedents hold that courts should order arbitration of a dispute

> only where the court is satisfied that neither the formation of the parties agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is at issue." (Emphasis in original)

Notably this passage's reference to a delegation provision ("absent a valid provision specifically committing such disputes to an arbitrator) applies to "enforceability or applicability to the dispute" but does not apply to "formation of the parties' agreement." The parenthetical referring to a delegation clause modifies the discussion about a court deciding enforceability or applicability, but not the discussion about a court deciding contract formation.

Another passage in *Granite Rock* similarly makes clear that the Supreme Court views delegation clauses as inapplicable to contract formation issues:

> "We have applied the presumption favoring arbitration, in FAA and labor cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute."
>
> *Id.* at 303.

As with the prior quoted passage, the parenthetical reference to a potential delegation provision does not refer to contract formation i.e. whether an "agreement to arbitrate was validly formed" but instead modifies the statement that there must be a judicial conclusion that the agreement "is legally enforceable and best construed to encompass the

dispute."

As a district court has said: "The issue of contract formation, however, is not a delegable gateway issue. The fundamental threshold question of whether there *exists* a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect. In other words, if a contract contains a delegation clause, that delegation clause may be given effect only where the contract has been formed in the first instance." *Eiess v. USAA Federal Bank*, 404 F.Supp.3d 1240, 1248 (N.D. Cal. 2019) citing to *Kum Tat Ltd supra* at 983. *Accord In re Uber Text Messaging*, 2019 WL 2509337 *6 (N.D. Cal. 2019): "This threshold question – whether an agreement existed – is one properly for the Court, without reference to any delegation provision."

To hold otherwise would be to countenance potential absurdities. For example, a litigant could produce an arbitration agreement unsigned, never provided to their alleged counterparty, and based on the delegation provision compel arbitration of whether a contract was formed. The arbitrator would have a financial interest in ruling that a contract *was* formed because then there will be an arbitration on the merits. And the arbitrator's ruling on contract formation would be reviewed under the highly deferential standard set forth in 28 U.S.C. § 10. Under that standard, if the arbitrator made legal or factual errors regarding contract formation, even egregious ones, the arbitration award would stand absent a showing that the arbitrator exceeded his or her powers, or there was fraud, corruption, or undue influence.

The issue is underscored here by the fact that the provision in question is an opt-out provision. If Ahlstrom opted out under the plain

language of the agreement, then he should not have to prove to an arbitrator that he opted out of arbitration. That would defeat the purpose of the opt-out provision. As the U.S. Supreme Court has said: "We have applied the presumption favoring arbitration in FAA and in labor cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed." *Granite Rock Co. supra* at 303.

## II. EVEN IF THE DELEGATION CLAUSE CAN BE APPLIED TO CONTRACT FORMATION, THE DELEGATION CLAUSE HERE IS NOT A "CLEAR AND UNMISTAKABLE" DELEGATION AS REQUIRED TO ENFORCE IT.

### A. In Order to Be Enforceable, A Delegation Provision Must Be Clear and Unmistakable.

As the Supreme Court has said: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable evidence that they did so." *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Therefore, for a delegation provision to be legally enforceable, it must be "clear and unmistakable."

### B. The Delegation Provision Here is Not Clear and Unmistakable Because it Contains Conflicting Language.

The arbitration agreement here is not clear and unmistakable as to whether questions of enforceability are delegated to the arbitrator. The agreement does state:

> "Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation,

> **enforceability**, applicability, or interpretation of this agreement." ER 118.Hunter-Perkins Decl. Exh B ¶ 6.

However, the Agreement also states inconsistently that "actions to **enforce** this Agreement [or] **compel** arbitration" are "excluded from this Agreement." *Id*. ¶ 2. (Emphasis added). As Black's Law Dictionary says, "enforce" means "to compel obedience to." Black's Law Dictionary 608 (9th Ed*). See also Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553, 570 (2004) "compulsion or constraint [is] inherent in the term 'enforcement'". Actions to enforce the agreement or to compel arbitration would necessarily include the questions at issue here including whether a valid arbitration agreement was formed.

The Agreement further recognizes the jurisdictional authority that a court may refuse to enforce the Agreement: "Similarly, should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury . . . ." *Id.* ¶ 9. These provisions on their face conflict with the delegation clause. Therefore, it cannot be said that there is clear and unmistakable evidence that the parties agreed to delegate this issue to the arbitrator.

