No. 20-15114

*In the*

# *United States Court of Appeals for the Ninth Circuit*

---

ROBERT W. AHLSTROM,

*Plaintiff - Appellant,*

vs.

DHI MORTGAGE COMPANY, LTD., LP.,

*Defendants - Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
HON. BETH L. FREEMAN, JUDGE PRESIDING
DISTRICT COURT CASE NO. 19-CV-03435-BLF

---

## APPELLANT'S EXCERPTS OF RECORD – VOLUME I

**[pages 1-72]**

---

**SETAREH LAW GROUP**
Shaun Setareh, SBN 204514
Thomas Segal, SBN 222791
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

*Attorneys for Plaintiff*

## *AHLSTROM v. DHI MORTGAGE COMPANY LTD.* CASE NO. 19-cv-03435-BLF

## INDEX - TABLE OF CONTENTS (REVERSE CHRONOLOGICAL)


| DOCKET NUMBER | DOCUMENT TITLE/DESCRIPTION | EXCERPT VOLUME | EXCERPT PAGE |
|---|---|---|---|
| 27 | Notice of Appeal | I | DHI00001 |
| 27.2 | Plaintiff Robert W. Ahlstrom's Representation Statement Regarding His Notice of Appeal | I | DHI00003 |
| 27.1 | **Exhibit A** - Order Granting Motion to Compel Arbitration and Dismissing Case Without Prejudice | I | DHI00006 |
| 26 | Order Granting Motion to Compel Arbitration and Dismissing Case Without Prejudice | I | DHI00016 |
| 18 | Plaintiff's Opposition to Defendant's Motion to Compel Arbitration | I | DHI00025 |
| 16 | Defendant's Notice of Motion and Motion to Compel Arbitration: Memorandum of Point and Authorities in Support Thereof | I | DHI00035 |
| 16.4 | Proposed Order Granting Defendant's Motion to Compel Arbitration | I | DHI00064 |
| 16.3 | Declaration of Jennifer L. Katz in Support of Defendant's Motion to Compel Arbitration | I/II | DHI00066 |
| 16.2 | Declaration of Mark C. Winter in Support of Defendant's Motion to Compel Arbitration | II | DHI00107 |

## *AHLSTROM v. DHI MORTGAGE COMPANY LTD.* CASE NO. 19-cv-03435-BLF

## INDEX - TABLE OF CONTENTS (REVERSE CHRONOLOGICAL)


| DOCKET NUMBER | DOCUMENT TITLE/DESCRIPTION | EXCERPT VOLUME | EXCERPT PAGE |
|---|---|---|---|
| 16.1 | Declaration of Paula Hunter-Perkins in Support of Defendant's Motion to Compel Arbitration | II | DHI00109 |
| -- | Docket (Pacer) | II | DHI00120 |

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
**SETAREH LAW GROUP**
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: 310.888.7771
Facsimile: 310.888.7771

Attorneys for Plaintiff,
ROBERT W. AHLSTROM

**UNTITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>DHI MORTGAGE COMPANY LTD., L.P.; and DOES 1 to 50, inclusive<br><br>*Defendants.* | Case No. 19-cv-03435-BLF<br><br>**NOTICE OF APPEAL** |

Notice is hereby given that Plaintiff Robert W. Ahlstrom ("Plaintiff") in the above named case, hereby appeals to the United States Court of Appeals for the 9th Circuit the January 16, 2020 district court order granting Defendant's motion to compel arbitration and dismissing case. The January 16, 2020 order is attached as Exhibit A. The January 16, 2020 order granting the motion to compel arbitration is appealable because it ordered the case be dismissed.

Dated: January 27, 2020 SETAREH LAW GROUP

By: /s/

Shaun Setareh
Attorneys for Plaintiff,
ROBERT W. AHLSTROM

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
**SETAREH LAW GROUP**
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: 310.888.7771
Facsimile: 310.888.7771

Attorneys for Plaintiff,
ROBERT W. AHLSTROM

**UNTITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>DHI MORTGAGE COMPANY LTD., L.P.; and DOES 1 to 50, inclusive<br><br>*Defendants.* | Case No. 19-cv-03435-BLF<br><br>**PLAINTIFF ROBERT W. AHLSTROM'S REPRESENTATION STATEMENT REGARDING HIS NOTICE OF APPEAL** |

**REPRESENTATION STATEMENT**

The undersigned represents Plaintiff Robert W. Ahlstrom in this matter, and no other party. Attached is a service list that shows all of the parties to the action below, and identifies their counsel by name, firm, address, email and telephone number, where appropriate. (F.R.A.P. 12(b); Circuit Rule 3-2(b).)

Dated: January 27, 2020 SETAREH LAW GROUP

By: /s/
Shaun Setareh
Attorneys for Plaintiff,
ROBERT W. AHLSTROM

# SERVICE LIST OF REPRESENTATION STATEMENT

Plaintiff and Appellant
Robert W. Ahlstrom

Counsel for Plaintiff and Appellant Robert W. Ahlstrom
Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
**SETAREH LAW GROUP**
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

Defendant and Appellee
DHI Mortgage Company Ltd. L.P.

Counsel for Defendant and Appellee DHI Mortgage Company Ltd. L.P.
Jack S. Sholkoff, CA Bar No. 145097
jack.sholkoff@ogletree.com
Jennifer L. Katz, CA Bar No. 258917
jennifer.katz@ogletree.com
Alexandra C. Aurisch, CA Bar No. 296525
alexandra.aurisch@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

# EXHIBIT "A"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ROBERT W. AHLSTROM,
Plaintiff,
v.
DHI MORTGAGE COMPANY, LTD., L.P.,
Defendant.

Case No. 19-cv-03435-BLF

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE WITHOUT PREJUDICE**

[Re: ECF 16]

Plaintiff Robert W. Ahlstrom brings claims on behalf of himself and a putative class of others similarly situated against Defendants DHI Mortgage Company, Ltd. L.P. ("DHIM Ltd.") and DOES 1 to 50 (collectively, "Defendants") for state law wage and hour and contract violations. *See generally* Compl., ECF 1-1. Before the Court is DHIM Ltd.'s Motion to Compel Arbitration (the "Motion"). Mot., ECF 16. For the reasons stated below, the Court GRANTS the Motion and the action is DISMISSED without prejudice.

## I. BACKGROUND[1]

### A. Factual Background

Ahlstrom began working for DHIM Ltd. on or about July 2015 until December 9, 2016. Compl. ¶ 19; Decl. of Paula Hunter-Perkins ("Hunter-Perkins Decl.") ¶ 2, ECF 16-1. At the beginning of Ahlstrom's employment, on July 24, 2015, Ahlstrom signed a Mutual Arbitration Agreement ("MAA"). Hunter-Perkins Decl. ¶ 8; Hunter-Perkins Decl., Ex. B, MAA, at 3, ECF 16-1. On its face, the MAA is between the "undersigned employee ('Employee') and D.R.

[1] The Court need not and does not take judicial notice of any additional facts. DHIM Ltd.'s request for judicial notice is denied. *See* ECF 17.



United States District Court
Northern District of California

Horton (the 'Company')." MAA, at 1.

The MAA covers "all legal disputes and claims between [Employee and Company]," including "claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents" for, among other things, "wages, overtime, benefits, or other compensation; [and] breach of any express or implied contract." MAA ¶ 1. DHIM Ltd. is an affiliated entity of D.R. Horton. Decl. of Mark C. Winter ("Winter Decl.") ¶ 3, ECF 16-2. The MAA also includes various provisions relevant to the present motion. First, it includes a delegation provision that states, in relevant part:

> [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation or this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph [the class action waiver provision], the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

MAA ¶ 6. Second, the MAA includes an opt-out provision that states, in relevant part:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . . If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.

MAA ¶ 11. And finally, it includes a class action waiver:

> This Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.

MAA ¶ 7 (emphasis omitted).

### B. Procedural Background

Prior to the initiation of this case, in November 2018, this Court granted a motion to compel arbitration in a related case, *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018). In that case, Ahlstrom brought claims on behalf of himself and a putative class of others similarly situated against D.R. Horton and DHI

United States District Court
Northern District of California

Mortgage Company, GP, Inc. ("DHIM GP"). *Id.* at *1. D.R. Horton is the parent company of both DHIM GP and DHIM Ltd. *Id.* "[T]he key issue . . . turn[ed] on the validity of the MAA as to Plaintiff and D.R. Horton." *Id.* at *3. The Court found that the question of the MAA's validity was "solely a question of contract interpretation and formation, and thus must be sent to the arbitrator pursuant to the MAA's delegation provision." *Id.* Ahlstrom has not sought to arbitrate his claims against DHIM GP or D.R. Horton. *See* Decl. of Jennifer L. Katz ("Katz Decl.") ¶ 9, ECF 16-3.

On March 27, 2019, Ahlstrom filed the instant complaint in the Alameda County Superior Court. *See* Compl. at 1. The action was removed to federal court on June 17, 2019, *see* Not. of Removal, ECF 1-1, and DHIM Ltd. filed a motion to compel arbitration on July 22, 2019, *see* Mot. 1. DHIM Ltd. argues that the Federal Arbitration Agreement ("FAA") applies, the MAA is fully enforceable, arbitration must be compelled because of the MAA, the MAA is not unconscionable, and the MAA is enforceable and applies to Ahlstrom's claims against DHIM Ltd. Mot. 6-15. Moreover, DHIM Ltd. argues that the MAA's opt-out provision does not render the agreement unenforceable and that a contract between the parties was formed. Mot. 15-19. Ahlstrom opposes, arguing that whether there was an arbitration agreement should not be delegated to the arbitrator, and Ahlstrom did not consent to arbitrate under the MAA. Opp. to Mot. ("Opp."), at 2-8, ECF 18.

United States District Court
Northern District of California

## II. LEGAL STANDARD

The parties agree that the FAA applies. *See* Mot. 6-7; Opp. 2 (arguing under FAA). The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–



ER00009

47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). However, certain issues are presumptively reserved for the court. These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citation omitted).

That said, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within the province of judicial review, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987-88. "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted) (alteration in original).

If there is no clear and unmistakable delegation, a district court engages in a limited two-part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985). When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999) (interpreting language "arising in connection with" in arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").

## III. DISCUSSION

The key issue in this case is whether the MAA is valid as to DHIM Ltd. and Ahlstrom. This issue turns solely on questions of contract interpretation and formation, and therefore this case must be sent to the arbitrator pursuant to the MAA's delegation provision. Ahlstrom does not argue that the MAA is unconscionable, invalid, or otherwise unenforecable. He signed the MAA,





United States District Court
Northern District of California

which covers claims against D.R. Horton's affiliates, such as DHIM Ltd., and the MAA includes a clear and unmistakable delegation provision, providing that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement." MAA ¶ 6. Indeed, this Court has already found that the MAA's delegation provision is clear and unmistakable. *See Ahlstrom*, 2018 WL 6268876, at * 3.

In his opposition, Ahlstrom argues that that whether the arbitration agreement was formed should not be delegated because (1) such delegation contradicts the plain language of the FAA, and (2) the delegation provision is not clear and unmistakable because of other portions of the MAA. Opp. 2. The Court disagrees.

First, Ahlstrom argues that the FAA requires the Court to determine that the formation of the arbitration agreement is not an issue and, if it is an issue, to hold trial. Opp. 2 (citing 9 U.S.C. § 4). Under the FAA, "[t]he court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4)). Here, however, the MAA has a delegation provision, which "is an agreement to arbitrate threshold issues concerning the arbitration agreement," such as "whether the parties have agreed to arbitrate." *Id.* Such a provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other," and a court can still compel arbitration under § 4 if the delegation provision is valid under § 2. *Id.* at 70 (treating unchallenged delegation provision as valid under § 2 and enforcing delegation provision under §4). Accordingly, delegating whether the MAA was formed to the arbitrator is not a violation of the FAA so long as the delegation provision is valid, as is the case here.

Second, Ahlstrom argues that "[t]he arbitration agreement is ambiguous as to whether questions of enforceability are delegated to the arbitrator" because the delegation provision conflicts with two paragraphs of the MAA that "indicate that a court has the authority to [decide arbitrability]." Opp. 2-3. Specifically, Ahlstrom points to: (1) paragraph 2, which lists "[t]he only

United States District Court
Northern District of California

legal disputes and actions excluded from this Agreement"; and (2) paragraph 9, which states that "should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury." MAA ¶¶ 2, 9. Because of these paragraphs, Ahlstrom argues that delegation is not clear and unmistakable. Opp. 3-4.

The Court disagrees. Paragraph 2 is a carve-out provision. Ahlstrom does not explain how the carve-out provision indicates that a court decides arbitrability, *see* Opp. 2-3, and the mere existence of such a provision does not render a delegation provision ambiguous, *see Gountoumas v. Giaran, Inc.*, No. CV 18-7720-JFW(PJWX), 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) ("[T]he mere inclusion of a carve-out for equitable relief does not render the 'clear and unmistakable' delegation of the unconscionability determination to the arbitrator ambiguous."). In any event, there is no question that the claims within the carve-out provision are for the court – rather than the arbitrator – to decide. But the delegation provision reserves for the arbitrator issues of "formation, enforceability, applicability, or interpretation of this Agreement." MAA ¶ 6. And, therefore, the determination of whether a claim is covered under paragraph 2 is an issue that the parties clearly and unmistakably delegated to the arbitrator to decide in the first instance. Thus, paragraph 2 does not conflict with the delegation provision. *See DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *9 (N.D. Cal. Feb. 24, 2017) (holding that determination of whether claims fell within carve-out provision was delegated to the arbitrator).

