United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ROBERT W. AHLSTROM,
Plaintiff,
v.
DHI MORTGAGE COMPANY GP, INC., et al.,
Defendants.

Case No. 17-cv-04383-BLF

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; DISMISSING CASE WITHOUT PREJUDICE**

[Re: ECF 28]

Plaintiff Robert Ahlstrom brings claims on behalf of himself and a putative class of others similarly situated in connection with Defendants DHI Mortgage Company GP, Inc., D.R. Horton, Inc., and DOES 1 through 50 (collectively, "Defendants") for state law wage and hour and contract violations. *See generally* Compl., ECF 1. Before the Court is Defendants' Motion to Compel Arbitration. Mot., ECF 28. The Court heard oral argument on the motion on November 8, 2018. For the reasons stated herein, Defendants' Motion to Compel Arbitration is GRANTED. The action is DISMISSED without prejudice.

## I. BACKGROUND

The relevant background here is straightforward.[1] Defendant D.R. Horton, Inc. ("D.R. Horton") is the parent company of both Defendant DHI Mortgage Company, GP, Inc. ("DHI GP") and DHI Mortgage Company, Ltd. ("DHI Ltd."), which is not a Defendant in this case. *See* Aurisch Decl. ISO Mot., Ex. 3 ("Winter Decl.") ¶ 2, ECF 28-1. Plaintiff Robert Ahlstrom ("Ahlstrom") was employed by DHI Ltd. between July 2015 and December 2016. Aurisch Decl., Ex. 2 ("Hunter-Perkins Decl.") ¶ 2, ECF 28-1. On June 27, 2015, Ahlstrom filled out and

[1] The Court need not and does not take judicial notice of any additional facts. Defendants' request for judicial notice is denied. *See* ECF 29.

United States District Court
Northern District of California

electronically signed an application for employment. *Id.* ¶ 7. On July 24, 2015, shortly after he was hired by DHI Ltd., Ahlstrom signed a Mutual Arbitration Agreement ("MAA"). *Id.* ¶ 8.

Despite being hired by DHI Ltd., the MAA on its face is between "[t]he undersigned employee ('Employee') and *D.R. Horton, Inc.* (the 'Company')." *Id.*, Ex. B ("MAA") (emphasis added). The MAA covers "all legal disputes and claims between [Employee and Company]," including "claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents," for, *inter alia*, "wages, overtime, benefits, or other compensation" and "breach of any express or implied contract." *Id.* ¶ 1. The MAA includes various provisions relevant to the present motion. First, it includes a delegation-of-arbitrability provision that states, in relevant part:

> [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation or this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph [the class action waiver provision], the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

*Id.* ¶ 6. Second, the MAA includes an opt-out provision that states, in relevant part:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . . If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.

*Id.* ¶ 11. And finally, it includes a class action waiver:

> This Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.

*Id.* ¶ 7.

## II. LEGAL STANDARD

The parties agree that the Federal Arbitration Act ("FAA") applies. *See* Mot. at 6–8; Opp. at 2. The FAA embodies a "national policy favoring arbitration and a liberal federal policy

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). However, certain issues are presumptively reserved for the court. These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citation omitted).

That said, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within the province of judicial review, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987–88. "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted) (alteration in original).

If there is no clear and unmistakable delegation, a district court engages in a limited two-part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g., Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985). When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999)

United States District Court
Northern District of California

(interpreting the language "arising in connection with" in an arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").

## III. DISCUSSION

Plaintiff was employed by DHI, Ltd., but chose not to sue DHI, Ltd. in the instant suit. As such, no contract between Plaintiff and DHI Ltd. is at issue here. Instead, the MAA here was a purported contract between Plaintiff and D.R. Horton. Had Plaintiff sued DHI, Ltd. and had DHI, Ltd. attempted to enforce the MAA at issue, a different analysis would be required. But that is not what Plaintiff chose to do. Instead, Plaintiff sued D.R. Horton, with whom he *did* sign an arbitration agreement. As such, the key issue in this case turns on the validity of that MAA as to Plaintiff and D.R. Horton.