The decision of the California Court of Appeal in *Peleg v. Neiman Marcus Group, Inc*., 204 Cal.App.4th 1425, 1442 (2012) is instructive and compels a conclusion that issues of enforceability or formation are for the court not the arbitrator. In that case, the arbitration provision, like here, stated that: "Any dispute concerning this Agreement – the way it was formed, its applicability, meaning, scope, enforceability . . . is subject to arbitration under this Agreement and shall be determined by the arbitrator." *Id.* at 1441. Despite this language the Court of Appeal found

the provision ambiguous because there was another clause recognizing the possibility that a court could find the agreement unenforceable: "The Agreement's severability provision, in section 22, states in part: 'If any court determines that this Agreement in its entirety shall not be enforced . . . 'Yet, according to Neiman Marcus, the Agreement's delegation provision means that an arbitrator *always* determines *any* question concerning enforceability. The severability provision, however, recognizes that a court may decide the same issue." *Id.* at 1442.

In *Neiman Marcus*, the Court of Appeal then discussed three Court of Appeal decisions holding that there is no effective delegation provision where such conflicting language exists. *Id.* at 1442-1443 citing *Baker v. Osborne Development Corp*., 159 Cal.App.4th 884, 891 (2008); *Parada v. Superior Court,* 176 Cal.App.4th 1554, 1561 (2009); *Hartley v. Superior Court*, 196 Cal.App.4th 1249, 1256 (2011). The Court of Appeal then held that in light of the conflicting language the court must decide arbitrability. *Id.* at 1445.

This rule was very recently reaffirmed by the California Court of Appeal in *Dennison v. Rosland Capital, LLC,* 47 Cal.App.4th 204 (April 1, 2020). In *Dennison*, the arbitration agreement contained a delegation provision that stated as follows: "Customer agrees to arbitrate all controversies between Customer and Rosland . . . *including the determination of the scope or applicability of this agreement to arbitrate."* *Id.* at *2. However, the agreement also contained a severability clause stating that: "The terms and provisions in this Agreement are severable. *If any provision of this Agreement is held by a court of competent jurisdiction to be void, invalid, or unenforceable,* then that provision will be enforced to the maximum extent permissible." *Id.* The Court of Appeal

held that in light of the conflict between the delegation provision and the severability clause: "there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration provision is unconscionable." *Id.*

The exact same situation is present here. Section 6 indicates that the arbitrator decides arbitrability, even including contract formation. Sections 2 and 9 both indicate that a court has the authority to do this. Therefore, under *Neiman-Marcus* and *Dennison* the Agreement is ambiguous and the issue is for a court, not the arbitrator.

### C. The District Court Misread the *Mohamed* Case Which Does Not Support Its Finding That the Delegation Clause Was Clear and Unmistakable.

The district court concluded that the delegation clause was clear and unmistakable explaining as follows:

> "The Court is unpersuaded by Ahlstrom's reliance on the state court cases he cites in support of his position. Opp. 3. Those cases predate the Ninth Circuit's position in *Mohamed* and are otherwise inapposite. *See e.g., Peleg v. Neiman Marcus, Inc.*, 204 Cal.App.4th 1425, 1442 (2012) (relying solely on California law by default even though agreement contained a choice-of-law provision adopting the law of Texas or FAA.) The Court therefore rejects Ahlstrom's reliance on those cases, and instead applies *Mohamed* as other cases have done. *See, e.g., Taylor,* 2018 WL 4334700 at *5, *MegaCorp, Logistic*, 2018 WL 3619565 at *6."
>
> ER 23.

The district court erroneously perceived a conflict between this Court's decision in *Mohamed* and California cases such as *Neiman-Marcus*. In fact, the cases apply the same rule, and the different outcome is

readily explained by differences in the contractual language at issue.

In *Mohamed,* this Court applied the rule that the court decides arbitrability unless the parties "clearly and unmistakably provide otherwise." *Id.* at 1209. The gravamen of this Court's disagreement with the approach taken by the district court in that case was not that the district court had applied a wrong legal standard, or that it would not matter if there were conflicting provisions of the agreement, but rather that the district court was wrong to perceive that a conflict existed:

> "These conflicts are artificial. The clause describing the scope of the arbitration provision was prefaced with 'except as it otherwise provides,' which eliminated the inconsistency between the general delegation provision, and the specific carve-out in the 2013 Agreement. As for the venue provision, the California Court of Appeal has observed that: 'no matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of the court to obtain other remedies.' (citation) It is apparent that the venue provision here, was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration provision. That does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments."
>
> *Mohamed supra* at 1209.