With regard to paragraph 9, Ahlstrom takes issue with the jury-waiver clause. Opp. 2-3. The full text of paragraph 9 is as follows:

> This is the complete agreement between the parties on the subject of arbitration and supersedes any other understanding on the subject. No representation, oral or written, are being relied upon by either party in executing this Agreement, other than those contained herein. This Agreement shall remain in effect even after the termination of Employee's employment with the Company. If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extend necessary to render the Agreement valid and enforceable. If a provision conflicts with a mandatory provision of applicable law, the conflicting provision shall be severed automatically and the



ER00012

> remainder of the Agreement construed to incorporate the mandatory provision. In the event of such automatic severance and modification with respect to a particular provision, the remainder of this Agreement shall not be affected. Similarly, should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury and instead agree and stipulate that the claim(s) at issue will be heard only by a judge.

MAA ¶ 9.

Any purported conflict between paragraph 9 and the delegation provision is "artificial." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). When one interprets the last sentence – the one that Ahlstrom takes issue with – in the context of the full provision, it is clear that the parties intended that when a court determines that it should adjudicate the arbitrability issue and finds a dispute falls outside the scope of arbitration, a right to a jury trial is waived. Indeed, paragraph 9 contains a number of potential scenarios that attempt to provide guidance in the event part of the MAA is found invalid or otherwise unenforceable. These "if-then" scenarios do not dilute the broad scope of the delegation provision, which expressly provides that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement." MAA ¶ 6. And, as the Ninth Circuit has recognized, "no matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Mohamed*, 848 F.3d at 1209; *Berk v. Coinbase, Inc.*, No. 18-CV-01364-VC, 2018 WL 5292244, at *1 (N.D. Cal. Oct. 23, 2018) ("[T]here [a]re myriad ways in which a dispute might end up in court notwithstanding the arbitration agreement . . . ."). For example, a party may challenge the delegation provision as being unenforceable because it is unconscionable, *see Mohamed*, 848 F.3d at 1210, or a party may waive their right to enforce the delegation provision, *see Lee v. Comcast Cable Commc'ns, Inc.*, No. 7:13-CV-01288-RDP, 2015 WL 4619806, at *2 (N.D. Ala. July 31, 2015) (waiving right to enforce delegation clause by failing to raise in motion or reply brief).

It is therefore clear that the MAA demonstrates an intent to include arbitrability issues

United States District Court
Northern District of California

within the scope of arbitration and reference to a court's potential decision does not render the delegation clause unambiguous, unclear, or mistakable. *See Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (finding reference to "court of competition jurisdiction" in contract provision "does not render the express delegation clause of the Arbitration Agreement ambiguous"); *MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-CV-01240-EMC, 2018 WL 3619656, at *6 (N.D. Cal. July 30, 2018) (finding provision providing that "if any provision of the contract is held by a court of competent jurisdiction to be unenforceable, then the validity of the remaining provisions shall not be affected," did not render the delegation clause ambiguous); *Bayer v. Comcast Cable Commc'ns, LLC*, No. 12 C 8618, 2013 WL 1849519, at *3 (N.D. Ill. May 1, 2013) (finding jury waiver contained within severability provision did not contradict delegation provision). *But see Berk*, 2018 WL 5292244, at *1 (finding arbitrability not "clearly and unmistakably" delegated to arbitrator where agreement's arbitration portion contained severability provision referencing court's ability to decide validity or enforceability of arbitration, and where delegation provision was only incorporated into agreement).

The Court is unpersuaded by Ahlstrom's reliance on the state court cases he cites in support of his position. Opp. 3. These cases predate the Ninth Circuit's position in *Mohamed* and are otherwise inapposite. *See, e.g.*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1442 (2012) (relying solely on California law by default even though agreement contained a choice-of-law provision adopting the law of Texas or FAA). The Court therefore rejects Ahlstrom's reliance on those cases and instead applies *Mohamed* as other courts have done. *See, e.g. Taylor*, 2018 WL 4334770, at *5; *MegaCorp Logistic*, 2018 WL 3619656, at *6.

The court is similarly not persuaded by Ahlstrom's remaining arguments that DHIM Ltd. cannot move to compel arbitration because it is not a signatory of the MAA and that Ahlstrom did not accept the MAA. Opp. 3-8. Ahlstrom cites *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127-28 (9th Cir. 2013), for his position that DHIM Ltd. cannot enforce the MAA. That case, however, dealt with an arbitration agreement that contained language "evidenc[ing] Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else." *Id.* at 1127. By contrast, the MAA specifically states that claims against D.R. Horton's affiliates – like DHIM Ltd. – are

United States District Court
Northern District of California



ER00014

subject to arbitration. *See* MAA ¶ 1. Moreover, because whether the MAA covers claims against DHIM Ltd. go to the enforceability of the MAA, which is delegated to the arbitrator. *See Yu v. Volt Info. Scis., Inc.*, No. 19-CV-01981-LB, 2019 WL 3503111, at *5 (N.D. Cal. Aug. 1, 2019) (finding question of arbitrability as to third-party were for arbitrator to decide).

Ahlstrom also argues that he did not accept the MAA because he did not comply with both requirements in the MAA's opt-out provision, and therefore his acceptance was never effective. Opp. 4-8. The Court already rejected this argument before, *see Ahlstrom*, 2018 WL 6268876, at *3, and it does so again here. "Ahlstrom accepted the MAA when he signed on the dotted line. *Id.* "By its very name and nature, the 'opt-out' provision provided an opportunity for Ahlstrom to opt out of his previously rendered acceptance." *Id.* Determining whether Ahlstrom successfully opted out of the MAA requires the Court to interpret the MAA, which has been clearly and unmistakably delegated to the arbitrator.

Finally, the Court finds it appropriate to dismiss the case without prejudice. The MAA includes a valid class action waiver, the substance of which Ahlstrom does not challenge. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the legality of class action waivers in arbitration agreements). As such, given that Ahlstrom's individual claims must be sent to arbitration, the Court dismisses the class action claims pending resolution of the arbitration.

**IV. ORDER**

For the foregoing reasons, DHIM Ltd.'s Motion to Compel Arbitration is GRANTED. There being no remaining claims outside of arbitration, the entire action is DISMISSED WITHOUT PREJUDICE to filing a later action should the arbitrator determine the arbitration agreement is not binding on Ahlstrom, or to confirm or vacate any arbitration award.

**IT IS SO ORDERED.**

Dated: January 16, 2020

BETH LABSON FREEMAN
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ROBERT W. AHLSTROM,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P.,

Defendant.

Case No. 19-cv-03435-BLF

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE WITHOUT PREJUDICE**

[Re: ECF 16]

Plaintiff Robert W. Ahlstrom brings claims on behalf of himself and a putative class of others similarly situated against Defendants DHI Mortgage Company, Ltd. L.P. ("DHIM Ltd.") and DOES 1 to 50 (collectively, "Defendants") for state law wage and hour and contract violations. *See generally* Compl., ECF 1-1. Before the Court is DHIM Ltd.'s Motion to Compel Arbitration (the "Motion"). Mot., ECF 16. For the reasons stated below, the Court GRANTS the Motion and the action is DISMISSED without prejudice.

## I. BACKGROUND[1]

### A. Factual Background

Ahlstrom began working for DHIM Ltd. on or about July 2015 until December 9, 2016. Compl. ¶ 19; Decl. of Paula Hunter-Perkins ("Hunter-Perkins Decl.") ¶ 2, ECF 16-1. At the beginning of Ahlstrom's employment, on July 24, 2015, Ahlstrom signed a Mutual Arbitration Agreement ("MAA"). Hunter-Perkins Decl. ¶ 8; Hunter-Perkins Decl., Ex. B, MAA, at 3, ECF 16-1. On its face, the MAA is between the "undersigned employee ('Employee') and D.R.

[1] The Court need not and does not take judicial notice of any additional facts. DHIM Ltd.'s request for judicial notice is denied. *See* ECF 17.



United States District Court
Northern District of California

Horton (the 'Company')." MAA, at 1.

The MAA covers "all legal disputes and claims between [Employee and Company]," including "claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents" for, among other things, "wages, overtime, benefits, or other compensation; [and] breach of any express or implied contract." MAA ¶ 1. DHIM Ltd. is an affiliated entity of D.R. Horton. Decl. of Mark C. Winter ("Winter Decl.") ¶ 3, ECF 16-2. The MAA also includes various provisions relevant to the present motion. First, it includes a delegation provision that states, in relevant part:

> [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation or this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph [the class action waiver provision], the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

MAA ¶ 6. Second, the MAA includes an opt-out provision that states, in relevant part:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . . If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.

MAA ¶ 11. And finally, it includes a class action waiver:

> This Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.

MAA ¶ 7 (emphasis omitted).

### B. Procedural Background

Prior to the initiation of this case, in November 2018, this Court granted a motion to compel arbitration in a related case, *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018). In that case, Ahlstrom brought claims on behalf of himself and a putative class of others similarly situated against D.R. Horton and DHI

United States District Court
Northern District of California

Mortgage Company, GP, Inc. ("DHIM GP"). *Id.* at *1. D.R. Horton is the parent company of both DHIM GP and DHIM Ltd. *Id.* "[T]he key issue . . . turn[ed] on the validity of the MAA as to Plaintiff and D.R. Horton." *Id.* at *3. The Court found that the question of the MAA's validity was "solely a question of contract interpretation and formation, and thus must be sent to the arbitrator pursuant to the MAA's delegation provision." *Id.* Ahlstrom has not sought to arbitrate his claims against DHIM GP or D.R. Horton. *See* Decl. of Jennifer L. Katz ("Katz Decl.") ¶ 9, ECF 16-3.

On March 27, 2019, Ahlstrom filed the instant complaint in the Alameda County Superior Court. *See* Compl. at 1. The action was removed to federal court on June 17, 2019, *see* Not. of Removal, ECF 1-1, and DHIM Ltd. filed a motion to compel arbitration on July 22, 2019, *see* Mot. 1. DHIM Ltd. argues that the Federal Arbitration Agreement ("FAA") applies, the MAA is fully enforceable, arbitration must be compelled because of the MAA, the MAA is not unconscionable, and the MAA is enforceable and applies to Ahlstrom's claims against DHIM Ltd. Mot. 6-15. Moreover, DHIM Ltd. argues that the MAA's opt-out provision does not render the agreement unenforceable and that a contract between the parties was formed. Mot. 15-19. Ahlstrom opposes, arguing that whether there was an arbitration agreement should not be delegated to the arbitrator, and Ahlstrom did not consent to arbitrate under the MAA. Opp. to Mot. ("Opp."), at 2-8, ECF 18.

## II. LEGAL STANDARD

The parties agree that the FAA applies. *See* Mot. 6-7; Opp. 2 (arguing under FAA). The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–

47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). However, certain issues are presumptively reserved for the court. These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citation omitted).

That said, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within the province of judicial review, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987-88. "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted) (alteration in original).

If there is no clear and unmistakable delegation, a district court engages in a limited two-part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985). When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999) (interpreting language "arising in connection with" in arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").

## III. DISCUSSION

The key issue in this case is whether the MAA is valid as to DHIM Ltd. and Ahlstrom. This issue turns solely on questions of contract interpretation and formation, and therefore this case must be sent to the arbitrator pursuant to the MAA's delegation provision. Ahlstrom does not argue that the MAA is unconscionable, invalid, or otherwise unenforecable. He signed the MAA,

which covers claims against D.R. Horton's affiliates, such as DHIM Ltd., and the MAA includes a clear and unmistakable delegation provision, providing that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement." MAA ¶ 6. Indeed, this Court has already found that the MAA's delegation provision is clear and unmistakable. *See Ahlstrom*, 2018 WL 6268876, at * 3.

In his opposition, Ahlstrom argues that that whether the arbitration agreement was formed should not be delegated because (1) such delegation contradicts the plain language of the FAA, and (2) the delegation provision is not clear and unmistakable because of other portions of the MAA. Opp. 2. The Court disagrees.

First, Ahlstrom argues that the FAA requires the Court to determine that the formation of the arbitration agreement is not an issue and, if it is an issue, to hold trial. Opp. 2 (citing 9 U.S.C. § 4). Under the FAA, "[t]he court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4)). Here, however, the MAA has a delegation provision, which "is an agreement to arbitrate threshold issues concerning the arbitration agreement," such as "whether the parties have agreed to arbitrate." *Id.* Such a provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other," and a court can still compel arbitration under § 4 if the delegation provision is valid under § 2. *Id.* at 70 (treating unchallenged delegation provision as valid under § 2 and enforcing delegation provision under §4). Accordingly, delegating whether the MAA was formed to the arbitrator is not a violation of the FAA so long as the delegation provision is valid, as is the case here.

Second, Ahlstrom argues that "[t]he arbitration agreement is ambiguous as to whether questions of enforceability are delegated to the arbitrator" because the delegation provision conflicts with two paragraphs of the MAA that "indicate that a court has the authority to [decide arbitrability]." Opp. 2-3. Specifically, Ahlstrom points to: (1) paragraph 2, which lists "[t]he only

legal disputes and actions excluded from this Agreement"; and (2) paragraph 9, which states that "should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury." MAA ¶¶ 2, 9. Because of these paragraphs, Ahlstrom argues that delegation is not clear and unmistakable. Opp. 3-4.