Whether the MAA is valid is solely a question of contract interpretation and formation, and thus must be sent to the arbitrator pursuant to the MAA's delegation provision. In his opposition, Ahlstrom raises only issues of formation of and interpretation of the Agreement. *See generally* Opp. He does not argue that the MAA is unconscionable, invalid, or otherwise unenforceable. Ahlstrom signed the MAA, which covers claims against D.R. Horton and its subsidiaries, including DHI GP. The agreement also includes a clear and unmistakable delegation provision, providing "the arbitrator, and not any federal . . . court . . . exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation or this Agreement." MAA ¶ 6. Ahlstrom does not argue that the language of this provision is not clear and unmistakable. Instead, Ahlstrom's sole argument turns on interpretation of the opt-out provision. Unfortunately for Ahlstrom, interpretation of that provision is delegated exclusively to the arbitrator and cannot be adjudicated by this Court.

The Court is not persuaded by Ahlstrom's arguments to the contrary. Based on his proposed interpretation of the opt-out provision, Ahlstrom argues that he never accepted the MAA, such that it cannot be enforced against him. *See generally* Opp., ECF 32. Ahlstrom argues that this provision sets forth how to accept the MAA by stating that if an employee fails to opt out, "he or she will be deemed to have accepted the terms of this Agreement." MAA ¶ 11. By

contrast, then, if an employee *complies* with the opt-out provision (*i.e.*, successfully opts out), he never accepts the agreement. According to Ahlstrom, an employee can comply (and thus never accept the agreement) in one of two ways: (1) by delivering the required form within 30 days; or (2) by failing to "accept or continue employment with the Company after that date." *Id.* Ahlstrom argues he opted out via the latter option because he never accepted employment with "the Company"—*i.e.*, D.R. Horton—but instead accepted employment with DHI Ltd.

The elaborateness of this argument reveals its fatal flaw. Ahlstrom accepted the MAA when he signed on the dotted line. By its very name and nature, the "opt-out" provision provided an opportunity for Ahlstrom to opt out of his previously rendered acceptance. And to determine whether Ahlstrom successfully opted out, the Court would have to interpret the agreement and decide whether failure to accept employment with D.R. Horton satisfies the condition for opting out. That is precisely the type of formation / interpretation question Ahlstrom clearly and unmistakably agreed to delegate to the arbitrator. As such, the antecedent question of whether the arbitration agreement covers Ahlstrom's claims must be sent to the arbitrator.

Ahlstrom also argues that the opt-out provision proscribes the *sole* means of acceptance because it says "he or she shall be deemed to have accepted the terms of this Agreement." Opp. at 4. But this reading strains credulity, given its inclusion in the "opt-out" provision. The plain language instead reinforces that failure to opt out will constitute continued acceptance—or, put another way, that opting out is the only way to *terminate* acceptance. This language is not ambiguous and in no way denotes an exclusive means of acceptance. *Cf. Devencenzi v. Donkonics*, 170 Cal. App. 2d 513, 518 (1959) (offer language instructing offeree to "please sign the two copies" if the offer "is agreeable" was not exclusive means of acceptance). Given that Ahlstrom validly accepted the arbitrability provision, then, the question of whether he validly terminated his acceptance of the MAA is delegated to the arbitrator as an ancillary formation issue.

Finally, the Court finds it appropriate to dismiss the case without prejudice. The MAA includes a valid class action waiver, the substance of which Ahlstrom does not challenge. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the legality of class action

United States District Court
Northern District of California

waivers in arbitration agreements). As such, given that Ahlstrom's individual claims must be sent to arbitration, the Court dismisses the class action claims pending resolution of the arbitration.

## IV. ORDER

For the foregoing reasons, Defendants' Motion to Compel Arbitration is GRANTED. There being no remaining claims outside of arbitration, the entire action is DISMISSED WITHOUT PREJUDICE to filing a later action should the arbitrator determine the arbitration agreement is not binding on Ahlstrom, or to confirm or vacate any arbitration award.

**IT IS SO ORDERED.**

Dated: November 30, 2018

BETH LABSON FREEMAN
United States District Judge