The conflicting terms here are very different than those at issue in *Mohamed*. One is a carve-out provision. But critically, the issue is not that it carves out certain causes of action, but rather that included in the carve

out are: "actions to enforce this agreement [or] compel arbitration." Stating that "actions to enforce this agreement [or] compel arbitration" are exempt from arbitration and therefore may be pursued in court is flatly contradictory to the language stating that the arbitrator: "shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability or interpretation of this Agreement." A motion to compel arbitration or to enforce the agreement necessarily involves disputes regarding contract formation, enforceability, applicability, and interpretation. There is no way to reconcile the two provisions. The district court's order disposes of this issue by referring to clause as a carve-out provision but fails to address the import of the facts that actions to compel arbitration are what is being carved out.

The other conflicting term here provides that: "[S]hould a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury . . . .." ER 119. This term is not a general venue provision that might apply to a motion to confirm an arbitration provision or provide the venue for carved out claims. Instead, it is an express acknowledgment that a court may decide that the provision is unenforceable. It directly conflicts with the general delegation provision in a way that the venue provision in *Mohamed* did not.

The district court reasoned that this provision did not conflict with the delegation provision because: "[I]n the context of the full provision, it is clear that the parties intended that when a court determines that it should adjudicate the arbitrability issue, and finds a dispute falls outside the scope of arbitration, the right to a jury trial is waived." ER 22.

Under this reasoning, there could never be language that conflicts

with a delegation provision, because it can always be deemed that the language was intended to apply if a court refused to enforce the delegation provision.

However, numerous appellate decisions have found a conflict based on remarkably similar language to that which the district court found created only an "artificial" conflict. For example, in *Baker supra* at 893-894 the California Court of Appeal explained that: "We agree with the trial court that although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable. Thus, we conclude the arbitration agreement did not 'clearly and unmistakably' reserve to the arbitrator the issue of whether the arbitration agreement was enforceable." Similarly, in *Parada supra* at 1556 the California Court of Appeal found a conflict because of a severability clause alluding to the possibility that a "trier of fact of competent jurisdiction" might find a provision of the agreement unenforceable. The California Court of Appeal also reached the same conclusion with the same language in *Hartley supra* at 1258. As explained above, the *Neiman-Marcus* and *Dennison* cases also reached the same conclusion.

As this Court stated in *Mohamed*, in *Dream Theater Inc. v. Dream Theater*, 124 Cal.App.4th 547, 555-556 (2004) the California Court of Appeal held that a venue provision does not nullify or limit an arbitration provision. As the Court of Appeal explained in that case: "These venue provisions do not expressly limit the scope of the arbitration clause, and enforcement of the arbitration clause does not, as Sellers contend, nullify the venue provisions. No matter how broad the arbitration clause, it may be

necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies, such as a preliminary injunction, appointment of a receiver, or a writ of attachment or of possession." *Id.* But again, here the conflicting language is not a venue provision, but instead as in the other California decisions, language indicating that the trial court may decide enforceability, and even language stating that motions to compel arbitration are exempt from the arbitration agreement, the very opposite of the provision stating that it is the arbitrator who decides enforceability.

Finally, there is a critical distinction between this case and not just *Mohamed* and *Dream Theater*, but also the cases which refused to enforce delegation provisions. That is because this case involves whether a contract to arbitrate was ever formed at all. Indeed, any agreement to arbitrate arbitrability can hardly be "clear and unmistakable" where, as detailed herein, the arbitration provision itself names the wrong employer, and therefore any agreement to arbitrate arbitrability is with an entity which is not seeking to enforce the arbitration agreement.