The Court disagrees. Paragraph 2 is a carve-out provision. Ahlstrom does not explain how the carve-out provision indicates that a court decides arbitrability, *see* Opp. 2-3, and the mere existence of such a provision does not render a delegation provision ambiguous, *see Gountoumas v. Giaran, Inc.*, No. CV 18-7720-JFW(PJWX), 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) ("[T]he mere inclusion of a carve-out for equitable relief does not render the 'clear and unmistakable' delegation of the unconscionability determination to the arbitrator ambiguous."). In any event, there is no question that the claims within the carve-out provision are for the court – rather than the arbitrator – to decide. But the delegation provision reserves for the arbitrator issues of "formation, enforceability, applicability, or interpretation of this Agreement." MAA ¶ 6. And, therefore, the determination of whether a claim is covered under paragraph 2 is an issue that the parties clearly and unmistakably delegated to the arbitrator to decide in the first instance. Thus, paragraph 2 does not conflict with the delegation provision. *See DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *9 (N.D. Cal. Feb. 24, 2017) (holding that determination of whether claims fell within carve-out provision was delegated to the arbitrator).

With regard to paragraph 9, Ahlstrom takes issue with the jury-waiver clause. Opp. 2-3. The full text of paragraph 9 is as follows:

> This is the complete agreement between the parties on the subject of arbitration and supersedes any other understanding on the subject. No representation, oral or written, are being relied upon by either party in executing this Agreement, other than those contained herein. This Agreement shall remain in effect even after the termination of Employee's employment with the Company. If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extend necessary to render the Agreement valid and enforceable. If a provision conflicts with a mandatory provision of applicable law, the conflicting provision shall be severed automatically and the





United States District Court
Northern District of California

> remainder of the Agreement construed to incorporate the mandatory provision. In the event of such automatic severance and modification with respect to a particular provision, the remainder of this Agreement shall not be affected. Similarly, should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury and instead agree and stipulate that the claim(s) at issue will be heard only by a judge.

MAA ¶ 9.

Any purported conflict between paragraph 9 and the delegation provision is "artificial." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). When one interprets the last sentence – the one that Ahlstrom takes issue with – in the context of the full provision, it is clear that the parties intended that when a court determines that it should adjudicate the arbitrability issue and finds a dispute falls outside the scope of arbitration, a right to a jury trial is waived. Indeed, paragraph 9 contains a number of potential scenarios that attempt to provide guidance in the event part of the MAA is found invalid or otherwise unenforceable. These "if-then" scenarios do not dilute the broad scope of the delegation provision, which expressly provides that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement." MAA ¶ 6. And, as the Ninth Circuit has recognized, "no matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Mohamed*, 848 F.3d at 1209; *Berk v. Coinbase, Inc.*, No. 18-CV-01364-VC, 2018 WL 5292244, at *1 (N.D. Cal. Oct. 23, 2018) ("[T]here [a]re myriad ways in which a dispute might end up in court notwithstanding the arbitration agreement . . . ."). For example, a party may challenge the delegation provision as being unenforceable because it is unconscionable, *see Mohamed*, 848 F.3d at 1210, or a party may waive their right to enforce the delegation provision, *see Lee v. Comcast Cable Commc'ns, Inc.*, No. 7:13-CV-01288-RDP, 2015 WL 4619806, at *2 (N.D. Ala. July 31, 2015) (waiving right to enforce delegation clause by failing to raise in motion or reply brief).

It is therefore clear that the MAA demonstrates an intent to include arbitrability issues

United States District Court
Northern District of California

within the scope of arbitration and reference to a court's potential decision does not render the delegation clause unambiguous, unclear, or mistakable. *See Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (finding reference to "court of competition jurisdiction" in contract provision "does not render the express delegation clause of the Arbitration Agreement ambiguous"); *MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-CV-01240-EMC, 2018 WL 3619656, at *6 (N.D. Cal. July 30, 2018) (finding provision providing that "if any provision of the contract is held by a court of competent jurisdiction to be unenforceable, then the validity of the remaining provisions shall not be affected," did not render the delegation clause ambiguous); *Bayer v. Comcast Cable Commc'ns, LLC*, No. 12 C 8618, 2013 WL 1849519, at *3 (N.D. Ill. May 1, 2013) (finding jury waiver contained within severability provision did not contradict delegation provision). *But see Berk*, 2018 WL 5292244, at *1 (finding arbitrability not "clearly and unmistakably" delegated to arbitrator where agreement's arbitration portion contained severability provision referencing court's ability to decide validity or enforceability of arbitration, and where delegation provision was only incorporated into agreement).

The Court is unpersuaded by Ahlstrom's reliance on the state court cases he cites in support of his position. Opp. 3. These cases predate the Ninth Circuit's position in *Mohamed* and are otherwise inapposite. *See, e.g.*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1442 (2012) (relying solely on California law by default even though agreement contained a choice-of-law provision adopting the law of Texas or FAA). The Court therefore rejects Ahlstrom's reliance on those cases and instead applies *Mohamed* as other courts have done. *See, e.g. Taylor*, 2018 WL 4334770, at *5; *MegaCorp Logistic*, 2018 WL 3619656, at *6.

The court is similarly not persuaded by Ahlstrom's remaining arguments that DHIM Ltd. cannot move to compel arbitration because it is not a signatory of the MAA and that Ahlstrom did not accept the MAA. Opp. 3-8. Ahlstrom cites *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127-28 (9th Cir. 2013), for his position that DHIM Ltd. cannot enforce the MAA. That case, however, dealt with an arbitration agreement that contained language "evidenc[ing] Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else." *Id.* at 1127. By contrast, the MAA specifically states that claims against D.R. Horton's affiliates – like DHIM Ltd. – are

subject to arbitration. *See* MAA ¶ 1. Moreover, because whether the MAA covers claims against DHIM Ltd. go to the enforceability of the MAA, which is delegated to the arbitrator. *See Yu v. Volt Info. Scis., Inc.*, No. 19-CV-01981-LB, 2019 WL 3503111, at *5 (N.D. Cal. Aug. 1, 2019) (finding question of arbitrability as to third-party were for arbitrator to decide).

Ahlstrom also argues that he did not accept the MAA because he did not comply with both requirements in the MAA's opt-out provision, and therefore his acceptance was never effective. Opp. 4-8. The Court already rejected this argument before, *see Ahlstrom*, 2018 WL 6268876, at *3, and it does so again here. "Ahlstrom accepted the MAA when he signed on the dotted line. *Id.* "By its very name and nature, the 'opt-out' provision provided an opportunity for Ahlstrom to opt out of his previously rendered acceptance." *Id.* Determining whether Ahlstrom successfully opted out of the MAA requires the Court to interpret the MAA, which has been clearly and unmistakably delegated to the arbitrator.

Finally, the Court finds it appropriate to dismiss the case without prejudice. The MAA includes a valid class action waiver, the substance of which Ahlstrom does not challenge. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the legality of class action waivers in arbitration agreements). As such, given that Ahlstrom's individual claims must be sent to arbitration, the Court dismisses the class action claims pending resolution of the arbitration.

## IV. ORDER

For the foregoing reasons, DHIM Ltd.'s Motion to Compel Arbitration is GRANTED. There being no remaining claims outside of arbitration, the entire action is DISMISSED WITHOUT PREJUDICE to filing a later action should the arbitrator determine the arbitration agreement is not binding on Ahlstrom, or to confirm or vacate any arbitration award.

**IT IS SO ORDERED.**

Dated: January 16, 2020

BETH LABSON FREEMAN
United States District Judge

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

Attorneys for Plaintiff
ROBERT W. AHLSTROM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>DHI MORTGAGE COMPANY LTD. L.P., a Texas limited partnership; and DOES 1 through 50, inclusive,<br><br>*Defendants*. | Case No.: 3:19-cv-03435-EMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: September 5, 2019<br>Time: 1:30 p.m.<br>Place.: Courtroom 5<br>Judge: Hon. Edward M. Chen<br><br>Complaint. Filed: August 2, 2017<br>Trial Date: None Set |

## INTRODUCTION

The United States Supreme Court has made clear that courts must enforce arbitration provisions "according to their terms." *Epic Systems Corp. v. Lewis* ,136 S. Ct. 1612, 1619 (2018). Here, the defendant employer drafted an arbitration agreement with an opt out provision that very clearly states that the Employee is deemed to have accepted the agreement if he or she does not opt out **and** if he or she continues or accepts employment with D.R. Horton, Inc (described in the agreement as "the Company") within 30 days of receipt of the agreement.

Therefore, the arbitration provision in this case never became effective according to its terms. This is because Plaintiff never accepted employment with D.R. Horton Inc. but instead with a related company DHI Mortgage Company LTD. The arbitration agreement requires that Plaintiff accept agreement with Company X for the agreement to become effective, but Plaintiff in fact accepted agreement with Company Y.

As the California Court of Appeal has explained in affirming an order denying a motion to compel arbitration: "Where a contract does prescribe the manner in which acceptance is to be communicated, "no other will suffice". *Hillsborough LLC v. Marcus & Millichap Real Estate Inv. Brokerage Co.,* 2006 WL 2501580 *4 (2006) citing 1 Witkin Contracts, § 189, p. 223, citing Civ. Code § 1582. The result should be no different here. The subject arbitration agreement expressly requires acceptance of or continued employment with D.R. Horton Inc. Since that never occurred, there was never an effective arbitration agreement.

Defendant argues that this argument has already been rejected by a district court in a prior case filed by Plaintiff not against DHI Mortgage Company LTD but against D.R. Horton Inc. However, the district court in that opinion expressly noted that it was basing its analysis on the fact that Plaintiff had not sued DHI Mortgage Company LTD but instead had erroneously sued D.R. Horton, Inc.:

Plaintiff was employed by DHI, Ltd, but chose not to sue DHI, Ltd in the instant suit. As such, no contract between Plaintiff and DHI Ltd. is at issue here. Instead, the MAA

here was a purported contract between Plaintiff and D.R. Horton. Had Plaintiff sued DHI, Ltd. and had DHI, Ltd. attempted to enforce the MAA at issue, a different analysis would be required.

*Ahlstrom v. DHL Mortgage Company GP, Inc*., 2018 WL 6268876 (N.D. Cal. 2018).

The instant lawsuit by naming DHI LTD. thus cleanly presents the issue that requires "a different analysis." For the reasons set forth below, the motion should be denied.

## ARGUMENT

### I. Whether an Arbitration Agreement Was Formed Should Not be Delegated to the Arbitrator.

As a threshold matter, this Court should determine the issues raised in this Opposition. First, to the extent that Defendant argues that the arbitration agreement requires that issues of contract formation were delegated to the arbitrator, this is contrary to the text of the Federal Arbitration Act which requires a district court before ordering arbitration to determine that: "the making of the agreement for arbitration . . . is not in issue" and to hold a trial if it is in issue. 9 U.S.C. § 4. Therefore, under the plain language of the FAA contract formation issues are for this Court.

Further, as the Supreme Court has said: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakeable evidence that they did so." *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The arbitration agreement is ambiguous as to whether questions of enforceability are delegated to the arbitrator. The agreement does state: "Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this agreement." Hunter-Perkins Decl. Exh B ¶ 6.

However, the Agreement also states that "actions to enforce this Agreement [or] compel arbitration" are "excluded from this Agreement." *Id.* ¶ 2. The Agreement further recognizes the possibility that a court may refuse to enforce the Agreement: "Similarly, should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the

parties agree and stipulate that they hereby waive any right to a jury . . . .” *Id.* ¶ 9. These provisions on their face conflict with the delegation clause. Therefore, it cannot be said that there is clear and unmistakeable evidence that the parties agreed to delegate this issue to the arbitrator.

The decision of the California Court of Appeal in *Peleg v. Neiman Marcus Group, Inc*., 204 Cal.App.4th 1425, 1442 (2012) is instructive and compels a conclusion that issues of enforceability or formation are for this Court not the arbitrator. In that case, the arbitration provision, like here, stated that: “Any dispute concerning this Agreement – the way it was formed, its applicability, meaning, scope, enforceability . . . is subject to arbitration under this Agreement and shall be determined by the arbitrator.” *Id.* at 1441. Despite this language the Court of Appeal found the provision ambiguous because there was another clause recognizing the possibility that a court could find the agreement unenforceable: “The Agreement’s severability provision, in section 22, states in part: ‘If any court determines that this Agreement in its entirety shall not be enforced . . . ‘ Yet, according to Neiman Marcus, the Agreement’s delegation provision means that an arbitrator *always* determines *any* question concerning enforceability. The severability provision, however, recognizes that a court may decide the same issue.” *Id.* at 1442.

In *Neiman Marcus*, the Court of Appeal then discussed three Court of Appeal decisions holding that there is no effective delegation provision where such conflicting language exists. *Id.* at 1442-1443 citing *Baker v. Osborne Development Corp*., 259 Cal.App.4th 884, 891 (2008); *Parada v. Superior Court,* 176 Cal.App.4th 1554, 1561 (2009); *Hartley v. Superior Court*, 196 Cal.App.4th 1249, 1256 (2011). The Court of Appeal then held that in light of the conflicting language the court must decide arbitrability. *Id.* at 1445.

The exact same situation is present here. Section 6 indicates that the arbitrator decides arbitrability, even including contract formation. Sections 2 and 9 both indicate that a court has the authority to do this. Therefore, under *Neiman-Marcus* the Agreement is ambiguous and the issue is for this Court.

Further, even if there is an effective delegation provision regarding the enforceability

of the agreement as between the signatories (i.e. Plaintiff and D.R. Horton Inc.) that does not extend to a motion to compel arbitration brought by non-signatory DHI Ltd. *See Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1127-1128 (9th Cir. 2013).

The issue is for this Court and therefore for the reasons set forth below, the motion to compel arbitration should be denied.

**II. Arbitration is a Matter of Consent and under California Law, Consent Requires an Act or Omission.**

As the United States Supreme Court has repeatedly said: "Arbitration under the [FAA] is a matter of consent not coercion." *E.g., Volt Info Sys, Inc. v. Bd of Trs. of Leland Stanford Junior Univers*., 489 U.S. 468, 479 (1989).