## III. BECAUSE AN EXPRESS CONDITION TO FORMATION DID NOT OCCUR NO ARBITRATION AGREEMENT WAS EVER FORMED.

### A. This Court's Recent *Teamsters* Decision is Dispositive.

*Teamsters* involved an arbitration agreement between a union and a waste management company concerning waste collection in the City of Los Angeles. *Teamsters supra* at 1040. The union and the employer entered into a "Labor Peace Agreement" or "LPA" that contained a broad arbitration provision but the agreement was "expressly conditioned upon

the City entering into an exclusive franchise agreement with [waste management company] by December 31, 2016." *Id.* The waste management company employer did not in fact do this. As a result, a dispute arose between the union and employer over whether an effective agreement existed. As this Court noted: "Under California law . . . the moving party, must prove by a preponderance of the evidence that an agreement to arbitrate exists. *Id.* at 1042.

At issue in this Court's opinion was whether that dispute should be submitted to an arbitrator. As this Court explained the parties' positions:

> "This case regards the proper mechanism to resolve the dispute. NASA contends the condition precedent related to the LPA's *formation*, and that due to the condition's non-occurrence, no contract ever materialized between the parties. Local 396, on the other hand, argues the dispute should be submitted to an arbitrator, because even if the condition precedent failed, the condition precedent related to the parties' *performance* under the LPA, meaning a contract was duly formed, and the arbitration clause is thus severable and binding under federal arbitration law."
>
> *Id.* at 1041.

This Court explained as follows in reversing the district court's determination that there was a condition precedent to performance, not formation:

> "The district court's interpretive logic evidently originates from confusion over the nature of a signed instrument containing a condition precedent to formation. In short, such a document is a pre-negotiated agreement that will become effective if some articulated event occurs. It is a proposed contract, not a contract. 'Thus, when

the parties to a proposed contract have agree that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed.' Williston on Contracts § 38.7 (4[t] Ed.)"

*Id.* at 1047.

This Court further explained:

"Parties may make the creation of a contract subject to a condition precedent. (citation) A condition precedent is either an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (citation) The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract. . .. There are two species of conditions precedent: conditions precedent to *formation* and conditions precedent to *performance.* (citation) Essentially, where a condition precedent to contract formation is not satisfied, the proposed bargain between the parties does not become a binding contract. (citation)."

*Id.* at 1043

Here, the plain language of the arbitration agreement shows that there was a condition precedent to the arbitration agreement becoming operative. Paragraph 11 states in full as follows:

"Employee may opt out of this agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources Officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If

Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement."ER 119.

The last sentence of Paragraph 11 makes clear that there is a two part condition precedent to the arbitration agreement being effective: "If Employee does not deliver the executed [Opt-Out] form within 30 days, **and** if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement."

The conjunctive word "and" makes clear that both stated conditions must be met. *E.g., Rodriguez v. Blue Cross of California et al.,*162 Cal.App.4th 330, 341 (2008): "The word 'and' requires a conjunctive construction . . . ." The "Employee" must both fail to timely deliver an executed Opt-Out Form **and** accept or continue employment with "the Company" after the time to opt out has expired. By its plain meaning this is a condition precedent to a binding arbitration agreement.

And as noted above, in the agreement the term "the Company" is defined expressly as D.R. Horton, Inc. in the unnumbered prefatory sentence preceding Paragraph 1. Thus, the plain meaning of the contract is that acceptance of employment or continued employment with D.R. Horton Inc. is required for the arbitration agreement to be binding. Since Ahlstrom never was employed by D.R. Horton, Inc. (but instead by a different legally separate related company) by its plain language, the arbitration agreement never became effective.

This is not a mere technicality. As this Court has said "separate corporate identity . . . is the foundation of corporate law." *Katzir's Floor &*

*Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004). The fact that Ahlstrom never was employed by "the Company" cannot be disregarded. Further, the arbitration agreement must be interpreted to its language and cannot be rewritten. As this Court has said: "Despite a liberal policy favoring arbitration agreements, a court cannot rewrite the arbitration agreement for the parties." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007).

The district court reasoned that Ahlstrom accepted the arbitration agreement by signing it. The district court did not have the benefit of this Court's recent *Teamsters* decision which explains the fallacy of this reasoning. Ahlstrom did accept the arbitration agreement by signing it, but what he accepted was an agreement to be bound by the arbitration agreement if the stated conditions occurred. One of the stated conditions, employment with D.R. Horton, Inc. did not occur.

There is no getting around the fact that Paragraph 11 states conditions precedent to contract formation. If it does not, but instead, the arbitration agreement became binding when signed, then the Opt-Out right stated therein would be meaningless.