Under California contract law: "Consent can be communicated with effect, only by some act or omission of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication." Civil Code § 1581. An offer can be accepted by silence only where there is a duty to speak. *Wood v. Gunther*, 89 Cal.App.2d 718, 881 (1949). Here, the contract itself specified what would be necessary to show consent.

**III. While the General Rule is that any Reasonable and Usual Method .of Acceptance is Effective, This Does Not Apply Where a Particular Method is Prescribed.**

Under California law, the parties may agree that a certain mode of acceptance is required in order for the acceptance of an offer to be effective. For example, in *Dexter v. Ankiewicz*, 26 Cal.App.2d 326, 333 (1938) the California Court of Appeal explained as follows:

> "In the instant case it is clear . . . that both plaintiff and defendant contemplated the acceptance by defendant of plaintiff's offer should be signified by defendant's signing and returning the contract . . . . Therefore, applying the above-mentioned rule of law to these facts, it is evident that defendant did not accept plaintiff's offer in the manner contemplated by the parties . . . ."

Similarly, in *Gray v. Stewart*. 97 Cal.App.4th 1394, 1397 (2002) the California Court of Appeal explained that any reasonable method of acceptance is permissible, if the contract does not prescribe a specific method: "Because the offer to compromise did not prescribe any specific mode of communication of the acceptance, the only requirement was that the acceptance be communicated in a clear and unequivocal fashion."

Here, as set forth below, the contract plainly sets forth a prescribed method of acceptance and therefore other methods do not suffice.

## IV. Under the Plain Language of the Agreement There Was No Effective Acceptance.

The arbitration provision states that: "The undersigned employee ("Employee" ) and D.R. Horton, Inc. (the "Company") voluntarily and knowingly enter into this Mutual Arbitration Agreement. Hunter-Perkins Declaration Exh. B, ECF No. 16-1 Page No. 9.

Thus, where the phrase the "Company" is used in the arbitration agreement, it of necessity refers to D.R. Horton, Inc. not to any related companies that have a different name and a separate legal identity.

Paragraph 11 of the Agreement expressly states as follows:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . If Employee does not deliver the executed form within 30 days, **and** if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.

Therefore, according to the Opt-Out provision, two conditions must exist for the employee to accept the arbitration agreement. First, the employee must fail to deliver an executed Opt-Out Form within 30 days. Second, as the use of the word "and" indicates, the employee must also accept or continue employment with the "Company" i.e. D.R. Horton, Inc. after the 30 day period has elapsed.

These are two conditions expressly stated for acceptance of the arbitration Agreement: 1) The employee does timely submit an Opt-Out form; 2) The employee must accept or continue employment with D.R. Horton, Inc. The use of the conjunctive "and" makes clear that bost must be met. The second is not met. Defendant admits that the employer in this case is not D.R. Horton, Inc. Plaintiff never accepted or continued employment with D.R. Horton, Inc. Therefore, a condition for acceptance of the arbitration provision never occurred.

It is no answer to say that the arbitration agreement became effective when Plaintiff signed it. Such an argument would render the opt out provision illusory. In order for the opt out provision to be meaningful it must mean that the arbitration agreement does not become

effective until after the conditions precedent have been met. Otherwise, if an employee were terminated 15 days after accepting employment they could be compelled to arbitrate, even though they have 30 days to opt out, and the agreement by its terms says it is not deemed accepted until 30 days of employment have occurred.

The cases cited by Defendant are not to the contrary. For example, Defendant relies on *Artukovich v. Pacific State Pipe Co.*, 78 Cal.App.2d 1, 3 (1947) which stands for the proposition that: "the provision in an offer specifying a manner of acceptance is for the benefit of the offeror and may be waived by him." But this rule has no application here because the Opt Out provision is plainly for the benefit of the prospective employee not the benefit of the Company. As California law requires: "Where the reason of a rule ceases, so should the rule itself." Civil Code § 3510. Therefore, this rule should not be applied to a provision plainly intended to benefit the offeree.

Defendant also relies on *In re Crossman's Estate*, 231 Cal.App.2d 370 (1964) which concluded that a provision in an option agreement stating that notice was to be by registered mail was not a condition but instead a "permitted . . . manner" of acceptance. The Court of Appeal concluded after examining the entire agreement and extrinsic evidence that registered mail was a "mere suggestion."

That reasoning is inapplicable here. Obviously the Opt-Out provision is intended to be a condition to an effective arbitration agreement. The sentence in question reads: "If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement." To read this not as a condition, but as a "suggestion" would render the Opt-Out provision nugatory.

Nor does this conclusion change because elsewhere in the Agreement it states that claims against subsidiaries or affiliates of D.R. Horton Inc. must be arbitrated. Obviously, it is possible that an employee of D.R. Horton Inc. could have a claim against an affiliated company such as for example when employees of affiliated entities work together and an allegation of harassment or discrimination arises.

**V. Plaintiff's Interpretation Must be accepted because it is Consistent with the Language of the Contract and is Not Absurd.**

Under California law, "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Civil Code § 1638.

The Agreement itself contemplates an employment relationship between Plaintiff and D.R. Horton Inc i.e. between "Employee" and the "Company". The counterparties are expressly identifies the counterparties as "Employee" and the "Company" which is expressly identified as D.R. Horton Inc. It is signed by Crystal Stone who is identified as "Company Representative" i.e. a representative or D.R. Horton Inc. If no such employment relationship is ever created, it should not be surprising that the Agreement does not become effective. See Civil Code § 1648: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

Nor does the plain language interpretation offered by Plaintiff render the Agreement meaningless. For example, it is possible that an employee of a related entity could receive a promotion or reassignment which makes him an employee of D.R. Horton Inc. At that point, the employee (assuming he or she did not send in the Opt-Out Form) would be deemed to have accepted the Agreement under its plain language.

**VI. Any Doubt as to the Interpretation of the Agreement Must be Construed Against the Party That Caused It to Exist.**

The law in California provides that absent presentation of extrinsic evidence any ambiguity in a contract, particularly a form contract, is to be construed against the drafter. *City of Hope National Medical Center v. Genentech, Inc*., 4 Cal.4th 375, 398 (2008); *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998): "When ambiguities in a standardized contract, like the account agreement involved here, cannot be dispelled by application of the other rules of contract interpretation they are resolved against the drafter." Civil Code § 1654: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

Both the California Supreme Court and the United States Supreme Court have approved the application of this interpretive principle to arbitration agreements. *Victoria v.*

*Superior Court*, 40 Cal.3d 734, 835 (1985): "Ambiguities in standard form contracts are to be construed against the drafter . . . This court must apply these basic principles to determine whether the petitioner's causes of action fall within the scope of the arbitration provision."; *Mastrobuono v. Sherman Lehman Hutton, Inc.,* 141 U.S. 52, 63 (1995): "[Defendant] drafted an ambiguous document and cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result."

Therefore, to the extent that there is any doubt as to which interpretation of the agreement is correct, it must be construed against Defendant who caused the uncertainty to exist.

## CONCLUSION

The motion to compel arbitration should be denied.

Dated: August 5, 2019

**SETAREH LAW GROUP**

By: /s/
Shaun Setareh

Attorneys for Plaintiff
ROBERT W. AHLSTROM

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August 2019, a true and correct copy of the foregoing document was filed via the court's CM/ECF filing system and a copy was delivered via the same on all attorneys of record.

*/s/ Shaun Setareh*

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,

Defendants.

Case No. 3:19-cv-03435-EMC

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed concurrently with Declarations of Paula Hunter-Perkins, Mark C. Winter, and Jennifer L. Katz; Request for Judicial Notice; and [Proposed] Order.]*

Date: September 5, 2019
Time: 1:30 p.m.
Place: Courtroom 5

Complaint Filed: March 27, 2019
Trial Date: None
Judge: Hon. Edward M. Chen
Courtroom 5, San Francisco

**TO PLAINTIFF ROBERT W. AHLSTROM AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 5, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard in the above captioned Court, located at San Francisco Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, defendant DHI Mortgage Company, Ltd., L.P. ("DHIM"), shall and hereby does move the Court for an order, pursuant to the Federal Arbitration Act (9 U.S.C. § 3) and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), compelling plaintiff Robert W. Ahlstrom ("Plaintiff") (together with DHIM, the "Parties") to arbitrate his claims on an individualized basis, dismissing Plaintiff's class and collective action allegations, and dismissing or staying the instant action to permit the Parties to complete arbitration.

This Motion is based upon the following grounds:

1. The Parties entered into a Mutual Arbitration Agreement ("MAA") which expressly provides that they must arbitrate "all legal disputes and claims between them . . ." Plaintiff's claims relate to his employment and, therefore, fall within the definition of arbitrable claims pursuant to the MAA. The MAA is valid, not unconscionable, and complies with California and federal law.

2. On November 30, 2018, Judge Beth Labson Freeman of the Northern District of California granted an essentially identical motion as to Plaintiff brought by two entities related to DHIM—DHI Mortgage Company, GP, Inc. and D.R. Horton, Inc.—with respect to the identical MAA now at issue, compelling Plaintiff's individual claims to arbitration, dismissing Plaintiff's putative class and collective claims, and, finding that there were no remaining claims outside of arbitration in that action, dismissing the case without prejudice. *See Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-cv-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018). Moreover, an earlier version of the MAA has previously been enforced by the California Court of Appeal, resulting in the employee being compelled to arbitration. *See Gillespie v. Western Pacific Housing Management, Inc.*, No. D066354, 2014 WL 7195024 (Cal. Court App. 4th. Dec. 18, 2014).

3. In May 2018, the Supreme Court issued its ruling in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), which established definitively that class action waivers in arbitration

agreements must be enforced, and that neither the FAA's saving clause nor the National Labor Relations Act ("NLRA") may be invoked to avoid arbitration on an individual basis.

Accordingly, because the MAA is enforceable and encompasses Plaintiff's claims, this Court should, pursuant to the FAA and in accordance with Judge Freeman's prior order against Plaintiff, compel Plaintiff to arbitrate his claims on an individualized basis, and dismiss his putative class and collective claims.

This Motion is and will be based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Declarations of Jennifer L. Katz, Paula Hunter-Perkins, and Mark Winter; the accompanying Request for Judicial Notice and exhibits thereto; the records and files herein; and such oral and documentary evidence as may be presented at the hearing.

DATED: July 22, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Jennifer L. Katz
Jack S. Sholkoff
Jennifer L. Katz
Alexandra C. Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ... 1

A. Plaintiff Voluntarily Agreed To Arbitrate His Claims Against DHIM. ... 1

B. Plaintiff Previously Sued Two Entities Related To DHIM, Alleging The Same Claims, And This Court Enforced Plaintiff's MAA. ... 3

C. The MAA Constitutes A Fair And Enforceable Arbitration Agreement. ... 4

D. Plaintiff Knowingly Breached The MAA And Judge Freeman's Order By Filing This Complaint And Refusing To Arbitrate His Claims. ... 4

E. The U.S. Supreme Court Holds That Class Action Waivers In Employment Arbitration Agreements Are Enforceable. ... 5

III. THIS COURT SHOULD DISMISS PLAINTIFF'S CLASS AND COLLECTIVE ACTION ALLEGATIONS AND COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS ON AN INDIVIDUALIZED BASIS. ... 6

A. The FAA Applies To The MAA. ... 6

B. The MAA's Class Action Waiver Is Fully Enforceable Under *Epic Systems*. ... 7

C. Because The MAA Contains A Delegation Clause Regarding Non-Class Action Waiver Issues, This Court Must Compel The Matter To Arbitration Even If The Parties Dispute Arbitrability. ... 8

D. The MAA Is Not Unconscionable. ... 9

1. The MAA Is Not Procedurally Unconscionable. ... 10

2. The MAA Is Not Substantively Unconscionable. ... 11

E. The MAA Is Enforceable And Applies To Plaintiff's Claims Against DHIM. ... 12

1. Plaintiff Agreed To Individual Arbitration Of Any Claims Arising From His Employment With DHIM. ... 12

2. The MAA Is A Valid Arbitration Agreement. ... 13

IV. THE OPT-OUT PROVISION IN THE MAA DOES NOT RENDER THE ARBITRATION AGREEMENT UNENFORCEABLE ... 15

A. General Principles Of Contract Formation Require Enforcing The MAA. ... 15

B. Principles Of Contract Interpretation Support Enforceability Of The MAA. .......... 17

C. The MAA Must Be Read As A Whole And According To Its Fair Meaning. .......... 19

V. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*
No. 17-cv-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) .......... 8, 9, 15

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
513 U.S. 265 (1995) .......... 6, 7

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) .......... 7

*AT&T Techs., Inc. v. Commc'ns Workers*
475 U.S. 643 (1986) .......... 9

*Brennan v. Opus Bank*
796 F.3d 1125 (9th Cir. 2015) .......... 6, 9

*California v. Hodari D.*
499 U.S. 621 (1991) .......... 17

*CarMax Auto Superstores Cal. LLC v. Hernandez*
94 F. Supp. 3d 1078 (C.D. Cal. 2015) .......... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) .......... 7

*Circuit City Stores, Inc. v. Adams*
532 U.S. 105 (2001) .......... 6, 7

*Citizens Bank v. Alafabco, Inc.*
539 U.S. 52 (2003) .......... 7

*Clayborne v. Lithia Motors, Inc.*
No. 1:17-cv-0588-AWI-BAM, 2017 WL 6017009 (E.D. Cal. Dec. 5, 2017) .......... 9