In *Teamsters*, *supra* at 1043 this Court observed that: "Conditions precedent must be expressed in plain, clear, and unambiguous language, but parties need not invoke any 'required magical incantation." "[P]arties need not deploy fine-tuned incantations to successfully create a condition precedent to formation. What matters is that the parties – both parties – were clear enough about their intent to create a condition precedent to formation." *Id.* at 1049.

However, the use of the word "shall" in Paragraph 11 providing that the employee "shall" be deemed to have accepted the arbitration

agreement is indicative of conditions precedent to contract formation. For example, in *Roth v. Garcia-Marquez*, 942 F.2d 617, 626-627 (1991) this Court found a condition precedent to contract formation existed where contractual language provided that an option contract: "**shall** commence upon signature by Gabriel Garcia-Marquez." (Emphasis added).

Even if the condition of employment with "the Company" were deemed to be a condition precedent to performance as opposed to formation that would not help Appellee. In *Teamsters* the arbitration provision was a clause in a broader Labor Peace Agreement. Therefore, the labor union could argue that the arbitration provision was severable. Here, however, the subject arbitration agreement which is entitled "MUTUAL ARBITRATION AGREEMENT" is entirely a dispute resolution agreement. As such, a condition precedent to performance, unlike in *Teamsters,* would necessarily mean that there is no obligation to arbitrate. The arbitration rather than litigation is the performance contemplated under the agreement.

### B. Because the Arbitration Agreement Specifies a Mode of Acceptance, and That Mode Did Not Occur, No Binding Arbitration Agreement was Formed.

#### 1. Arbitration is a Matter of Consent and Under California Law Consent Requires an Act or Omission.

As the United States Supreme Court has repeatedly said: "Arbitration under the [FAA] is a matter of consent not coercion." *E.g., Volt Info Sys, Inc. v. Bd of Trs. of Leland Stanford Junior Univers.,* 489 U.S. 468, 479 (1989).

Under California contract law: "Consent can be communicated with effect, only by some act or omission of the party contracting, by which he

intends to communicate it, or which necessarily tends to such communication." Civil Code § 1581. An offer can be accepted by silence only where there is a duty to speak. *Wood v. Gunther*, 89 Cal.App.2d 718, 881 (1949). Here, the contract itself specified what would be necessary to show consent. It expressly states that the employee is deemed to have accepted the arbitration agreement, if the employee does not opt out **and** accepts or continues employment with "the Company."

### 2. While the General Rule is that any Reasonable and Usual Method of Acceptance is Effective, This Does Not Apply Where a Particular Method is Prescribed.

Under California law, the parties may agree that a certain mode of acceptance is required for the acceptance of an offer to be effective. For example, in *Dexter v. Ankiewicz*, 26 Cal.App.2d 326, 333 (1938) the California Court of Appeal explained as follows:

> "In the instant case it is clear . . . that both plaintiff and defendant contemplated the acceptance by defendant of plaintiff's offer should be signified by defendant's signing and returning the contract . . . . Therefore, applying the above-mentioned rule of law to these facts, it is evident that defendant did not accept plaintiff's offer in the manner contemplated by the parties . . .."

Similarly, in *Gray v. Stewart*. 97 Cal.App.4th 1394, 1397 (2002) the California Court of Appeal explained that any reasonable method of acceptance is permissible, if the contract does not prescribe a specific method: "Because the offer to compromise did not prescribe any specific mode of communication of the acceptance, the only requirement was that the acceptance be communicated in a clear and unequivocal fashion."

### 3. Under the Plain Language of the Agreement There Was No Effective Acceptance.

Paragraph 11 of the Agreement which is an Opt-Out provision expressly states as follows:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . If Employee does not deliver the executed form within 30 days, **and** if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.
>
> (E 117).

Therefore, two conditions must exist for the employee to accept the arbitration agreement. First, the employee must fail to deliver an executed Opt-Out Form within 30 days. Second, as the use of the word "and" indicates, the employee must also accept or continue employment with the "Company" i.e. D.R. Horton, Inc. after the 30 day period has elapsed.