*Epic Systems Corp. v. Lewis*
138 S.Ct. 1612 (2018) .......... 3, 5, 8

*Galvan v. Michael Kors USA Holdings, Inc.*
No. CV1607379BROAFMX, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017) .......... 10

*Howsam v. Dean Witter Reynolds, Inc.*
537 U.S. 79 (2002) .......... 12

*Jasso v. Money Mart Express, Inc.*
879 F. Supp. 2d 1038 (N.D. Cal. 2012) .......... 7

*Kilgore v. Keybank Nat. Ass'n*
673 F.3d 947 (9th Cir. 2012) .......... 9

*Larsen v. Reverse Mortg. Sols., Inc.*
No. 3:15-CV-01512-L-MDD, 2016 WL 1223362 (S.D. Cal. Mar. 29, 2016) .......... 7

*Moses Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983) .......... 7

*Powertech Tech. Inc. v. Tessera, Inc.*
No. 4:10-CV-00945-CW, 2014 WL 2538973 (N.D. Cal. June 5, 2014).......... 18

*Quevedo v. Macy's, Inc.*
798 F. Supp. 2d 1122 (C.D. Cal. 2011) .......... 11

*Stolt-Nielsen v. Animalfeeds Int'l Corp.*
559 U.S. 662 (2010) .......... 7

**California Cases**

*Abramson v. Juniper Networks, Inc.*
115 Cal. App. 4th 638 (2004) .......... 11

*Armendariz v. Foundation Health Psychcare Services, Inc.*
24 Cal. 4th 83 (2000) .......... 9, 10, 11, 13, 14

*Artukovich v. Pac. States Cast Iron Pipe Co.*
78 Cal. App. 2d 1 (1947) .......... 16

*Broome v. Broome*
104 Cal. App. 2d 148 (1951) .......... 18

*Cortez v. Doty Brothers Equipment Co.*
15 Cal. App. 5th 1 (2017) .......... 19

*In re Crossman's Estate*
231 Cal. App. 2d 370 (1964) .......... 16

*Devencenzi v. Donkonics*
170 Cal. App. 2d 513 (1959) .......... 16

*Dotson v. Amgen, Inc.*
181 Cal. App. 4th 975 (2010) .......... 11

*Fitz v. NCR Corp.*
118 Cal. App. 4th 702 (2004) .......... 10

*Flores v. Transamerica HomeFirst, Inc.*
93 Cal. App. 4th 846 (2001) .......... 10

*Ganahl Lumber Co. v. Thompson*
205 Cal. 354 (1928) .......... 18

*Garcia v. Pexco, LLC*
11 Cal. App. 5th 782 (2017) .......... 13

*Gillespie v. Western Pac. Housing Mgmt., Inc.*
No. D066354, 2014 WL 7195024 (Cal. Court App. 4th. Dec. 18, 2014) .......... 8, 11, 13

*Kinecta Alternative Fin. Solutions, Inc. v. Superior Court*
205 Cal. App. 4th 506 (2012) .......... 7

*Estate of Klauenberg*
32 Cal. App. 3d 1067 (1973) .....17

*Malone v. Superior Court*
226 Cal. App. 4th 1551 (2014) .....9

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*
68 Cal. App. 4th 83 (1998) .....16

*Nelsen v. Legacy Partners Residential, Inc.*
207 Cal. App. 4th 1115 (2012) .....10, 11

*Omar v. Ralph's Grocery Co.*
118 Cal. App. 4th 955 (2004) .....12

*Pac. Corp. Grp. Holdings, LLC v. Keck*
232 Cal. App. 4th 294 (2014) .....16

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev (US), LLC*
55 Cal. 4th 223 (2012) .....9, 10

*Retsloff v. Smith*
79 Cal. App. 443 (1926) .....18

*Rodriguez v. Am. Techs., Inc.*
136 Cal. App. 4th 1110 (2006) .....6

*Spinks v. Equity Residential Briarwood Apartments*
171 Cal. App. 4th 1004 (2009) .....13

*Sy First Family Ltd. Partnership v. Cheung*
70 Cal. App. 4th 1334 (1999) .....18

*Thompson v. Toll Dublin, LLC*
165 Cal. App. 4th 1360 (2008) .....10

*Wagner Constr. Co. v. Pac. Mechanic Corp.*
41 Cal. 4th 19 (2007) .....7

**Federal Statutes**

9 U.S.C. § 2 .....7

**California Statutes**

Cal. Civ. Code § 1559 .....13

Cal. Civ. Code § 1584 .....17

Cal. Civ. Code § 1636 .....18

Cal. Civ. Code § 1638 .....19

Cal. Civ. Code § 1641 .....18

Cal. Civ. Code § 1643 .....17

Cal. Civ. Code § 1653 ..........18
Cal. Civ. Code § 3541 ..........17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Robert W. Ahlstrom ("Plaintiff") signed a Mutual Arbitration Agreement ("MAA") agreeing to arbitrate, on an individualized basis, any disputes against his employer, defendant DHI Mortgage Company, Ltd., L.P. ("DHIM"). Nonetheless, even though Plaintiff has already been compelled by the Northern District to individually arbitrate his claims against two entities related to DHIM—DHI Mortgage Company, GP, Inc. ("DHIM GP") and D.R. Horton, Inc. ("D.R. Horton")—and had his class and collective claims against those entities dismissed, Plaintiff has refused to submit his claims to arbitration, and instead filed this new lawsuit against DHIM, alleging the *identical* claims previously asserted against DHIM GP and D.R. Horton.

The Parties agreed to arbitrate their disputes. The U.S. Supreme Court has repeatedly and unequivocally held that the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements, including class action waivers contained therein, and the Northern District has already agreed to do so with respect to Plaintiff's MAA. Accordingly, this Court should grant DHIM's Motion to Compel Arbitration, dismiss Plaintiff's putative class and collective claims, and compel Plaintiff to arbitrate his claims on an individualized basis.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Voluntarily Agreed To Arbitrate His Claims Against DHIM.

On July 24, 2015, Plaintiff, at the beginning of his employment with DHIM, entered into a binding arbitration agreement titularly with D.R. Horton, but also covering all claims he might have against DHIM. (*See* Declaration of Paula Hunter-Perkins ["Hunter-Perkins Decl."], ¶¶ 2, 8 & Ex. B.) Specifically, in agreeing to the terms of the MAA, Plaintiff agreed that:

> [A]ll legal disputes and claims between them, including without limitation those relating to Employee's employment with the Company [D.R. Horton, Inc.] or any separation therefrom ***and claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents***, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein.

(*See id.*, ¶ 8, Ex. B, ¶ 1) (emphasis added).[1] Both DHIM and DHIM GP are affiliated entities of D.R. Horton. (*See* Declaration of Mark C. Winter ["Winter Decl."], ¶ 3.) Thus, Plaintiff agreed to arbitrate all of his "legal disputes and claims" against DHIM. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B.)

The MAA clarifies that the types of claims subject to arbitration thereunder include, among others, claims for "wages," "overtime," and "breach of any express or implied contract." (*Id.*).[2]

The MAA also includes a class action waiver, stating that it:

> **prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.**

(*Id.*, ¶ 8, Ex. B, ¶ 7.)

The MAA was not presented as mandatory arbitration agreement or condition of Plaintiff's employment with DHIM. Plaintiff could have refused to sign it and still worked at DHIM. Indeed, the MAA contains a provision by which Plaintiff could have, even after executing it, opted-out of the MAA by "delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request." (*Id.*, ¶ 8, Ex. B, ¶ 11.)

Both Plaintiff and DHIM executed the MAA, using an electronic signature, on July 24, 2015. (*See id.*, ¶¶ 3–8 & Ex. B.) The MAA was executed on behalf of DHIM by Crystal Stone,

---

[1] All emphasis herein is original unless otherwise noted.

[2] The MAA does *not* apply to, among other things, "a claim or charge filed with a federal, state, or local administrative agency such as the Equal Employment Opportunity Commission, National Labor Relations Board, Department of Labor, or similar agency" and claims for workers' compensation and unemployment. (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 2.) Likewise, the MAA provides that, by signing the MAA, Plaintiff "does not waive the right to file an administrative complaint with the appropriate agency (*e.g.*, the Equal Employment Opportunity Commission, National Labor Relations Board, Department of Labor, or similar agency)[.]" (*Id.*, ¶ 8, Ex .B, ¶ 3.) None of these exclusions apply to Plaintiff's claims against DHIM here.

who, at the time, was the Division Human Resources Coordinator for DHIM. (*See id.*, ¶ 8 & Ex. B, at 3.) Plaintiff did not exercise his right to opt-out of the MAA. (*See id.*, ¶ 9.)

**B. Plaintiff Previously Sued Two Entities Related To DHIM, Alleging The Same Claims, And This Court Enforced Plaintiff's MAA.**

Following his termination from DHIM (*see* Hunter-Perkins Decl., ¶ 2), Plaintiff initially filed suit in the Northern District of California against two entities related to DHIM—D.R. Horton and DHIM GP—in the matter entitled *Ahlstrom v. DHI Mortgage Company GP, Inc.*, *et al.*, Case No. 5:17-cv-04383-BLF[3] (the "Prior Federal Action"). (*See* Declaration of Jennifer L. Katz ["Katz Decl."], ¶ 2; Winter Decl., ¶ 3; Request for Judicial Notice ["RJN"], Ex. 1.) In the Prior Federal Action, Plaintiff alleged against DHIM GP and D.R. Horton the identical individual, class, and collective action claims that he currently asserts against DHIM.[4] (*Compare* Dkt. No. 1-1, *with* RJN, Ex. 1.)

In September of 2018, D.R. Horton and DHIM GP filed a motion to compel arbitration in the Prior Federal Action, which Plaintiff opposed solely based on a technicality in the language of the MAA's opt-out provision; Plaintiff did not contend that the MAA was unconscionable or otherwise unenforceable based on its terms.[5] (*See* Katz Decl., ¶¶ 6–7; RJN, Exs. 3–6.) On November 30, 2018, the Honorable Beth Labson Freeman ***granted*** DHIM GP's and D.R. Horton's motion, sending Plaintiff's individual claims to arbitration, dismissing his putative class and collective action claims, and, finding that there were no remaining claims outside of arbitration, dismissing the case without prejudice. (*See* Katz Decl., ¶ 8; RJN, Ex. 7.)

Notwithstanding Judge Freeman's Order, Plaintiff has declined to seek individual arbitration of his claims against DHIM GP and/or D.R. Horton. (*See* Katz Decl., ¶ 9.) Instead, on March 27,

---

[3] Shortly thereafter, Plaintiff also filed a Complaint in Santa Clara County Superior Court pursuant to the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA"), against D.R. Horton and DHIM GP (the "PAGA Action"). (*See* Katz Decl., ¶ 3.)

[4] Although D.R. Horton and DHIM GP made clear to Plaintiff that neither entity employed Plaintiff, and that DHIM was the correct defendant, Plaintiff made no effort to amend the complaint or to otherwise add DHIM as a defendant in the Prior Federal Action. (*See* Katz Decl., ¶ 2.) In the PAGA Action, on the other hand, Plaintiff did name and serve DHIM as an additional defendant in June and July of 2018. (*See id.*, ¶ 3.)

[5] D.R. Horton and DHIM GP had also filed an earlier motion to compel arbitration, which Plaintiff opposed, that time contending only that the MAA's class action waiver was unenforceable; thereafter, the parties stipulated to a stay pending the U.S. Supreme Court's then-pending ruling in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018). (*See* Katz Decl., ¶¶ 4–5; RJN, Ex. 2.)

2019, Plaintiff filed the instant action against DHIM. (*See* Dkt. No. 1-1.)

**C. The MAA Constitutes A Fair And Enforceable Arbitration Agreement.**

The MAA creates a neutral and enforceable adjudication process:

- The MAA authorizes the Parties to select a neutral arbitrator, either amongst themselves or through the American Arbitration Association ("AAA") (*see* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 5).
- The MAA mandates that the arbitration will be conducted "according to the National Rules for the Resolution of Employment Disputes (or successor rules) of the [AAA] and Federal Rule of Civil Procedure 68," which "rules can be found at www.adr.org and http://www.law.cornell.edu/rules/frcp/rule 68, respectively, or requested from the Company" (*id.*).
- The MAA provides that the arbitration is to be conducted "in or near the city in which Employee is or was last employed by the Company" (*id.*).
- Through its incorporation of the AAA rules, the MAA provides for "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration" (*see id.*; Katz Decl., ¶ 10, Ex. C, at 14 [Rule 9]).
- The MAA requires "a written award setting forth the arbitrator's findings of fact and conclusions of law" (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 6).
- The MAA provides that it is enforceable pursuant to the FAA (*id.*, ¶ 8, Ex. B, ¶ 2).

In short, the MAA establishes a fair, neutral, and proper arbitration regime for resolving claims related to Plaintiff's employment.

**D. Plaintiff Knowingly Breached The MAA And Judge Freeman's Order By Filing This Complaint And Refusing To Arbitrate His Claims.**

Despite his promises under the MAA to arbitrate his disputes with DHIM and the Order by Judge Freeman in the Prior Federal Action, Plaintiff filed his Complaint in this action alleging nine

causes of action[6] against DHIM—all arising from his employment, and identical to those brought in the Prior Federal Action. (*See generally* Dkt. No. 1-1 [“Compl.”]; RJN, Ex. 1.) Other than Plaintiff’s seventh claim, which is brought pursuant to the federal Fair Labor Standards Act (“FLSA”), each of Plaintiff’s claims is brought pursuant to California law. Each claim derives from allegations that DHIM purportedly committed violations of the California Labor Code, the California Business & Professions Code, the FLSA, and the common law regarding contracts. In addition to bringing his claims individually, Plaintiff seeks to represent a proposed class (along with multiple sub-classes), defined as “All persons employed by Defendants and/or any staffing agencies and/or any other third parties who worked in hourly or non-exempt positions in California during the Relevant Time Period,” which, in turn, is defined as “the time period beginning four years prior to August 2, 2017[7] until judgment is entered.” (Compl., ¶¶ 10, 11.) All of Plaintiff’s claims against DHIM relate to his employment and, therefore, fall within the definition of arbitrable claims pursuant to the MAA. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶¶ 1–2.)

**E. <u>The U.S. Supreme Court Holds That Class Action Waivers In Employment Arbitration Agreements Are Enforceable.</u>**

In May of 2018, the U.S. Supreme Court issued its ruling in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), establishing that class action waivers in arbitration agreements, which provide for individualized proceedings in arbitration, remain enforceable pursuant to the FAA. Specifically, the Supreme Court concluded that, “In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings[.]” *Id.* at 1619. Accordingly, there is no longer any validity to the argument that the National Labor Relations Act (“NLRA”) provision protecting concerted activities overrides the FAA’s mandate to enforce arbitration agreements pursuant to their terms.

---

[6] The causes of action are: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly wages; (4) failure to provide accurate written wage statements; (5) failure to timely pay all final wages; (6) unfair competition; (7) failure to pay employees for all hours worked pursuant to the FLSA; (8) breach of written contract; and (9) breach of the implied covenant of good faith and fair dealing.

[7] August 2, 2017 is the date on which Plaintiff filed his complaint in the Prior Federal Action. (*See* Katz Decl., ¶ 2; RJN, Ex. 1.)

## III. THIS COURT SHOULD DISMISS PLAINTIFF'S CLASS AND COLLECTIVE ACTION ALLEGATIONS AND COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS ON AN INDIVIDUALIZED BASIS.

### A. The FAA Applies To The MAA.

The FAA (and its preemptive effect upon California law) applies to the MAA for two basic reasons. First, the MAA itself expressly provides that any actions to enforce the agreement—such as the instant Motion—"are covered and governed by Section 2 of the Federal Arbitration Act and not any state law" (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 2). *See Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1121-22 (2006) (holding that the FAA applied where the parties' arbitration agreement expressly stated that they agreed to arbitrate claims "pursuant to" the FAA); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (holding that federal law applied to the question of arbitrability where the agreement was covered by the FAA and did not "expressly state" that California law governed the question of arbitrability).

Second, Plaintiff's employment, out of which arose his agreement to arbitrate his claims, possesses a sufficient nexus with interstate commerce to fall under the FAA. The requirement for the sufficient nexus is minimal. *See, e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (broadly interpreting the phrase "involving commerce" in 9 U.S.C. § 2 as the functional equivalent of "affecting" commerce). In examining an employment arbitration agreement, the U.S. Supreme Court has confirmed that the FAA's language requiring enforcement of arbitration agreements involving commerce showed congressional intent to exercise its authority to regulate commerce to the fullest extent and, therefore, to cover all employment agreements not specifically exempted. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-21 (2001).

Here, there is ample interstate commerce activity to meet the standard outlined in *Allied-Bruce* and reinforced in *Adams*, as DHIM is a company that does business in more than two dozen states, among other things, originating mortgage loans for customers buying new homes built by its affiliate, D.R. Horton (*see* Winter Decl., ¶¶ 2–4); thus, the employees of DHIM—including Plaintiff, through his work as a loan officer (*see, e.g.*, Compl., ¶¶27, 37, 148; Hunter-Perkins Decl., ¶ 2; Winter Decl., ¶ 4)—regularly engage in activities involving economic transactions in interstate commerce. This "evidence . . . suffices to demonstrate that [Plaintiff's employment] . . . 'involv[ed]

[interstate] commerce.'" *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1101 (C.D. Cal. 2015); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-58 (2003) (holding that the FAA's "involving commerce" requirement was satisfied where the defendant entity engaged in commercial loan transactions "throughout the southeastern United States"); *Allied-Bruce*, 513 U.S. at 282 (concluding that a relationship involved interstate commerce where, *inter alia*, the defendant was a national corporation that was engaged in business in multiple states); *see also Larsen v. Reverse Mortg. Sols., Inc.*, No. 3:15-CV-01512-L-MDD, 2016 WL 1223362, at *3 (S.D. Cal. Mar. 29, 2016) (finding the FAA applied to an employment arbitration agreement with a retail lending executive as "there is no question that the executive level management of retail mortgage lending has a substantial effect on interstate commerce").

The FAA provides that an agreement to arbitrate shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Accordingly, the U.S. Supreme Court holds that agreements to arbitrate statutory employment claims are enforceable under the FAA (*Adams*, 532 U.S. 105), and the FAA declares a liberal policy favoring the enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).[8]

### B. <u>The MAA's Class Action Waiver Is Fully Enforceable Under *Epic Systems*.</u>

Under the FAA, "a party may not be compelled to submit to class arbitration unless the arbitration contract provides a basis for concluding that the party agreed to do so." *Kinecta Alternative Fin. Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506, 510 (2012); *accord Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 681-87 (2010). Here, the parties clearly did not agree to class arbitration. On the contrary, by the express terms of the MAA, the arbitrator is

[8] The public policy in favor of arbitration is so strong that the U.S. Supreme Court and the California Supreme Court have ruled that any doubts as to the existence of an arbitration agreement, or the scope of issues involved, must be resolved in favor of alternative dispute resolution and against a jury trial. *See Moses Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Wagner Constr. Co. v. Pac. Mechanic Corp.*, 41 Cal. 4th 19, 26 (2007). Indeed, once a petition to compel arbitration is filed, the FAA, by its terms, "'leaves no place for the existence of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *see also Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1045 (N.D. Cal. 2012) ("arbitration agreements will be enforced in all but the most limited of circumstances").

"**prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding**."[9] (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 7.) Indeed, in the Prior Federal Action, Judge Freeman found that Plaintiff's identical putative class and collective claims against D.R. Horton and DHIM GP were barred by the MAA. *See Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-cv-04383-BLF, 2018 WL 6268876, at *4 (N.D. Cal. Nov. 30, 2018). Similarly, the California Court of Appeal found a plaintiff's purported class claims against another D.R. Horton affiliate were barred by the MAA, finding that the class action waiver in an earlier version of the MAA was "enforceable." *See Gillespie v. Western Pac. Housing Mgmt., Inc.*, No. D066354, 2014 WL 7195024, at *6 (Cal. Court App. 4th. Dec. 18, 2014).

As noted, in *Epic Systems*, the U.S. Supreme Court held that arbitration agreements that provide for individualized proceedings—that is, class-action waivers—must be enforced according to their terms. 138 S.Ct. at 1619. That conclusion is not disturbed by the presence of the FAA's saving clause, as that clause may only be invoked to apply "generally applicable contract defenses, such as fraud, duress, or unconscionability[,]" and not for arbitration-specific defenses, such as the argument that class action waivers in arbitration agreements are unenforceable. *Id.* at 1622 (quotations and citations omitted). Nor does the NLRA present any barrier to a court's enforcement of a class-action waiver in an arbitration agreement, as the NLRA and FAA exist in separate spheres of influence and the NLRA does not confer a right to class or collective action. *Id.* at 1624-25, 1627. The instruction of the Supreme Court's decision in *Epic Systems* is clear: class action waivers in arbitration agreements, such as the one at issue here, can and must be enforced according to the terms of the arbitration agreement. Here, as this Court previously held, the MAA prevents Plaintiff from pursuing his putative class and collective claims in arbitration. *See Ahlstrom*, 2018 WL 6268876, at *4.

### C. <u>Because The MAA Contains A Delegation Clause Regarding Non-Class Action Waiver Issues, This Court Must Compel The Matter To Arbitration Even If The Parties Dispute Arbitrability.</u>

The class arbitration waiver aside, in determining whether to grant a motion to compel

[9] Moreover, the MAA expressly provides that the *Court*, and the not the Arbitrator, must decide the enforceability of the class action waiver. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 7.)

arbitration generally, the Court's inquiry is limited to deciding two gateway issues of arbitrability: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. Keybank Nat. Ass'n*, 673 F.3d 947, 955-56 (9th Cir. 2012). However, the court does not have the authority to decide even these gateway issues where the parties have "clearly and unmistakably" delegated the arbitrability issues to the arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986); *Brennan*, 796 F.3d at 1132. In the instant action, it is indisputable that the delegation was "clearly and unmistakably" in the MAA because the MAA *explicitly* states that the arbitrator shall determine issues as to validity of the arbitration agreement:

> **[T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement**, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

(Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 6 (emphasis added).) In such situations where the delegation is "clearly and unmistakably" made, as is the case here, the district court "*only* determines whether the delegation itself is unconscionable." *Clayborne v. Lithia Motors, Inc.*, No. 1:17-cv-0588-AWI-BAM, 2017 WL 6017009, at *3 (E.D. Cal. Dec. 5, 2017); *see also Malone v. Superior Court*, 226 Cal. App.4th 1551, 1559-60 (2014). The party opposing arbitration—here, Plaintiff—bears the burden of proof as to any defense to arbitrability. *See Clayborne*, 2017 WL 6017009, at *4. "If the delegation of arbitrability is not unconscionable, the enforceability of the entirely ***[sic]*** arbitration agreement . . . will be left to the arbitrator." *Id*. at *3.

Here, as Judge Freeman has already ruled (*see Ahlstrom*, 2018 WL 6268876, at *3-4), it is clear that neither the MAA as a whole nor the delegation clause itself is unconscionable.

**D. <u>The MAA Is Not Unconscionable.</u>**

To show that the MAA is unconscionable, Plaintiff must establish that it is both procedurally and substantively unconscionable. *See, e.g., Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113-14 (2000); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev (US), LLC*, 55 Cal. 4th 223, 246 (2012). Unconscionability is examined using a sliding scale (*i.e.*, the more

substantively unconscionable, the less procedural unconscionability is needed to establish that the agreement is unconscionable, and vice-versa). There must be evidence of ***both*** substantive ***and*** procedural unconscionability for an arbitration agreement to be invalidated. *Armendariz*, 24 Cal. 4th at 113-14; *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1124 (2012). Plaintiff fails both prongs of the unconscionability test.

**1. The MAA Is Not Procedurally Unconscionable.**

To establish procedural unconscionability, Plaintiff must show the existence—at the time Plaintiff executed the MAA—of either oppression or surprise. "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). "Surprise" occurs where unconscionable terms are hidden. *Pinnacle*, 55 Cal. 4th at 247.

Neither oppression nor surprise surrounded Plaintiff's execution of the MAA and his understanding of its terms at that time. The MAA was not a mandatory condition of employment with DHIM, as evidenced by the MAA's opt-out provision (*see* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11). *See Galvan v. Michael Kors USA Holdings, Inc.*, No. CV1607379BROAFMX, 2017 WL 253985, at *9 (C.D. Cal. Jan. 19, 2017) (finding that an arbitration agreement was not required as a condition of employment where there was an opt-out provision). Moreover, Plaintiff will not be able to identify any terms of the MAA that were disguised or hidden, or that otherwise came as a surprise. The MAA clearly sets forth or expressly refers to all pertinent dispute-resolution terms, which is very different from the lengthy agreements hiding oppressive terms that have been deemed procedurally unconscionable in other cases, such as, for example, terms hidden "in approximately 800 pages of documents" (*Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360, 1372-73 (2008)), or very short agreements that provide employees an overview only and no other information about certain substantively unconscionable terms (*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 722-23 (2004) (omitting terms disadvantageous to the employee)). Indeed, the agreement to arbitrate contained in the MAA is "far from hidden." The MAA consists of three dedicated pages and includes the heading "MUTUAL ARBITRATION AGREEMENT" in all uppercase, underlined letters. (Hunter-Perkins Decl., ¶ 8, Ex. B, at 1.) Plaintiff signed the MAA (*see id.*, ¶¶ 3–8 & Ex. B,

at 3), and thereby acknowledged that he had read the agreement and voluntarily agreed to its terms. *See Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1134-35 (C.D. Cal. 2011).

The MAA is thus not at all procedurally unconscionable, and to the extent there is any procedural unconscionability, it would, *at most*, be extremely minimal. "[Where] the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981-82 (2010).

**2. The MAA Is Not Substantively Unconscionable.**

To the extent that there is any measure of procedural unconscionability, the MAA would still be enforceable because none of the provisions are substantively unconscionable. *See Nelsen*, 207 Cal. App. 4th at 1124 (holding that to show unconscionability, the party challenging enforcement must present evidence of *both* substantive *and* procedural unconscionability). Indeed, the California Court of Appeal has already found that an earlier version of the MAA—with substantially similar provisions to the one signed by Plaintiff—is not substantively unconscionable. *See Gillespie*, 2014 WL 7195024, at *5-6. In *Gillespie*, the California Court of Appeal rejected the argument that the MAA lacked mutuality, and further rejected the argument that the agreement was substantively unconscionable because it purportedly had a carve-out for declaratory and equitable relief claims and allowed the employer a limited right to modify the agreement.[10] *See id.*

Moreover, the key factor affecting the determination of substantive unconscionability is lack of mutuality. *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 664 (2004). In *Armendariz*, the California Supreme Court held that an arbitration provision in an adhesion contract must bear a "modicum of bilaterality" unless the stronger party has a reasonable justification for unilateral provisions that operate in its favor. *Armendariz*, 24 Cal. 4th at 117. Here, the MAA is not lacking in either mutuality or basic fairness, and does not contain any carve-out provisions that favor one party. For example, the MAA expressly provides that the agreement applies equally to all parties. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 1.) As no terms in the MAA are lacking in

[10] Notably, neither of those provisions is contained in the version of the MAA signed by Plaintiff. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B.)

mutuality, no substantive unconscionability exists.[11]

Accordingly, the MAA's delegation clause, along with the rest of the agreement, is enforceable, and the Court must send this case to arbitration on an individualized basis.