These are two conditions expressly stated for acceptance of the arbitration Agreement: 1) The employee does timely submit an Opt-Out form; 2) The employee must accept or continue employment with D.R. Horton, Inc. The use of the conjunctive "and" makes clear that both must be met. The second is not met. Defendant admits that the employer in this case is not D.R. Horton, Inc. Plaintiff never accepted or continued employment with D.R. Horton, Inc. Therefore, a condition for acceptance of the arbitration provision never occurred.

It is no answer to say that the arbitration agreement became effective when Plaintiff signed it. Such an argument would render the opt out provision illusory. For the opt out provision to be meaningful it must mean that the arbitration agreement does not become effective until after the conditions stated in it have been met. Otherwise, if an employee were terminated 15 days after accepting employment they could be compelled to

arbitrate, even though they have 30 days to opt out, and the agreement by its terms says it is not deemed accepted until 30 days of employment have occurred.

The cases cited by Appellee below are not to the contrary. For example, Appellee relied on *Artukovich v. Pacific State Pipe Co.*, 78 Cal.App.2d 1, 3 (1947) which stands for the proposition that: "the provision in an offer specifying a manner of acceptance is for the benefit of the offeror and may be waived by him." But this rule has no application here because the Opt Out provision is plainly for the benefit of the prospective employee not the benefit of the Company. As California law requires: "Where the reason of a rule ceases, so should the rule itself." Civil Code § 3510. Therefore, this rule should not be applied to a provision plainly intended to benefit the offeree.

In the trial court Appellee relied upon on *In re Crossman's Estate*, 231 Cal.App.2d 370 (1964) which concluded that a provision in an option agreement stating that notice was to be by registered mail was not a condition but instead a "permitted . . . manner" of acceptance. The Court of Appeal concluded after examining the entire agreement and extrinsic evidence that registered mail was a "mere suggestion."

That reasoning is inapplicable here. Obviously the Opt-Out provision is intended to be a condition to an effective arbitration agreement. The sentence in question reads: "If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement." To read this not as a condition, but as a "suggestion" would render the Opt-Out provision nugatory.

Nor does this conclusion change because elsewhere in the Agreement it states that claims against subsidiaries or affiliates of D.R. Horton Inc. must be arbitrated. An employee of D.R. Horton Inc. could have a claim against an affiliated company such as for example when employees of affiliated entities work together, and an allegation of harassment or discrimination arises. Therefore, there is no inconsistency between this language, and the plain language of the opt-out provision.

**4. Ahlstrom's Interpretation Must be accepted because it is Consistent with the Language of the Contract and is Not Absurd.**

Under California law, "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Civil Code § 1638.

The Agreement itself contemplates an employment relationship between Ahlstrom and D.R. Horton Inc i.e. between "Employee" and the "Company". The Agreement identifies the counterparties as "Employee" and the "Company" which is expressly identified as D.R. Horton Inc. It is signed by Crystal Stone who is identified as "Company Representative" i.e. a representative or D.R. Horton Inc. If no such employment relationship is ever created, it should not be surprising that the Agreement does not become effective. See Civil Code § 1648: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

Nor does the plain language interpretation offered by Plaintiff render the Agreement meaningless. For example, it is possible that an employee of a related entity could receive a promotion or reassignment which makes him an employee of D.R. Horton Inc. At that point, the employee (assuming he or she did not send in the Opt-Out Form) would be deemed

to have accepted the Agreement under its plain language.

**5. Any Doubt as to the Interpretation of the Agreement Must be Construed Against the Party That Caused It to Exist.**

The law in California provides that absent presentation of extrinsic evidence any ambiguity in a contract, particularly a form contract, is to be construed against the party who caused the uncertainty to exist. *City of Hope National Medical Center v. Genentech, Inc*., 4 Cal.4th 375, 398 (2008); *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998): "When ambiguities in a standardized contract, like the account agreement involved here, cannot be dispelled by application of the other rules of contract interpretation they are resolved against the drafter." Civil Code § 1654: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

Both the California Supreme Court and the United States Supreme Court have approved the application of this interpretive principle to arbitration agreements (at least where the availability of class arbitration is not the issue in dispute). *Victoria v. Superior Court,* 40 Cal.3d 734, 835 (1985): "Ambiguities in standard form contracts are to be construed against the drafter . . . This court must apply these basic principles to determine whether the petitioner's causes of action fall within the scope of the arbitration provision."; *Mastrobuono v. Sherman Lehman Hutton, Inc.,* 141 U.S. 52, 63 (1995): "[Defendant] drafted an ambiguous document and cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result."