**E. <u>The MAA Is Enforceable And Applies To Plaintiff's Claims Against DHIM.</u>**

Should the Court decide to contravene the plain meaning of the MAA and start interpreting it, the Court should still send the action to arbitration for resolution. As noted, the Court's inquiry is limited to the two "gateway" issues of (1) whether there is a valid agreement to arbitrate, and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Omar v. Ralph's Grocery Co.*, 118 Cal. App. 4th 955, 960 (2004). Because the MAA meets both of these requirements, the Court must issue an order compelling Plaintiff to arbitrate his individual claims and, pursuant to the enforceable class action waiver, dismiss his class and collective action claims.

**1. Plaintiff Agreed To Individual Arbitration Of Any Claims Arising From His Employment With DHIM.**

The MAA covers Plaintiff's claims against DHIM in this action, as it explicitly provides for arbitration of the very causes of action that Plaintiff asserts. Each claim derives from allegations that DHIM purportedly committed violations of the California Labor Code, the California Business & Professions Code, the FLSA, and the common law regarding contracts. (*See generally* Compl.) As such, all nine causes of action arise out of or relate to Plaintiff's employment with DHIM—an affiliate of D.R. Horton—and are thus subject to the arbitration provisions of the MAA.

In addition, to the extent Plaintiff attempts to argue that DHIM cannot compel arbitration on the basis that it is not a party to the MAA, such an argument must be rejected. First, non-signatories to an arbitration agreement are permitted to compel arbitration on the basis of equitable estoppel "'when the causes of action against the nonsignatory are intimately founded in and intertwined with

---

[11] Moreover, the MAA provides that "[i]f any provision . . . is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable," and that "[i]f a provision conflicts with a mandatory provision of applicable law, the conflicting provision shall be severed automatically and the remainder of the Agreement construed to incorporate the mandatory provision." (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 9.) Thus, even if one or more of the terms of the MAA is deemed to be unconscionable, the Court can easily sever or modify any such provision to ensure full compliance with *Armendariz*.

the underlying contract obligations.'" *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017) (quoting *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 271 (2005)). The California Court of Appeal has specifically held that equitable estoppel applies to require a former employee to arbitrate wage-and-hour claims similar to those alleged by Plaintiff here against a non-signatory joint employer.[12] *See id.* at 785-88. In addition, DHIM is plainly a third-party beneficiary of the MAA, as the MAA is expressly designed to benefit DHIM and other entities and persons related to D.R. Horton by requiring binding arbitration of all disputes Plaintiff might have against D.R. Horton and/or its "parents, subsidiaries, affiliates, directors, employees, or agents" (Hunter Perkins Decl., ¶ 8, Ex. B, ¶ 1). *See* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (2009) ("'A third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made.'") (quoting *Garratt v. Baker*, 5 Cal. 2d 745, 748 (1936)).

**2. The MAA Is A Valid Arbitration Agreement.**

As numerous judicial decisions hold, the MAA complies with the relevant requirements set forth by the California Supreme Court in *Armendariz*, which held that an agreement to arbitrate employment-related claims vindicating non-waivable statutory rights is enforceable if both parties are equally bound by all terms of the agreement and if the agreement provides for: (1) a neutral arbitrator; (2) adequate discovery; (3) all types of relief otherwise available in court; (4) a written arbitration award that permits limited judicial review; and (5) payment by the employer of all costs unique to arbitration. *See, e.g.*, *Gillespie*, 2014 WL 7195024 (enforcing an earlier version of the MAA, compelling arbitration as to the plaintiff's individual wage-and-hour claims other than those pursuant to PAGA, and dismissing class claims); *see also Armendariz*, 24 Cal. 4th at 102-03, 117. The MAA satisfies each of these requirements.

First, the MAA expressly provides that arbitration shall take place "before a single, neutral

[12] Notably, although Plaintiff does not allege claims against D.R. Horton in the instant action, he did so in the Prior Federal Action, and was compelled to arbitrate these identical claims against D.R. Horton on an individual basis. *See supra* Part II.B. The fact that Plaintiff chose to file the same claims against different entities in separate lawsuits does not make equitable estoppel inapplicable.

arbitrator," and that the dispute must be resolved by arbitration administered by AAA under its employment arbitration rules. (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶¶ 1, 5; *see also* Katz Decl., ¶ 10 & Ex. C.) The MAA provides a mechanism for the parties to "select a mutually agreeable arbitrator," and, if they are unable to do so, the MAA requires that the party requesting arbitration "submit the matter to AAA, and an arbitrator shall be selected pursuant to AAA's rules." (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 5.) The AAA rules themselves set forth a process for appointing a neutral and mutually agreed-upon arbitrator: AAA will propose to both parties a list of possible arbitrators, allow both parties to strike any and all proposals they do not like and rank the remaining choices in order of preference, and then appoint an arbitrator in accordance with the parties' designations. (*See* Katz Decl., ¶ 10, Ex. C, at 15 [Rule 12].)

Second, through adoption of the AAA employment rules, the MAA ensures adequate discovery. In particular, the applicable AAA rules permit the arbitrator to allow "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (*See id.*, ¶ 10, Ex. C, at 14 [Rule 9].) In addition, because DHIM agreed to arbitrate statutory claims, it will be deemed to have impliedly consented to allow adequate discovery. *See Armendariz*, 24 Cal. 4th at 106, 113.

Third, the MAA provides for all types of relief otherwise available in court, expressly stating that "[t]he arbitrator shall have the same authority to order remedies (*e.g.*, emotional distress damages, punitive damages, equitable relief, *etc.*) as would a court of competent jurisdiction." (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 6; *see also* Katz Decl., ¶ 10, Ex. C, at 23 [Rule 39(d)] ("The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law.").) Nothing in the MAA in any way limits the authority of the arbitrator to award any type of relief available in court. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B.)

Fourth, the MAA requires a written arbitration award, thus permitting limited judicial review. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 6 ("The arbitrator shall render a written award setting forth the arbitrator's findings of fact and conclusions of law.").)

Finally, the MAA ensures that DHIM will bear all costs unique to arbitration, providing that "The Company shall pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court), including the regular and customary arbitration fees and expenses." (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 8.)

In short, the MAA meets the requirements articulated in *Armendariz* and is fully enforceable.

## IV. <u>THE OPT-OUT PROVISION IN THE MAA DOES NOT RENDER THE ARBITRATION AGREEMENT UNENFORCEABLE</u>

The MAA provides an opt-out provision, which is worded as follows:

> Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement.

(Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11.) Here, in opposing the second motion to compel in the Prior Federal Action, Plaintiff took the position that because "the Company" is defined as "D.R. Horton, Inc." in the first line of the MAA, and because Plaintiff did not "accept[] or continue[] employment with" D.R. Horton, but instead was employed by its affiliate, DHIM, the MAA is unenforceable. (*See* Katz Decl., ¶ 7; RJN, Ex. 5.) Such a position contravenes a plain reading of the MAA as well as fundamental tenants of contract law, and was previously rejected by Judge Freeman in the Prior Federal Action. *See Ahlstrom*, 2018 WL 6268876, at *3. Further, although the inclusion of an opt-out provision is relevant to the analysis of procedural unconscionability, such a provision is *not* required for a finding that no unconscionability exists; thus, its inclusion should not disadvantage DHIM. Finally, as noted above, this is an issue that should be sent to the arbitrator for resolution.

### A. <u>General Principles Of Contract Formation Require Enforcing The MAA.</u>

Plaintiff's position in the Prior Federal Action was that the opt-out provision's language, "If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement" (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11), means that the *only* way he could be bound by the MAA was by not delivering the opt-out form and then being employed by D.R.

Horton; thus, because he did not opt out, nor was he employed by D.R. Horton (as opposed to a related entity), Plaintiff contended that he was not bound by the MAA. (*See* RJN, Ex. 5.) Assuming Plaintiff will take the same position here, such a position is not supported by case law, which disfavors interpreting contracts in a way that creates absolute conditions. *See Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 310-13 (2014); *see also Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 89 (1998) ("We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate.").

For example, the California Court of Appeal in *Devencenzi v. Donkonics*, 170 Cal. App. 2d 513 (1959), held, in accordance with California Civil Code section 1582, that an offer letter stating, "If this is agreeable to you please sign the two copies," did not make the signing of the letter either a "condition" or the "only" mode of acceptance of the offer; rather, the offer "only suggested a method which would be satisfactory" to the offeror, and providing a separate written acceptance would also have sufficed to create a contract. *Id.* at 514, 518; *see also Keck*, 232 Cal. App. 4th at 310-13 (agreeing with *Devencenzi*, and holding that "[t]he jury could have reasonably found that Keck's return of the signed letter would be an *acceptable* form of evincing his assent to the agreement, but that the provision did not *mandate* that such return was the only possible form of acceptance"). As further explained by the California Court of Appeal:

> Distinction must be made between an offer which makes a positive requirement . . . or imposes an absolute condition . . . of a specified manner of acceptance, on the one hand, and on the other an offer which merely suggests a permitted . . . manner . . . . In the latter case, another method of acceptance is not precluded.

*In re Crossman's Estate*, 231 Cal. App. 2d 370, 372 (1964) (internal quotation marks and citations omitted) (third alteration in original); *see also, e.g., Artukovich v. Pac. States Cast Iron Pipe Co.*, 78 Cal. App. 2d 1, 3-4 (1947) (holding that "the provision in an offer specifying a means of acceptance is for the benefit of the offerer ***{sic}*** and may be waived by him," and finding a contract was binding as executed by the manager of the Los Angeles office, even though the contract stated that it "must be subject to the approval of the Vice-President, Treasurer, or General Sales Manager of the Pacific States Cast Iron Pipe Company at Provo-Utah").

Here, the opt-out provision did not create an absolute condition or the only mode by which

acceptance of the MAA would be complete.[13] As a result, signing the MAA, or employment with DHIM, for example, would constitute another method of acceptance acceptable to the offeror. In fact, the opt-out provision does not, by its terms, provide that failing to return the Opt-Out Form and then working for "the Company" constitutes the exclusive method for accepting the MAA. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11.) Indeed, the plain meaning of the paragraph provides that it is a method for opting out of a previously accepted agreement. (*See id.*) The final sentence of the paragraph ("If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement") is informational, stating one result if the employee does not opt out and continues working at D.R. Horton. (*Id.*) The paragraph says nothing about what happens if, as here, the employee does not opt out and is working for an entity other D.R. Horton. (*See id.*) The only logical result is that if the employee signs the MAA and does not opt out, as is the case here, he remains bound by his original acceptance of the MAA.[14]

**B. <u>Principles Of Contract Interpretation Support Enforceability Of The MAA.</u>**

Where disputes about contracts exist, contract law favors enforceability. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643. Further, "An interpretation which gives effect is preferred to one which makes void." *Id.* § 3541. Relatedly, "[a] contract must, if possible, be given a reasonable rather than an

---

[13] These propositions are also consistent with case law in other contexts that has examined "sufficient" and "necessary" conditions in their logical relationship. *See California v. Hodari D.*, 499 U.S. 621, 627-28 (1991). The opt-out provision in the MAA simply provides an explanation to the employee that not delivering an opt-out form and acceptance/continued employment is *sufficient* to constitute acceptance; the provision does not, by its plain language, establish that these are *necessary conditions* for acceptance of the agreement. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11.) In contrast, a necessary condition could have been created if the language were: "*Only* if Employee does not deliver the executed form within 30 days and Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement." That is plainly not what happened here.

[14] It can also be argued that Plaintiff's employment with DHIM constituted acceptance *of the consideration* for the MAA, and either performance or acceptance of consideration each, on their own, constitute acceptance of a contract. *See Estate of Klauenberg*, 32 Cal. App. 3d 1067, 1070 (1973) ("Performance and acceptance of the consideration constitute alternate modes of acceptance[.]"); Cal. Civ. Code § 1584 ("Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal.").

unreasonable construction." *Broome v. Broome*, 104 Cal. App. 2d 148, 157 (1951). Courts do not prefer interpretations that are "extremely technical and literal and without reference to what the parties intended and would entail a forfeiture." *Retsloff v. Smith*, 79 Cal. App. 443, 453 (1926); *see also Ganahl Lumber Co. v. Thompson*, 205 Cal. 354, 358 (1928) ("The general rule is that contracts must be so interpreted as to give effect to the intention of the parties as it existed at the time of contracting. It follows, therefore, that technical rules of construction must give way when the intention of the parties is ascertainable and lawful."). In line with the explicit provision of the MAA, a contract's purpose should be ascertained from a *common sense* meaning of the contract as a whole, "with a view to effectuate the mutual intention of the parties." *Broome*, 104 Cal. App. 2d at 157; *see also Powertech Tech. Inc. v. Tessera, Inc.*, No. 4:10-CV-00945-CW, 2014 WL 2538973, at *3 (N.D. Cal. June 5, 2014) (same); Cal. Civ. Code §§ 1636, 1641.