Therefore, to the extent that there is any doubt as to which

interpretation of the agreement is correct, it must be construed against the party who caused the uncertainty to exist. However, as argued above, the plain language of the agreement supports Appellant.

**C. The District Court's Erroneous Interpretation of the Agreement Should be Reversed.**

This Court should not remand to the district court to interpret the language at issue in the first instance. That is because while purporting not to interpret the arbitration provision, the district court in fact did so. –

The district court explained that:

> Ahlstrom also argues that he did not accept the [arbitration agreement] because he did not comply with both requirements in the [arbitration agreement]'s opt out provision, and therefore his acceptance was never effective. (citation) This Court already rejected this argument before (citation) and it does so again here. Ahlstrom accepted the [arbitration agreement] when he signed on the dotted line. By its very name and nature, the 'opt-out' provision provided an opportunity for Ahlstrom to opt out of his previously rendered acceptance.
>
> ER 15.

In this reasoning, the district court interpreted the arbitration provision as providing that signing it is acceptance. As explained above, *Teamsters* explains the fallacy of this reasoning. The signature is an assent to the terms of the agreement, but those terms include a clear condition precedent to an effective arbitration agreement.

Further, legally a right to "opt-out" does not imply acceptance as the district court inferred. For instance, it is well settled that

absent class members have the right to opt out of a certified class action lawsuit. *Phillips v. Shutts Petroleum*, 472 U.S. 797 (1985). Under California law, there is a well-established procedure for discovery of contact information of absent class members pre-certification, where absent class members can opt out of having their information disclosed. *Bel-Aire West Landscape, Inc. v. Superior Court*, 149 Cal.App.4th 554, 561 (2007). The federal Gramm-Leach Bliley Act allows consumers to opt-out of having financial institutions share their private information. 15 U.S.C. section 6801 *et seq*.

As these examples show, an opt-out right enables the beneficiary to avoid impairment of their legal rights. Under the district court's interpretation, an employee can 'opt out' but their legal rights are still impaired because the issue of whether they "opted out" either by sending an opt-out form, or not accepting employment with "the Company" would be for the arbitrator to determine.

For example, under the district court's interpretation, an employee who did accept employment with D.R. Horton i.e. "the Company" but whose employment ended before 30 days would have to arbitrate even though by the terms of the arbitration agreement they opted out by not continuing employment with D.R. Horton. Even somebody who submitted an opt-out form would have to arbitrate arbitrability under the district court's interpretation. That renders the purported opt-out right illusory.

Therefore, this Court should rule that the interpretation of the district court that Appellant accepted the arbitration provision by

signing it is erroneous, that a condition precedent to performance did not occur and/or that no effective acceptance occurred.

Dated: July 20, 2020

Respectfully submitted,
SETAREH LAW GROUP

By: /s/ Shaun Setareh
Shaun Setareh
Thomas Segal
Attorneys for Appellant
Robert Ahlstrom

## STATEMENT OF RELATED CASES

Appellant is unaware of any cases related to this action pending in this Court, as related cases are defined in Local Rule 28-2.6.

## CERTIFICATIONS

**Typeface and Size**: The typeface selected for this Brief is 14 point Times New Roman. The font used in the preparation of this Brief is proportionately spaced.

**Word Count**: The word count for this Brief, excluding Table of Contents, Table of Authorities, Certifications, the Corporate Disclosure Statement, and the Cover is approximately 9454 words. This count was calculated utilizing the word count feature of Microsoft Word for Office 365.

**Virus Scanning**: The PDF generated from the Word version of this Petition and Brief was scanned with antivirus software.

Dated: July 20, 2020.

Respectfully submitted,

SETAREH LAW GROUP

By: /s/ Shaun Setareh

Shaun Setareh
Thomas Segal
Attorneys for Appellant
Robert Ahlstrom

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 20, 2020.

I certify that, other than the individuals listed below, participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I certify that I caused to be mailed a copy of the electronically filed document to the individuals listed below:

NO MAIL SERVICE REQUIRED

Dated: July 20, 2020

Respectfully submitted,

SETAREH LAW GROUP

By: /s/ Shaun Setareh
Shaun Setareh
Thomas Segal
Attorneys for Appellant
Robert Ahlstrom