The court in *Sy First Family Ltd. Partnership v. Cheung*, 70 Cal. App. 4th 1334 (1999), provides an example of how, "where practicable, the meaning of an agreement must be derived from a reading of the whole contract," and that, "[w]hen an inconsistency exists in the language of a contract, courts must give effect to the parties' main purpose." *Id.* at 1342; *see also* Cal. Civ. Code § 1653 ("Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."). In *Sy*, the court determined that a stipulation between the parties (specifically, whether the parties had meant to use the procedure of a "judicial reference" or, instead, an arbitration) was ambiguous because (a) it was entitled "reference" and repeatedly cited the California Code of Civil Procedure section applicable to references; but also (b) used the term "arbitrators" and "arbitration," as well as noting that the AAA's Commercial Arbitration Rules would dictate. *See Sy*, 70 Cal. App. 4th at 1342. The *Sy* court ultimately determined that, based on a reading of the whole agreement, the stipulation was intended to provide for arbitration, despite the explicit use of the term "reference" and citation to related sections of the Code of Civil Procedure. *See id.* at 1342-44. Similarly, here, it can be argued that the use of the term "the Company" in the opt-out provision was ambiguous, but was intended to mean whichever company employs Plaintiff, as the first paragraph of the MAA clearly states that all claims between the "Employee" and the Company, *as well as its subsidiaries and affiliates*, shall be arbitrated, and the MAA was signed by

a representative of DHIM. (*See* Hunter-Perkins Decl., ¶ 8 & Ex. B, ¶ 1.) Alternatively, it can be argued that the initial definition of "the Company" is ambiguous and was intended to encompass subsidiaries and affiliates of D.R. Horton, given that the clear and explicit purpose of the MAA is to provide for arbitration of all claims against D.R. Horton and its subsidiaries, affiliates, and others.

Courts also look towards preventing absurdity in contractual interpretation. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). In *Cortez v. Doty Brothers Equipment Co*., 15 Cal. App. 5th 1 (2017), the California Court of Appeal held that, although it was "clear and unmistakable" that the arbitration agreement only stated that claims "arising under" Wage Order 16 were subject to the arbitration, and the Labor Code was not mentioned, the Court could not "disregard the reality that an employee may enforce the protections of the wage order in court only by bringing a claim under the Labor Code." *Id.* at 14. As applied to the facts of this case, and to the opt-out procedure specifically, the reality is that the MAA contemplated employment with the *actual employer* as sufficient for establishing Plaintiff's acceptance of the MAA. (*See* Hunter-Perkins Decl., ¶ 8 & Ex. B.)

**C. <u>The MAA Must Be Read As A Whole And According To Its Fair Meaning.</u>**

In its first full paragraph, the MAA clearly establishes that "Employee and the Company both agree all legal disputes and claims between them, including without limitation those relating to Employee's *employment* with the Company or any separation therefrom and *claims by Employee against the Company's parents, subsidiaries, affiliates*, directors, employees, or agents, shall be determined exclusively by final and binding arbitration[.]" (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 1 (emphasis added).) The MAA also states that it "shall be construed as a whole, according to its fair meaning," and that, "If any provision . . . is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable." (*Id.*, ¶ 8, Ex. B, ¶¶ 9, 10.)

When the MAA is "construed as a whole, according to its fair meaning," it is clear that the purpose of the arbitration agreement was that in exchange for Plaintiff to begin employment on or around July 24, 2015 with DHIM, he would agree to arbitrate "all legal disputes and claims" against

D.R. Horton *and* any and all "parents, subsidiaries, affiliates, directors, employees, or agents." (Hunter Perkins Decl., ¶ 8, Ex. B, ¶ 1.) A fair meaning of the agreement does not lead to the conclusion that, as a result of the opt-out language, the MAA—which, again, was executed by both Plaintiff and an employee of DHIM (*id.*, ¶ 8 & Ex. B, at 3)—would only apply if Plaintiff were employed only by D.R. Horton, but not a subsidiary or affiliate. At the very least, subsidiaries and affiliates are clearly established in the MAA as third-party beneficiaries, and a fair meaning of the opt-out provision cannot be that if Plaintiff were employed by a subsidiary or affiliate instead of the parent company, that the entire agreement as a whole would be unenforceable. In fact, construed as a whole, the last sentence of the opt-out provision is even superfluous, and the MAA could have been limited to the first sentence: "Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters."

## V. <u>CONCLUSION</u>

Plaintiff entered into an enforceable, mutually binding arbitration agreement that governs all of his claims against DHIM in this action. Further, Plaintiff's failure to work for *D.R. Horton* did not vitiate his *prior acceptance* of the MAA, in which he agreed to arbitrate all claims he might possess against D.R. Horton and/or any of its subsidiaries and/or affiliates—including DHIM.

DHIM therefore respectfully requests that this Court, pursuant to the FAA and *Epic Systems*, compel Plaintiff to arbitrate his claims against DHIM on an individualized basis, dismiss Plaintiff's putative class and collective action allegations, and dismiss or stay the instant action to permit the parties to complete arbitration. At a minimum, the Court must send the action to arbitration to permit the arbitrator to adjudicate any challenges related to the interpretation of the MAA, other than those involving the class action waiver.

DATED: July 22, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: <u>/s/ Jennifer L. Katz</u>
Jack S. Sholkoff
Jennifer L. Katz
Alexandra C. Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 3:19-cv-03435-EMC<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: September 5, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 5<br><br>Complaint Filed: March 27, 2019<br>Trial Date: None<br>District Judge: Hon. Edward M. Chen<br>Courtroom 5, San Francisco |

The Motion by defendant DHI Mortgage Company Ltd., L.P. ("DHIM") for an Order compelling plaintiff Robert W. Ahlstrom ("Plaintiff"), pursuant to the Federal Arbitration Act (9 U.S.C. § 3), to arbitrate his claims for relief against DHIM on an individualized basis, dismissing Plaintiff's class and collective action allegations, and dismissing or staying the instant action to permit the parties to complete arbitration came on for hearing on September 5, 2019.

FOR GOOD CAUSE SHOWN, THE COURT HEREBY ORDERS AS FOLLOWS:

1. DHIM's Motion to Compel Arbitration is GRANTED. The claims by Plaintiff against DHIM shall be submitted to final and binding arbitration on an individualized basis pursuant to the terms of the Mutual Arbitration Agreement that Plaintiff agreed to and executed on July 24, 2015.

2. Plaintiff's putative class and collective claims against DHIM are DISMISSED.

3. This matter shall be dismissed its entirety and with prejudice.

**IT IS SO ORDERED.**

DATED: ________________________

________________________________
Hon. Edward M. Chen
District Court Judge

*ALTERNATIVELY:*

1. The dispute relating to the formation, enforceability, applicability, and/or interpretation or the Mutual Arbitration Agreement shall be adjudicated by the arbitrator.

2. This matter shall be stayed pending the arbitrator's resolution of the dispute regarding arbitrability, and, if applicable, the arbitration proceeding itself.

**IT IS SO ORDERED.**

DATED: ________________________

________________________________
Hon. Edward M. Chen
District Court Judge

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,

Defendants.

Case No. 3:19-cv-03435-EMC

**DECLARATION OF JENNIFER L. KATZ IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

*[Filed concurrently with Notice of Motion and Motion to Compel Arbitration; Declarations of Paula Hunter-Perkins and Mark C. Winter; Request for Judicial Notice; and [Proposed] Order.]*

Date: September 5, 2019
Time: 1:30 p.m.
Place: Courtroom 5

Complaint Filed: March 27, 2019
Trial Date: None
Judge: Hon. Edward M. Chen
Courtroom 5, San Francisco

I, Jennifer L. Katz, declare and state as follows:

1. I am an attorney licensed to practice law before all courts of the State of California, and am employed as Of Counsel at the law firm Ogletree, Deakins, Nash, Smoak and Stewart, P.C., counsel for defendant DHI Mortgage Company, Ltd., L.P. ("DHIM"), as well as for DHI Mortgage Company GP, Inc. and D.R. Horton, Inc. in the related action entitled *Ahlstrom v. DHI Mortgage Company GP, Inc., et al.*, N.D. Cal. Case No. 5:17-cv-04383-BLF (the "Prior Federal Action"). I am one of the attorneys primarily responsible for handling the instant action, as well as the Prior Federal Action. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2. A true and correct copy of Plaintiff's Complaint against D.R. Horton, Inc. ("D.R. Horton") and DHI Mortgage Company GP, Inc. ("DHIM GP") in the Prior Federal Action, filed by Plaintiff in the U.S. District Court for the Northern District of California on or about August 2, 2017, is attached to the concurrently filed Request for Judicial Notice ("RJN") as **Exhibit 1**. Although my colleagues and I made clear to Plaintiff's attorneys during the pendency of the Prior Federal Action that neither D.R. Horton nor DHIM GP employed Plaintiff, and that DHIM was the correct defendant, Plaintiff made no effort to amend the complaint in the Prior Federal Action or to otherwise add DHIM as a defendant.

3. On or about October 6, 2017, Plaintiff filed a Complaint pursuant to the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA"), against D.R. Horton and DHIM GP, in the California Superior Court for the County of Santa Clara, which was assigned Case No. 17CV317032 and entitled *Ahlstrom v. DHI Mortgage Company GP, Inc., et al.* (the "PAGA Action"). In June and July of 2018, Plaintiff named and served DHIM as an additional defendant in the PAGA Action. At present, the PAGA Action is stayed by order of the court.

4. In the Prior Federal Action, D.R. Horton and DHIM GP filed a Motion to Compel Arbitration and Motion to Dismiss for Lack of Personal Jurisdiction on or about October 20, 2017. On November 3, 2017, Plaintiff filed an opposition, opposing the arbitration portion of the motion on the sole contention that the class action waiver in the parties' Mutual Arbitration Agreement

(the "MAA") was unenforceable. Plaintiff did not oppose the arbitration portion of the motion on any other basis, including on the basis of any purported unconscionability of the MAA. A true and correct copy of Plaintiff's Opposition to Defendant's ***{sic}*** Motion to Dismiss for Lack of Personal Jurisdiction and to Compel Arbitration is attached to the RJN as **Exhibit 2**.

5. Before the court in the Prior Federal Action ruled on D.R. Horton and DHIM GP's Motion to Compel Arbitration and Motion to Dismiss, the parties stipulated to a stay of the matter for all purposes pending the U.S. Supreme Court's then-pending ruling in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018) ("*Epic Systems*"). In light of the stay, the Court in the Prior Federal Action terminated, without prejudice to it being re-noticed, D.R. Horton and DHIM GP's Motion to Compel Arbitration and Motion to Dismiss.

6. On September 11, 2018, following the ruling in *Epic Systems*, D.R. Horton and DHIM GP filed a second Motion to Compel Arbitration. True and correct copies of D.R. Horton and DHIM GP's Notice of Motion and Motion to Compel Arbitration and Stay Action, and the supporting Declaration of Alexandra C. Aurisch, are attached to the RJN as **Exhibits 3 and 4**, respectively.

7. On September 25, 2018, Plaintiff filed his Opposition to D.R. Horton and DHIM GP's Motion to Compel Arbitration, basing his opposition solely on the contention that there was no effective arbitration agreement because, although Plaintiff unquestionably signed the MAA, he did not sufficiently "accept" the agreement in the manner stated in the MAA's opt-out provision (which he did not utilize). Plaintiff did not oppose the motion on any other basis, including on the basis of any purported unconscionability of the MAA. A true and correct copy of Plaintiff's Opposition to Motion to Compel Arbitration is attached to the RJN as **Exhibit 5**, and a true and correct copy of D.R. Horton and DHIM GP's Reply in Support of Defendants' Motion to Compel Arbitration and Stay Action is attached to the RJN as **Exhibit 6**.

8. On November 8, 2018, the Honorable Beth Labson Freeman held a hearing on DHIM GP's and D.R. Horton's Motion to Compel Arbitration, at which she granted the Motion. Judge Freeman's Order Granting Motion to Compel Arbitration; Dismissing Case Without Prejudice was entered on November 30, 2018. In the Order, Judge Freeman sent Plaintiff's

individual claims against DHIM GP and D.R. Horton to arbitration; dismissed Plaintiff's putative class and collective action claims; and, finding that there were no remaining claims outside of arbitration in that action, dismissed the case without prejudice. A true and correct copy of Judge Freeman's November 30, 2018 Order in the Prior Federal Action is attached to the RJN as **Exhibit 7**.

9. At no time has Plaintiff taken any steps to bring his individual claims against DHIM GP and/or D.R. Horton in arbitration, nor has Plaintiff or his counsel otherwise contacted DHIM GP and/or D.R. Horton, or their counsel, about arbitrating his individual claims.

10. The MAA signed by Plaintiff expressly incorporates the American Arbitration Association's ("AAA") Employment Arbitration Rules and Mediation Procedures, previously referred to as the National Rules for the Resolution of Employment Disputes. Specifically, Plaintiff's MAA provides that the arbitrator shall administer the proceeding "according to the National Rules for the Resolution of Employment Disputes (or successor rules)," and provides that the "rules can be found at www.adr.org . . . or requested from the Company." A true and correct copy of the current version of the AAA Employment Arbitration Rules and Mediation Procedures, as downloaded from the AAA website, at https://www.adr.org/sites/default/files/EmploymentRules_Web2119.pdf, on July 17, 2019, are attached hereto as **Exhibit C**.

I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 22nd day of July, 2019, at Los Angeles, California.

/s/ Jennifer L. Katz
JENNIFER L. KATZ

# EXHIBIT C

EMPLOYMENT

# Employment

## Arbitration Rules and Mediation Procedures

AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/employment**

Rules Amended and Effective November 1, 2009
Introduction Revised October 1, 2017

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Louisiana, Montana, Nevada, New Mexico, Oklahoma, Oregon, Texas, Utah, Washington, Wyoming**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

## Case Management Vice President and Assistant Vice Presidents

Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DE, DC, IN, KY, ME, MD, MA, MI, NH, NJ, NY, NC, OH, PA, RI, SC, TN, VT, VA, WV**

Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**