U.S. Court of Appeals No. 20-15114
U.S.D.C. Case No. 19-cv-03435-BLF

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

ROBERT W. AHLSTROM,

*Plaintiff-Appellant,*

vs.

DHI MORTGAGE COMPANY, LTD., L.P.,

*Defendant-Appellee.*

---

## DEFENDANT-APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD

---

On Appeal from The United States District Court
For The Northern District of California
Case No. 19-CV-03435-BLF
The Honorable Beth Labson Freeman, Judge Presiding

---


JACK S. SHOLKOFF, State Bar No. 145097
jack.sholkoff@ogletreedeakins.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant-Appellee
DHI MORTGAGE COMPANY, LTD., L.P.

## INDEX TO DEFENDANT-APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD


| DOCKET NO. | DATE FILED | DOCUMENT TITLE / DESCRIPTION | PAGE(S) | VOL. NO. |
|---|---|---|---|---|
| 25 | 1/3/20 | Order Vacating Hearing on Defendant's Motion to Compel Arbitration and Dismissing Case Without Prejudice | SER 1 | 1 |
| 23 | 9/11/19 | Order Reassigning Case | SER 2 | 1 |
| 22 | 9/10/19 | Related Case Order | SER 3 | 1 |
| 21 | 9/5/19 | Minute Order re: Motion to Compel Arbitration | SER 4 | 1 |
| 20 | 9/5/19 | *Sua Sponte* Judicial Referral for Purposes of Determining Relationship of Cases | SER 5 | 1 |
| 19 | 8/12/19 | Reply In Support of Defendant's Motion to Compel Arbitration | SER 6 – SER 20 | 1 |
| 17 | 7/22/19 | Request for Judicial Notice in Support of Defendant's Motion to Compel Arbitration | SER 21 – SER 208 | 1 |
| 1 | 6/17/19 | Notice of Removal of Civil Action to United States District Court | SER 209 – SER 214 | 1 |
| 1-1 | 6/17/19 | Exhibit A to Notice of Removal (Complaint) | SER 215 – SER 265 | 1 |
| 1-2 | 6/17/19 | Exhibit B to Notice of Removal (Joint Case Management Conference Statement) | SER 266 – SER 275 | 1 |
| 1-3 | 6/17/19 | Exhibit C to Notice of Removal (Answer) | SER 276 – SER 291 | 1 |

| **Docket No.** | **Date Filed** | **Document Title / Description** | **Page(s)** | **Vol. No.** |
|---|---|---|---|---|
| 2 | 6/17/19 | Declaration of David Morice in Support of Defendant's Notice of Removal of Civil Action to United States District Court | SER 292 – SER 294 | 1 |
| 5 | 6/17/19 | Defendant's Notice of Pendency of Other Action or Proceeding | SER 295 - SER 298 | 1 |

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ROBERT W. AHLSTROM,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P.,

Defendant.

Case No. 19-cv-03435-BLF

**ORDER VACATING HEARING ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND CONTINUING CASE MANAGEMENT CONFERENCE**

[Re: ECF 16]

Pursuant to Civil Local Rule 7-1(b), the Court finds Defendant's Motion to Compel Arbitration (ECF 16) suitable for submission without oral argument and hereby VACATES the hearing scheduled for January 16, 2020.

In addition, an initial case management conference is set for January 16, 2020 at 11:00 a.m. The Court hereby CONTINUES the initial case management conference until **February 20, 2020 at 11:00 a.m.** Case management statements SHALL be due **on or before February 13, 2020.**

**IT IS SO ORDERED.**

Dated: January 3, 2020

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT W. AHLSTROM,
Plaintiff,
v.
DHI MORTGAGE COMPANY, LTD., L.P.,
Defendant.

Case No. 19-cv-03435-EMC

**ORDER REASSIGNING CASE**

IT IS ORDERED that this case is reassigned to the **Honorable Beth Labson Freeman** in the **SAN JOSE** division for all further proceedings. Counsel are instructed that all future filings shall bear the initials **BLF** immediately after the case number.

All hearing and trial dates presently scheduled are vacated. However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.

Dated: September 11, 2019

Susan Y. Soong
Clerk, United States District Court

A true and correct copy of this order has been served by mail upon any pro se parties.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**RELATED CASE ORDER**

5:17-cv-04383-BLF
Robert W. Ahlstrom v. DHI Mortgage Company GP, Inc.

I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

| Case | Title | Related | Not Related |
|---|---|---|---|
| 19-cv-03435-EMC | Ahlstrom v. DHI Mortgage Company, LTD., L.P. | X | |

**ORDER**

The parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated: September 10, 2019

By: Beth Labson Freeman
Beth Labson Freeman
United States District Judge

# OFFICE OF THE CLERK
# UNITED STATES DISTRICT COURT
# Northern District of California

## CIVIL MINUTES

**Date:** September 5, 2019 **Time:** 1:40 – 1:43 = 3 Minutes **Judge:** EDWARD M. CHEN

**Case No.**: 19-cv-03435-EMC **Case Name:** Ahlstrom v. DHI Mortgage Company, LTD., L.P.

**Attorney for Plaintiff:** Thomas Segal
**Attorney for Defendant:** Jack Sholkoff

**Deputy Clerk:** Angella Meuleman **Court Reporter:** Marla Knox

## PROCEEDINGS

[16] Motion to Compel - held.

## SUMMARY

Parties stated appearances. Court relayed to the parties Sua Sponte Referral made to Judge Freeman for her review of relating this case to C17-4383-BLF.

Initial Case Management Conference set for October 10, 2019 is currently going forward at the present time but will be vacated if Judge Freeman relates this case to hers. If Judge Freeman does not relate, Court will reset hearing on pending motion.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT W. AHLSTROM,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD.,

Defendant.

Case No. 19-cv-03435-EMC

**SUA SPONTE JUDICIAL REFERRAL FOR PURPOSES OF DETERMINING RELATIONSHIP OF CASES**

Pursuant to Civil Local Rule 3-12 (c), the Court ORDERS that the above-captioned case is referred to Judge Beth Freeman to determine whether it is related to Ahlstrom v. DHI Mortgage Co. GP, Inc., Case No. C17-4383-BLF.

**IT IS SO ORDERED.**

Dated: September 5, 2019

EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive<br><br>Defendants. | Case No. 3:19-cv-03435-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: September 5, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 5<br><br>Complaint Filed: March 27, 2019<br>Trial Date: None<br>Judge: Hon. Edward M. Chen<br>Courtroom 5, San Francisco |

Defendant DHI Mortgage Company, Ltd., L.P. hereby respectfully submits its Reply in Support of its Motion to Compel Arbitration.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. THE COURT SHOULD FOLLOW JUDGE FREEMAN'S RULING IN THE PRIOR FEDERAL ACTION ........ 2

III. THE COURT SHOULD GRANT DHIM'S MOTION BECAUSE THE PARTIES AGREED THAT THE ARBITRATOR, AND NOT THE COURT, WOULD INTERPRET THE MAA. ........ 3

IV. THE COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS ON AN INDIVIDUALIZED BASIS ........ 5

- A. The MAA's Opt-Out Provision Does Not Vitiate Plaintiff's Prior Acceptance Of The Agreement. ........ 6
- B. The Rule Of Interpretation Against The Drafter Is Inapplicable. ........ 9

V. CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*
No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) ......................2, 4, 7, 8, 9

*AT&T Techs., Inc. v. Commc'ns Workers*
475 U.S. 643 (1986) ......................................................................................................3

*Brennan v. Opus Bank*
796 F. 3d 1125 (9th Cir. 2015) ......................................................................................3

*Clayborne v. Lithia Motors, Inc.*
No. 1:17-CV-0588-AWI-BAM, 2017 WL6017009 (E.D. Cal. Dec. 5, 2017) .............................5

*Epic Systems Corp. v. Lewis*
138 S.Ct. 1612 (2018) ..................................................................................................10

*Hill St. Health Servs. LLC v. County of L.A.*
No. CV1602486BROAFMX, 2016 WL 9453998 (C.D. Cal. Nov. 16, 2016) .............................5

*Kramer v. Toyota Motor Corp.*
705 F.3d 1122 (9th Cir. 2013) ........................................................................................4

*Marziano v. County of Marin*
No. C-10-2740 EMC, 2010 WL 3895528 (N.D. Cal. Oct. 4, 2010) ...........................................5

*Mohamed v. Uber Technologies, Inc.*
848 F. 3d 1201 (9th Cir. 2016) ......................................................................................4

*Yu v. Volt Info. Scis., Inc.*
No. 19-CV-01981-LB, 2019 WL 3503111 (N.D. Cal. Aug. 1, 2019) .........................................5

**California Cases**

*Artukovich v. Pacific States Cast Iron Pipe Co.*
78 Cal. App. 2d 1 (1947) ...............................................................................................8

*B. L. Metcalf Gen. Contractor, Inc. v. Earl Erne Inc.*
212 Cal. App. 2d 689 (1963) .........................................................................................10

*In re Crossman's Estate*
231 Cal. App. 2d 370 (1964) ........................................................................................7, 8

*Devencenzi v. Donkonics*
170 Cal. App. 2d 513 (1959) ........................................................................................8, 9

*Dexter v. Ankiewicz*
26 Cal. App. 2d 326 (1938) ............................................................................................9

*Hillsborough LLC v. Marcus & Millichap Real Estate Investment Brokerage Co.*
No. E038589, 2006 WL 2501580 (Cal. Ct. App. Aug. 30, 2006) .........................................7, 8

*Pac. Corporate Group Holdings, LLC v. Keck*
232 Cal. App. 4th 294 (2014) .......... 6

*Peleg v. Neiman Marcus Group, Inc.*
204 Cal. App. 4th 1425 (2012) .......... 4

**Federal Statutes**

9 U.S.C. § 3 .......... 10

**California Statutes**

California Civil Code § 1643 .......... 10

California Civil Code § 1654 .......... 9, 10

# I. INTRODUCTION

Plaintiff Robert W. Ahlstrom ("Plaintiff") agreed to arbitrate his wage and hour claims against his employer, defendant DHI Mortgage Company, Ltd., L.P. ("DHIM"), on an individualized basis. Plaintiff signed the Mutual Arbitration Agreement ("MAA") and did not exercise his right pursuant to the MAA to subsequently opt out from his arbitration obligation. Nonetheless, Plaintiff contends, relying upon pedantry and sophistry, and a misinterpretation of the terms of the MAA, instead of reason and law, that the Court should not compel him to arbitrate his dispute solely because he was not employed by D.R. Horton, Inc. ("D.R. Horton"), an entity related to DHIM, which he sued in a prior action in this court and had his claims compelled to arbitration.

There are three reasons why Plaintiff's argument fails.

First, as discussed in DHIM's Motion, Judge Beth Labson Freeman has *already* agreed that the issue before the Court must be decided by the arbitrator. The fact that the entity Plaintiff has now sued in the instant action—DHIM—is distinct from the two related entities sued in his prior lawsuit—D.R. Horton and DHI Mortgage Company GP, Inc. ("DHIM GP")—is of no consequence. In the prior lawsuit, Judge Freeman compelled to arbitration Plaintiff's claims against ***both*** D.R. Horton ***and*** DHIM GP; there is absolutely no reason in fact or law, and Plaintiff has cited none, why DHIM should be treated any differently.

Second, because Plaintiff's entire argument for avoiding the MAA rests upon his *misinterpretation* of the provisions of the MAA, and because the Parties expressly agreed that any questions concerning the MAA's interpretation must be *decided by the arbitrator*, the Court must send this case to arbitration.

And, third, even if the Court were to consider the merits of Plaintiff's attack, it should still send the case to arbitration. Plaintiff argues that he is not subject to the MAA even though he (a) signed the MAA, and (b) did not opt out from the MAA. He contends that the only way to accept the MAA was for Plaintiff not to opt-out from it *and* for Plaintiff to accept employment with D.R. Horton (as opposed to a related D.R. Horton entity). Plaintiff, however, ignores that the MAA's opt-out provision was not the method by which Plaintiff accepted the terms of the MAA. Indeed, Plaintiff does not mention that *by signing the MAA* he agreed to arbitrate his claims, and by failing

to opt out, he reiterated his *prior* acceptance. Notably, Plaintiff has at no time contended that he did not sign the MAA or make any efforts to opt-out; nor has he argued that he himself believed that by signing the MAA in connection with his employment with DHIM, he was agreeing only to arbitrate claims against D.R. Horton—an entity with which he was never employed.

It really comes down to this: Plaintiff cannot use *his failure* to exercise his opt-out rights as a way to escape his prior acceptance of the MAA. If Plaintiff wanted to opt out, he should have returned the Opt-Out Form instead of remaining silent. He stayed silent. Thus, he is bound by the MAA.

Accordingly, the Court should grant DHIM's Motion to Compel Arbitration and order Plaintiff to arbitrate his claims against DHIM upon an individualized basis.

## II. <u>THE COURT SHOULD FOLLOW JUDGE FREEMAN'S RULING IN THE PRIOR FEDERAL ACTION</u>

Plaintiff contends that a different analysis is required here than Judge Freeman undertook in Plaintiff's earlier lawsuit against D.R. Horton and DHIM GP in the matter entitled *Ahlstrom v. DHI Mortgage Company GP, Inc.*, *et al.*, Case No. 5:17-cv-04383-BLF (the "Prior Federal Action"), because here, Plaintiff has finally decided to sue the correct entity—that is, the entity that actually employed him. No different analysis is required.

In the Prior Federal Action, Judge Freeman expressly ruled that the MAA's validity is "solely a question of contract interpretation and formation, and thus must be sent to the arbitrator pursuant to the MAA's delegation provision." *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876, at *3 (N.D. Cal. Nov. 30, 2018). Judge Freeman made no distinction in her ruling between D.R. Horton—the entity actually named in the MAA—and DHIM GP—a related entity that (like DHIM) was not a party to or expressly named in the MAA. *See id.* at *3-4. Indeed, her ruling was made on the same basis as to both named entities. *See id.* Notwithstanding the fact that DHIM is the entity that actually employed Plaintiff, there is no basis in fact or law for distinguishing between DHIM GP and DHIM, which are on equal footing as far as the MAA is concerned. In fact, there is even a greater reason here to compel arbitration of Plaintiff's claims against DHIM, as the MAA was actually *signed by a representative of DHIM*.

(*See* Declaration of Paula Hunter-Perkins ["Hunter-Perkins Decl."], ¶ 8 & Ex. B, at 3.)

There is no basis for deviating from Judge Freeman's well-reasoned ruling regarding the exact MAA at issue here. Plaintiff's claims should be compelled to arbitration on an individual basis, with his class and collective claims dismissed.

## III. THE COURT SHOULD GRANT DHIM'S MOTION BECAUSE THE PARTIES AGREED THAT THE ARBITRATOR, AND NOT THE COURT, WOULD INTERPRET THE MAA.

Plaintiff's attempt to wriggle out of his agreement to follow the MAA rests upon Plaintiff's effort to misinterpret it. Yet, the Parties agreed that the *arbitrator* and not the Court would decide any formation or interpretation issues concerning the meaning of the MAA. Under federal law, the court lacks jurisdiction to decide whether a valid agreement to arbitrate exists when, as here, the parties have "clearly and unmistakably" delegated arbitrability issues to the arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F. 3d 1125, 1130-31 (9th Cir. 2015). The Ninth Circuit holds, for example, that even an arbitration agreement's incorporation of the rules of the American Arbitration Association, one of which provides that "the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement,'" constitutes the required "clear and unmistakable" evidence of delegation. *Brennan*, 796 F.3d at 1130-31 (alteration in original).

The Parties to the MAA, even more "clearly and unmistakably" than the parties did in *Brennan*, expressly agreed in Paragraph 6 of the MAA to delegate to the arbitrator issues regarding interpretation of the MAA—including issues regarding the MAA's formation, enforceability, applicability, and interpretation. Specifically, Paragraph 6 of the MAA provides, in pertinent part:

> Except as noted in the following paragraph [concerning interpretation of the MAA's class action waiver], ***the arbitrator***, and not any federal, state, or local court, ***shall have the exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement***, including without limitation any claim that this Agreement is void or voidable. Thus, . . . the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

(Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 6 (emphasis added).) Indeed, Judge Freeman held that the

precise MAA at issue here "includes a clear and unmistakable delegation provision[.]" *Ahlstrom*, 2018 WL 6268876, at *3. Thus, there is no doubt that the interpretation issue must be sent to the arbitrator.

Moreover, the Ninth Circuit has already squarely rejected Plaintiff's argument that the MAA is ambiguous on delegation because of purported conflicts between the delegation clause in Paragraph 6 and certain limited sections of Paragraphs 2 and 9. In *Mohamed v. Uber Technologies, Inc.*, 848 F. 3d 1201 (9th Cir. 2016), the Ninth Circuit reversed the district court on the question of delegation, and found that the same types of purported conflicts in the MAA cited by Plaintiff here are "artificial." *Id.* at 1209. The Ninth Circuit specifically highlighted the venue selection provision relied upon by the plaintiffs, finding it was not in conflict with the arbitration agreement's "unambiguous" delegation statement, as the venue provision was clearly intended for the purpose of enforcing the arbitration agreement or an award, or where court action is necessary to handle claims not covered by the arbitration agreement. *Id.* ("'[N]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies.'") (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004)). Thus, the mere fact that the MAA contains language regarding judicial enforceability of the MAA does not, in light of the binding Ninth Circuit authority on this question, vitiate the parties' agreement to delegate interpretation issues to the arbitrator. Plaintiff's reliance on *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012), and cases cited therein, in view the Ninth Circuit's decision in *Mohamed*, is inapposite.

Plaintiff is also mistaken that the delegation provision does not apply here because DHIM is not a signatory to the MAA.[1] As an initial matter, this argument puts the cart before the horse, as

---

[1] The only case cited by Plaintiff for this contention—*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013)—is distinguishable. In *Kramer*, the language of the arbitration agreement made clear that that the arbitration agreement itself applied ***only*** to disputes between the two contracting parties. *See id.* at 1127 ("While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships. For example, Scholten's arbitration clause states that '[e]ither you or we may choose to have **any dispute between you and us** decided by arbitration.' The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else.") (alteration in original) (emphasis added). Here, on the other hand, the MAA expressly

the question of whether DHIM can compel arbitration is one that, pursuant to the MAA, is delegated to the arbitrator. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 6.) In addition, a similar argument was recently rejected by Judge Laurel Beeler in the Northern District, who found that the question of whether an arbitration agreement covered claims brought by the plaintiff against his employer based on actions of a third party had to be decided by the arbitrator. *See Yu v. Volt Info. Scis., Inc.*, No. 19-CV-01981-LB, 2019 WL 3503111, at *4-5 (N.D. Cal. Aug. 1, 2019) ("[W]hether the arbitration provision covers Mr. Yu's claims here is a question that goes to the provision's scope, and the parties agreed to delegate questions regarding the scope of the arbitration provision to the arbitrator. Consequently, unless the delegation agreement is itself unenforceable, it is for the arbitrator, not the court, to decide whether Mr. Yu's claims are covered by the arbitration provision.").

Thus, where, as here, the delegation is "clearly and unmistakably" made, the Court only determines whether the delegation clause itself is unconscionable. *Clayborne v. Lithia Motors, Inc.* No. 1:17-CV-0588-AWI-BAM, 2017 WL6017009, at *3 (E.D. Cal. Dec. 5, 2017). "If the delegation of arbitrability is not unconscionable, the enforceability of the entirely ***[sic]*** arbitration agreement . . . will be left to the arbitrator." *Id.* Here, the MAA's delegation clause is not unconscionable, and Plaintiff has made no attempt to argue that it is. Thus, regardless of how the Court views Plaintiff's tortured arguments, it must grant DHIM's Motion to Compel and have the arbitrator interpret the MAA.

## IV. THE COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS ON AN INDIVIDUALIZED BASIS

Even if the Court were to consider the merits of Plaintiff's positions, it should reject them and enforce the MAA.[2] Plaintiff's failure to work for D.R. Horton did not vitiate his prior

---

applies to claims by Plaintiff against D.R. Horton, as well as against its "parents, subsidiaries, affiliates," and others. (Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 1.)

[2] In opposing DHIM's Motion, Plaintiff ignores a number of arguments made by DHIM in support of the MAA's enforceability. By failing to oppose these arguments, Plaintiff has conceded that DHIM's positions on these issues are meritorious. *See, e.g., Marziano v. County of Marin*, No. C-10-2740 EMC, 2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010) ("In her papers, Ms. Marziano fails to make any opposition to Defendants' argument [that a claim should be dismissed]. Without ruling on the merits of Defendants' argument, the Court views Ms. Marziano's failure to oppose the argument as a concession that the . . . claim should be dismissed.") (footnote omitted); *Hill St.*

acceptance of the MAA, in which he agreed to arbitrate all claims he might possess against DHIM.

### A. **The MAA's Opt-Out Provision Does Not Vitiate Plaintiff's Prior Acceptance Of The Agreement.**

Paragraph 11 of the MAA contains the language permitting Plaintiff to opt out of the MAA (the "Opt-Out Provision"), stating as follows:

> Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement.

(Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11.)

The Opt-Out Provision does not, by its terms, provide that failing to return the Opt-Out Form and then working for "the Company" constitutes the *exclusive* method for accepting the MAA. (*See id.*) Indeed, the plain meaning of the paragraph provides that it is a method for *opting out* of a *previously accepted agreement*. The final sentence of the paragraph is informational, stating one result if the employee does not opt out and continues working at D.R. Horton. The paragraph says nothing about what happens if the employee does not opt out and is working for an entity other than D.R. Horton. The only logical result is that if the employee *does not opt out*, he remains bound by his original acceptance of the MAA.

Plaintiff's baseless alternative reading is of no merit and would have the last sentence of the Opt-Out Provision read as creating an absolute, exclusive condition that overrides every other provision of the MAA—something that is disfavored by California law and has no basis in the actual language of the agreement. *See, e.g.*, *Pac. Corporate Group Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 312 (2014) (holding that "[t]he jury could have reasonably found that Keck's return of the signed letter would be an *acceptable* form of evincing his assent to the agreement, but that the provision did not *mandate* that such return was the only possible form of acceptance," as

---

*Health Servs. LLC v. County of L.A.*, No. CV1602486BROAFMX, 2016 WL 9453998, at *5 (C.D. Cal. Nov. 16, 2016) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument.").

the agreement at issue "'request[ed]' that Keck indicate his acceptance by returning the letter signed; it did *not* state that Keck's return of the signed letter was the only possible manner by which he could indicate his assent to the agreement") (emphases and second alteration in original). In fact, Judge Freeman already ruled against Plaintiff's flawed interpretation in the Prior Federal Action, finding that Plaintiff "accepted the MAA when he signed on the dotted line," and that "[b]y its very name and nature, the 'opt-out' provision provided an opportunity for [Plaintiff] to opt out of his previously rendered acceptance." *Ahlstrom*, 2018 WL 6268876, at *3.

Faced with this problem, Plaintiff relies for support on *Hillsborough LLC v. Marcus & Millichap Real Estate Investment Brokerage Co.*, No. E038589, 2006 WL 2501580 (Cal. Ct. App. Aug. 30, 2006), for the proposition that where a contract "***does*** prescribe the manner acceptance is to be communicated," no other manner of acceptance is sufficient. *Id.* at *4 (emphasis added). *Hillsborough* is unpublished and is distinguishable on its facts. In *Hillsborough*, the contract at issue dictated that:

> "The commencement date of this contract shall be the date [the broker] receives this executed Representation Agreement from all Sellers *and countersigns this Representation Agreement*. Termination date shall be one hundred eighty (180) days (six months) from commencement date. [The broker] shall deliver written notification to seller of exact commencement date and termination date with fully executed contract."

*Id.* at *1 (emphases and alterations in original). However, in *Hillsborough*, the broker never "countersigned," such that there was no date of "commencement" of the contract, and, thus, "no contract was formed." *Id.* at *4. On top of that, the Court noted that the broker never showed that it had complied with the further condition to deliver written notice to the seller of the commencement and termination dates. *Id.*

*Hillsborough* is inapposite. The contract in *Hillsborough* stated that the contract *would not commence* until the broker countersigned the agreement. *Id.* at *1. The broker did not countersign, so no contract was ever formed. *Id.* at *4. In finding there was no contract, the Court relied upon the same type of distinction drawn by the Court of Appeal in *In re Crossman's Estate*, 231 Cal. App. 2d 370 (1964), between (1) an offer "which makes a 'positive requirement'. . . or imposes 'an absolute condition'. . . of a specified manner of acceptance"; and (2) an offer "which 'merely

suggests a permitted . . . manner'" of acceptance, and where "another method of acceptance is not precluded." *Id.* at 372 (internal citations omitted) (final alteration in original). In *Hillsborough*, the language of the contract was specific and mandatory: there could not be a contract until the broker countersigned the agreement. *See Hillsborough*, 2006 WL 2501580, at *1, *4. In the instant action, on the other hand, the "Opt-Out" nature of the MAA means that there was a contract once Plaintiff agreed to it ***unless*** Plaintiff properly *opted out of it*. (*See* Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 11.) Since Plaintiff did not opt out (*see* Hunter-Perkins Decl., ¶ 9), the MAA remained in force. Hence, the MAA in the instant action falls in the latter category described by *Crossman*—*i.e.*, suggesting a permitted manner of acceptance, but not precluding others. *See Crossman*, 231 Cal. App. 2d at 372; *see also Ahlstrom*, 2018 WL 6268876, at *3 ("The plain language [of the Opt-Out Provision] instead reinforces that failure to opt out will constitute continued acceptance—or, put another way, that opting out is the only way to *terminate* acceptance. This language is not ambiguous and in no way denotes an exclusive means of acceptance.") (emphasis in original).

Plaintiff further argues that the language in *Artukovich v. Pacific States Cast Iron Pipe Co.*, 78 Cal. App. 2d 1, 3 (1947), that "[i]n addition the provision in an offer specifying a means of acceptance is for the benefit of the offerer ***[sic]*** and may be waived by him," is inapplicable here, and that the benefit here is to the Plaintiff. Whether the benefit is related to the MAA or the Opt-Out (although DHIM maintains that it is the former) is ultimately insignificant; even the Court in *Crossman* considered and then disregarded this issue, looking only at whether the language of the contract precluded other means of acceptance.

In *Crossman*, the agreement provided that "[a]ny notice that either party hereto desires or shall be required to give to the other hereunder shall be given in writing, either delivered personally or sent by prepaid registered mail." 231 Cal. App. 2d at 371. The appellant telephoned the other party to state the agreement was being exercised, and then sent a letter by regular mail the next day. *Id.* The appellant later took the position that because the letter was not sent by registered mail, the agreement was not binding. *Id.* The Court disagreed, explaining the distinction between the two types of offers (discussed above) and noting that "it is frequently necessary to look beyond the literal meaning of the language used." *Id.* at 371-72.

Similarly, in *Devencenzi v. Donkonics*, 170 Cal. App. 2d 513 (1959), the Court held that the offeree had accepted an agreement through a completely separate writing even though the offeror had written, "If this is agreeable to you please sign the two copies [of the enclosed agreement]." *Id.* at 515; *see also Ahlstrom*, 2018 WL 6268876, at *3 (citing *Devencenzi* with approval).

To the extent Plaintiff relies on *Dexter v. Ankiewicz*, 26 Cal. App. 2d 326 (1938), his reliance is misplaced, as the facts of the case are completely dissimilar to those at issue here. In *Dexter*, the Court addressed whether a continuous written exchange between the parties over the course of approximately seven months constituted acceptance of a contract. *Id.* at 327-34. The plaintiff in *Dexter*—on five separate occasions—asked the defendant, who had merely once stated he was "willing to sign and return" the contract, to, in fact, sign and return the contract. *Id.* The defendant never did so, and the Court held that no contract existed because both parties had clearly contemplated a written, signed agreement as necessary for acceptance. *See id.* at 333 ("Where the parties understand that before a contractual relationship shall exist the terms of their contract are to be reduced to writing and signed by them, a binding or completed contract does not arise until a writing evidencing the terms of their agreement has been executed by the respective parties. . . . In the instant case it is clear . . . that both plaintiff and defendant contemplated that acceptance by defendant of plaintiff's offer should be signified by defendant's signing and returning the contract[.]").

In short, here, Plaintiff accepted the MAA when he signed it on July 24, 2015. (*See* Hunter-Perkins Decl., ¶¶ 3–8 & Ex. B.) Plaintiff did not exercise his Opt-Out right. (*See id.*, ¶ 9.) Accordingly, the MAA remains binding upon Plaintiff.

**B. <u>The Rule Of Interpretation Against The Drafter Is Inapplicable.</u>**

Plaintiff relies on California Civil Code § 1654 ("Section 1654"), which provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654. This rule is inapplicable here for at least two independent reasons.

First, the terms of the MAA explicitly contract around this rule, stating: "This Agreement shall be construed as a whole, according to its fair meaning, **and not for or against any party**."

(Hunter-Perkins Decl., ¶ 8, Ex. B, ¶ 10 (emphasis added).) In addition, the MAA provides, "If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable." (*Id.*, ¶ 9.)

Second, by its own language—"In cases of uncertainty not removed by the preceding rules" (Cal. Civ. Code § 1654)—Section 1654 is limited in application to circumstances under which other rules of contract interpretation in the preceding part of the chapter cannot resolve the issue.[3] Moreover, Section 1654 "is not determinative when the contract may be properly construed by application of other rules of construction." *B. L. Metcalf Gen. Contractor, Inc. v. Earl Erne Inc.*, 212 Cal. App. 2d 689, 695-96 (1963) (declining to apply Section 1654 to interpretation of an arbitration agreement, noting that there is no reason to think that the fact that this particular defendant did not want arbitration means that another defendant would not based on similar facts, noting that "[i]t is not the meaning in section 1654 that the construction to be indulged in is that which one of the parties wants at the time"). It is precisely the case here that other rules of construction—including others cited in Plaintiff's Opposition—take precedence over Section 1654.

Finally, the MAA is not uncertain or ambiguous, such that Section 1654 does not apply. Plaintiff signed it and did not opt out. (*See* Hunter-Perkins Decl., ¶¶ 3–9 & Ex. B.) He therefore remains obligated to arbitrate his claims against DHIM on an individualized basis.

## V. <u>CONCLUSION</u>

Plaintiff entered into an enforceable, mutually binding arbitration agreement that governs all of Plaintiff's claims against DHIM in this action. DHIM therefore respectfully requests that this Court, pursuant to the Federal Arbitration Act (9 U.S.C. § 3) and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), compel Plaintiff to arbitrate his claims against DHIM on an individualized basis, dismissing Plaintiff's class and collective action allegations, and dismissing or staying the

[3] The provisions in the Civil Code setting forth the rules of contract interpretation are contained in a chapter titled "Interpretation of Contracts," which chapter currently commences with Section 1635 and ends with Section 1663. Among the sections preceding Section 1654 is Civil Code § 1643, which provides: "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643.

instant action to permit the parties to complete arbitration. At a minimum, the Court must send the action to arbitration to permit the arbitrator to adjudicate any challenges related to the interpretation of the MAA, other than those involving the MAA's class action waiver.

DATED: August 12, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Jack S. Sholkoff
Jack S. Sholkoff
Jennifer L. Katz
Alexandra Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,

Defendants.

Case No. 3:19-cv-03435-EMC

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

*[Filed concurrently with Notice of Motion and Motion to Compel Arbitration; Declarations of Paula Hunter-Perkins, Mark C. Winter, and Jennifer L. Katz; and [Proposed] Order.]*

Date: September 5, 2019
Time: 1:30 p.m.
Place: Courtroom 5

Complaint Filed: March 27, 2019
Trial Date: None
District Judge: Hon. Edward M. Chen
Courtroom 5, San Francisco

Pursuant to Rule 201 of the Federal Rules of Evidence, defendant DHI Mortgage Company Ltd., L.P. ("DHIM") hereby respectfully requests that the Court take judicial notice of the following records cited in support of DHIM's Motion to Compel Arbitration:

- **Exhibit 1** to this Request is a true and correct copy of the Complaint filed in the U.S. District Court for the Northern District of California on or about August 2, 2017 by plaintiff Robert W. Ahlstrom ("Plaintiff") against D.R. Horton, Inc. and DHI Mortgage Company GP, Inc., in the related action entitled *Ahlstrom v. DHI Mortgage Company GP, Inc.*, *et al.*, N.D. Cal. Case No. 5:17-cv-04383-BLF (the "Prior Federal Action") [Case No. 5:17-cv-04383-BLF, Dkt. No. 1].
- **Exhibit 2** to this Request is a true and correct copy of Plaintiff's Opposition to Defendant's ***{sic}*** Motion to Dismiss for Lack of Personal Jurisdiction and to Compel Arbitration, filed by Plaintiff in the Prior Federal Action on November 3, 2017 [Case No. 5:17-cv-04383-BLF, Dkt. No. 15].
- **Exhibit 3** to this Request is a true and correct copy of the Notice of Motion and Motion to Compel Arbitration and Stay Action filed in the Prior Federal Action by D.R. Horton, Inc. and DHI Mortgage Company GP, Inc., on September 11, 2018 [Case No. 5:17-cv-04383-BLF, Dkt. No. 28].
- **Exhibit 4** to this Request is a true and correct copy of the Declaration of Alexandra C. Aurisch in Support of Defendants' Motion to Compel Arbitration and Stay Action, with supporting Exhibits 1–5, filed in the Prior Federal Action by D.R. Horton, Inc. and DHI Mortgage Company GP, Inc., on September 11, 2018 [Case No. 5:17-cv-04383-BLF, Dkt. No. 28-1].
- **Exhibit 5** to this Request is a true and correct copy of Plaintiff's Opposition to Motion to Compel Arbitration, filed by Plaintiff in the Prior Federal Action on September 25, 2018 [Case No. 5:17-cv-04383-BLF, Dkt. No. 32].
- **Exhibit 6** to this Request is a true and correct copy of the Reply in Support of Defendants' Motion to Compel Arbitration and Stay Action, filed by D.R. Horton, Inc. and DHI Mortgage Company GP, Inc. in the Prior Federal Action on October 2,

2018 [Case No. 5:17-cv-04383-BLF, Dkt. No. 33].

- **Exhibit 7** to this Request is a true and correct copy of the Honorable Beth Labson Freeman's Order Granting Motion to Compel Arbitration; Dismissing Case Without Prejudice, entered in the Prior Federal Action on November 30, 2018 [Case No. 5:17-cv-04383-BLF, Dkt. No. 37].
- **Exhibit 8** to this Request is a true and correct copy of the December 18, 2014 unpublished opinion issued by the California Court of Appeal, Fourth Appellate District, in the matter entitled *Rebecca Renee Gillespie v. Western Pacific Housing Management, Inc.*, Case No. D066354.

This Court may take judicial notice of judicial records and other facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Civ. P. 201(b)(2); *United States v. Wilson*, 631 F.2d 118 (9th Cir. 1980).

DATED: July 22, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Jennifer L. Katz
Jack S. Sholkoff
Jennifer L. Katz
Alexandra C. Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

# EXHIBIT 1

Shaun Setareh (SBN 200514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
SETAREH LAW GROUP
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
ROBERT W. AHLSTROM

**UNITED STATES DISTRICT COURT**

**NORTH DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

*Plaintiff*,

vs.

DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

*Defendants*.

Case No.

**CLASS ACTION**

**COMPLAINT FOR:**

1. Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512, and 1198);
2. Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7, and 1198);
3. Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198);
4. Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a));
5. Failure to Timely Pay All Final Wages (Lab. Code §§ 201-203);
6. Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*)
7. Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201, *et seq.*)
8. Breach of Written Contract
9. Breach of the Implied Covenant of Good Faith and Fair Dealing

**JURY TRIAL DEMANDED**

Plaintiff Robert W. Ahlstrom (referred to as "Plaintiff"), on behalf of himself, all others similarly situated, complains and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class and representative action against defendant DHI Mortgage Company GP, Inc., a Delaware corporation; D.R. Horton, Inc., a Delaware corporation and Does 1 to 50, inclusive (collectively referred to as "Defendants") for alleged violations of the Labor Code and Business and Professions Code. As set forth below, Plaintiff alleges that Defendants (a) failed to provide him and all other similarly situated individuals with meal periods, (b) failed to provide them with rest periods, (c) failed to pay premium wages for missed meal and/or rest periods, (d) failed to pay them for all hours worked, (e) failed to pay overtime wages at the correct rate, (f) failed to pay double time wages at the correct rate, (g) failed to pay overtime and double time wages at the correct rate by failing to include all applicable remuneration in calculating the regular rate of pay, (h) failed to provide them with accurate written wage statements, (i) failed to timely pay them all of their final wages following separation of employment, (j) failed to comply with the Fair Labor Standards Act ("FLSA") (28 U.S.C. section 201, *et seq.*). In addition, Plaintiff alleges that Defendants breached the terms of its written agreement with Plaintiff and the putative class along with the implied convenant of good faith and fair dealing by not paying commissions for which Plaintiff and the putative class were the procuring cause and so were equitably entitled to be paid their commissions. Based on these alleged violations, Plaintiff now brings this class and representative action to recover unpaid wages, restitution, and related relief on behalf of himself, all others similarly situated, and the general public.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over the claims of Plaintiff and the putative class pursuant to 28 U.S.C. § 1331 because these claims seek redress for violation of the Plaintiff's and the putative class' federal statutory rights under the Fair Labor Standards Act (28 U.S.C. §§ 201, et seq.)

3. The Court has supplemental jurisdiction over Plaintiff's and putative class' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiff's and the putative class' federal law wage and hour claims that they form parts of the same case or

controversy under Article III of the United States Constitution.

4. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**PARTIES**

5. Plaintiff Robert W. Ahlstrom ("Plaintiff") is, and at all relevant times mentioned herein, an individual residing in San Jose, California, County of Santa Clara.

6. Plaintiff is informed and believes, and thereupon alleges that Defendant DHI Mortgage Company GP, Inc. is, and at all relevant times mentioned herein, a Delaware corporation doing business in the State of California.

7. Upon information and belief, DHI Mortgage's annual gross volume of business at all relevant times was not less than $500,000.

8. Upon information and belief, DHI Mortgage has been, at all relevant times, an enterprise engaged in commerce within the meaning of FLSA in that it (i) has or had employees engaged in commerce or in the production of goods for commerce and handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and its (ii) annual gross volume of sales or business is not less than $500,000.

9. Plaintiff is informed and believes, and thereupon alleges that Defendant D.R. Horton, Inc. is, and at all relevant times mentioned herein, a Delaware corporation doing business in the State of California.

10. Upon information and belief, D.R. Horton's annual gross volume of business at all relevant times was not less than $500,000.

11. Upon information and belief, DHI Mortgage has been, at all relevant times, an enterprise engaged in commerce within the meaning of FLSA in that it (i) has or had employees engaged in commerce or in the production of goods for commerce and handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and its (ii) annual gross volume of sales or business is not less than $500,000.

12. Plaintiff is ignorant of the true names, capacities, relationships, and extent of

participation in the conduct alleged herein, of the defendants sued as Does 1 to 50, inclusive, but is informed and believes that said defendants are legally responsible for the conduct alleged herein and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege both the true names and capacities of the Doe defendants when ascertained.

13. Plaintiff is informed and believes that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and that the acts of each defendant are legally attributable to each of the other defendants.

## CLASS ALLEGATIONS

14. This action has been brought and may be maintained as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

15. **Relevant Time Period**: The relevant time period is defined as the time period beginning four years prior to the filing of this action until judgment is entered.

16. The class and sub-class members are defined as follows:

**DHI Mortgage Class:** All persons employed by Defendants and/or any staffing agencies and/or any other third parties who worked as a loan officer in the United States during the **Relevant Time Period**.

> **DHI Mortgage Meal Period Sub-Class:** All **DHI Mortgage Class** members who worked a shift in excess of five hours during the **Relevant Time Period** in California.
>
> **DHI Mortgage Rest Period Sub-Class:** All **DHI Mortgage Class** members who worked a shift of at least three and one-half (3.5) hours during the **Relevant Time Period** in California.
>
> **DHI Mortgage Wage Statement Penalties Sub-Class:** All **DHI Mortgage Class** members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.
>
> **DHI Mortgage Waiting Time Penalties Sub-Class:** All **DHI Mortgage Class** members who separated from their employment in California with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.

**<u>DHI Mortgage Commission Sub-Class</u>:** All **DHI Mortgage Class** members who earned commissions in California during the **Relevant Time period** .

**<u>UCL Class</u>:** All **DHI Mortgage Class** members employed by Defendants in California during the **Relevant Time Period**.

17. **<u>Reservation of Rights</u>:** Pursuant to Rule of Court 3.765(b), Plaintiff reserves the right to amend or modify the class definitions with greater specificity, by further division into sub0-classes, and/or by limitation to particular issues.

18. **<u>Numerosity</u>:** The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes that the actual number exceeds the minimum required for numerosity under California law.

19. **<u>Commonality and Predominance</u>:** Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These common questions include, but are not limited to:

A. Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

B. Whether Defendants maintained a policy or practice of failing to provide employees with their rest periods;

C. Whether Defendants failed to pay premium wages to class members when they have not been provided with required meal and/or rest periods;

D. Whether Defendants failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law;

E. Whether Defendants used payroll formulas that systematically fail to account for non-discretionary bonuses and/or other applicable remuneration when calculating regular rates of pay for class members;

F. Whether Defendants failed to pay overtime wages to class members as a result of incorrectly calculating their regular rates of pay;

G. Whether Defendants have failed to pay premium wages to class members based on their respective "regular rates of compensation" by not including commissions and/or income in calculating the rates at which those wages are paid;

H. Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

I. Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

J. Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

K. Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition.

20. **Typicality:** Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes and thereon alleges that Defendants have a policy or practice of failing to comply with the Labor Code and the Business and Professions Code as alleged herein.

21. **Adequacy of Class Representative:** Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf. Plaintiff will fairly and adequately represent and protect the interests of the other class members.

22. **Adequacy of Class Counsel:** Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

23. **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously

and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of moneys owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

24. Plaintiff was hired by Defendants on or about July 2015 as an hourly, non-exempt employee who worked in California.

### Recording Hours Worked Based on Scheduled Hours

25. Plaintiff and the putative class were regularly scheduled to work eight hour shifts each workday, Monday through Friday.

26. Plaintiff and the putative class were required to utilize written timesheets to report hours worked on a weekly basis.

27. Plaintiff and the putative class regularly worked more than twelve hours each workday, Monday through Friday, with each workday consisting of more than ten consecutive hours.

28. Plaintiff and the putative class were only permitted to record the hours they were scheduled to work, even though they would regularly work more than their scheduled hours with their supervisors' knowledge and permission.

29. Plaintiff and the putative class were not permitted to record their actual hours worked and were threatened with disciplinary action by their supervisors if they recorded any overtime hours without explicit approval even though these same supervisors were aware of and had knowledge that they worked in excess of their scheduled work hours.

30. As a result of Defendants' practices and policies, Plaintiff and the putative class were required to perform substantial amounts of off-the-clock work that were not compensated by Defendants.

### On-Call Time

31. Plaintiff and the putative class were assigned to work mandatory on-call shifts during the last weekend of each month and was not compensated for this time.

32. Defendants assigned Plaintiff and the putative class to work mandatory on-call shifts by email sent to all employees informing them of the person selected to cover the on-call shift known as "Loan Officer on Duty."

33. Plaintiff and the putative class typically worked from home and were required to respond to all inquiries received during that weekend they were on-call.

34. Plaintiff and the putative class typically worked 2 to 4 hours each day during each on-call shift. During these mandatory on-call shifts, Plaintiff and putative class would work substantial amount of hours and was not compensated by Defendants.

35. Defendants knowingly assigned Plaintiff and the putative class to work on-call shifts but failed to pay them for this time.

### Missed Meal Periods

36. Plaintiff and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

37. As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their meal periods in order to complete their assignments on time.

### Missed Rest Periods

38. Plaintiff and the putative class members were not provided with rest periods of at

least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each est period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

39. As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their rest periods in order to complete their assignments on time.

**Regular Rate of Pay**

40. The regular rate of pay under California law includes all remuneration for employment paid to, on behalf of, the employee. This requirement includes, but is not limited, to, commissions and non-discretionary bonuses.

41. During the applicable limitations period, Defendants violated the rights of Plaintiff and the putative class under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, commissions and non-discretionary bonuses.

**Breach of Contract / Failure to Pay Commissions**

42. Plaintiff was hired by Defendants and was paid an hourly rate plus commissions on each loan transaction that he handled.

43. At the time of termination, Plaintiff had approximately $26,000 in commissionable transactions that were still pending and "in the pipeline."

44. Defendants terminated Plaintiff under false pretenses and claimed that Plaintiff failed to show up to work and that Plaintiff was a "no call / no show" to work.

45. Plaintiff believes that Defendants terminated him so that they did not have to pay Plaintiff his commissions.

46. Upon information and belief, Plaintiff alleges that Defendants' policy and/or practice is not to pay Plaintiff and the putative class for any commissions on loan transactions that have not closed within thirty (30) days after they are no longer employed with Defendants.

**Inaccurate Wage Statements**

47. Plaintiff and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code section 226.

48. Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that:

A. Any applicable meal and rest break premiums were not included;

B. Hourly and overtime wages for off-the-clock work were not included;

C. Time spent working on-call were not included;

D. Regular rate of pay was not properly calculated;

E. All commission wages were not paid.

49. Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that:

A. Hourly and overtime wages for off-the-clock work were not included;

B. Time spent working on-call were not included;

C. Regular rate of pay was not properly calculated.

50. Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that:

A. Any applicable meal and rest break premiums were not included;

B. Hourly and overtime wages for off-the-clock work were not included;

C. Time spent working on-call were not included;

D. Regular rate of pay was not properly calculated;

E. All commission wages were not paid.

51. Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that:

A. Hourly and overtime wages for off-the-clock work were not included;

B. Time spent working on-call were not included;

C. Regular rate of pay was not properly calculated.

**FIRST CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 204, 223, 226.7, 512 and 1198)**

**(By Plaintiff and DHI Mortgage Meal Break Sub-Class)**

52. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

53. At all relevant times, Plaintiff and the **DHI Mortgage Meal Break Sub-Class** members have been non-exempt employees of Defendants entitled to the full meal period protections of both the Labor Code and the Industrial Welfare Commission Wage Order 5-2001 ("Wage Order").

54. Labor Code section 512 and section 11 of the applicable Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of ten hours.

55. Labor Code section 226.7 and section 11 of the the applicable Wage Order both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

56. Compensation for missed meal periods constitutes wages within the meaning of the Labor Code section 200.

57. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

58. Section 11 of the applicable Wage Order states:

"No employer shall employ any person for a work period of more than

five (5) hours without a meal period of not less than 30 mninutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." 8 Cal. Code Regs. § 11040(11).

59. At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **DHI Mortgage Meal Break Sub-Class** members were not subject to valid on-duty meal period agreements with Defendants.

60. Plaintiff alleges that, at relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **DHI Mortgage Meal Break Sub-Class** with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 and the applicable Wage Order.

61. Plaintiff alleges that at all relevant times during the applicable limitations period and as matters of policy and practice, Defendants have failed to pay premium wages to **DHI Mortgage Meal Break Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

62. Plaintiff alleges that at all relevant times during the applicable limitations period and as matters of policy and practice, Defendants employed **DHI Mortgage Meal Break Sub-Class** members for shifts of ten (10) or more hours without providing them with second meal periods and without paying them premium wages, as required by Labor Code section 512 and the applicable Wage Order.

63. Moreover, Defendants written policies do not provide that employees must take their first meal break before the end of the fifth hour of work, that they are entitled to a second meal break if they work a shift of over ten (10) hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived.

64. At all relevant times, Defendants failed to pay Plaintiff and **DHI Mortgage Meal Break Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

65. Pursuant to Labor Code sections 204, 218.6 and 226.7, Plaintiff, on behalf of himself and the **DHI Mortgage Meal Break Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

66. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the **DHI Mortgage Meal Break Sub-Class** members, seeks to recover reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

## FAILURE TO PROVIDE REST PERIODS

**(Lab. Code §§ 204, 223, 226.7 and 1198)**

**(By Plaintiff and DHI Mortgage Rest Break Sub-Class)**

67. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

68. At all relevant times, Plaintiff and **DHI Mortgage Rest Break Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

69. Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four hour work period, or major portion thereof, that must be in the middle of each work period insofar as is practicable.

70. Labor Code section 226.7 and section 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees regular rate of pay, on each workday that the employee is not provided with the required rest period(s).

71. Compensation for missed rest periods constitutes wages within the meaning of the Labor Code section 200.

Case 3:19-cv-04338-EMC Document 17 Filed 08/22/19 Page 18 of 138

72. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

73. Plaintiff alleges that at relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **DHI Mortgage Rest Break Sub-Class** members with net rest periods of a least ten (10) minutes for each four (4) hour work period, or major portion thereof, as required by the Wage Order.

74. At all relevant times, Defendants failed to pay Plaintiff and other **DHI Mortgage Rest Break Sub-Class** members additional premium wages when required rest periods were not provided.

75. Specifically, Defendants written policies do not provide that employees may take a rest break for each four hours worked, or major fraction thereof, and that rest breaks should be taken in the middle of each work period insofar as practicable.

76. Plaintiff and the **DHI Mortgage Rest Break Sub-Class** members were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each est period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

77. As a result of Defendants' policy, Plaintiff and the **DHI Mortgage Rest Break Sub-Class** were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and **DHI Mortgage Rest Break Sub-Class** to work through their rest periods in order to complete their assignments on time.

78. Pursuant to Labor Code sections 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **DHI Mortgage Rest Break Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

79. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the

substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **DHI Mortgage Rest Break Sub-Class** members, seeks to recover reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

## FAILURE TO PAY HOURLY AND OVERTIME WAGES

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(By Plaintiff and DHI Mortgage Class)**

80. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

81. At all relevant times, Plaintiff and **DHI Mortgage Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Orders.

82. Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

83. Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

84. Labor Code section 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Orders.

85. Labor Code section 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

86. Labor Code section 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Orders for all hours worked during a payroll period.

87. Labor Code section 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person, to

pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

88. Labor Code section 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Order.

89. Labor Code section 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

90. Labor Code section 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

91. Labor Code section 510 and section 3 of the applicable Wage Order require employers to pay non-exempt employees overtime wages of no less than one and one-half times their respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and/or for the first eight hours worked on the seventh consecutive day of one workweek.

92. Labor Code section 510 and section 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times their respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during a workweek.

93. Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to him and **DHI Mortgage Class** members with respect to working conditions and compensation arrangements.

94. At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including, but not limited to, overtime work, at statutory and/or agreed rates by suffering or permitting him to work during unpaid meal periods, and/or by failing to properly pay Plaintiff and **DHI Mortgage Class** members all overtime hours worked.

95. Plaintiff is informed and believes that, at all relevant times and as matters of policy and/or practice, Defendants have failed also to pay hourly wages to **DHI Mortgage Class** members for all time worked, including, but not limited to, overtime work, at statutory and/or

agreed rates by suffering or permitting them to work during unpaid meal periods.

96. The regular rate of pay under California law includes all remuneration for employment paid to, on behalf of, the employee. This requirement includes, but is not limited, to, commissions and non-discretionary bonuses.

97. During the applicable limitations period, Defendants violated the rights of Plaintiff and the putative class under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, commissions and non-discretionary bonuses.

98. At all relevant times, Plaintiff and **DHI Mortgage Class** members have been non-exempt employees of Defendants and entitled to the full protections of both the Labor Code and the Wage Order.

99. Labor Code § 512 and Section 11 of the Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of five or more hours, and to provide them with two uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of more than ten hours.

100. Labor Code § 226.7 and Section 11 of the Wage Order prohibit an employer from requiring its employees to work during required meal periods and also require employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a meal period.

101. Section 12 of the Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four hour work period, or major portion thereof, that must be in the middle of each work period insofar as is practicable.

102. Labor Code § 226.7 and Section 12 of the Wage Order prohibit an employer from requiring its employees to work during required rest periods and also require

employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a rest period.

103. California law uses the terms "compensation" and "pay" interchangeably and requires that all applicable remuneration, including, but not limited to, commissions and non-discretionary bonuses, be included when calculating an employee's regular rate of pay.

104. At all relevant times, Defendants paid Plaintiff premium wages based on a rate of compensation that did not reflect, among other things, non-discretionary bonuses and/or shift differential pay as required by Labor Code § 226.7(b) and Sections 11 and 12 of the Wage Order on the occasions when Defendants paid him premium wages in lieu of meal and/or rest periods.

105. Plaintiff is informed and believes and thereon alleges that, at all relevant times, Defendants have maintained a policy and practice of paying **DHI Mortgage Class** members premium wages based on rates of compensation that have not reflected commissions and/or non-discretionary bonuses as required by Labor Code § 226.7(b) and Sections 11 and 12 of the Wage Order on the occasions when Defendants paid them premium wages in lieu of meal and/or rest periods.

106. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **DHI Mortgage Class** members, seeks to recover reasonable attorneys' fees.

**<u>FOURTH CAUSE OF ACTION</u>**

**FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS**

**(Lab. Code § 226)**

**(By Plaintiff and DHI Mortgage Wage Statement Penalties Sub-Class)**

107. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

108. Labor Code § 226(a) states in pertinent part the following:

> "(a) every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or

separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for an employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is aid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one time, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision."

109. Plaintiff is informed and believes that, at all relevant times, Defendants have failed to provide **DHI Mortgage Wage Statement Penalties Sub-Class** members with written wage statements as described supra in this complaint.

110. Plaintiff is informed and believes that Defendants' failures to provide him and **DHI Mortgage Wage Statement Penalties Sub-Class** members with accurate written wage statements have been intentional in that Defendants have the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that Defendants have known to not comply with Labor Code 226(a).

111. Plaintiff and **DHI Mortgage Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements has prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the

amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to state and federal government agencies.

112. Pursuant to Labor Code § 226(e), Plaintiff, on behalf of himself and **DHI Mortgage Wage Statement Penalties Sub-Class** members, seeks the greater of actual damages or $50.00 for the initial pay period in which a violation of Labor Code § 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of $4000.00 per class member, as well as awards of reasonable costs and attorneys' fees.

**FIFTH CAUSE OF ACTION**

**FAILURE TO TIMELY PAY ALL FINAL WAGES**

**(Lab. Code §§ 201-203)**

**(Plaintiff and DHI Mortgage Waiting Time Penalties Sub-Class)**

113. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

114. At all relevant times, Plaintiff and **DHI Mortgage Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendants, to timely payment of all wages earned and unpaid before termination or resignation.

115. At all relevant times, pursuant to Labor Code section 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

116. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving at least seventy-two (72) hours-notice of resignation have been entitled to payment of all final wages at the time of resignation.

117. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving less than seventy-two (72) hours-notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours of giving notice of resignation.

118. During the applicable limitations period, Defendants failed to pay Plaintiff all of his final wages in accordance with Labor Code section 201 by failing to timely pay

him all of his final wages.

119. Plaintiff is informed and believes that, at all relevant times, Defendants have failed to timely pay **DHI Mortgage Waiting Time Penalties Sub-Class** members all of their final wages in accordance with Labor Code sections 201 or 202.

120. Plaintiff is informed and believes that, at all relevant times, Defendants have maintained a policy or practice of paying **DHI Mortgage Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code sections 201 and 202 by failing to timely pay them all final wages.

121. Plaintiff is informed and believes that Defendants' failures to timely pay all final wages to him and **DHI Mortgage Waiting Time Penalties Sub-Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code sections 201 and 202 but have intentionally adopted policies or practice that are incompatible with those requirements.

122. Pursuant to Labor Code sections 203 and 218.6, Plaintiff, on behalf of himself and **DHI Mortgage Waiting Time Penalties Sub-Class** members, seeks waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of 30 days, and interest thereon.

123. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **DHI Mortgage Waiting Time Penalties Sub-Class** members, seeks awards of reasonable costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**

**UNFAIR COMPETITION**

**(Bus. & Prof. Code §§ 17200, *et seq.*)**

**(By Plaintiff and UCL Class)**

124. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

125. Business and Professions Code section 17200 defines "unfair competition" to

include any unlawful business practice.

126. Business and Professions Code sections 17203–17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure section 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

127. California law requires employers to pay hourly, non-exempt, employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonably should know that employees have worked.

128. Plaintiff and the UCL Class realleges and incorporates by reference the FIRST, SECOND and THIRD causes of action herein.

129. Plaintiff lost money or property as a result of the aforementioned unfair competition.

130. Defendants have, or may have, acquired money by means of unfair competition.

131. Plaintiff is informed and believes and theron alleges that, by committing the Labor Code violations described in this complaint, Defendants violated Labor Code sections 215, 216, 225, 226.6, 354, 408, 553, 1175, and/or 1199, which make it a misdemeanor to commit the Labor Code violations mentioned herein.

132. Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of five or more hours and by failing to pay non-exempt employee for all hours worked and by failing to reimburse them for all expenses.

133. At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees of Defendants and entitled to the full protections of both the Labor Code and the applicable Wage Order.

134. As stated above, Defendants have violated the Labor Code in multiple respects with regard to Plaintiff and **UCL Class** members, including but not limited to failing to pay them wages,

failing to reimburse them for expenses, failing to pay them premium wages, and failing to provide them with accurate wage statements, and failing to pay them all wages due upon separation of employment.

135. Defendants have, or may have, acquired money or property from **UCL Class** members by means of unfair competition in that Plaintiff is informed and believes and thereon alleges that Defendants have failed to pay Plaintiff and **UCL Class** members wages and premium wages in for missed meal and/or rest periods.

136. The unlawful conduct of Defendants alleged herein amounts to and constitutes unfair competition within the meaning of Business and Professions Code sections 17200, *et seq*. Business and Professions Code section 17200, *et seq*., protects against unfair competition and allows a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful, or fraudulent business practice to seek restitution on his own behalf and on behalf of other similarly situated persons in a class action proceeding.

137. As a result of Defendants' violations of the Labor Code during the applicable limitations period as alleged herein, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages. Specifically, Plaintiff has lost money or property as a result of the aforementioned conduct.

138. Plaintiff is informed and believes that other similarly situated persons have been subject to the same unlawful policies or practices of Defendants.

139. Due to its unfair and unlawful business practices in violation of the Labor Code as alleged herein, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations under the Labor Code.

140. Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of himself and the other members of the **UCL Class**, seeks declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

141. Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit

doctrine and/or the common fund doctrine, Plaintiff and the other members of the **UCL Class** are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PAY EMPLOYEES FOR ALL HOURS WORKED**

**IN VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT**

**(29 U.S.C. §§ 201, *et seq.*)**

142. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

143. At all material times herein, Plaintiff and all similarly situated **DHI Mortgage Class** members who submit "Consents to Become Party Plaintiffs" are or were employed by and engaged in providing services necessary to description of duties by Defendants, and have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

144. The FLSA requires, among other things, that employers pay employees the minimum wage for all time worked plus overtime. 29 U.S.C. §§ 206, 207, 215.

145. At all material times, the (example: start-end travel time, inspection time, and meeting time described above) is necessarily and directly related to the principal activities of the employee's duties, and thus constitutes compensable time under the FLSA and is subject to the FLSA's overtime requirements. 29 C.F.R. § 785.38.

146. At all material times herein, Defendants have violated the FLSA by failing to to pay Plaintiff for all hours worked and at the applicable rate of pay.

147. At all material times herein, Defendants have violated the FLSA by failing to pay **DHI Mortgage Class** at one-and-one-half (1.5) times the regular rate of pay when meeting time causes an employee's total hours worked to exceed forty (40) hours in a week.

148. Defendants have also violated the FLSA by failing to keep required, accurate records of all hours worked by **DHI Mortgage Class**. 29 U.S.C. § 2ll(c).

149. Plaintiffs and all similarly situated employees are victims of a uniform and entity-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to all employees employed by Defendants.

150. Plaintiffs and all similarly situated individuals are entitled to damages equal to the mandated pay and overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard of whether their conduct was prohibited by the FLSA.

151. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. Plaintiffs and other similarly situated individuals are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation, including overtime pay, and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

152. As a result of violations of the FLSA's minimum wage and overtime pay provisions, Defendants have unlawfully withheld compensation from Plaintiffs and all similarly situated individuals. Defendants are liable for unpaid compensation, together with an amount equal as liquidated damages, attorneys' fees and costs of this action. 29 U.S.C.§ 216(b).

**EIGHTH CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

**(By Plaintiff and DHI Mortgage Commission Class)**

153. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

154. On or about July 2015, Plaintiff entered into a written employment agreement with Defendants under which he was hired as a Loan Officer.

155. Pursuant to the express terms of this written agreement, Plaintiff was to be paid an hourly rate for all hours worked, plus commissions based on each funded loan transaction for which he was the procuring cause.

156. Plaintiff has performed all of his obligations, covenants, and conditions required of him under the written employment agreement, except to the extent any such obligations, covenants or conditions have been excused, prevented or waived by Defendants' acts or omissions.

157. Defendants have breached the written employment agreement by failing to pay Plaintiff the agreed upon hourly rate for all hours worked, in addition to not paying Plaintiff for all

commissions for each and every transaction for which he handled or performed substantial work.

158. Upon information and belief, Plaintiff alleges that Defendants' policy and/or practice is not to pay Plaintiff and the putative class for any commissions on loan transactions that have not closed within thirty (30) days after they are no longer employed with Defendants.

159. As a result of Defendants' conduct and breach as set forth above, Plaintiff and the putative class has been damagd in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(By Plaintiff and DHI Mortgage Commission Class)**

160. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

161. Plaintiff and the putative class entered into written contracts of employment with Defendants which sets forth the rights and obligations of each party. Every contract imposes the duty of good faith and fair dealing upon the parties in performance and enforcement of the contract.

162. Defendants have acted in bad faith by not giving equal consideration to the interests of Plaintiff and the putative class as they have their own interests. Defendants have wrongfully and intentionally breached the duty of good faith and fair dealing by denying Plaintiff and the putative class the benefits to which they are entitled to received under their respective employment agreements.

163. As a result of Defendants' conduct and breach as set forth above, Plaintiff and the putative class has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, prays for relief and judgment against Defendants as follows:

A. An order that the action be certified as a class action;

B. An order that Plaintiff be appointed class representative;

C. An order that counsel for Plaintiff be appointed class counsel;

D. Unpaid Wages;

E. Actual Damages;

F. Liquidated Damages;

G. Restitution;

H. Declaratory relief;

I. Pre-judgment interest;

J. Statutory penalties;

K. Civil penalties;

L. Costs of suit;

M. Reasonable attorneys' fees; and

N. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself, all others similarly situated, hereby demands a jury trial on all issues so triable.

Dated: August 2, 2017

SETAREH LAW GROUP

SHAUN SETAREH
Attorneys for Plaintiff
ROBERT W. AHLSTROM

# EXHIBIT 2

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
H. Scott Leviant (SBN 200834)
scott@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

Attorneys for Plaintiff
ROBERT W. AHLSTROM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>*Defendants.* | Case No.: 5:17-cv-04383-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO COMPEL ARBITRATION**<br><br>Date: March 1, 2018<br>Time: 9:00 a.m.<br>Place.: Courtroom 3, San Jose<br>Judge: Hon. Beth Labson Freeman<br><br>Complaint. Filed: August 2, 2017<br>Trial Date: None Set |

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

DISCUSSION .......... 2

II. DEFENDANT'S MOTION TO DISMISS MUST BE DENIED .......... 2

A. This Court Has Specific Personal Jurisdiction Over D.R. Horton Because D.R. Horton Has Purposefully Directed Its Activities at Forum Residents, and the Litigation Results From Alleged Injuries That Arise Out Of Those Activities, and the Exercise of Personal Jurisdiction Comports With Fair Play and Substantial Justice .......... 3

III. DEFENDANT'S MOTION TO COMPEL ARBITRATION MUST BE DENIED .......... 5

A. Pursuant to the Savings Clause of the FAA, the Class Action Waiver in Defendants' Arbitration Agreement Is Unenforceable Because It Violates Substantive Rights Protected by the National Labor Relations Act and the Norris-LaGuardia Act .......... 5

1. The National Labor Relations Act and the Norris-LaGuardia Act Were Created to Protect the Right of Workers to Engage in Mutual Protection .......... 5

2. Courts Have Recognized for Decades That Litigation Rights, a Form of Mutual Aid and Protection, Cannot be Waived by Contract .......... 5

3. The Seventh Circuit's Reasoning Is Also Persuasive .......... 7

4. The Agreement is Also Illegal Because It Precludes Arbitration of FLSA Actions .......... 8

5. The NLRB has Determined that Arbitration Agreements Barring Class and Collective Actions are Invalid Under the NLRA and its Interpretation of the Act is Entitled to Significant Deference .......... 8

B. Concerted and Collective Action Claims Are Not Severable and Therefore the Entire Agreement Cannot Be Enforced. .......... 10

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## FEDERAL DECISIONAL AUTHORITY

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ... 2

*Beth Israel Hosp. v. NLRB*, 437 U.S. 483 (1978) ... 9

*Brady v. National Football League*, 644 F.3d 661 (8th Cir. 2011) ... 6

*Bui v. Northrop Grumman Sys. Corp.*, No. 15CV1397-WQH-WVG, 2016 WL 7178921 (S.D. Cal. Dec. 9, 2016) ... 7,9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ... 2, 4

*Cashon v. Kindred Healthcare Operating, Inc.*, No. 16-CV-04889-RS, 2016 WL 6611031 (N.D. Cal. Nov. 9, 2016) ... 7

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ... 8, 9

*City of Arlington v. FCC*, 133 S.Ct. 1863 (2013) ... 9

*Dorchester Fin'l Securities, Inc. v. Banco BRJ, S.A.* (2nd Cir. 2013) 722 F. 3d 81 ... 2

*Gonzalez v. Ceva Logistics U.S., Inc.*, No. 16-CV-04282-WHO, 2016 WL 6427866 (N.D. Cal. Oct. 31, 2016) ... 12

*Idaho Bldg. & Construct Trades Council AFL-CIO v. Inland Pac. Chapter of Assoc. Builders & Contractors, Inc.*, 801 F.3d 950 (9th Cir. 2015) ... 9

*J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332 (1944) ... 9

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ... 9

*Lewis v. Epic Systems Corporation*, 823 F.3d 1147 (7th Cir. 2016) ... 1, 7

*Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 6462089 (N.D. Cal. Nov. 1, 2016) ... 7

*Menken v. Emm* (9th Cir. 2007) 503 F. 3d 1050 ... 4

*Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724 (1985) ... 5

*Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016) ... passim

*Nat'l Labor Relations Bd. v. Uber Techs., Inc.*, No. 16-MC-80057-SK, 2016 WL 6093231 (N.D. Cal. Oct. 19, 2016) ... 7

*National Licorice Co v. NLRB.*, 309 U.S. 350 (1940) ... 5

*NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822 (1984) ....................................................9
*NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775 (1990).................................................9
*NLRB v. Iron Workers*, 434 U.S. 335 (1978)........................................................................9
*Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013)...............................................10
*Sher v. Johnson*, 911 F. 2d 1357 (9th Cir. 1990)...............................................................4
*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).................................11
*Sutherland v. Ernst & Young*, 726 F.3d 290 (2d Cir. 2013)..............................................10
*T.M. Hylwa, M.D., Inc. v. Palka*, 823 F. 2d 310 (9th Cir. 1987)........................................4
*Totten v. Kellogg Brown & Root LLC*, 152 F.Supp.3d 1243 (C.D. Cal. 2016)...................6, 7
*Whitworth v. SolarCity Corp.*, No. 16-CV-01540-JSC, 2016 WL 6778662 (N.D. Cal. Nov. 16, 2016)..........................................................1, 2, 6, 12

**CALIFORNIA DECISIONAL AUTHORITY**

*Keene v. Harling*, 61 Cal. 2d 318 (1964) ........................................................................11
*Lewis v. Shell Oil Co.*, 220 Cal. 80, 29 P.2d 413 (1934).....................................................11
*Securitas Sec. Servs. USA, Inc. v. Superior Court of San Diego Cty.*, 234 Cal. App. 4th 1109 (2015) ..11
*Stern v. Sunset Road Oil Co.* 47 Cal. App. 334 (1920).......................................................11
*Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal. App. 3d 315 (1975) .....................................11

**FEDERAL STATUTES**

29 U.S.C. § 157........................................................................................................passim
29 U.S.C. § 158........................................................................................................5, 6
9 U.S.C. § 2..............................................................................................................2

**CALIFORNIA STATUTES**

Civil Code § 1670.5(a) .............................................................................................11

## I. INTRODUCTION

Defendant DHI MORTGAGE COMPANY GP, INC ("DHI") and D.R. HORTON, INC. ("D.R. Horton")(hereinafter collectively referred to as "Defendants") bring a Motion to Dismiss for Lack of Personal Jurisdiction and to Compel Arbitration. That Motion must be denied.

*First,* Defendant's statement that Plaintiff cannot establish specific personal jurisdiction over D.R. Horton is false. Fundamentally, Defendants' argument hinges on its contention that D.R. Horton has not purposefully directed its activities at residents of the forum. Plaintiff will demonstrate that D.R. Horton has engaged in substantial activities directed towards residents of California including but not limited to: transacting business in California, employing California residents, and directing advertising specifically towards California residents. Furthermore, because the litigation results from alleged injuries that arise out of D.R. Horton's activities in California, the burden shifts to D.R. Horton to demonstrate that the exercise of personal jurisdiction does not comport with notions of fair play and substantial justice. Defendants are unable to satisfy this burden and thus the exercise of personal jurisdiction by this Court is proper.

*Second,* the class action waiver that D.R. Horton asks this Court to enforce is illegal, containing a provision that violates federal laws. Fundamentally, the National Labor Relations Act ("NLRA") and the Norris-LaGuardia Act of 1932 ("NLGA"), 29 U.S.C. § 101, *et seq.*, created the right for workers to engage in "concerted activity" for the purpose of "mutual aid or protection." Individual workers are in a dramatically inferior bargaining position to their employers, so for the welfare of the community, and to promote economic health generally, workers need the opportunity to band together to negotiate more effectively with companies. The statutes attempt to level the playing field. Such "concerted activity" can take many forms, including unionization, lobbying government, litigation, etc. *Any* effort by an employer to interfere with, restrain, or coerce employees regarding this right to collective action is unlawful.

As the Ninth Circuit most recently held, "Concerted activity—the right of employees to act *together*—is the essential, substantive right established by the NLRA." *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 980 (9th Cir. 2016), citing 29 U.S.C. § 157; *see also, Lewis v. Epic Systems Corporation*, 823 F.3d 1147, 1154 (7th Cir. 2016) (discussing Section 7 and Section 8 of the NLRA). California federal courts concur with *Morris*: "SolarCity has not advanced any argument as to why *Morris's* conclusion regarding a class action waiver does not apply here and the Court can see none." *Whitworth v.*

*SolarCity Corp.*, No. 16-CV-01540-JSC, 2016 WL 6778662, at *3 (N.D. Cal. Nov. 16, 2016) (denial of SolarCity's motion to compel individual arbitration based on *Morris*). This Court should as well.

D.R. Horton's attempt to force *individual* arbitration upon Plaintiff here violates substantive protections of the NLRA. *Morris*, at 986 ("The rights established in § 7 of the NLRA—including the right of employees to pursue legal claims together—are substantive."); *Whitworth v. SolarCity*, 2016 WL 6778662, at *3. Thus, pursuant to application of the Federal Arbitration Act's ("FAA") savings clause, the agreement cannot be enforced: "When an illegal provision not targeting arbitration is found in an arbitration agreement, the FAA treats the contract like any other; the FAA recognizes a general contract defense of illegality." *Morris*, at 985, citing 9 U.S.C. § 2 and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, because the Agreement contains an illegal provision that D.R. Horton seeks to assert against Plaintiff, it is substantively unconscionable.

*Accordingly*, Defendant D.R. Horton's Motion to Dismiss for Lack of Personal Jurisdiction and to Compel Arbitration must be denied.

## DISCUSSION

## II. DEFENDANT'S MOTION TO DISMISS MUST BE DENIED

Plaintiff does not contest that general personal jurisdiction is lacking. However, D.R. Horton is subject to the *specific* personal jurisdiction of this Court. A court may exercise specific jurisdiction over a non-resident defendant only if the following requirements are met: (1) the defendant has purposefully directed its activities at residents of the forum; and (2) the litigation results from the alleged injuries that arise out of or relate to those activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985). In opposing Defendants' motion to dismiss, Plaintiff is only required to make a "prima facie" showing of jurisdictional facts to establish personal jurisdiction and the court will draw all reasonable inferences in Plaintiff's favor. *Dorchester Fin'l Securities, Inc. v. Banco BRJ, S.A.* (2nd Cir. 2013) 722 F. 3d 81, 84. Plaintiff will demonstrate that all three requirements are met and thus D.R. Horton is subject to the specific jurisdiction of this forum.

///

**A. This Court Has Specific Personal Jurisdiction Over D.R. Horton Because D.R. Horton Has Purposefully Directed Its Activities at Forum Residents, and the Litigation Results From Alleged Injuries That Arise Out Of Those Activities, and the Exercise of Personal Jurisdiction Comports With Fair Play and Substantial Justice**

In its' moving papers, D.R. Horton asserts that they have not purposefully directed its activities at California residents. D.R. Horton declarant David T. Morice ("Morice") states "D.R. Horton, Inc. does not do, nor has it ever done, business in California." (*See* Morice Decl.,¶ 3.) In the same paragraph, Morice elaborates further by stating "D.R. Horton, Inc. does not construct or sell any homes in California and has never done so." *Id.* There is serious doubt as to the truth of Morice's statements. D.R. Horton's website, which can be accessed on the public domain at www.drhorton.com, advertises the sale of homes in numerous states including but not limited to Texas, Florida, Arizona, Nevada, and *California.* Moreover, D.R. Horton's website is not merely advertising the sporadic sale of one or two homes in California. Their website advertises the sale of numerous homes and communities covering Northern, Southern, and Central California. No less than ten different California regions are advertised as having homes for sale, including but not limited to: Sacramento, Bay Area, Central Valley, Orange County, Los Angeles, and Inland Empire. In the Inland Empire alone, D.R. Horton's website advertises 22 available communities for prospective homeowners to peruse. Unless Defendants' contention is that their website contains false and misleading information, the reasonable inference is that D.R. Horton does business in California.

Defendants also contend that they do not have any business operations in California nor do they transact any business in California. Declarant Morice states "D.R. Horton, Inc. has no employees or directors in California." *Id.* at ¶ 4. However, D.R. Horton's website lists numerous job openings in California, all of which were posted within the last year. Plaintiff has difficulty understanding why a company that has no employees in California would seek potential employees to fill such jobs. Declarant Morice also states that "D.R. Horton, Inc. has no offices, operations, or real property in California, and does not rent or lease any property in California. Additionally, D.R. Horton, Inc. has no telephones, telephone listings, bank accounts, or other assets in California." *Id.* at ¶5. Once again, the information on their website directly rebuts Morice's statement. According to its' website, D.R. Horton

maintains five offices in California. Each office has an address, phone number, and fax number listed. For all the reasons listed above, D.R. Horton has purposefully directed its activities at California residents.

The second requirement that the litigation results from the alleged injuries that arise out of or relate to defendants activities in the forum is also satisfied. Plaintiff worked in California. (*See* Complaint ¶ 24). All of Plaintiff's claims relate to his employment with Defendants and Defendants' activities in California.

The final requirement that the exercise of personal jurisdiction must comport with notions of fair play and substantial justice is also met. Where, as here, the defendant has purposefully directed its activities to the forum, personal jurisdiction is presumptively reasonable. *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F. 2d 310, 315 (9th Cir. 1987). As the Defendant, the burden is on D.R. Horton to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Menken v. Emm* (9th Cir. 2007) 503 F. 3d 1050, 1057. Here, D.R. Horton fails to present a compelling case. Defendants simply conclude that requiring them to litigate in this forum would be especially burdensome because none of its directors or employers reside or are domiciled in California. It is not enough for a party to demonstrate that another forum is more reasonable. *Burger King*, 271 U.S. at 478. Instead, D.R. Horton must show that jurisdiction in California would make the litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* In *Sher v. Johnson*, the Defendant, like D.R. Horton, argued that their witnesses and expert witnesses were not located in California and thus the California court could not exercise personal jurisdiction over Defendant. 911 F. 2d 1357, 1364 (9th Cir. 1990). The Court held that Defendant failed to show a "severe disadvantage" and thus the exercise of personal jurisdiction was proper. *Id.* at 1365. Similarly, here D.R. Horton has failed to show that they are at a severe disadvantage. Thus, the notions of fair play and substantial justice are satisfied.

///

///

///

///

///

///

# III. DEFENDANT'S MOTION TO COMPEL ARBITRATION MUST BE DENIED

## A. Pursuant to the Savings Clause of the FAA, the Class Action Waiver in Defendants' Arbitration Agreement Is Unenforceable Because It Violates Substantive Rights Protected by the National Labor Relations Act and the Norris-LaGuardia Act

### 1. The National Labor Relations Act and the Norris-LaGuardia Act Were Created to Protect the Right of Workers to Engage in Mutual Protection

The NLGA, enacted in 1932, established as "the public policy of the United States" that individual employees have the right to be "free from the interference, restraint, or coercion of employers" in engaging in "concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 102. The NLGA also states, unequivocally, that "[a]ny undertaking or promise . . . in conflict with" that policy is "contrary to the public policy of the United States [and] *shall not be enforceable in any court* of the United States." 29 U.S.C. § 103 (emphasis added).

Three years later, Congress reiterated those central principles of federal labor policy in the NLRA. Section 7 of the National Labor Relations Act states that "[e]mployees shall have the right . . . to engage in other concerted activities for the purpose of collective bargaining or other aid or protection." 29 U.S.C. § 157. Pursuant to Section 8 of the National Labor Relations Act it is "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in [Section 7.]" 29 U.S.C. § 158(a)(1). *See also Murphy Oil USA, Inc.*, 361 NLRB No. 72, 2014 WL 5465454 (Oct. 28, 2014) at *1, *9-10, *13 (describing statutory basis and history of right to engage in concerted activity).

Both statutes were enacted to address the enormous disparity of bargaining power that leaves individual employees unable to meaningfully improve the terms and conditions of their employment. *See Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 753-54 (1985). Individual workers banding together generally provides the only realistic hope of leveling the playing field.

### 2. Courts Have Recognized for Decades That Litigation Rights, a Form of Mutual Aid and Protection, Cannot be Waived by Contract

75 years ago, the Supreme Court held that contracts which require the waiver of rights guaranteed by the NLRA are unlawful. *National Licorice Co v. NLRB.*, 309 U.S. 350, 365 (1940). The fact that rights

established under the NLGA and section 7 of the NLRA cannot be waived by any contract, including any agreement purporting to require individual arbitration of claims, was recently reaffirmed by the Ninth Circuit:

> The rights established in § 7 of the NLRA—including the right of employees to pursue legal claims together—are substantive. They are the central, fundamental protections of the Act, so the FAA does not mandate the enforcement of a contract that alleges their waiver. The text of the Act confirms the central role of § 7: that section establishes the "*Right* of employees as to organization." 29 U.S.C. § 157 (emphasis added). No other provision of the Act creates these sorts of rights. Without § 7, the Act's entire structure and policy flounder. For example, § 8 specifically refers to the "exercise of the rights guaranteed in section 157." 28 U.S.C. § 158; *Bighorn Beverage*, 614 F.2d at 1241 ("Section 8(a)(1) of the Act implements [§ 7's] guarantee").
>
> The Act's other enforcement sections are similarly confused without the rights established in § 7. *See, e.g.*, 29 U.S.C.§ 160 (providing powers of the Board to prevent interference with rights in § 7). There is no doubt that Congress intended for § 7 and its right to "concerted activities" to be the "primary substantive provision" of the NLRA. *See Gilmer*, 500 U.S. at 24, 111 S.Ct. 1647. For this reason, ***the right to concerted employee activity cannot be waived in an arbitration agreement.***

*Morris*, 834 F.3d at 986 (emphasis added). Here, the arbitration agreement attempts to preclude all forms of collective, class, and representative actions by employees:

> This Agreement prohibits the arbitration from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.

(Agreement, at Part7.) Thus, the class action waiver in the arbitration agreement is unenforceable, by operation of the NLRA, and the Savings Clause of the FAA, that recognizes illegality of an agreement as a lawful bar on enforcement of an arbitration agreement.

While *Morris* is sufficient to control the outcome here, *Morris* is not alone. *Whitworth v. SolarCity Corp.*, No. 16-CV-01540-JSC, 2016 WL 6778662 (N.D. Cal. Nov. 16, 2016), mentioned above, held that *Morris* applied to bar the employer's effort to enforce its class, collective, and representative action waiver. In *Brady v. National Football League*, 644 F.3d 661, 673 (8th Cir. 2011), the Eighth Circuit said: "A lawsuit filed in good faith by a group of employees to achieve more favorable terms and conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act." In *Totten v. Kellogg Brown & Root LLC*, 152 F.Supp.3d 1243, 1262 (C.D. Cal. 2016) the district

court concluded that class action waivers are a protected form of collective action under the NLRB: "Given the myriad forms that protected collective action can take, Defendants cite to no authority that can provide a reasoned basis why the Court should create a special carve-out for concerted *legal* activity and deem that particular form of concerted action unprotected activity." In *Totten*, just as in *Morris*, the district court also reasoned that the FAA does not affect the illegality analysis because the Savings Clause of the FAA explicitly provides that unlawful arbitration agreements should not be enforced, eliminating the need for any conflict of law analysis. *Id.* at 1264.

Shortly before *Morris* was decided, the United States Court of Appeals for the Seventh Circuit reached the same conclusion in *Lewis v. Epic Systems Corporation*, 823 F.3d 1147, 1154 (7th Cir. 2016) explaining as follows:

> Congress was aware of class, representative, and collective legal proceedings when it enacted the NLRA. The plain language of Section 7 encompasses them, and there is no evidence that Congress intended them to be excluded. Section 7's plain language controls, and protects collective legal processes. Along with Section 8, it renders unenforceable any contract provision purporting to waive employees' access to such remedies.

Since the arbitration agreement here purported to require the waiver of concerted action rights protected by the NLRA, this Court should follow *Morris* and *Lewis* (as well as the decisions of the NLRB) and refuse to enforce the class action waiver. *See, e.g., Bui v. Northrop Grumman Sys. Corp.*, No. 15CV1397-WQH-WVG, 2016 WL 7178921, at *5 (S.D. Cal. Dec. 9, 2016) (granting motion for reconsideration in light of *Morris* and reversing rulings related to compelled arbitration); *Cashon v. Kindred Healthcare Operating, Inc.*, No. 16-CV-04889-RS, 2016 WL 6611031, at *2 (N.D. Cal. Nov. 9, 2016) (stay denied, as arbitration agreement unenforceable following *Morris*); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 6462089, at *1 (N.D. Cal. Nov. 1, 2016) (arbitration agreement invalid under *Morris*); *Nat'l Labor Relations Bd. v. Uber Techs., Inc.*, No. 16-MC-80057-SK, 2016 WL 6093231, at *6 (N.D. Cal. Oct. 19, 2016) (recognizing the NLRB position is in accord with *Morris*).

### 3. The Seventh Circuit's Reasoning Is Also Persuasive

In *Lewis*, the Seventh Circuit was faced with an identical scenario to the one at hand. There, the plaintiff-appellee employee was compelled to sign an arbitration agreement that barred him from bringing

class suits against his employer and instead required him to proceed with any action in individual arbitration. *Lewis*, 823 F.3d at 1151. Instead, the employee sued his employer in district court. *Id.* The defendant-appellant employer moved to compel arbitration, and the district court denied the motion. *Id.* On appeal, the Seventh Circuit affirmed. It determined that arbitration agreements that prohibit employees from pursuing representative and class suits and other forms of collective relief are unlawful under Sections 7 and 8 of the NLRA and therefore unenforceable under the FAA pursuant to its savings clause, 9 U.S.C. § 2. Lewis, at 1156-60.

In particular, the Lewis court determined that the NLRA's ban on an employer restricting an employee's right to "concerted activities" unambiguously includes a bar on restricting class suits, *id.* at 1153-54, and that even if it were ambiguous, the NLRA's interpretation of the term "concerted activities" to include class lawsuits is entitled to Chevron deference, *id.* at 1153. The court further held that the FAA and NLRA do not conflict because the FAA's savings clause carves out invalid contracts. *Id.* at 1157. The Court also determined that the right to class or collective action is a substantive right that cannot be waived under the FAA. *Id.* at 1160. Notably, Chief Judge Wood explicitly stated in the opinion that it was reviewed by all nine active Seventh Circuit judges, and no judge expressed a desire to hear the case *en banc*. *See id.* at 1157 n †.

**4. The Agreement is Also Illegal Because It Precludes Arbitration of FLSA Actions**

The arbitration agreement here not only waives class actions, it also waives all forms of representative proceedings. Such types of proceedings include collective actions under §216(b) of the Fair Labor Standards Act ("FLSA"), which existed prior to 1935. Thus, the existence of the FLSA at the time the NLRA and NLGA were enacted provides further confirmation that the provisions of the NLRA and NLGA that safeguard "concerted activity" contemplated that joint litigation fell within that zone protection.

**5. The NLRB has Determined that Arbitration Agreements Barring Class and Collective Actions are Invalid Under the NLRA and its Interpretation of the Act is Entitled to Significant Deference**

When Congress enacted the NLRA, it delegated authority to the NLRB to construe and apply the

Act. *See NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990). Any contract or policy that violates these principles of federal labor law is unenforceable. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) ("It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it."); *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 337 (1944) (courts may not enforce individual employment contract provisions that violate the NLRA); *see also* 29 U.S.C. §§ 103, 104(d).

Congress delegated to the NLRB the task of interpreting and applying the NLRA in furtherance of national labor policy. See 29 U.S.C. §§ 153-156. As the Supreme Court has reiterated, responsibility for construing Section 7 "is for the Board to perform in the first instance," and "on an issue that implicates its expertise in labor relations, a reasonable construction by the Board is entitled to considerable deference." *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 829-30 (1984) (citing *Eastex*, 437 U.S. at 568); *see also NLRB v. Iron Workers*, 434 U.S. 335, 350 (1978)); *accord Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500-01 (1978). This same degree of deference is owed whether or not the Board is an actual party and whether or not a Board order is directly under review. *See, e.g., Idaho Bldg. & Construct Trades Council AFL-CIO v. Inland Pac. Chapter of Assoc. Builders & Contractors, Inc.*, 801 F.3d 950, 962 (9th Cir. 2015) ("Because *Garmon* preemption turns on what the NLRA actually or arguably requires (or prohibits) . . . we look principally to the decisions of the NLRB") (emphasis in original). To ignore "the views of the agencies responsible for enforcing [the statute], would be to 'embar[k] upon a voyage without a compass.'" *Mead Corp v. Tilley*, 490 U.S. 714, 726 (1989).

In a series of decisions beginning with *D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (2012), *rev'd in part*, 737 F.3d 344 (5th Cir. 2013), the NLRB has consistently interpreted the NLRA (and NLGA) to prohibit employers from forcing their employees to arbitrate claims against them on an individual basis because the phrase "concerted activities" includes the prosecution of representative suits.4 The NLRB's consistent construction of Section 7 of the NLRA in the line of cases beginning with D.R. Horton is controlling under settled principles of administrative deference. *See City of Arlington v. FCC*, 133 S.Ct. 1863, 1868-71 (2013) (agency's interpretation of statute within its expertise may be rejected only if "foreclose[d]" by the statutory text); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984). In *Lewis*, the Seventh Circuit confirmed these principles, determining that if

there were any ambiguity in the phrase "concerted activity," such ambiguity would have to be resolved in favor of the NLRB's interpretation of the term to include class, collective, and representative suits. *Lewis*, 823 F.3d at 1153.

None of the appellate decisions that have expressed disagreement with or questioned the NLRB's *D.R. Horton* line of cases has taken issue with the NLRB's determination that an employer's express ban on a category of concerted activity violates the NLRA (and NLGA). *See Murphy Oil*, 2015 WL 6457613; *D.R. Horton*, 737 F.3d at 356-57; *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-54 (8th Cir. 2013). *See also Cellular Sales of Missouri, LLC v. NLRB*, 2016 WL 3093363 (8th Cir. June 2, 2016); *Sutherland v. Ernst & Young*, 726 F.3d 290, 297 n.8 (2d Cir. 2013). This first part of the Board's decision is solidly rooted in a long and unbroken line of cases stretching back more than 70 years, in which employees have been held entitled to avail themselves of their Section 7 right to act in concert to seek enforcement of their workplace rights.

Accordingly, there is little question that under settled principles of statutory construction, and deference to administrative agencies, the NLRA bars an employer from forcing its employees to eschew representative, class, and collective actions regarding their employment. As the Seventh Circuit explained:

> [Defendant]'s clause runs straight into the teeth of Section 7. The provision prohibits any collective, representative, or class legal proceeding. Section 7 provides that "[e]mployees shall have the right to . . . engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

*Lewis*, 823 F.3d at 1155. Likewise, there is no question that the arbitration agreement that D.R. Horton seeks to enforce runs straight into the "teeth" of the NLRA (and NLGA).[1]

**B. <u>Concerted and Collective Action Claims Are Not Severable and Therefore the Entire Agreement Cannot Be Enforced.</u>**

The class and representative claim waiver within the Agreement cannot be severed, since doing so would negate a core purpose of Defendant's illegal contract, a purpose confirmed by the nature of the relief requested: an order compelling *individual* arbitration. California law grants courts the discretion

[1] Because the NLGA uses identical language to the NLRA in protecting employees' "concerted activities . . . for the purposes of mutual aid or protection," it likewise bars class waiver arbitration agreements like D.R. Horton seeks to enforce here.

either to sever an unconscionable provision or refuse to enforce the contract in its entirety. Cal. Civ. Code § 1670.5(a). The Court should be disinclined to server the unlawful provisions form the agreement to do so would lead to an absurd result. The rule relating to severability of partially illegal contracts is that a contract is severable if the court can, consistent with the intent of the parties, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side." *Keene v. Harling*, 61 Cal. 2d 318, 320–321 (1964) (footnote omitted); *see also Lewis v. Shell Oil Co.*, 220 Cal. 80, 29 P.2d 413 (1934). Thus, a contract is not divisible "where there is a showing that it was the intention of the parties to treat [their] agreement as an entire contract, and where it appears that their engagements would not have been entered into except upon the clear understanding that the full object of the contract should be performed...." *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal. App. 3d 315, 326 (1975); *see also Stern v. Sunset Road Oil Co.* 47 Cal. App. 334, 340 (1920).

The agreement here includes a combined waiver of class and representative class claims. (Agreement, at Part 5.) The central purpose of this agreement is to prevent the aggregation of group claims in any form. In *Securitas Sec. Servs. USA, Inc. v. Superior Court of San Diego Cty.*, 234 Cal. App. 4th 1109 (2015), however, the Court of Appeal found that an arbitration agreement with a broad anti-class action waiver included, by implication, a nonseverable PAGA waiver which was unenforceable on public policy grounds. 234 Cal. App. 4th at 1127. The agreement in *Securitas* had a severability provision, but stated that if the class action waiver provision was declared void, the court should interpret the agreement as if no class action waiver provision existed. Presumably *Securitas* was relying on the default prohibition against class action arbitrations as expressed by the Supreme Court in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).

Instead, the California Court of Appeals held that the dispute resolution provision, which enmeshed a class action waiver with a waiver of the right to bring representative claims, was not truly divisible from the agreement:

> The dispute resolution agreement, therefore, is not divisible, but presents an all-or-nothing proposition: when a Securitas employee asserts class, collective or representative claims, either the employee foregoes his or her right to arbitrate such claims, or the entire agreement to arbitrate disputes.

*Securitas*, at 1127. Here, there is no basis for determining that the waiver of class and representative

claims is severable. Therefore, the motion to compel *individual* arbitration should be denied.

Beyond the impossibility of severing a waiver of the class claims from the Agreement, the supposed savings provision, if applied here, would lead to an utterly absurd result. Because the wavier of class claims constitutes an unlawful interference with the protected, substantive right to engage in concerted activity, and because PAGA claims are protected from waiver by virtue of their nature as claims possessed by the State of California, the savings provision purports to require Plaintiff to litigate PAGA claims in court, but pursue class and other representative claims in arbitration. Courts have recognized that such a result would still intrude upon protected Section 7 rights:

> That argument is without merit because compelling Echevarria to arbitrate his individual claims effectively would preclude him from pursuing class claims. *See Whitworth v. SolarCity Corp.*, No. 16-CV-01540-JSC, 2016 WL 6778662, at *4 (N.D. Cal. Nov. 16, 2016) (clause which would compel the plaintiff to resolve his claims individually rather than collectively is unenforceable for the same reason as class action waiver); *Gonzalez*, 2016 WL 6427866, at *7 ("[I]f the arbitration agreement is enforced, even without the class waiver, Gonzalez would still be limited to pursuing individual actions in arbitration. And under *Morris*, such a procedure would violate the NLRA by preventing Gonzalez from pursing her employment claims through collective action.").

*Echevarria v. Aerotek, Inc.*, No. 16-CV-04041-BLF, 2017 WL 24877, at *3 (N.D. Cal. Jan. 3, 2017). And another Court concluded:

> Enforcing Real Time's arbitration agreement, without the class waiver, would still run afoul of *Morris* because the parties cannot be compelled to submit to class arbitration. There is no contractual basis for compelling Real Time and its employees to arbitrate joint, collective, and class claims because the arbitration agreement affirmatively attempts to bar them. An arbitrator would overstep her authority by compelling the parties to submit to arbitration on such claims. This means that **if the arbitration agreement is enforced, even without the class waiver, Gonzalez would still be limited to pursuing individual actions in arbitration. And under *Morris*, such a procedure would violate the NLRA by preventing Gonzalez from pursing her employment claims through collective action.**

*Gonzalez v. Ceva Logistics U.S., Inc.*, No. 16-CV-04282-WHO, 2016 WL 6427866, at *7 (N.D. Cal. Oct. 31, 2016) (boldface emphasis added). How dual track litigation could ever occur without prejudicing both Plaintiff and the putative class and violating protected Section 7 rights is not specified in the agreement and not explained by D.R. Horton because it has no explanation that can withstand any scrutiny.

Because severance cannot rationally occur here, the entire agreement should be deemed unenforceable due to illegality.

## IV. CONCLUSION

For the reasons discussed above, the Court should deny Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and to Compel Arbitration entirety and deny the request to stay the matter.

Respectfully submitted,

Dated: November 3, 2017

**SETAREH LAW GROUP**

By: ______________________

Shaun Setareh
H. Scott Leviant

Attorneys for Plaintiff
ROBERT W. AHLSTROM

# EXHIBIT 3

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC.
and D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:17-cv-04383-BLF

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION**

| | |
|---|---|
| Date: | November 8, 2018 |
| Time: | 9:00 a.m. |
| Place: | Courtroom 3, San Jose |
| Complaint Filed: | August 2, 2017 |
| Trial Date: | None |
| District Judge: | Hon. Beth Labson Freeman<br>Courtroom 3, San Jose |

**TO PLAINTIFF ROBERT W. AHLSTROM AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 8, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard in the above captioned Court, located at 280 South 1st Street, San Jose, California 95113, Defendants DHI Mortgage Company GP, Inc. and D.R. Horton, Inc. (collectively "Defendants") shall and hereby do move the Court for an order, pursuant to the Federal Arbitration Act (9 U.S.C. § 3) and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), staying the instant action and compelling Plaintiff to arbitrate his claims on an individualized basis, dismissing

Case 5:17-cv-04383-BLF Document 17 Filed 07/21/18 Page 2 of 33

Plaintiff's class and collective action allegations, and staying the instant action to permit the parties to complete arbitration.

This Motion is based upon the following grounds:

1. The Parties entered into a Mutual Arbitration Agreement ("MAA") which expressly provides that they must arbitrate "all legal disputes and claims between them . . ." Plaintiff's claims relate to his employment and, therefore, fall within the definition of arbitrable claims pursuant to the MAA. The MAA is valid, not unconscionable, and complies with California and federal law. Moreover, an earlier version of the MAA has previously been enforced resulting in the employee being compelled to arbitration. *See Gillespie v. Western Pacific Housing Management, Inc.*, No. D066354, 2014 WL 7195024 (Cal. Court App. 4th. Dec. 18, 2014).

2. In May 2018, the Supreme Court issued its ruling in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018) which established definitively that class action waivers in arbitration agreements must be enforced, and that neither the FAA's saving clause nor the National Labor Relations Act ("NLRA") may be invoked to avoid arbitration on an individual basis.

Accordingly, because the MAA is enforceable and encompasses Plaintiffs' claims, this Court should, pursuant to the FAA, compel Plaintiff to arbitrate his claim upon an individualized basis.

This Motion will be based on this Notice, the Memorandum of Points and Authorities; the Declarations of Alexandra Aurisch, Jennifer L. Katz, Paula Hunter-Perkins, Brad Conlon, and Mark Winter; the accompanying Request for Judicial Notice; the records and files herein; and such oral and documentary evidence as may be presented at the hearing.

/ / /

/ / /

/ / /

DATED: September 11, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Alexandra Aurisch
Jack S. Sholkoff
Jennifer L. Katz
Alexandra Aurisch

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC. and D.R. HORTON, INC.

# Table of Contents

Page

I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 1

A. Plaintiff Voluntarily Agrees To Arbitrate Any Claims He May Possess Against DHI Ltd. ........ 1

B. The MAA Constitutes A Fair And Enforceable Arbitration Agreement. ........ 3

C. Plaintiff Knowingly Breached The MAA By Filing This Complaint And Refusing To Arbitrate His Claims. ........ 4

D. The United States Supreme Court Holds That Class Action Waivers In Arbitration Agreements In Employment Contracts Remain Enforceable Pursuant To The Federal Arbitration Act. ........ 6

III. THIS COURT SHOULD DISMISS THE ACTION ENTIRELY, OR DISMISS THE CLASS ACTION ALLEGATIONS AND COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS UPON AN INDIVIDUALIZED BASIS ........ 6

A. The FAA Applies To The MAA. ........ 6

B. The MAA's Class Action Waiver Is Fully Enforceable Under *Epic Systems*. ........ 8

C. Because The MAA Contains A Delegation Clause Regarding Non-Class Action Waiver Issues, This Court Must Compel The Matter To Arbitration Even If The Parties Dispute Arbitrability. ........ 9

D. The Agreement Is Not Unconscionable. ........ 10

1. The Agreement is Not Procedurally Unconscionable. ........ 11

2. The Agreement Is Not Substantively Unconscionable. ........ 12

E. The MAA Is Enforceable And Applies To Plaintiffs' Claims. ........ 13

1. Plaintiff Agreed To Individual Arbitration Of Any Claims Arising From His Employment. ............................ 14

2. The MAA Is A Valid Arbitration Agreement.................... 14

IV. THE OPT-OUT PROVISION IN THE MAA DOES NOT RENDER THE ARBITRATION AGREEMENT UNENFORCEABLE......................................................................... 16

A. Plaintiff's Interpretation Of The Opt-Out Provision Is Contrary To Contract Law Principles Pertaining To Contract Formation....................................................................... 17

B. Principles of Contract Interpretation Support Enforceability of the MAA......................................................... 18

C. The MAA Mandates Reading The Agreement As A Whole and According To Its Fair Meaning. ................................ 20

V. CONCLUSION............................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .......... 7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 8

*AT&T Technologies, Inc. v. Communications Workers*,
475 U.S. 643 (1986) .......... 10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 7, 10

*California v. Hodari D.*,
499 U.S. 621 (1991) .......... 17

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
94 F. Supp. 3d 1078 (C.D. Cal. 2015) .......... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 8, 9

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 7

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 7

*Clayborne v. Lithia Motors, Inc.*,
No. 1:17-CV-0588-AWI-BAM, 2017 WL6017009 (E.D. Cal. Dec. 5, 2017) .......... 10

*Epic Systems Corp. v. Lewis*,
138 S.Ct. 1612 (2018) .......... *passim*

*Galvan v. Michael Kors USA Holdings, Inc.*,
No. CV1607379BROAFMX, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017) .......... 11

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 13

*Jasso v. Money Mart Express, Inc.*,
879 F. Supp. 2d 1038 (N.D. Cal. 2012) .......... 8

*Kilgore v. Keybank Nat. Ass'n*,
673 F.3d 947 (9th Cir. 2012) .......... 9

*Morris v. Ernst & Young, LLP*,
834 F.3d 975 (9th Cir. 2016), *cert. granted* 137 S. Ct. 809 (2017) .......... 5

*Moses Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 8

*Powertech Tech. Inc. v. Tessera, Inc.*,
No. 4:10-CV-00945-CW, 2014 WL 2538973 (N.D. Cal. June 5, 2014) .......... 19

*Quevedo v. Macy's, Inc.*,
798 F. Supp. 2d 1122 (C.D. Cal. 2011) .......... 12

*Stolt-Nielsen v. Animalfeeds Int'l Corp.*,
130 S. Ct. 1758 (2010) .......... 8

**California Cases**

*Abramson v. Juniper Networks, Inc.*,
115 Cal. App. 4th 638 (2004) .......... 13

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal. 4th 83 (2000) .......... *passim*

*Artukovich v. Pacific States Cast Iron Pipe Co.*,
78 Cal. App.2d 1 (1947) .......... 18

*Aviation Data, Inc. v. Am. Express Travel Related Servs. Co., Inc.*,
152 Cal. App. 4th 1522 (2007) .......... 7

*Broome v. Broome*,
104 Cal. App. 2d 148 (1951) .......... 19

*Corporate Group Holdings, LLC v. Keck*,
232 Cal.App.4th 294 (2014) .......... 17

*Cortez v. Doty Bros. Equip. Co.*,
15 Cal. App. 5th 1 (Ct. App. 2017) .......... 20

*Estate of Crossman*,
231 Cal.App.2d 370 (1964) .......... 17

*Devencenzi v. Donkonics*,
170 Cal.App.2d 513 (1959) .......... 17

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) .......... 12

*Fitz v. NCR Corp.*,
118 Cal. App. 4th 702 (2004) .......... 11

*Flores v. Transamerica HomeFirst, Inc.*,
93 Cal. App. 4th 846 (2001) .......... 11

*Ganahl Lumber Co. v. Thompson*,
205 Cal. 354 (1928) .......... 19

*Kinecta Alternative Fin. Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506 (2012) .......... 8

*Estate of Klauenberg*, 32 Cal. App. 3d 1067 (Ct. App. 1973) .......... 18

*Malone v. Superior Court*, 226 Cal. App.4th 1551 (2014) .......... 10

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83 (1998) .......... 17

*Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115 (2012) .......... 11, 12

*Omar v. Ralph's Grocery Co.*, 118 Cal. App. 4th 955 (2004) .......... 13

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev (US), LLC*, 55 Cal. 4th 223 (2012) .......... 10, 11

*Retsloff v. Smith*, 79 Cal. App. 443 (Cal. Ct. App. 1926) .......... 19

*Sy First Family Ltd. P'ship v. Cheung*, 70 Cal. App. 4th 1334 (1999) .......... 19

*Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360 (2008) .......... 11

*Wagner Constr. Co. v. Pac. Mechanic Corp.*, 41 Cal. 4th 19 (2007) .......... 8

**Federal Statutes**

9 U.S.C.
- §§ 1, *et seq.* .......... 1
- § 2 .......... 7, 8
- § 3 .......... 21

28 U.S.C.
- § 157 .......... 6

**California Statutes**

Cal. Civ. Code
- § 1582 .......... 17
- § 1584 .......... 18
- § 1636 .......... 19
- § 1638 .......... 20
- § 1641 .......... 19
- § 1643 .......... 18
- § 3541 .......... 18

Cal. Lab. Code
§ 2698 *et seq*. ........ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Robert W. Ahlstrom ("Plaintiff") signed a Mutual Arbitration Agreement ("MAA") agreeing to arbitrate, upon an individualized basis, any disputes against his employer DHI Mortgage Company, Ltd. ("DHI Ltd.")[1]. Nonetheless, even though (1) the California Court of Appeal has already enforced a similar version of the MAA in *Gillespie v. Western Pacific Housing Management, Inc.*, No. D066354, 2014 WL 7195024 (Cal. Court App. 4th Dec. 18, 2014)[2] (granting defendant's motion to compel arbitration pursuant to an earlier version of the MAA and rejecting an unconscionability attack); and (2) the United States Supreme Court has definitively determined in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018) that class action waivers in arbitration agreements must be enforced pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*), Plaintiff refuses to agree to submit this class action to arbitration upon an individualized basis, or at all.

The Parties agreed to arbitrate their disputes. The United States Supreme Court has repeatedly and unequivocally held that the Federal Arbitration Act requires courts to enforce arbitration agreements, including class action waivers contained therein. Thus, this action must go to arbitration on an individualized basis. Accordingly this Court should grant Defendants' Motion to Compel Arbitration, dismiss Plaintiff's class claims and compel Plaintiff to arbitrate his claims on an individualized basis. The Court should stay the action until arbitration is completed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Voluntarily Agrees To Arbitrate Any Claims He May Possess Against DHI Ltd.

On July 24, 2015, Plaintiff, at the beginning of his employment with DHI Ltd.,

[1] In California, DHI Mortgage Company, Ltd., operates under the name "DHI Mortgage Company, Ltd. L.P." (Declaration of Alexandra Aurisch ["Aurisch Decl."], ¶2.)

[2] For the Court's convenience, the Court of Appeal's ruling is attached to the concurrently filed Request for Judicial Notice as Exhibit 1.

entered into a binding arbitration agreement titularly with Defendant D.R. Horton, Inc. ("D.R. Horton") but also covering all claims he might have against DHI Ltd. (*See* Declaration of Paula Hunter-Perkins[3] ["Hunter-Perkins Decl."], ¶8, Ex.B.) DHI Ltd.—whom Plaintiff has not named in this action--is a distinct, albeit related, entity of D.R. Horton as well as Defendant DHI Mortgage Company GP, Inc. (collectively "Defendants"). (*See id.*, ¶2; Declaration of Mark C. Winter[4], ¶2.) Only DHI Ltd. actually employed Plaintiff. However, DHI Ltd.—and any claims Plaintiff may have against it—are subject to arbitration. In agreeing to the terms of the MAA, Plaintiff agreed that:

> [A]ll legal disputes and claims between them, including without limitation those relating to Employee's employment with the Company [D.R. Horton, Inc.] or any separation therefrom ***and claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents***, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein.

(*See* Hunter-Perkins Decl., Ex.B, ¶7) (emphasis added). DHI Ltd. as well as DHI Mortgage Company GP, Inc. are affiliated entities of DR Horton, Inc. Thus, Plaintiff agreed to arbitrate all of his "claims" against all of Defendants.

The MAA further clarifies that the types of claims subject to arbitration thereunder include, among others, claims for "wages," "overtime," and "breach of any express or implied contract." (*Id.*).[5]

The MAA also includes a class action waiver. The MAA states that it

> **prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This**

---

[3] Previously filed as Dkt. 12-2 and attached as Ex.2 to Aurisch Decl.

[4] Previously filed as Dkt. 12-4 and attached as Ex.3 to Aurisch Decl.

[5] The MAA does *not* apply to, among other things, "a claim or charge filed with a federal, state, or local administrative agency such as the Equal Employment Opportunity Commission, National Labor Relations Board, Department of Labor, or similar agency" and claims for workers' compensation and unemployment. (*Id.*, ¶8, Ex.B, ¶2.) Likewise, the MAA provides that, by signing the MAA, Plaintiff "does not waive the right to file an administrative complaint with the appropriate administrative agency (*e.g.*, the Equal Employment Opportunity Commission, National Labor Relations Board, Department of Labor, or similar agency)[.]" (*Id.*, ¶8, Ex.B, ¶3.)

**means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.**

(*Id.*, ¶8, Ex.B, ¶7 (emphasis in original).)

The MAA was not presented as mandatory arbitration agreement or condition of Plaintiff's employment with DHI Ltd. Plaintiff could have refused to sign it and still worked at DHI Ltd. Indeed, the MAA contains a provision by which Plaintiff could have, even after executing it, opted-out of the MAA by "delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request." (*Id.*, ¶8, Ex.B, ¶11.)

Both Plaintiff and D.R. Horton, Inc. executed the MAA, using an electronic signature, on July 24, 2015. (*See id.*, ¶¶3–8 & Ex.B.) Plaintiff did not exercise his right to opt-out. (*See id.*, ¶9.)

### B. <u>The MAA Constitutes A Fair And Enforceable Arbitration Agreement.</u>

The MAA creates a neutral and enforceable adjudication process:

- The MAA authorizes the Parties to select a neutral arbitrator, either amongst themselves or through the American Arbitration Association ("AAA") (*see id.*, ¶8, Ex.B, ¶5).

- The MAA mandates that the arbitration will be conducted "according to the National Rules for the Resolution of Employment Disputes (or successor rules) of the [AAA] and Federal Rule of Civil Procedure 68," which "rules can be found at www.adr.org and http://www.law.cornell.edu/rules/frcp/rule 68, respectively, or requested from the Company" (*id.*).

- The MAA provides that the arbitration is to be conducted "in or near the

city in which Employee is or was last employed by the Company" (*id.*).

- Through its incorporation of the AAA rules, the MAA provides for "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration" (*see id.*; Declaration of Jennifer L. Katz[6] ["Katz Decl."], ¶5, Ex.C, at 14 [Rule 9]).

- The MAA requires that the arbitrator "render a written award setting forth the arbitrator's findings of fact and conclusions of law" (Hunter-Perkins Decl., ¶8, Ex.B, ¶6).

- The MAA also provides that it is enforceable pursuant to the Federal Arbitration Act ("FAA") (*id.*, ¶8, Ex.B, ¶2).

In short, the MAA establishes a fair, neutral, and proper arbitration regime for resolving claims related to Plaintiff's employment.

**C. <u>Plaintiff Knowingly Breached The MAA By Filing This Complaint And Refusing To Arbitrate His Claims.</u>**

Despite his promises under the MAA to arbitrate his disputes with DHI Ltd., Plaintiff filed his Complaint in this action alleging nine causes of action[7] against Defendants—all arising from his employment with DHI Ltd. (*See* Complaint, or "Compl."). Other than Plaintiff's seventh claim, which is brought pursuant to the federal Fair Labor Standards Act ("FLSA"), each of Plaintiff's other claims is brought pursuant to California law. Each claim derives from allegations that Defendants purportedly committed violations of the California Labor Code, the California Business & Professions Code, the FLSA, and common law regarding contracts. In addition to bringing his claims individually, Plaintiff seeks to represent

---

[6] Previously filed as Dkt. 12-1 and attached as Ex.4 to Aurisch Decl.

[7] The causes of action are: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly wages; (4) failure to provide accurate written wage statements; (5) failure to timely pay all final wages; (6) unfair competition; (7) failure to pay employees for all hours worked; (8) breach of written contract; and (9) breach of the implied covenant of good faith and fair dealing.

multiple proposed classes, the broadest of which is defined as “All persons employed by Defendants and/or any staffing agencies and/or any other third parties who worked as a loan officer in the United States during the Relevant Time Period.” (Compl., ¶16.) All of Plaintiff’s claims relate to his employment and, therefore, fall within the definition of arbitrable claims pursuant to the MAA. (*See* Hunter-Perkins Decl., ¶8, Ex.B, ¶¶1–2.)

On September 29, 2017 and again on October 11, 2017, Defendants’ counsel requested that Plaintiff submit his claims to arbitration on an individualized basis. (*See* Katz Decl., ¶4.) Defendants then filed a Motion to Compel Arbitration and Motion to Dismiss for Lack of Personal Jurisdiction (the “Original Motion”) [Dkt No. 12] on October 20, 2017. On November 3, 2017, Plaintiff filed an Opposition asserting that, pursuant to *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted* 137 S. Ct. 809 (2017), the class and collective action waiver in the MAA invalidated the entire agreement because it violated federal labor law contained in the National Labor Relations Act [Dkt No. 15].

With *Morris* heading to the Supreme Court, the Parties, on November 21, 2017, entered into a stipulation to stay the case pending the Supreme Court’s review of *Morris*. [Dkt. 23]. The Supreme Court consolidated *Morris* into a similar case, *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018). In any event, following the Parties’ stipulation, this Court stayed the matter for all purposes on November 21, 2017 pending a decision in *Epic Systems*. The Court also terminated the Original Motion without prejudice to it being re-noticed. [Dkt. 23].

While all of this was going on, Plaintiff also filed a related action in the California Superior Court for the County of Santa Clara, pursuant to the California Private Attorneys General Act (Lab. Code § 2698 *et seq.*) only. In that action, in June and July, 2018, Plaintiff named and served Plaintiff’s actual employer, DHI Ltd. Plaintiff has not named DHI Ltd. in this federal court action.

Case 3:19-cv-04383-EMC Document 27 Filed 07/22/19 Page 65 of 318

**D. The United States Supreme Court Holds That Class Action Waivers In Arbitration Agreements In Employment Contracts Remain Enforceable Pursuant To The Federal Arbitration Act.**

Earlier this year, in May, 2018, the Supreme Court issued its ruling in *Epic Systems* which overruled *Morris* and established that class action waivers in arbitration agreements, which provide for individualized proceedings in arbitration, remain enforceable. Rejecting the very arguments that Plaintiff had posited to this Court, the Supreme Court concluded that

> In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings . . .

*Epic Systems Corp.*, 138 S.Ct., at 1619. Accordingly, Plaintiff's previous argument—that the National Labor Relations Act provision protecting concerted activities among employees (28 U.S.C. § 157) overrides the FAA's requirement to enforce arbitration agreements pursuant to their terms--no longer passes legal muster or possesses any weight.

With *Epic Systems Corp.* now decided, Defendants have refiled their Motion to Compel Arbitration for decision by this Court. Nonetheless, Plaintiffs still refuse to agree to arbitration.

**III. THIS COURT SHOULD DISMISS THE ACTION ENTIRELY, OR DISMISS THE CLASS ACTION ALLEGATIONS AND COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS UPON AN INDIVIDUALIZED BASIS**

**A. The FAA Applies To The MAA.**

The FAA (and its preemptive effect upon California law generally prohibiting class action waivers in employment arbitration agreements) applies to the MAA for two basic reasons. First, the MAA itself expressly provides that any actions to enforce the agreement – such as the instant Motion – "are covered and governed by

Section 2 of the Federal Arbitration Act and not any state law." (*See* Hunter-Perkins Decl., ¶8, Ex.B, ¶¶2.) *See Aviation Data, Inc. v. Am. Express Travel Related Servs. Co., Inc.*, 152 Cal. App. 4th 1522, 1534-35 (2007); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015).

Second, Plaintiff's employment, out of which arose his agreement to arbitrate his claims in this case, possesses a sufficient nexus with interstate commerce to fall under the FAA. The requirement for the sufficient nexus is minimal. *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (broadly interpreting the phrase "involving commerce" in 9 U.S.C. § 2 as the functional equivalent of "affecting" commerce). In examining an employment arbitration agreement, the U.S. Supreme Court has confirmed that the FAA's language requiring enforcement of arbitration agreements involving commerce showed congressional intent to exercise its authority to regulate commerce to the fullest extent and, therefore, to cover all employment agreements not specifically exempted. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).

There is ample interstate commerce activity present to meet the standard outlined in *Allied-Bruce* and reinforced in *Adams*, as Defendants are national companies engaged in the construction of high quality homes and the origination of mortgages for customers buying those homes; thus, the employees of Defendants and their related entities – including Plaintiff, through his work as a loan officer (Compl., ¶¶16,154) – regularly engage in activities involving goods moving in interstate commerce. (Declaration of Mark Winter, ¶¶2–4; Declaration of Brad Conlon[8], ¶¶2–3.) This "evidence . . . suffices to demonstrate that [Plaintiff's employment] . . . 'involv[ed] [interstate] commerce.'" *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1101 (C.D. Cal. 2015); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-58 (2003); *see also Allied-Bruce*, 513 U.S. at 282 (concluding that a relationship involved interstate commerce where, *inter alia*, the defendant was

[8] Previously filed as Dkt. 12-3 and attached as Ex.5 to Aurisch Decl.

a national corporation that was engaged in business in multiple states).

The FAA provides that an agreement to arbitrate shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Accordingly, the U.S. Supreme Court holds that agreements to arbitrate statutory employment claims are enforceable under the FAA (*Adams*, 532 U.S. 105), and the FAA declares a liberal policy favoring the enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).[9]

**B. The MAA's Class Action Waiver Is Fully Enforceable Under *Epic Systems*.**

Under the FAA, "a party may not be compelled to submit to class arbitration unless the arbitration contract provides a basis for concluding that the party agreed to do so." *Kinecta Alternative Fin. Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506, 510 (2012); *accord Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758 (2010). Here, the parties clearly did not agree to class arbitration. On the contrary, the MAA expressly **prohibits the arbitrator from consolidating the claims of others into one proceeding."** (Hunter-Perkins Decl., ¶8, Ex.B, ¶7 (emphasis in original).) Indeed, in *Gillespie*, the California Court of Appeal found that the plaintiff's purported class claims were barred by the MAA, finding that the class action waiver in an earlier version of the MAA was "enforceable." *Gillespie*, 2014 WL 7195024, at *6.

[9] The public policy in favor of arbitration is so strong that the U.S. Supreme Court and the California Supreme Court have ruled that any doubts as to the existence of an arbitration agreement, or the scope of issues involved, must be resolved in favor of alternative dispute resolution and against a jury trial. *Moses Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Wagner Constr. Co. v. Pac. Mechanic Corp.*, 41 Cal. 4th 19, 26 (2007). Indeed, once a petition to compel arbitration is filed, the FAA, by its terms, "'leaves no place for the existence of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original); *see also Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1045 (N.D. Cal. 2012) ("arbitration agreements will be enforced in all but the most limited of circumstances").

As noted, in *Epic Systems*, the Supreme Court held that arbitration agreements that provide for individualized proceedings – that is, class-action waivers – must be enforced according to their terms. 138 S.Ct. at 1619. That conclusion is not disturbed by the presence of the FAA's saving clause, as that clause may only be invoked to apply "generally applicable contract defenses, such as fraud, duress, or unconscionability[,]" and not for arbitration-specific defenses, such as the argument that class action waivers in arbitration agreements are unenforceable. *Id*. at 1622 (quotations and citations omitted). Nor does the NLRA present any barrier to a court's enforcement of a class-action waiver in an arbitration agreement, as the NLRA and FAA exist in separate spheres of influence and the NLRA does not confer a right to class or collective action. *Id*. at 1624-25; 1627. The instruction of the Supreme Court's decision in *Epic Systems* is clear: class action waivers in arbitration agreements, such as the one at issue here, can and must be enforced according to the terms of the arbitration agreement. Here, as in *Gillespie*, the MAA prevents Plaintiff from pursuing his putative class and collective claims in arbitration.

Moreover, the MAA expressly provides that the *Court*, and the not the Arbitrator, must decide the enforceability of the class action waiver. (Hunter-Perkins Decl., ¶8, Ex.B, ¶6.)

### C. **Because The MAA Contains A Delegation Clause Regarding Non-Class Action Waiver Issues, This Court Must Compel The Matter To Arbitration Even If The Parties Dispute Arbitrability.**

The class arbitration waiver aside, in determining whether to grant a motion to compel arbitration generally, the Court's inquiry is limited to deciding two gateway issues of arbitrability: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. Keybank Nat. Ass'n*, 673 F.3d 947, 955-56 (9th Cir. 2012), citing *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). However, the

court does not have the authority to decide even these gateway issues where the parties have "clearly and unmistakably" delegated the arbitrability issues to the arbitrator. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). In the instant action, it is indisputable that the delegation was "clearly and unmistakably" in the MAA because it *explicitly* states that the arbitrator shall determine issues as to validity of the arbitration agreement. *See id*. The MAA states:

> [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the **formation, enforceability, applicability, or interpretation** or this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

(*See* Hunter-Perkins Decl., ¶8, Ex.B) (emphasis added). In such situations where the delegation is "clearly and unmistakably" made, as here, the district court *only* determines whether the delegation clause itself is unconscionable. *Clayborne v. Lithia Motors, Inc*. 2017 WL6017009 at *3 (E.D. Cal. Dec. 5, 2017); *see also Malone v. Superior Court*, 226 Cal. App.4th 1551, 248 (2014). The party opposing arbitration bears the burden of proof. *Clayborne v. Lithia Motors, Inc*. "If the delegation of arbitrability is not unconscionable, the enforceability of the entirely [sic] arbitration agreement...will be left to the arbitrator." *Id.*

It is clear in this case, that neither the MAA nor the Delegation Clause, are unconscionable.

### D. <u>The Agreement Is Not Unconscionable.</u>

To show that an agreement is unconscionable, Plaintiff must establish that the MAA is both procedurally and substantively unconscionable. *See, e.g., Armendariz*, 24 Cal. 4th at 113-114; *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev (US), LLC*, 55 Cal. 4th 223, 246 (2012). Unconscionability is examined using a sliding scale (*i.e.*, the more substantively unconscionable, the less procedural

unconscionability is needed to establish that the agreement is unconscionable, and vice-versa). There must be evidence of ***both*** substantive ***and*** procedural unconscionability for an arbitration agreement to be invalidated. *Armendariz,* 24 Cal. 4th at 113-114; *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1124 (2012). Plaintiff fails both prongs of the unconscionability test.

1. The Agreement is Not Procedurally Unconscionable.

To establish procedural unconscionability, Plaintiff must show the existence – at the time Plaintiff executed the MAA – of either oppression or surprise. "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). "Surprise" occurs where unconscionable terms are hidden. *Pinnacle,* 55 Cal. 4th at 247.

Neither oppression nor surprise surrounded Plaintiff's execution of the MAA and his understanding of its terms at that time. The MAA was not a mandatory condition of employment, as evidenced by the MAA's opt-out provision. (Hunter-Perkins Decl., ¶8, Ex.B, ¶11.) *See Galvan v. Michael Kors USA Holdings, Inc.*, 2017 WL 253985, at *9 (C.D. Cal. Jan. 19, 2017). Moreover, Plaintiff will not be able to identify any terms of the MAA that were disguised, hidden, or otherwise came as a surprise. The MAA clearly sets forth or expressly refers to all pertinent dispute-resolution terms, which is very different from the lengthy agreements hiding oppressive terms that have been deemed procedurally unconscionable in other cases, such as, for example, terms hidden "in approximately 800 pages of documents" (*Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360, 1372-73 (2008)), or very short agreements that provide employees an overview only and no other information about certain substantively unconscionable terms (*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 722-23 (2004) (omitting terms disadvantageous to the employee)). Indeed, the agreement to arbitrate contained in the MAA is "far from hidden." The MAA consists of three dedicated pages and includes the heading "MUTUAL

ARBITRATION AGREEMENT" in all uppercase, underlined letters. (Hunter-Perkins Decl., ¶8, Ex.B, at 1.) Plaintiff signed the MAA (*see id.*, ¶¶3–8 & Ex.B, at 3), and thereby acknowledged that he had read the agreement and voluntarily agreed to its terms. *See Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1134-35 (C.D. Cal. 2011).

The MAA is thus not at all procedurally unconscionable, and to the extent there is any procedural unconscionability, it would, *at most*, be extremely minimal. "[Where] the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981-82 (2010).

2. The Agreement Is Not Substantively Unconscionable.

To the extent that there is any measure of procedural unconscionability, the MAA would still be enforceable because none of the provisions are substantively unconscionable. *See Nelsen*, 207 Cal. App. 4th at 1124 (holding that to show unconscionability, the party challenging enforcement must present evidence of *both* substantive *and* procedural unconscionability). Indeed, the California Court of Appeal in *Gillespie* has already found that an earlier version of the MAA – with substantially similar provisions to the one signed by Plaintiff – is not substantively unconscionable. *See Gillespie*, 2014 WL 7195024 at *5-6. In *Gillespie*, the California Court of Appeal rejected the argument that the MAA lacked mutuality, and further rejected the argument that the agreement was substantively unconscionable because it purportedly had a carve-out for declaratory and equitable relief claims and allowed the employer a limited right to modify the agreement.[10] *See id.*

Moreover, the key factor affecting the determination of substantive unconscionability is lack of mutuality. *See Abramson v. Juniper Networks, Inc.*, 115

[10] Notably, neither of those provisions is contained in the version of the MAA signed by Plaintiff. (*See* Hunter-Perkins Decl., ¶8, Ex.B.)

Cal. App. 4th 638, 664 (2004). In *Armendariz*, the California Supreme Court held that an arbitration provision in an adhesion contract must bear a "modicum of bilaterality" unless the stronger party has a reasonable justification for unilateral provisions that operate in its favor. *Armendariz*, 24 Cal. 4th at 117. Here, the MAA is not lacking in either mutuality or basic fairness, and does not contain any carve-out provisions that favor one party. For example, the MAA expressly provides that the agreement between Plaintiff and Defendants applies equally to all parties. (Hunter-Perkins Decl., ¶8, Ex.B, ¶1.) As no terms in the MAA are lacking in mutuality, no substantive unconscionability exists.[11]

Accordingly, the Delegation Clause, along with the rest of MAA, are enforceable, and the Court must send this case to arbitration on an individualized basis.

**E. <u>The MAA Is Enforceable And Applies To Plaintiffs' Claims.</u>**

Should the Court decide to contravene the plain meaning of the MAA and start interpreting it, the Court should still send the action to arbitration for resolution. As noted, the Court's inquiry is limited to the two "gateway" issues of (1) whether there is a valid agreement to arbitrate, and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Omar v. Ralph's Grocery Co.*, 118 Cal. App. 4th 955, 960 (2004). Because the MAA meets both of these requirements, the Court must issue an order compelling Plaintiff to arbitrate his individual claims and, pursuant to the enforceable class action waiver, dismiss his class and collective action claims.

[11] Moreover, the MAA provides that "[i]f any provision of [the MAA] is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable," and that "[i]f a provision conflicts with a mandatory provision of applicable law, the conflicting provision shall be severed automatically and the remainder of the Agreement construed to incorporate the mandatory provision." (Hunter-Perkins Decl., ¶8, Ex.B, ¶9.) Thus, even if one or more of the terms of the MAA is deemed to be unconscionable, the Court can easily sever or modify any provision found to be improper to ensure full compliance with *Armendariz*.

1. Plaintiff Agreed To Individual Arbitration Of Any Claims Arising From His Employment.

The MAA covers Plaintiff's claims against Defendants in this action, as it explicitly provides for arbitration of the very causes of action that Plaintiff asserts here. Each claim derives from allegations that Defendants purportedly committed violations of the California Labor Code, the California Business & Professions Code, the FLSA, and common law regarding contracts. All nine causes of action each arise out of or relate to Plaintiff's employment, and are thus subject to the arbitration provisions of the MAA.

2. The MAA Is A Valid Arbitration Agreement.

As numerous judicial decisions hold, the MAA complies with the relevant requirements set forth by the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 102-103, 117 (2000). *See, e.g.*, *Gillespie v. Western Pacific Housing Management, Inc.*, 2014 WL 7195024 (enforcing an earlier version of the MAA, compelling arbitration as to the plaintiff's individual wage-and-hour claims other than those pursuant to the Labor Code Private Attorneys General Act, and dismissing class claims).

*Armendariz* holds that an agreement to arbitrate employment-related claims vindicating non-waivable statutory rights is enforceable if both parties are equally bound by all terms of the agreement and if the agreement provides for: (1) a neutral arbitrator; (2) adequate discovery; (3) all types of relief otherwise available in court; (4) a written arbitration award that permits limited judicial review; and (5) payment by the employer of all costs unique to arbitration. *Armendariz*, 24 Cal. 4th at 102-103, 117. As courts have held, the MAA satisfies each of these requirements.

First, the MAA expressly provides that arbitration shall take place "before a single, neutral arbitrator," and that the dispute must be resolved by arbitration administered by AAA under its employment arbitration rules. (Hunter-Perkins Decl., ¶8, Ex.B, ¶¶1,5; Katz Decl., ¶5, Ex.C.) The MAA provides a mechanism for

the parties to "select a mutually agreeable arbitrator," and, if they are unable to do so, the MAA requires that the party requesting arbitration "submit the matter to AAA, and an arbitrator shall be selected pursuant to AAA's rules." (Hunter-Perkins Decl., ¶8, Ex.B, ¶5.) The AAA rules themselves set forth a process for appointing a neutral and mutually agreed-upon arbitrator: AAA will propose to both parties a list of possible arbitrators, allow both parties to strike any and all proposals they do not like and rank the remaining choices in order of preference, and then appoint an arbitrator in accordance with the parties' designations. (*See* Katz Decl., ¶5, Ex.C, at 15 [Rule 12].)

Second, through adoption of the AAA employment rules, the MAA ensures adequate discovery. In particular, the applicable AAA rules permit the arbitrator to allow "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (*See id.*, ¶5, Ex.C, at 14 [Rule 9].) In addition, because Defendants agreed to arbitrate statutory claims, they will be deemed to have impliedly consented to allow adequate discovery. *See Armendariz*, 24 Cal. 4th at 106, 113.

Third, the MAA provides for all types of relief otherwise available in court, expressly stating that "[t]he arbitrator shall have the same authority to order remedies (*e.g.*, emotional distress damages, punitive damages, equitable relief, *etc.*) as would a court of competent jurisdiction." (Hunter-Perkins Decl., ¶8, Ex.B, ¶6; *see also* Katz Decl., ¶5, Ex.C, at 23 [Rule 39(d)] ("The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law.").) Nothing in the MAA in any way limits the authority of the arbitrator to award any type of relief available in court. (*See* Hunter-Perkins Decl., ¶8, Ex.B.)

Fourth, the MAA requires a written arbitration award, thus permitting limited judicial review. (*See* Hunter-Perkins Decl., ¶8, Ex.B, ¶6 ("The arbitrator shall render

a written award setting forth the arbitrator's findings of fact and conclusions of law.").)

Finally, the MAA ensures that Defendants will bear all costs unique to arbitration, providing that "The Company shall pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court), including the regular and customary arbitration fees and expenses." (Hunter-Perkins Decl., ¶8, Ex.B, ¶8.)

In short, the MAA meets the requirements articulated in *Armendariz* and is fully enforceable under both federal and state law.

## IV. THE OPT-OUT PROVISION IN THE MAA DOES NOT RENDER THE ARBITRATION AGREEMENT UNENFORCEABLE

The MAA provides an opt-out provision, which is worded as follows:

> Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement.

Plaintiff may allege that because "the Company" is defined as "D.R. Horton, Inc." in the first line of the MAA, and because Plaintiff did not "accept[] or continue[] employment with" D.R. Horton, but instead was employed with its subsidiary, DHI Ltd., the MAA is unenforceable. (Aurisch Decl. ¶2.) This position contravenes the rest of the MAA's provisions as well as fundamental tenants of contract law. Further, although the inclusion of an opt-out provision is relevant to the analysis of procedural unconscionability, such a provision is *not* required for a finding that no unconscionability exists. As a result, its inclusion should not disadvantage the employer. Further still, as noted, this is an issue that should be sent to the arbitrator for resolution.

### A. Plaintiff's Interpretation Of The Opt-Out Provision Is Contrary To Contract Law Principles Pertaining To Contract Formation.

Courts apply general California contract law in order to determine whether a valid arbitration agreement was formed. *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 89 (1998). Plaintiff's position is that the provision's language, "If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement" means that the *only* way he could be bound by the agreement was by not delivering the opt-out form and then being employed by D.R. Horton. This position is not supported by case law, which disfavors interpreting contracts in a way that creates absolute conditions. *See Pacific Corporate Group Holdings, LLC v. Keck* 232 Cal. App. 4th 294, 311–312 (2014).

In accordance with Civ. Code § 1582, the Court in *Devencenzi v. Donkonics* 170 Cal. App. 2d 513, 515 (1959) held that an offer letter stating, "If this is agreeable to you please sign the two copies[;] keep one for your files and return the other copy to me" did not make the signing of the letter a "condition" or "only" mode of acceptance. The Court held the offer "only suggested a method which would be satisfactory to appellant" and that providing a separate written acknowledgment also constituted acceptance of the contract. *See also Pacific Corporate Group Holdings, LLC v. Keck* 232 Cal. App. 4th 294, 311–312 (2014). As explained by the Court in *Estate of Crossman* 231 Cal. App. 2d 370, 371 (1964):

> Distinction must be made between an offer which makes a 'positive requirement' (Rest., Contracts, § 61, com. a) or imposes 'an absolute condition' (1 Williston, Contracts, § 76) of a specified manner of acceptance, on the one hand, and on the other an offer which 'merely suggests a permitted ... manner' (Rest., Contracts, § 61; *see also* 1 Williston, Contracts, p. 250). In the latter case, another method of acceptance is not precluded.

In the instant action, the opt-out provision did not create a "condition" or

only" mode by which acceptance of the agreement would be complete.[12] As a result, signing the MAA, or employment with DHI Ltd., for example, would constitute another method of acceptance acceptable to the offeror.

Similarly, in *Artukovich v. Pacific States Cast Iron Pipe Co*. 78 Cal. App.2d 1, 3 (1947) the Court held that while the contract stated that "All orders submitted...must be subject to the approval of the Vice-President, Treasurer, or General Sales Manager of the Pacific States Cast Iron Pipe Company at Provo-Utah," the contract was binding even though only executed by the manager of the Los Angeles office. The Court further held that "In addition the provision in an offer specifying a means of acceptance is for the benefit of the offerer and may be waived by him." *Id*.

It can also be argued that Plaintiff's employment with DHI Ltd. constituted acceptance *of the consideration* for the MAA, and either performance or acceptance of consideration each, on their own, constitute acceptance of a contract. *Estate of Klauenberg,* 32 Cal. App. 3d 1067, 1070 (Ct. App. 1973); Civ. Code § 163 ("Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal.")

### B. **Principles of Contract Interpretation Support Enforceability of the MAA.**

Where disputes about contracts exist, contract law favors enforceability. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done

---

[12] These propositions are also consistent with case law in other contexts which have examined "sufficient" and "necessary" conditions in their logical relationship. *See California v. Hodari D*., 499 U.S. 621, 627–28 (1991). The opt-out provision simply provides an explanation to the employee that not delivering an opt-out form and acceptance/continued employment *is sufficient* to constitute acceptance; the provision does not, by its language, establish that these are *necessary conditions* for acceptance of the agreement. In contrast, a necessary condition would have been created if the language were: "*Only* if Employee does not deliver the executed form within 30 days and Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement."

without violating the intention of the parties." Civ. Code § 1643. Further, "An interpretation which gives effect is preferred to one which makes void." Civ. Code § 3541. Relatedly, "[A] contract must, if possible, be given a reasonable rather than an unreasonable construction." *Broome v. Broome*, 104 Cal. App. 2d 148, 157 (1951). Courts do not prefer interpretations that are "extremely technical and literal and without reference to what the parties intended and would entail a forfeiture" *Retsloff v. Smith*, 79 Cal. App. 443, 453 (Cal. Ct. App. 1926); *see also Ganahl Lumber Co. v. Thompson*, 205 Cal. 354, 358 (1928) ("The general rule is that contracts must be so interpreted as to give effect to the intention of the parties as it existed at the time of contracting. It follows, therefore, that technical rules of construction must give way when the intention of the parties is ascertainable and lawful.") In line with the explicit provision of the MAA, a contract's purpose should be ascertained from a *common sense* meaning of the contract as a whole, "with a view to effectuate the mutual intention of the parties." *Broome v. Broome*, 104 Cal. App. 2d 148, 157 (1951); *see also Powertech Tech. Inc. v. Tessera, Inc.*, No. 4:10-CV-00945-CW, 2014 WL 2538973 at *3 (N.D. Cal. June 5, 2014); Civ. Code §§1636, 1641.

The Court in *Sy First Family Ltd. P'ship v. Cheung*, 70 Cal. App. 4th 1334, 1342 (1999) provides an example of how, "where practicable, the meaning of an agreement must be derived from a reading of the whole contract" and that "[w]hen an inconsistency exists in the language of a contract, courts must give effect to the parties' main purpose." *Sy* (citing to Civ. Code § 1653, which provides, "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected.") In *Sy*, the Court considered a stipulation between the parties (specifically, whether the parties had meant to use the procedure of a "judicial reference" or instead, an arbitration) ambiguous because it was entitled "reference" and repeatedly cited the Code of Civil Procedure section applicable to references, but also used the term "arbitrators" and "arbitration," as well as noting that the AAA's Commercial Arbitration Rules would dictate. *Id.* at 1342. The Court ultimately

determined that despite the explicit use of "reference" and even the relevant Code sections, the stipulation was intended to provide for arbitration. Similarly, here, it can be argued that the use of "the Company" in the opt-out provision was ambiguous but intended to mean whichever company employs Plaintiff, as the first paragraph of the agreement clearly sets forth that all claims between the "Employee" and the Company *as well as its subsidiaries* shall be arbitrated. Alternatively, it can be argued that the initial definition of "the Company" is ambiguous and was intended to encompass subsidiaries, given that the explicit purpose of the agreement was to arbitrate all claims against D.R. Horton, Inc.'s subsidiaries as well as against D.R. Horton, Inc.

Courts also look towards preventing absurdity, as set forth in Civil Code § 1638. In *Cortez v. Doty Bros. Equip. Co.*, 15 Cal. App. 5th 1, 14 (Ct. App. 2017), the Court held that although it was "clear and unmistakable" that the arbitration agreement only stated that claims "arising under" Wage Order 16 were subject to the arbitration, and the Labor Code was not mentioned, the Court could not "disregard the reality that an employee may enforce the protections of the wage order in court only by bringing a claim under the Labor Code." As applied to the facts of this case, and to the opt-out procedure specifically, the reality was that the agreement contemplated employment with the *actual employer* as sufficient for establishing Plaintiff's acceptance of the MAA.

### C. The MAA Mandates Reading The Agreement As A Whole and According To Its Fair Meaning.

In the first full paragraph, the arbitration agreement clearly establishes that "Employee and the Company both agree all legal disputes and claims between them, including without limitation those relating to Employee's *employment* with the Company or any separation therefrom and *claims by Employee against the Company's parents*, *subsidiaries*, affiliates, directors, employees, or agents, shall be determined exclusively by final and binding arbitration before a single, neutral

arbitrator as described herein." (emphasis added.) The agreement also states, "The Agreement shall be construed as a whole, according to its fair meaning," and further, "If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable."

When the agreement is "construed as a whole, according to its fair meaning," it is clear that the purpose of the arbitration agreement was that in exchange for Plaintiff to begin employment on or around July 24, 2015, he would agree to arbitrate "all legal disputes and claims" against D.R. Horton, Inc. "including...claims by Employee against the Company's ... subsidiaries... ." A fair meaning of the agreement does not lead to the conclusion that, as a result of the opt-out language, the MAA would only apply if Plaintiff were employed only by D.R. Horton Inc. but not the subsidiary. Subsidiaries were clearly established as a third-party beneficiary at the very least, and a fair meaning of the opt-out provision cannot be that if Plaintiff were employed by a subsidiary instead of the parent company, that the entire agreement as a whole would be unenforceable. In fact, construed as a whole, the last sentence of the opt-out provision is even superfluous, and the MAA could have been limited to the first sentence: "Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters."

## V. CONCLUSION

Plaintiff entered into an enforceable, mutually binding arbitration agreement with Defendants which governs all of Plaintiff's claims in this action. Defendants therefore respectfully request that this Court, pursuant to the Federal Arbitration Act (9 U.S.C. § 3) and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), compel Plaintiff to arbitrate his claims on an individualized basis, dismissing Plaintiff's class and collective action allegations, and dismissing or staying the instant action to

permit the parties to complete arbitration. At a minimum, the Court must send the action to arbitration to permit the arbitrator to adjudicate any challenges related to the interpretation of the MAA, other than those involving the class action waiver.

DATED: September 11, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Alexandra Aurisch
Jack S. Sholkoff
Jennifer L. Katz
Alexandra Aurisch

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC. and D.R. HORTON, INC.

# EXHIBIT 4

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC.
and D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:17-cv-04383-BLF<br><br>**DECLARATION OF ALEXANDRA C. AURISCH IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Date: November 8, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 3, San Jose<br><br>Complaint Filed: August 2, 2017<br>Trial Date: None<br>District Judge: Hon. Beth Labson Freeman, Courtroom 3, San Jose |

I, Alexandra Aurisch, declare as follows:

1. I am an attorney at law licensed to practice before all of the courts of the State of California. I am an associate with the firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., counsel for defendants DHI Mortgage Company GP, Inc. and D.R. Horton, Inc., as well as for DHI Mortgage Company, Ltd., L.P., in this action. I have personal knowledge of the matters contained herein. If called, I would and could testify competently thereto.

2. In California, DHI Mortgage Company, Ltd., operates under the name "DHI Mortgage Company, Ltd. L.P." A true and correct copy of the relevant business search-entity detail, which is available at the California Secretary of State website, through https://businesssearch.sos.ca.gov/, is attached hereto as **Exhibit 1**.

3. A true and correct copy of the Declaration of Paul Hunter-Perkins, previously filed on October 20, 2017, with the electronic-filing information at the top of each page redacted to avoid confusion, is attached hereto as **Exhibit 2**.

4. A true and correct copy of the Declaration of Mark Winter, previously filed on October 20, 2017, with the electronic-filing information at the top of each page redacted to avoid confusion, is attached hereto as **Exhibit 3**.

5. A true and correct copy of the Declaration of Jennifer Katz, previously filed on October 20, 2017, with the electronic-filing information at the top of each page redacted to avoid confusion, is attached hereto as **Exhibit 4**.

6. A true and correct copy of the Declaration of Brad Conlon, previously filed on October 20, 2017, with the electronic-filing information at the top of each page redacted to avoid confusion, is attached hereto as **Exhibit 5**.

7. In July 2017, my colleague Jack Sholkoff exchanged e-mail correspondence with Thomas Segal, Counsel for Plaintiff, in which Mr. Segal stated that Plaintiff opposed arbitration on the grounds that the language of the mutual arbitration agreement ("MAA")'s opt-out provision mandates continued employment with D. R. Horton, Inc. as a requirement of acceptance of the MAA, and that since

Plaintiff was not employed by D. R. Horton, Inc. but instead by a subsidiary, DHI Mortgage Company, Ltd., the agreement is invalid. Mr. Segal did not claim that Plaintiff opposed arbitration on any other grounds.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 11th day of September, 2018, in Los Angeles, California.

/s/ Alexandra Aurisch
ALEXANDRA AURISCH

# EXHIBIT 1

**Alex Padilla**
**California Secretary of State**

# Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Monday, September 10, 2018. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## 199728100013 DHI MORTGAGE COMPANY, LTD., L.P.

| | |
|---|---|
| **Registration Date:** | 10/06/1997 |
| **Jurisdiction:** | TEXAS |
| **Entity Type:** | FOREIGN |
| **Status:** | ACTIVE |
| **Agent for Service of Process:** | C T CORPORATION SYSTEM<br>* |
| **Entity Address:** | 4515 SETON CENTER PARKWAY STE 110<br>AUSTIN TX 78759 |
| **Entity Mailing Address:** | * |

| Document Type | File Date | PDF |
|---|---|---|
| AMENDMENT | 03/05/2004 | |
| AMENDMENT | 02/09/2004 | |
| AMENDMENT | 08/14/2000 | |
| REGISTRATION | 10/06/1997 | |

* Indicates the information is not contained in the California Secretary of State's database.

**Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search** **New Search** **Back to Search Results**

# EXHIBIT 2

Case 3:19-cv-03435-EMC Document 17-1 Filed 07/21/19 Page 7 of 13

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC. and
D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:17-cv-04383-BLF

**DECLARATION OF PAULA HUNTER-PERKINS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), AND TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT (9 U.S.C. § 3), OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**

Date: March 1, 2018
Time: 9:00 a.m.
Place: Courtroom 3, San Jose

Complaint Filed: August 2, 2017
Trial Date: None

District Judge: Hon. Beth Labson Freeman
Courtroom 3, San Jose

Case 3:19-cv-03435-EMC Document 17-1 Filed 09/20/19 Page 90 of 184

I, Paula Hunter-Perkins, declare as follows:

1. I am the Vice President of Human Resources for D.R. Horton, Inc. and its related companies and subsidiaries, including DHI Mortgage Company GP, Inc. and DHI Mortgage Company, Ltd. (collectively, "D.R. Horton"). I work for D.R. Horton at its corporate headquarters, which are located in Fort Worth, Texas. In this capacity, I am responsible for maintaining the personnel files and related personnel records of D.R. Horton employees. I have personal knowledge of the matters contained herein, and if called to testify, I could and would competently state as follows.

2. I have been informed of the lawsuit filed by Robert W. Ahlstrom, who was an employee of DHI Mortgage Company, Ltd. between on or about July 20, 2015 and on or about December 9, 2016.

3. Since at least 2015, D.R. Horton has utilized an electronic program called Taleo for recruiting and onboarding new employees. Prospective employees of D.R. Horton fill out their job applications electronically using Taleo and, if hired, complete their onboarding electronically using Taleo. When initially applying for a job using Taleo, prospective employees are given the option of opting out of using an electronic signature to sign their materials, and the system provides instructions to users for how to proceed if they do not want to agree to use an electronic signature. If a prospective employee does not opt out of using the electronic system, they complete all recruiting and onboarding materials electronically, using Taleo, and sign all materials with an electronic signature.

4. In order to use Taleo, D.R. Horton employees and prospects are required to use a unique login to access the system. Through Taleo, each prospective and new employee gets a unique user identification that is first created when he or she applies for a position with D.R. Horton. The same user identification information is used thereafter for any onboarding that that employee undergoes upon hire.

5. Once a new employee is hired, he or she utilizes Taleo on his or her work computer to complete the onboarding process within the first few days of his or her employment. Each computer has a unique IP address, and the IP address of the computer utilized by the employee, as

well as the date, is stamped on each document electronically signed by the employee as part of the onboarding process.

6. After a new hire completes his or her onboarding materials using Taleo, the materials are sent to and reviewed by an HR coordinator for the particular entity employing that individual, and are then sent to our corporate HR team for processing. Typically, any materials that require a signature by a D.R. Horton representative are signed by an HR coordinator before they are sent to the corporate office.

7. In applying for his position with DHI Mortgage Company, Ltd. and completing his onboarding as a new hire, Mr. Ahlstrom utilized Taleo to electronically fill out and sign relevant materials. Mr. Ahlstrom did not opt out of using Taleo or otherwise opt out of signing his materials using an electronic signature. I have reviewed the documents contained in Mr. Ahlstrom's personnel file with D.R. Horton. Included within this file is an Application for Employment, which shows that Mr. Ahlstrom filled it out and signed it electronically on June 27, 2015. Attached hereto as **Exhibit A** is a true and correct copy of Mr. Ahlstrom's electronically signed Application for Employment, as contained in Mr. Ahlstrom's personnel file and maintained in the ordinary course of D.R. Horton's business.

8. It is part of D.R. Horton's practice and procedure to offer a Mutual Arbitration Agreement to each employee as part of their new hire documents. This Mutual Arbitration Agreement was given to Mr. Ahlstrom and signed by him on July 24, 2015 as part of the onboarding process he underwent using Taleo, shortly after he was first hired by DHI Mortgage Company, Ltd. I have reviewed the documents contained in Mr. Ahlstrom's personnel file with D.R. Horton. Included within this file is a Mutual Arbitration Agreement signed by Mr. Ahlstrom on July 24, 2015. Mr. Ahlstrom's Mutual Arbitration Agreement was also signed on July 24, 2015 by Crystal Stone, who is the Division Human Resources Coordinator for DHI Mortgage Company, Ltd., the entity for which Mr. Ahlstrom worked. Attached hereto as **Exhibit B** is a true and correct copy of the fully executed Mutual Arbitration Agreement contained in Mr. Ahlstrom's personnel file and maintained in the ordinary course of D.R. Horton's business.

////

9. I have reviewed all records maintained by D.R. Horton regarding Mr. Ahlstrom, and have determined that there are no records, either within Mr. Ahlstrom's personnel file or elsewhere, showing that Mr. Ahlstrom ever "opted out" of the Mutual Arbitration Agreement or otherwise requested an opt-out form in accordance with the terms of the Mutual Arbitration Agreement.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 5 th day of October, 2017, in Fort Worth, Texas.

Paula Hunter-Perkins

PAULA HUNTER-PERKINS

# EXHIBIT A

D·R·HORTON
America's Builder

# APPLICATION FOR EMPLOYMENT

- *Follow instructions carefully*
- *Please print or type*
- *Provide detail - **do not use "see resume"***

Applicant ID: 98961

Position ID: 2007510

Position(s) applying for: Mortgage Loan Originator

Location: United States>California>Pleasanton>Nort

Open to Relocation? ☑ Yes ◯ No

## General Information

| Last Name | First Name | Middle Name | Social Security Number | Email Address |
|---|---|---|---|---|
| Ahlstrom | Robert | Wallace | 530631378 | ahlstromrw@yahoo.com |

| Address | City | State | Zipcode | Telephone |
|---|---|---|---|---|
| 163 Merrydale Rd Apt 15 | San Rafael | Californ | 94903 | |

Can you provide proof, if hired, that you are eligible to work in the United States? The Candidate Passes

Have you ever been convicted of or pleaded nolo contendere to a crime, misdemeanor or felony other than a minor traffic violation? The Candidate Passes
If yes, please explain ______
(Convictions are not an absolute bar to employment, but will be considered in relationship to the job requirements.)

Have you worked for this Company previously? ☐ Yes ☑ No

Dates: Job Title:

Do you have a relative working for this Company: ☐ Yes ☑ No

Name: Job Title:

Are you capable of satisfactorily performing the essential job duties required of the position for which you are applying with or without reasonable accommodation? ☑ Yes ☐ No

How did you learn about this opening?

## Education and/or Training

Did you graduate from high school or receive a GED Certificate? ☐ Yes ☐ No

| SCHOOL NAME AND LOCATION (high school, college, business, nursing, vocational) | Field: Major | Field: Minor | Did you graduate? | Diploma or Degree Earned |
|---|---|---|---|---|
| Galena High School | Athletic Training | | Yes | High School Diploma/GED |
| | | | | |
| | | | | |

Other education/training/skills:

Computer skills (hardware & software): Microsoft Office, Explorer, Point, encompass, Ecylpse, Epoint,

Current professional license/certificate/registration:

Related volunteer experience: Volleyball coach

## Professional References

| Name and Job Title | Company | Address (Street, City, State) | Telephone | Email Address |
|---|---|---|---|---|
| Chris Simone | Realtor Allison & James | United States > California > Santa Clara | 408-772-7113 | homes@thesimoneteam.com |
| Micheal Mcilrath | NorthWest Area Sales Manager JMAC | United States > California > San Rafael | 415-717-9989 | michaelmcilrath@mac.com |
| | | | | |

## Employment History

Start with your current or last job and include armed forces service and self-employment. Any change of job title under the same employer should be considered a separate position.

ATTACH EXTRA SHEETS using the same format if you have additional employment history.

May we contact your current employer for a reference? No

| | | |
|---|---|---|
| Employer<br>Banc Home Loans | Telephone<br>408-508-7254 | Supervisor's Name and Job Title<br>Dan DeTar Branch Manager |
| Type of Business<br>Direct Lender | Address<br>910 E.Hamilton Ave Ste 110 Campbell CA 95008 | |
| Your Job Title<br>Loan Officer | Dates Employed (indicate months & years)<br>From: October 15, 2014 To: | Average Hours Worked Per Week<br>40 |
| Duties<br>Portfolio Lending with niche programs- ALL SELF SOURCED ORIGINATION | | |
| Ending Salary | Reason for Leaving<br>Current Position | |

| | | |
|---|---|---|
| Employer<br>Everbank | Telephone<br>408-504-4030 | Supervisor's Name and Job Title<br>John Anthony Regional Sales Manag |
| Type of Business<br>Retail Mortgage Origination | Address<br>333 W San Carlos St., #1625. San Jose, CA 95110 | |
| Your Job Title<br>Loan Officer | Dates Employed (indicate months & years)<br>From: January 15, 2014 To: July 15, 2014 | Average Hours Worked Per Week<br>40 |
| Duties<br>Purchase Jumbo Origination with established referral network | | |
| Ending Salary | Reason for Leaving<br>Better Opportunity | |

| | | |
|---|---|---|
| Employer<br>GMH Mortgage Services LLC | Telephone<br>215-292-8034 | Supervisor's Name and Job Title<br>Frank DaMaio SVP National Retail Sa |
| Type of Business<br>Correspondant Direct Lender | Address<br>625 W. Ridge Pike, Building C, Conshohocken, PA 19428 | |
| Your Job Title<br>Loan Officer | Dates Employed (indicate months & years)<br>From: June 15, 2013 To: December 15, 2013 | Average Hours Worked Per Week<br>40 |
| Duties<br>Builder / Mortgage Specialist 4 levels of origination: Builder Servicing Agreements, Associated Realtor Desk Rentals, OPERATION HOME OWNERSH | | |
| Ending Salary | Reason for Leaving<br>Better Opportunity | |

I certify that all information contained in this application, and any attachments, is true and complete to the best of my knowledge. I understand that any willful misrepresentation, false statement, or omission by me in the application or interview process will cause for rejection of my application or termination of my employment. I authorize investigation of all statements made on this application and any attachments, and I release all persons, companies and organizations from liability for providing or receiving such information. I FURTHER UNDERSTAND THAT EMPLOYMENT IS AT-WILL, THAT IT MAY BE TERMINATED BY THE COMPANY OR MYSELF AT ANY TIME, WITH OR WITHOUT REASON AND THAT THIS EMPLOYMENT APPLICATION AND OTHER EMPLOYMENT RELATED DOCUMENTS ARE NOT CONTRACTS OF EMPLOYMENT. ANY ORAL OR WRITTEN STATEMENTS TO THE CONTRARY ARE HEREBY EXPRESSLY DISAVOWED.

Applicant's Signature: Ahlstromrw@yahoo.com 73.15.151.28 Date: June 27, 2015

**Equal Opportunity Employer**

D. R. Horton, Inc. does not discriminate on the basis of race, color, religion, sex, national origin, age (40+), veteran status, mental or physical disability, sexual orientation, gender identity, or any other characteristic protected by law.

(Rev. 02/14)

# EXHIBIT B

MUTUAL ARBITRATION AGREEMENT

The undersigned employee ("Employee") and D.R. Horton, Inc. (the "Company") voluntarily and knowingly enter into this Mutual Arbitration Agreement ("Agreement"):

1. Except as provided below, Employee and the Company both agree all legal disputes and claims between them, including without limitation those relating to Employee's employment with the Company or any separation therefrom and claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein. Claims subject to arbitration under this Agreement include without limitation those for discrimination, harassment, or retaliation; wages, overtime, benefits, or other compensation; breach of any express or implied contract; violation of public policy; and negligence or other tort claims including defamation, fraud, and infliction of emotional distress. Except as provided below, Employee and the Company voluntarily waive all rights to trial in court before a judge or jury on all legal claims between them.

2. The only legal disputes and actions excluded from this Agreement are: (a) claims by Employee for workers' compensation, unemployment, or other benefits under a plan or program that provides its own process for dispute resolution; (b) claims for which this Agreement would be invalid as a matter of law; (c) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement; (d) a claim or charge filed with a federal, state, or local administrative agency such as the Equal Employment Opportunity Commission, National Labor Relations Board, Department of Labor, or similar agency; (e) an action by either party seeking a provisional remedy in any court of competent jurisdiction; (f) claims asserted by Employee prior to his or her execution or deemed acceptance of this Agreement as provided herein; and (g) claims asserted on Employee's behalf by another individual if and only if such a claim was the subject of a motion to certify a class or collective action and such motion was filed prior to Employee's execution or deemed acceptance of this Agreement as provided herein. As to subpart (c) above, the parties hereby agree and stipulate that such actions and this Agreement are covered and governed by Section 2 of the Federal Arbitration Act and not any state law. Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction.

3. As referenced above, by agreeing to submit the described claims to binding arbitration, Employee does not waive the right to file an administrative complaint with the appropriate administrative agency (*e.g.*, the Equal Employment Opportunity Commission, National Labor Relations Board, Department of Labor, or similar agency) but does knowingly and voluntarily waive the right to file, or participate or obtain relief in, a court action of any nature seeking recovery of money damages or injunctive relief against the Company, except as described above.

4. A party wishing to initiate arbitration must notify the other party in writing by hand delivery or certified mail. The notice must identify the party requesting arbitration by name, address, and telephone number; describe the facts upon which the claim is based, the persons involved, and the date and location of any occurrences giving rise to the claim; and describe the remedy requested. Notice to the Company must be sent to its senior Human Resources official at the Company's corporate office. Notice to Employee must be sent to Employee's most recent residence address reflected in the Company's employment records.

5. Within 30 days of receipt of a notice of arbitration, the parties shall select a mutually agreeable arbitrator. The arbitration shall be held in or near the city in which Employee is or was last employed by the Company. To the maximum extent permitted by law and except as noted herein, the arbitrator selected by the parties shall administer the arbitration according to the National Rules for the Resolution of

Employment Disputes (or successor rules) of the American Arbitration Association ("AAA") and Federal Rule of Civil Procedure 68 ("Offer of Judgment"). These rules can be found at www.adr.org and http://www.law.cornell.edu/rules/frcp/rule_68, respectively, or requested from the Company. If AAA's rules are inconsistent with this Agreement, the terms of this Agreement shall govern. If the parties are unable to agree on an arbitrator, the party requesting arbitration shall submit the matter to AAA, and an arbitrator shall be selected pursuant to AAA's rules.

6. The arbitrator's authority and jurisdiction shall be limited to determining the matter in dispute consistent with controlling law and this Agreement. Except as otherwise provided herein, the arbitrator shall apply the substantive law of the state in which the claim(s) arose and/or federal law, as applicable. The arbitrator shall have the same authority to order remedies (*e.g.*, emotional distress damages, punitive damages, equitable relief, *etc.*) as would a court of competent jurisdiction. The arbitrator shall not have the authority to hear disputes not recognized by existing law and shall dismiss such claims upon motion by either party in accordance with the summary judgment standards of the applicable jurisdiction. Similarly, the arbitrator shall not have the authority to order any remedy that a court would not be authorized to order. The arbitrator shall render a written award setting forth the arbitrator's findings of fact and conclusions of law. Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

7. **This Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.**

8. The Company shall pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court), including the regular and customary arbitration fees and expenses. However, if Employee is the party initiating the claim, Employee shall be responsible for contributing an amount equal to the filing fee to initiate the claim in the court of general jurisdiction in the state in which Employee is or was last employed by the Company. Except as provided in Federal Rule of Civil Procedure 68, each party shall pay its own attorneys' fees and any costs that are not unique to the arbitration (*i.e.*, costs that each party would incur if the claim(s) were litigated in a court such as costs to subpoena witnesses and/or documents, take depositions and purchase deposition transcripts, copy documents, *etc.*). Any dispute as to whether a cost is unique to arbitration shall be resolved by the arbitrator. The arbitrator may award reasonable fees and costs or any portion thereof to the prevailing party to the same extent a court would be entitled to do so, in accordance with applicable law.

9. This is the complete agreement between the parties on the subject of arbitration and supersedes any other understandings on the subject. No representations, oral or written, are being relied upon by either party in executing this Agreement, other than those contained herein. This Agreement shall remain in effect even after the termination of Employee's employment with the Company. If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable. If a provision conflicts with a mandatory provision of applicable law, the conflicting provision shall be severed automatically and the remainder of the Agreement construed to incorporate the mandatory provision. In the event of such automatic severance and modification with respect to a particular provision, the remainder of this

Agreement shall not be affected. Similarly, should a court determine that arbitration pursuant to this Agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury and instead agree and stipulate that the claim(s) at issue will be heard only by a judge.

10. This Agreement shall be construed as a whole, according to its fair meaning, and not for or against any party. This Agreement may be modified or terminated only by a writing signed by Employee and a senior officer of the Company, or by the Company after 30 days' written notice to Employee. Any modification or termination of this Agreement shall be prospective only and shall not apply to any pending claims or disputes that have been initiated by either party pursuant to this Agreement prior to the expiration of the 30-day period.

11. Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement.

12. Employee warrants and agrees that he or she has read and understands this Agreement and has consulted with an attorney of Employee's own choosing regarding the effect of this Agreement to the extent Employee deems necessary. By signing this Agreement, Employee acknowledges that he or she is knowingly and voluntarily waiving the right to file a lawsuit relating to Employee's employment with the Company as well as the right to resolve disputes in a proceeding before a judge or jury, except as described above. Employee further acknowledges and agrees that this Agreement, while mutually binding upon the parties, does not constitute a guarantee of continued employment for any fixed period or under any particular terms except those contained herein and does not alter in any way the at-will nature of Employee's employment relationship.

| | |
|---|---|
| Date: 7/24/15 | Date: 7/24/15 |
| Robert Ahlstrom | Crystal Stone |
| Employee Signature | Company Representative |
| Robert Wallace Ahlstrom | Crystal L Stone |
| Printed Name | Printed Name and Title |
| 198.69.34.237 | 63.175.76.171 |

17760806.1

# EXHIBIT 3

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC. and
D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:17-cv-04383-BLF<br><br>**DECLARATION OF MARK C. WINTER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), AND TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT (9 U.S.C. § 3), OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**<br><br>Date: March 1, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 3, San Jose<br><br>Complaint Filed: August 2, 2017<br>Trial Date: None<br><br>District Judge: Hon. Beth Labson Freeman<br>Courtroom 3, San Jose |

I, Mark C. Winter, declare as follows:

1. I am the EVP/CFO for DHI Mortgage Company Ltd. In this capacity, I oversee company operations including Accounting, Information Technology, Secondary Marketing, Facilities, and Administration. I have personal knowledge of the matters contained herein, and if called to testify, I could and would competently state as follows.

2. DHI Mortgage Company GP, Inc. is a Delaware corporation that is 100 percent owned by DHI Mortgage Company, which is a Colorado corporation. DHI Mortgage Company GP, Inc. is the General Partner of DHI Mortgage Company, Ltd., which is a Texas limited partnership and the operating entity for all mortgage operations. D.R. Horton, Inc. is the publicly traded parent company for all of those entities.

3. DHI Mortgage Company, Ltd. is licensed to do business in 27 states, and currently operates in 23 states.

4. DHI Mortgage Company, Ltd. is engaged in the business of, among other things, originating mortgage loans, primarily for individuals buying new homes constructed by D.R. Horton, Inc. and related entities.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 19 th day of October, 2017, in Austin, Tx.

Mark C. Winter

MARK C. WINTER

# EXHIBIT 4

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC. and
D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:17-cv-04383-BLF

**DECLARATION OF JENNIFER L. KATZ IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), AND TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT (9 U.S.C. § 3), OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**

Date: March 1, 2018
Time: 9:00 a.m.
Place: Courtroom 3, San Jose

Complaint Filed: August 2, 2017
Trial Date: None

District Judge: Hon. Beth Labson Freeman
Courtroom 3, San Jose

I, Jennifer L. Katz, declare as follows:

1. I am an attorney at law licensed to practice before all of the courts of the State of California. I am an associate with the firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., counsel for defendants DHI Mortgage Company GP, Inc. and D.R. Horton, Inc. (together, "Defendants") in this action. I have personal knowledge of the matters contained herein. If called, I would and could testify competently thereto.

2. Plaintiff Robert W. Ahlstrom ("Plaintiff") entered into an arbitration agreement requiring that claims arising out of his alleged former employment with Defendants and related entities be resolved through binding arbitration.

3. On or about September 17, 2017, I became aware that Defendants had been served with a copy of the Complaint that Plaintiff filed in the Northern District of California.

4. On September 29, 2017, I sent a correspondence to Shaun Setareh and Thomas Segal of Setareh Law Group, two of the attorneys who are representing Plaintiff in this matter, informing them that Plaintiff had entered into a binding arbitration agreement with Defendants and inquiring whether Plaintiff would agree to submit his claims to arbitration on an individual basis. Along with my letter, I provided Plaintiff's counsel with (a) a copy of the arbitration agreement, and (b) a copy of the California Court of Appeal's ruling in *Rebecca Renee Gillespie v. Western Pacific Housing Management, Inc.*, in which the Court compelled a matter to individual arbitration based on an earlier version of the arbitration agreement signed by Plaintiff. On October 11, 2017, I sent the same letter again to Stacey Shim and H. Scott Leviant of Setareh Law Group, again asking if Plaintiff would agree to arbitrate his claims on an individual basis pursuant to the binding arbitration agreement. As of the time of signing this declaration, I have not received any response from Plaintiff or any of his counsel to my letter.

5. The Mutual Arbitration Agreement signed by Plaintiff expressly incorporates the American Arbitration Association's ("AAA") Employment Arbitration Rules and Mediation Procedures, previously referred to as the National Rules for the Resolution of Employment Disputes. Specifically, Plaintiff's Mutual Arbitration Agreement provides that the arbitrator shall administer the proceeding "according to the National Rules for the Resolution of Employment

Disputes (or successor rules)," and provides that the "rules can be found at www.adr.org . . . or requested from the Company." A true and correct copy of the current version of the AAA Employment Arbitration Rules and Mediation Procedures, as downloaded from the AAA website, at https://www.adr.org/sites/default/files/employment_arbitration_rules_and_mediation_procedures.pdf, on October 2, 2017, are attached hereto as **Exhibit C**.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 20th day of October, 2017, in Los Angeles, California.

/s/ Jennifer L. Katz
JENNIFER L. KATZ

# EXHIBIT C

EMPLOYMENT

# Employment

## Arbitration Rules and Mediation Procedures

AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/employment**

Rules Amended and Effective November 1, 2009
Fee Schedule Amended and Effective October 1, 2017
Introduction Revised October 1, 2017

Case 5:17-cv-04353-BLF Document 17-1 Filed 07/21/18 Page 129 of 138

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming**
John English
Vice President
Phone: 619.239.3051
Email: EnglishJ@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Louisiana, New Mexico, Oklahoma, Texas**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

## Case Management Vice President and Assistant Vice Presidents

Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DE, DC, IN, KY, ME, MD, MA, MI, NH, NJ, NY, NC, OH, PA, RI, SC, TN, VT, VA, WV**

Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**

Case 5:17-cv-03435-BLF Document 17-1 Filed 09/21/18 Page 103 of 143

# Table of Contents

Introduction . . . . . . . . . . 6
The Employment Due Process Protocol . . . . . . . . . . 6
AAA's Employment ADR Rules . . . . . . . . . . 7
AAA's Policy on Employment ADR . . . . . . . . . . 7
Notification . . . . . . . . . . 8
Designing an ADR Program . . . . . . . . . . 8
Types of Disputes Covered . . . . . . . . . . 9

Employment Arbitration Rules and Mediation Procedures . . . . . . . . . . 10
1. Applicable Rules of Arbitration . . . . . . . . . . 10
2. Notification . . . . . . . . . . 10
3. AAA as Administrator of the Arbitration . . . . . . . . . . 11
4. Initiation of Arbitration . . . . . . . . . . 11
5. Changes of Claim . . . . . . . . . . 12
6. Jurisdiction . . . . . . . . . . 12
7. Administrative and Mediation Conferences . . . . . . . . . . 12
8. Arbitration Management Conference . . . . . . . . . . 13
9. Discovery . . . . . . . . . . 14
10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration). 14
11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing . . . . . . . . . . 14
12. Number, Qualifications and Appointment of Neutral Arbitrators . . . . . . . . . . 15
13. Party Appointed Arbitrators . . . . . . . . . . 16
14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties . . . . . . . . . . 16
15. Disclosure . . . . . . . . . . 16
16. Disqualification of Arbitrator . . . . . . . . . . 17
17. Communication with Arbitrator . . . . . . . . . . 17
18. Vacancies . . . . . . . . . . 18
19. Representation . . . . . . . . . . 18
20. Stenographic Record . . . . . . . . . . 18
21. Interpreters . . . . . . . . . . 18
22. Attendance at Hearings . . . . . . . . . . 18
23. Confidentiality . . . . . . . . . . 19
24. Postponements . . . . . . . . . . 19
25. Oaths . . . . . . . . . . 19

26. Majority Decision . . . . . . . . . . 19

27. Dispositive Motions . . . . . . . . . . 19

28. Order of Proceedings . . . . . . . . . . 19

29. Arbitration in the Absence of a Party or Representative . . . . . . . . . . 20

30. Evidence . . . . . . . . . . 21

31. Inspection . . . . . . . . . . 21

32. Interim Measures . . . . . . . . . . 21

33. Closing of Hearing . . . . . . . . . . 22

34. Reopening of Hearing . . . . . . . . . . 22

35. Waiver of Oral Hearing . . . . . . . . . . 22

36. Waiver of Objection/Lack of Compliance with These Rules . . . . . . . . . . 22

37. Extensions of Time . . . . . . . . . . 23

38. Serving of Notice . . . . . . . . . . 23

39. The Award . . . . . . . . . . 23

40. Modification of Award . . . . . . . . . . 24

41. Release of Documents for Judicial Proceedings . . . . . . . . . . 24

42. Applications to Court . . . . . . . . . . 24

43. Administrative Fees . . . . . . . . . . 25

44. Neutral Arbitrator's Compensation . . . . . . . . . . 25

45. Expenses . . . . . . . . . . 25

46. Deposits . . . . . . . . . . 26

47. Suspension for Non-Payment . . . . . . . . . . 26

48. Interpretation and Application of Rules . . . . . . . . . . 26

AAA Administrative Fees for Employment/Workplace Cases . . . . . . . . . . 26

Optional Rules for Emergency Measures of Protection . . . . . . . . . . 27

O-1. Applicability . . . . . . . . . . 27

O-2. Appointment of Emergency Arbitrator . . . . . . . . . . 27

O-3. Schedule . . . . . . . . . . 27

O-4. Interim Award . . . . . . . . . . 27

O-5. Constitution of the Panel . . . . . . . . . . 28

O-6. Security . . . . . . . . . . 28

O-7. Special Master . . . . . . . . . . 28

O-8. Costs . . . . . . . . . . 28

Employment Mediation Procedures . . . . . 29
M-1. Agreement of Parties . . . . . 29
M-2. Initiation of Mediation . . . . . 29
M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation) . . . . . 30
M-4. Representation . . . . . 30
M-5. Appointment of the Mediator . . . . . 30
M-6. Mediator’s Impartiality and Duty to Disclose . . . . . 31
M-7. Vacancies . . . . . 31
M-8. Duties and Responsibilities of the Mediator . . . . . 31
M-9. Responsibilities of the Parties . . . . . 32
M-10. Privacy . . . . . 32
M-11. Confidentiality . . . . . 33
M-12. No Stenographic Record . . . . . 33
M-13. Termination of Mediation . . . . . 33
M-14. Exclusion of Liability . . . . . 34
M-15. Interpretation and Application of Procedures . . . . . 34
M-16. Deposits . . . . . 34
M-17. Expenses . . . . . 34
M-18. Cost of the Mediation . . . . . 34

Case 5:19-cv-03435-BLF Document 17-1 Filed 09/21/19 Page 133 of 184

# Employment Arbitration Rules and Mediation Procedures

## Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, sexual orientation, national origin, age and disability.

As courts and administrative agencies become less accessible to civil litigants, alternative dispute resolution (ADR) procedures have become more common in contracts of employment, personnel manuals, and employee handbooks as a means of resolving workplace disputes privately, promptly and economically. Millions of workers are now covered by employment ADR clauses administered by the American Arbitration Association (AAA).

The American Arbitration Association, a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, and all levels of government. Services are available through AAA headquarters in New York City and offices in major cities throughout the United States and internationally. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## The Employment Due Process Protocol

The *Employment Due Process Protocol* was developed in 1995 by a special Task Force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The Due Process Protocol, which was endorsed

by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. It encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The Due Process Protocol "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The Due Process Protocol has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the Due Process Protocol.

It has been incorporated into the Report of the United States Secretary of Labor's *Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

## AAA's Employment ADR Rules

On June 1, 1996, the Association issued National Rules for the Resolution of Employment Disputes (now known as the *Employment Arbitration Rules and Mediation Procedures*). The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's California Employment Dispute Resolution Rules, which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes and included procedures which ensure due process in both the mediation and arbitration of employment disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field.

## AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment

Case 5:17-cv-04351-BLF Document 17-1 Filed 09/21/18 Page 135 of 168

disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the Due Process Protocol. If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the Due Process Protocol, the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

## Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it should at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043; Email: **casefiling@adr.org**.

## Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception.

The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom. A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation. The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;
- pre-dispute, mandatory nonbinding arbitration;
- pre-dispute, mandatory final and binding arbitration; or
- post-dispute, voluntary final and binding arbitration.

Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures* and the *Employment Due Process Protocol*.

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide*, which is available from the AAA's website, **www.adr.org**.

## Types of Disputes Covered

These dispute resolution procedures were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, independent contractor agreements for workplace disputes and other types of employment agreements or workplace agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements.

Case 3:17-cv-04353-BLF Document 17-1 Filed 09/21/18 Page 137 of 168

# Employment Arbitration Rules and Mediation Procedures

## 1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *Employment Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

* *The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures.*

## 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

- **i.** notify the Association of its intention to do so and,
- **ii.** provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

Case 5:17-cv-03435-BLF Document 17-1 Filed 09/21/18 Page 136 of 148

### 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

### 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

**a.** The parties may submit a joint request for arbitration.

**b.** In the absence of a joint request for arbitration:

**(i)** The initiating party (hereinafter "Claimant[s]") shall:

**(1)** File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

**(2)** Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

**(3)** Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

**(ii)** The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(iii)** The Respondent(s):

**(1)** May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

(2) Simultaneously shall send a copy of any counterclaim to the Claimant.

(3) Shall include with its filing the applicable filing fee provided for by these rules.

(iv) The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative

Case 5:17-cv-03435-BLF Document 17-1 Filed 07/21/18 Page 123 of 164

of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

**i.** the issues to be arbitrated;

**ii.** the date, time, place, and estimated duration of the hearing;

**iii.** the resolution of outstanding discovery issues and establishment of discovery parameters;

**iv.** the law, standards, rules of evidence and burdens of proof that are to apply to the proceeding;

**v.** the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

**vi.** the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

**vii.** the value of bifurcating the arbitration into a liability phase and damages phase;

**viii.** the need for a stenographic record;

**ix.** whether the parties will summarize their arguments orally or in writing;

**x.** the form of the award;

**xi.** any other issues relating to the subject or conduct of the arbitration;

**xii.** the allocation of attorney's fees and costs;

**xiii.** the specification of undisclosed claims;

**xiv.** the extent to which documentary evidence may be submitted at the hearing;

**xv.** the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

**xvi.** any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

## 10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

## 11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

## 12. Number, Qualifications and Appointment of Neutral Arbitrators

**a.** If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

**b.** Qualifications

**i.** Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

**ii.** Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

**iii.** The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

**iv.** The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

**c.** If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

**i.** Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**ii.** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

**iii.** From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

## 13. Party Appointed Arbitrators

**a.** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

**b.** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**c.** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**d.** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

**a.** If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

**b.** If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**c.** If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

**a.** Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

**b.** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**c.** In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

**a.** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

- **i.** partiality or lack of independence,
- **ii.** inability or refusal to perform his or her duties with diligence and in good faith, and
- **iii.** any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**b.** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

**a.** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**b.** Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

## 18. Vacancies

**a.** If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

**b.** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**c.** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcripts agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also

shall have the authority to decide whether any person who is not a witness may attend the hearing.

## 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

## 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

## 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

## 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

Case 5:17-cv-04353-BLF Document 18-1 Filed 09/21/18 Page 127 of 148

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

## 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

## 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

## 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

Case 5:17-cv-03435-BLF Document 27-1 Filed 07/21/18 Page 129 of 168

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

## 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## 38. Serving of Notice

**a.** Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**b.** The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

**c.** Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## 39. The Award

**a.** The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

**b.** An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

**c.** The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

**d.** The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses

are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

**e.** If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

**f.** The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

**g.** The arbitrator's award shall be final and binding.

## 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

## 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

## 42. Applications to Court

**a.** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**b.** Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

**c.** Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

**d.** Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

Case 5:17-cv-04353-BLF Document 17-1 Filed 09/11/18 Page 150 of 164

## 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org**).

## 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

## 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

### 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

### 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

### 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

## AAA Administrative Fees for Employment/Workplace Cases

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* ***www.adr.org/employmentfeeschedule.***

## Optional Rules for Emergency Measures of Protection

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

### O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

### O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to

such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

### O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

### O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

### O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

### O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

Case 5:17-cv-03435-BLF Document 17-1 Filed 09/11/18 Page 54 of 64

# Employment Mediation Procedures

## M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedures, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

## M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a Request for Mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via AAA WebFile® at **www.adr.org**.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

- **i.** A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.
- **ii.** The names, regular mail addresses, email addresses (if available), and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.
- **iii.** A brief statement of the nature of the dispute and the relief requested.
- **iv.** Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

## M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation)

- **i.** When the parties' agreement to mediate is silent with respect to locale and the parties are unable to agree upon a locale, the AAA shall have the authority to consider the parties' arguments and determine the locale.
- **ii.** When the parties' agreement to mediate requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the agreement to mediate.
- **iii.** If the reference to a locale in the agreement to mediate is ambiguous, the AAA shall have the authority to consider the parties' arguments and determine the locale.

## M-4. Representation

Any party may participate without representation (pro se), or by any representative of that party's choosing, or by counsel, unless such choice is prohibited by applicable law. A party intending to have representation shall notify the other party and the AAA of the name, telephone number and address, and email address if available of the representative.

## M-5. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at **www.mediation.org** in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

- **i.** Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.
- **ii.** If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable to that party. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.
- **iii.** If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-6. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-7. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-5.

## M-8. Duties and Responsibilities of the Mediator

- **i.** The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.
- **ii.** The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications

Case 5:17-cv-04313-BLF Document 17-1 Filed 09/21/18 Page 137 of 164

may be conducted via telephone, in writing, via email, online, in person or otherwise.

**iii.** The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

**iv.** The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

**v.** In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

**vi.** The mediator is not a legal representative of any party and has no fiduciary duty to any party.

**vii.** The mediator shall set the date, time, and place for each session of the mediation conference. The parties shall respond to requests for conference dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established conference schedule. The AAA shall provide notice of the conference to the parties in advance of the conference date, when timing permits.

## M-9. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference. Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-10. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

Case 5:17-cv-03435-BLF Document 17-1 Filed 07/21/18 Page 148 of 168

## M-11. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

- **i.** Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;
- **ii.** Admissions made by a party or other participant in the course of the mediation proceedings;
- **iii.** Proposals made or views expressed by the mediator; or
- **iv.** The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-12. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-13. Termination of Mediation

The mediation shall be terminated:

- **i.** By the execution of a settlement agreement by the parties; or
- **ii.** By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or
- **iii.** By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or
- **iv.** When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-14. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures. Parties to a mediation under these procedures may not call the mediator, the AAA or AAA employees as a witness in litigation or any other proceeding relating to the mediation. The mediator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## M-15. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-16. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-17. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne by the company unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-18. Cost of the Mediation

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* ***www.adr.org/employmentfeeschedule.***

*© 2017 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.*

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming**
John English
Vice President
Phone: 619.239.3051
Email: EnglishJ@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Louisiana, New Mexico, Oklahoma, Texas**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

## Case Management Vice President and Assistant Vice Presidents

Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DE, DC, IN, KY, ME, MD, MA, MI, NH, NJ, NY, NC, OH, PA, RI, SC, TN, VT, VA, WV**

Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**

American Arbitration Association®

800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT 5

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC. and
D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:17-cv-04383-BLF<br><br>**DECLARATION OF BRAD CONLON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2), AND TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT (9 U.S.C. § 3), OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**<br><br>Date: March 1, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 3, San Jose<br><br>Complaint Filed: August 2, 2017<br>Trial Date: None<br><br>District Judge: Hon. Beth Labson Freeman<br>Courtroom 3, San Jose |

I, BRAD CONLON, declare as follows:

1. I am the Vice President and Director of National Accounts for D.R. Horton, Inc. In this capacity, I Brad Conlon. I have personal knowledge of the matters contained herein, and if called to testify, I could and would competently state as follows.

2. D.R. Horton, Inc. is a Delaware corporation with its principal place of business in Texas. Although D.R. Horton, Inc. does not do business in California, it does do business in many other parts of the United States, including in multiple states other than Delaware and Texas.

3. D.R. Horton, Inc. is, among other things, engaged in the business of constructing high quality homes across the United States. As part of D.R. Horton, Inc.'s construction of its homes, it must purchase a wide-variety of construction materials, the specifications of which are laid out in a particular project's scope of work. In the course of locating and purchasing suitable construction materials, D.R. Horton, Inc. often engages in interstate transactions, which inevitably include the purchase of those materials from vendors in one state for transport into other states where D.R. Horton, Inc.'s homes are being built.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 20th day of October, 2017, in Colleyville, Texas.

BRAD CONLON

# EXHIBIT 5

Case 3:19-cv-03435-MMC Document 17 Filed 07/25/19 Page 143 of 188

Shaun Setareh (SBN 200514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
SETAREH LAW GROUP
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
ROBERT W. AHLSTROM

**UNITED STATES DISTRICT COURT**

**NORTH DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

*Plaintiff,*

vs.

DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

*Defendants*.

Case No. 5:17-cv-04383-BLF

**PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**

Date: November 8, 2018
Time: 9:00am
Place: Courtroom 3 – 5th Floor

## INTRODUCTION

The United States Supreme Court has made clear that courts must enforce arbitration provisions "according to their terms." *Epic Systems Corp. v. Lewis* ,136 S. Ct. 1612, 1619 (2018). Here, the defendant employer drafted an arbitration agreement with an opt out provision that very clearly states that the Employee is deemed to have accepted the agreement if he or she does not opt out **and** if he or she continues or accepts employment with D.R. Horton, Inc (described in the agreement as "the Company") within 30 days of receipt of the agreement.

Therefore, the arbitration provision in this case never became effective according to its terms. This is because as Defendant asserts Plaintiff never accepted employment with D.R. Horton Inc. but instead with a related company DHI Mortgage Company LTD. Defendant asks this Court to rewrite the arbitration agreement so that Plaintiff can accept the agreement not just by accepting employment with D.R. Horton Inc. but with any of its subsidiaries or affiliated entities.

Defendant relies on case law providing that: "the provision in an offer specifying a means of acceptance is for the benefit of the offeror and may be waived by him." Mot. at 18:9-11. But this principle has no application here because the clause at issue is in a provision enabling employees to opt out of arbitration, a provision plainly intended for the benefit of the employee, not the employer. Therefore, the employer cannot waive it or the provision would be meaningless.

As the California Court of Appeal has explained in affirming an order denying a motion to compel arbitration: "Where a contract does prescribe the manner in which acceptance is to be communicated, "no other will suffice". *Hillsborough LLC v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 2006 WL 2501580 *4 (2006) citing1 Witkin Contracts, § 189, p. 223, citing Civ. Code § 1582. The result should be no different here. The subject arbitration agreement expressly requires acceptance of or continued employment with D.R. Horton Inc. Since that never occurred, there was never an effective arbitration agreement.

//

//

//

//

## ARGUMENT

### I. Arbitration is a Matter of Consent and under California Law, Consent Requires an Act or Omission.

As the United States Supreme Court has repeatedly said: "Arbitration under the [FAA] is a matter of consent not coercion." E.g., *Volt Info Sys, Inc. v. Bd of Trs. of Leland Stanford Junior Univers*., 489 U.S. 468, 479 (1989).

Under California contract law: "Consent can be communicated with effect, only by some act or omission of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication." Civil Code § 1581. An offer can be accepted by silence only where there is a duty to speak. *Wood v. Gunther*, 89 Cal.App.2d 718, 881 (1949). Here, the contract itself specified what would be necessary to show consent.

### II. While the General Rule is that any Reasonable and Usual Method .of Acceptance is Effective, This Does Not Apply Where a Particular Method is Prescribed.

Under California law, the parties may agree that a certain mode of acceptance is required in order for the acceptance of an offer to be effective. For example, in *Dexter v. Ankiewicz*, 26 Cal.App.2d 326, 333 (1938) the California Court of Appeal explained as follows:

> "In the instant case it is clear . . . that both plaintiff and defendant contemplated the acceptance by defendant of plaintiff's offer should be signified by defendant's signing and returning the contract . . . . Therefore, applying the above-mentioned rule of law to these facts, it is evident that defendant did not accept plaintiff's offer in the manner contemplated by the parties . . .."

Similarly, in *Gray v. Stewart*. 97 Cal.App.4th 1394, 1397 (2002) the California Court of Appeal explained that any reasonable method of acceptance is permissible, if the contract does not prescribe a specific method: "Because the offer to compromise did not prescribe any specific mode of communication of the acceptance, the only requirement was that the acceptance be communicated in a clear and unequivocal fashion."

Here, as set forth below, the contract plainly sets forth a prescribed method of acceptance and therefore other methods do not suffice.

//

//

//

### III. Under the Plain Language of the Agreement There Was No Effective Acceptance.

The arbitration provision states that: "The undersigned employee ("Employee" ) and D.R. Horton, Inc. (the "Company") voluntarily and knowingly enter into this Mutual Arbitration Agreement. Hunter-Perkins Declaration Exh. B, ECF No. 12-2 Page No. 9.

Thus, where the phrase the "Company" is used in the arbitration agreement, it of necessity refers to D.R. Horton, Inc. not to any related companies that have a different name and a separate legal identity.

Paragraph 11 of the Agreement expressly states as follows:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . If Employee does not deliver the executed form within 30 days, **and** if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.

Therefore, according to the Opt-Out provision, two conditions must exist for the employee to accept the arbitration agreement. First, the employee must deliver an executed Opt-Out Form within 30 days.  Second, as the use of the word "and" indicates, the employee must also accept or continue employment with the "Company" i.e. D.R. Horton, Inc. after the 30 day period has elapsed. Defendant admits that the employer in this case is not D.R. Horton, Inc. Therefore, a condition for acceptance of the arbitration provision never occurred.

The cases cited by Defendant are not to the contrary. For example, Defendant relies on *Artukovich v. Pacific State Pipe Co.*, 78 Cal.App.2d 1, 3 (1947) which stands for the proposition that: "the provision in an offer specifying a manner of acceptance is for the benefit of the offeror and may be waived by him." But this rule has no application here because the Opt Out provision is plainly for the benefit of the prospective employee not the benefit of the Company. As California law requires: "Where the reason of a rule ceases, so should the rule itself." Civil Code § 3510. Therefore, this rule should not be applied to a provision plainly intended to benefit the offeree.

Defendant also relies on *In re Crossman's Estate*, 231 Cal.App.2d 370 (1964) which concluded that a provision in an option agreement stating that notice was to be by registered mail

Case 3:19-cv-04358-MLF Document 173 Filed 07/22/19 Page 15 of 18

was not a condition but instead a "permitted . . . manner" of acceptance. The Court of Appeal concluded after examining the entire agreement and extrinsic evidence that registered mail was a "mere suggestion."

That reasoning is inapplicable here. Obviously the Opt-Out provision is intended to be a condition to an effective arbitration agreement. The sentence in question reads: "If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement." To read this not as a condition, but as a "suggestion" would render the Opt-Out provision nugatory.

Nor does this conclusion change because elsewhere in the Agreement it states that claims against subsidiaries or affiliates of D.R. Horton Inc. must be arbitrated. Obviously, it is possible that an employee of D.R. Horton Inc. could have a claim against an affiliated company such as for example when employees of affiliated entities work together and an allegation of harassment or discrimination arises.

**IV. Plaintiff's Interpretation Must be accepted because it is Consistent with the Language of the Contract and is Not Absurd.**

Under California law, "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Civil Code § 1638.

The Agreement itself contemplates an employment relationship between Plaintiff and D.R. Horton Inc i.e. between "Employee" and the "Company". The counterparties are expressly identifies the counterparties as "Employee" and the "Company" which is expressly identified as D.R. Horton Inc. It is signed by Crystal Stone who is identified as "Company Representative" i.e. a representative or D.R. Horton Inc. If no such employment relationship is ever created, it should not be surprising that the Agreement does not become effective. See Civil Code § 1648: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

Nor does the plain language interpretation offered by Plaintiff render the Agreement meaningless. For example, it is possible that an employee of a related entity could receive a

promotion or reassignment which makes him an employee of D.R. Horton Inc. At that point, the employee (assuming he or she did not send in the Opt-Out Form) would be deemed to have accepted the Agreement under its plain language.

**V. Any Doubt as to the Interpretation of the Agreement Must be Construed Against the Party That Caused It to Exist.**

The law in California provides that absent presentation of extrinsic evidence any ambiguity in a contract, particularly a form contract, is to be construed against the drafter. *City of Hope National Medical Center v. Genentech, Inc*., 4 Cal.4th 375, 398 (2008); *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998): "When ambiguities in a standardized contract, like the account agreement involved here, cannot be dispelled by application of the other rules of contract interpretation they are resolved against the drafter." Civil Code § 1654: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

Both the California Supreme Court and the United States Supreme Court have approved the application of this interpretive principle to arbitration agreements. *Victoria v. Superior Court*, 40 Cal.3d 734, 835 (1985): "Ambiguities in standard form contracts are to be construed against the drafter . . . This court must apply these basic principles to determine whether the petitioner's causes of action fall within the scope of the arbitration provision."; *Mastrobuono v. Sherman Lehman Hutton, Inc.*, 141 U.S. 52, 63 (1995): "[Defendant] drafted an ambiguous document and cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result."

Therefore, to the extent that there is any doubt as to which interpretation of the agreement is correct, it must be construed against Defendant who caused the uncertainty to exist.

**VI. While Defendant Does Not Argue Otherwise, Plaintiff's Prior Allegation That D.R. Horton Inc. is The Employer is Not Binding.**

Plaintiff has in the past alleged that D.R. Horton Inc. was his employer. However, the declarations submitted by Defendant make clear that this is not the case. Hunter-Perkins Decl. ¶ 2; Morice Declaration ¶ 4 (stating that D.R. Horton Inc. has no employees in California). Plaintiff does not understand Defendant to be arguing that these prior mistaken allegations are binding. Under

Case 5:17-cv-03433-BLF Document 132 Filed 09/25/18 Page 157 of 188

California law they are not. *See Barsegian v. Kessler & Kessler*, 215 Cal.App.4th 446, 453 (2013) (agency allegations in complaint not binding for purposes of motion to compel arbitration where defendant disputed agency relationship).

**CONCLUSION**

The motion to compel arbitration should be denied.

Dated: September 25, 2018

SETAREH LAW GROUP

/s/
SHAUN SETAREH
Attorneys for Plaintiff
ROBERT W. AHLSTROM

# EXHIBIT 6

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC.
and D.R. HORTON, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY GP, INC., a Delaware corporation; D.R. HORTON, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:17-cv-04383-BLF

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION**

| | |
|---|---|
| Date: | November 8, 2018 |
| Time: | 9:00 a.m. |
| Place: | Courtroom 3, San Jose |
| Complaint Filed: | August 2, 2017 |
| Trial Date: | None |
| District Judge: | Hon. Beth Labson Freeman<br>Courtroom 3, San Jose |

Defendants DHI Mortgage Company GP, Inc. and D.R. Horton, Inc. hereby submit their REPLY in Support of Defendants Motion to Compel Arbitration and Stay Action.

## I. INTRODUCTION

Plaintiff Robert W. Ahlstrom ("Plaintiff") agreed to arbitrate his wage and hour claims against DHI Mortgage Company, Ltd. ("DHI") on an individualized basis. Plaintiff signed the Mutual Arbitration Agreement ("MAA") and did not exercise his right pursuant to the MAA to subsequently opt out from his arbitration obligation. Nonetheless, Plaintiff contends, relying upon pedantry and sophistry instead of reason and law and a misinterpretation of the terms of the MAA, that the Court should not compel him to arbitrate his disputes solely because he was not employed by Defendant D.R. Horton, Inc., ("D.R. Horton").

There are two reasons why Plaintiff's argument fails.

First, because Plaintiff's entire argument for avoiding the MAA rests upon his *misinterpretation* of the provisions of the MAA, and because the Parties expressly agreed that any questions concerning the MAA's interpretation must be *decided by the arbitrator,* the Court must send this case to arbitration. On this ground alone, the Court must grant Defendants' Motion to Compel Arbitration.

Second, even if the Court were to consider the merits of Plaintiff's attack, it should still send the case to arbitration. Plaintiff argues that he is not subject to the MAA even though (a) he signed the MAA; and, (b) he did not opt out from the MAA. He further contends that the Opt-Out language states that if the employee does not opt out and accepts employment with D.R. Horton, the employee agrees to comply with the MAA. Yet, Plaintiff ignores that the MAA's Opt-Out provision was not the method by which Plaintiff accepted the terms of the MAA. Indeed, Plaintiff does not mention that *by signing the MAA* he agreed to arbitrate this claims, and by failing to opt-out, he reiterated his *prior* acceptance.

It really comes down to this: Plaintiff cannot use *his failure* to exercise his opt out rights as a way to escape his prior acceptance of the MAA. If Plaintiff wanted to opt out, he should have returned the Opt-Out Form instead of remaining silent. He stayed silent. He is bound by the MAA.

Accordingly, the Court should grant Defendants' Motion to Compel Arbitration and order Plaintiff to arbitrate his claims against Defendants upon an individualized basis.

## II. THE COURT SHOULD GRANT DEFENDANTS' MOTION TO COMPEL ARBITRATION BECAUSE THE PARTIES AGREED THAT THE ARBITRATOR, AND NOT THE COURT, WOULD INTERPRET THE MAA

Plaintiff does not dispute that the MAA contains a delegation clause that requires the arbitrator—and only the arbitrator—to resolve any disputes regarding the interpretation of the MAA. For example, Plaintiff's contention that the Opt-Out Provision is ambiguous and that the ambiguity must be decided against the drafter not withstanding contrary language contained in the MAA is clearly a decision requiring contract interpretation and thus must be decided by the arbitrator. Similarly, Plaintiff's allegation that the Opt-Out language forms the only method of acceptance also requires interpretation of the MAA. Again, it is a question exclusively for the arbitrator.

The Court lacks jurisdiction to decide whether a valid agreement to arbitrate exists when, as here, the parties have "clearly and unmistakably" delegated the arbitrability issues to the arbitrator. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). In the instant action, the Parties "clearly and unmistakably" delegated MAA interpretation issues—including issues regarding the validity of the MAA itself--to the arbitrator. The MAA states in relevant part:

> "Except as noted in the following paragraph [concerning class action waiver] ***the arbitrator, and not any federal, state, or local court, shall have the exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement***, including without any limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determinate the enforceability of this Agreement."

(Hunter-Perkins Decl., ¶8, Ex. B., ¶ 6.)

Where, as here, the delegation is "clearly and unmistakably" made, the District Court only determines whether the delegation clause itself is unconscionable. *Clayborne v. Lithia Motors, Inc.* 2017 WL6017009 at *3 (E.D. Cal. Dec. 5, 2017). "If the delegation of arbitrability is not unconscionable, the enforceability of the entirely [sic] arbitration agreement...will be left to the arbitrator." *Id.* The MAA's delegation clause is not unconscionable. Indeed, Plaintiff has made no attempt to argue the delegation is unconscionable. Thus, regardless of how the Court views

Plaintiff's tortured arguments twisting the meaning of the Opt-Out provision, the Court must grant the Motion to Compel and have the arbitrator interpret the MAA.

## III. <u>THE COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS UPON AN INDIVIDUALIZED BASIS</u>

Even if the Court were to consider the merits of Plaintiff's position, it should reject them and enforce the MAA. Plaintiff's failure to work for D.R. Horton did not vitiate his prior acceptance of the MAA in which he agreed to arbitrate all claims he might possess as against Defendants.

### A. The MAA's Opt-Out Provision Does Not Vitiate Plaintiff's Prior Acceptance Of The Agreement.

Paragraph 11 of the MAA contains the language permitting Plaintiff to opt out of the MAA ("the Opt-Out Provision") stating as follows:

> Employee may opt-out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement.

(Hunter-Perkins Decl., ¶8, Ex. B., ¶ 11.)

The Opt-Out Provision does not, by its terms, provide that failing to return the Opt-Out Form and then working for "the Company" constitutes the *exclusive* method for accepting the MAA. Indeed, the plain meaning of the paragraph provides that it is a method for *opting out* of a *previously accepted agreement*. The final sentence of the paragraph is informational, stating one result if the employee does not opt out and continues working at D.R. Horton, Inc. The paragraph says nothing about what happens if the employee does not opt out and is working for an entity other D.R. Horton, Inc. The only logical result is that if the employee *does not opt out*, he or she remains bound by the employee's original acceptance of the MAA.

Plaintiff's baseless alternative reading is of no merit and would have the last sentence of the Opt-Out Provision read as creating an absolute, exclusive condition – something disfavored under California law. See *Pacific Corporate Group Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 311–

312 (2014).

Faced with this problem, Plaintiff heavily relies on *Hillsborough LLC v. Marcus & Millichap Real Estate Inv. Brokerage Co*., No. E038589, 2006 WL 2501580, at *1 (Cal. Ct. App. Aug. 30, 2006), for the proposition that where a contract "***does*** prescribe the manner acceptance is to be communicated," no other manner is sufficient. (emphasis added.) *Hillsborough* is unpublished and is distinguishable on its facts. In *Hillsborough,* the contract at issue dictated that:

> "The commencement date of this contract shall be the date [the broker] receives this executed Representation Agreement from all Sellers and countersigns this Representation Agreement. Termination date shall be one hundred eighty (180) days (six months) from commencement date. [The broker] shall deliver written notification to seller of exact commencement date and termination date with fully executed contract."

However, in *Hillsborough,* the broker never "countersigned" and also failed to deliver written notice to the seller of the commencement and termination dates. The Court held that "[w]here the agreement never "commenced," no contract was formed."

*Hillsborough* is inapposite. The contract in *Hillsborough* stated that the contract would not *commence* until broker provided notice. The broker did not provide notice, so there was no contract. In finding there was no contract, the Court was relying upon the distinction drawn by the Court in *Estate of Crossman* between (1) an offer "which makes a 'positive requirement'...or imposes 'an absolute condition'...of a specified manner of acceptance," and (2) an offer "which merely suggests a permitted... manner" where "another method of acceptance **is not precluded**." *Estate of Crossman*, 231 Cal. App. 2d 370, 371 (1964) (internal citations ommitted) (emphasis added). In *Hillsborough,* the language of the contract was specific and mandatory: there could not be a contract until notice was provided to the sellers by the broker. In the instant action, the "Opt-Out" nature of the MAA means that there was a contract once Plaintiff agreed to it unless Plaintiff properly *opted out of it.* Since Plaintiff did not opt out, the MAA remained in force. Hence, the instant action falls in the latter category described by *Crossman.*

Plaintiff further argues that the language in *Artukovich v. Pacific States Cast Iron Pipe Co.* 78 Cal. App.2d 1, 3 (1947) that "[i]n addition the provision in an offer specifying a means of acceptance is for the benefit of the offerer [sic] and may be waived by him" is inapplicable here

Case 5:17-cv-04383-BLF Document 33 Filed 01/22/18 Page 16 of 18

and that the benefit here is to the Plaintiff. Whether the benefit is related to the MAA or the Opt-Out (although Defendants maintain that it is the former) is ultimately insignificant; even the Court in *Estate of Crossman* considered and then disregarded this issue, looking only at whether the language of the contract precluded other means of acceptance.

In *Estate of Crossman,* the agreement provided that "[a]ny notice that either party hereto desires or shall be required to give to the other hereunder shall be given in writing, either delivered personally or sent by prepaid registered mail." 231 Cal. App. 2d at 371. The appellant telephoned the other party to state the agreement was being exercised, and then sent a letter by regular mail the next day. *Id*. The appellant later took the position that because the letter was not sent by registered mail, the agreement was not binding. *Id*. The Court disagreed, explaining the distinction between the two types of offers (discussed above) and noting that "it is frequently necessary to look beyond the literal meaning of the language used." *Id*. at 371-372.
Similarly, in *Devencenzi v. Donkonics* 170 Cal. App. 2d 513, 515 (1959), the Court held that the offeree had accepted an agreement through a completely separate writing even though the offeror had written, "If this is agreeable to you please sign the two copies [of the enclosed agreement]."

To the extent Plaintiff would argue *Dexter v. Ankiewicz*, 26 Cal. App. 2d 326, 333 (1938) has any relevance, the facts are completely dissimilar. In *Dexter*, the Court addressed whether a continuous exchange between the parties over the course of approximately seven months constituted acceptance of a contract. The plaintiff – on five separate occasions – asked the defendant, who had merely once stated he was "willing to sign and return" the contract, to, in fact, sign and return the contract. The defendant never did so, and the Court held that no contract existed because both parties clearly contemplated the signed agreement as necessary for acceptance.

In short, Plaintiff accepted the agreement when he signed it. Plaintiff did not exercise his Opt-Out right. Accordingly, the MAA remains binding upon Plaintiff.

**B. The Rule Against The Drafter Is Inapplicable.**

Plaintiff relies on Civil Code § 1654, which provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." This rule is inapplicable here for two independent

reasons.

First, the terms of the MAA explicitly contract around this rule, stating, "This Agreement shall be construed as a whole, according to its fair meaning, **and not for or against any party**." In addition, the MAA provides, "If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable."

Second, by its own language – "In cases of uncertainty not removed by the preceding rules" – Civil Code § 1654 limits its application to circumstances under which other rules of contract interpretation cannot resolve the issue. The provisions in the Civil Code setting forth the rules of contract interpretation commence with § 1635 (The chapter is entitled "TITLE 3. INTERPRETATION OF CONTRACTS [1635 - 1663].") Civil Code § 1654, which provides that in cases of uncertainty, language of contract should be interpreted most strongly against the drafting party, "is not determinative when the contract may be properly construed by application of other rules of construction." *B. L. Metcalf Gen. Contractor, Inc. v. Earl Erne Inc.*, 212 Cal. App. 2d 689, 695-696 (1963). Notably, none of the cases discussed in the previous section (analyzing the issue of whether acceptance by another means was precluded) cite to the rule that ambiguities be resolved against the drafter.

Moreover, the MAA is not ambiguous. Plaintiff signed it and did not opt out. He remains obligated to arbitrate his claims against Defendants upon an individualized basis.

## IV. CONCLUSION

Plaintiff entered into an enforceable, mutually binding arbitration agreement with Defendants which governs all of Plaintiff's claims in this action. Defendants therefore respectfully request that this Court, pursuant to the Federal Arbitration Act (9 U.S.C. § 3) and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018), compel Plaintiff to arbitrate his claims on an individualized basis, dismissing Plaintiff's class and collective action allegations, and dismissing or staying the instant action to permit the parties to complete arbitration. At a minimum, the Court must send the action to arbitration to permit the arbitrator to adjudicate any challenges related to the interpretation of the MAA, other than those involving the class action waiver.

DATED: October 2, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Jack S. Sholkoff
Jack S. Sholkoff
Jennifer L. Katz
Alexandra Aurisch

Attorneys for Defendants
DHI MORTGAGE COMPANY GP, INC.
and D.R. HORTON, INC.

# EXHIBIT 7

Case 5:19-cv-03453-MMC Document 17 Filed 07/12/19 Page 165 of 188

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ROBERT W. AHLSTROM,

Plaintiff,

v.

DHI MORTGAGE COMPANY GP, INC., et al.,

Defendants.

Case No. 17-cv-04383-BLF

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; DISMISSING CASE WITHOUT PREJUDICE**

[Re: ECF 28]



Plaintiff Robert Ahlstrom brings claims on behalf of himself and a putative class of others similarly situated in connection with Defendants DHI Mortgage Company GP, Inc., D.R. Horton, Inc., and DOES 1 through 50 (collectively, "Defendants") for state law wage and hour and contract violations. *See generally* Compl., ECF 1. Before the Court is Defendants' Motion to Compel Arbitration. Mot., ECF 28. The Court heard oral argument on the motion on November 8, 2018. For the reasons stated herein, Defendants' Motion to Compel Arbitration is GRANTED. The action is DISMISSED without prejudice.

## I. BACKGROUND

The relevant background here is straightforward.[1] Defendant D.R. Horton, Inc. ("D.R. Horton") is the parent company of both Defendant DHI Mortgage Company, GP, Inc. ("DHI GP") and DHI Mortgage Company, Ltd. ("DHI Ltd."), which is not a Defendant in this case. *See* Aurisch Decl. ISO Mot., Ex. 3 ("Winter Decl.") ¶ 2, ECF 28-1. Plaintiff Robert Ahlstrom ("Ahlstrom") was employed by DHI Ltd. between July 2015 and December 2016. Aurisch Decl., Ex. 2 ("Hunter-Perkins Decl.") ¶ 2, ECF 28-1. On June 27, 2015, Ahlstrom filled out and

[1] The Court need not and does not take judicial notice of any additional facts. Defendants' request for judicial notice is denied. *See* ECF 29.

United States District Court
Northern District of California

electronically signed an application for employment. *Id.* ¶ 7. On July 24, 2015, shortly after he was hired by DHI Ltd., Ahlstrom signed a Mutual Arbitration Agreement ("MAA"). *Id.* ¶ 8.

Despite being hired by DHI Ltd., the MAA on its face is between "[t]he undersigned employee ('Employee') and *D.R. Horton, Inc.* (the 'Company')." *Id.*, Ex. B ("MAA") (emphasis added). The MAA covers "all legal disputes and claims between [Employee and Company]," including "claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents," for, *inter alia*, "wages, overtime, benefits, or other compensation" and "breach of any express or implied contract." *Id.* ¶ 1. The MAA includes various provisions relevant to the present motion. First, it includes a delegation-of-arbitrability provision that states, in relevant part:

> [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation or this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, except as noted in the following paragraph [the class action waiver provision], the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

*Id.* ¶ 6. Second, the MAA includes an opt-out provision that states, in relevant part:

> Employee may opt-out of this Agreement by delivering within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form . . . . If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she will be deemed to have accepted the terms of this Agreement.

*Id.* ¶ 11. And finally, it includes a class action waiver:

> This Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, or group action or awarding relief to a group of employees in one proceeding, to the maximum extent permitted by law. Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.

*Id.* ¶ 7.

## II. LEGAL STANDARD

The parties agree that the Federal Arbitration Act ("FAA") applies. *See* Mot. at 6–8; Opp. at 2. The FAA embodies a "national policy favoring arbitration and a liberal federal policy

United States District Court
Northern District of California

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). However, certain issues are presumptively reserved for the court. These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citation omitted).

That said, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within the province of judicial review, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987–88. "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted) (alteration in original).

If there is no clear and unmistakable delegation, a district court engages in a limited two-part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985). When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999)

Case 5:17-cv-04383-BLF Document 37 Filed 01/12/18 Page 4 of 6

(interpreting the language "arising in connection with" in an arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").

## III. DISCUSSION

Plaintiff was employed by DHI, Ltd., but chose not to sue DHI, Ltd. in the instant suit. As such, no contract between Plaintiff and DHI Ltd. is at issue here. Instead, the MAA here was a purported contract between Plaintiff and D.R. Horton. Had Plaintiff sued DHI, Ltd. and had DHI, Ltd. attempted to enforce the MAA at issue, a different analysis would be required. But that is not what Plaintiff chose to do. Instead, Plaintiff sued D.R. Horton, with whom he *did* sign an arbitration agreement. As such, the key issue in this case turns on the validity of that MAA as to Plaintiff and D.R. Horton.

Whether the MAA is valid is solely a question of contract interpretation and formation, and thus must be sent to the arbitrator pursuant to the MAA's delegation provision. In his opposition, Ahlstrom raises only issues of formation of and interpretation of the Agreement. *See generally* Opp. He does not argue that the MAA is unconscionable, invalid, or otherwise unenforceable. Ahlstrom signed the MAA, which covers claims against D.R. Horton and its subsidiaries, including DHI GP. The agreement also includes a clear and unmistakable delegation provision, providing "the arbitrator, and not any federal . . . court . . . exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation or this Agreement." MAA ¶ 6. Ahlstrom does not argue that the language of this provision is not clear and unmistakable. Instead, Ahlstrom's sole argument turns on interpretation of the opt-out provision. Unfortunately for Ahlstrom, interpretation of that provision is delegated exclusively to the arbitrator and cannot be adjudicated by this Court.

The Court is not persuaded by Ahlstrom's arguments to the contrary. Based on his proposed interpretation of the opt-out provision, Ahlstrom argues that he never accepted the MAA, such that it cannot be enforced against him. *See generally* Opp., ECF 32. Ahlstrom argues that this provision sets forth how to accept the MAA by stating that if an employee fails to opt out, "he or she will be deemed to have accepted the terms of this Agreement." MAA ¶ 11. By

United States District Court
Northern District of California

Case 3:17-cv-03435-RS Document 37 Filed 12/10/18 Page 5 of 8

contrast, then, if an employee *complies* with the opt-out provision (*i.e.*, successfully opts out), he never accepts the agreement. According to Ahlstrom, an employee can comply (and thus never accept the agreement) in one of two ways: (1) by delivering the required form within 30 days; or (2) by failing to "accept or continue employment with the Company after that date." *Id.* Ahlstrom argues he opted out via the latter option because he never accepted employment with "the Company"—*i.e.*, D.R. Horton—but instead accepted employment with DHI Ltd.

The elaborateness of this argument reveals its fatal flaw. Ahlstrom accepted the MAA when he signed on the dotted line. By its very name and nature, the "opt-out" provision provided an opportunity for Ahlstrom to opt out of his previously rendered acceptance. And to determine whether Ahlstrom successfully opted out, the Court would have to interpret the agreement and decide whether failure to accept employment with D.R. Horton satisfies the condition for opting out. That is precisely the type of formation / interpretation question Ahlstrom clearly and unmistakably agreed to delegate to the arbitrator. As such, the antecedent question of whether the arbitration agreement covers Ahlstrom's claims must be sent to the arbitrator.

Ahlstrom also argues that the opt-out provision proscribes the *sole* means of acceptance because it says "he or she shall be deemed to have accepted the terms of this Agreement." Opp. at 4. But this reading strains credulity, given its inclusion in the "opt-out" provision. The plain language instead reinforces that failure to opt out will constitute continued acceptance—or, put another way, that opting out is the only way to *terminate* acceptance. This language is not ambiguous and in no way denotes an exclusive means of acceptance. *Cf. Devencenzi v. Donkonics*, 170 Cal. App. 2d 513, 518 (1959) (offer language instructing offeree to "please sign the two copies" if the offer "is agreeable" was not exclusive means of acceptance). Given that Ahlstrom validly accepted the arbitrability provision, then, the question of whether he validly terminated his acceptance of the MAA is delegated to the arbitrator as an ancillary formation issue.

Finally, the Court finds it appropriate to dismiss the case without prejudice. The MAA includes a valid class action waiver, the substance of which Ahlstrom does not challenge. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the legality of class action

United States District Court
Northern District of California

waivers in arbitration agreements). As such, given that Ahlstrom's individual claims must be sent to arbitration, the Court dismisses the class action claims pending resolution of the arbitration.

**IV. ORDER**

For the foregoing reasons, Defendants' Motion to Compel Arbitration is GRANTED. There being no remaining claims outside of arbitration, the entire action is DISMISSED WITHOUT PREJUDICE to filing a later action should the arbitrator determine the arbitration agreement is not binding on Ahlstrom, or to confirm or vacate any arbitration award.

**IT IS SO ORDERED.**

Dated: November 30, 2018

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

# EXHIBIT 8

Filed 12/18/14

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| REBECCA RENEE GILLESPIE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WESTERN PACIFIC HOUSING MANAGEMENT, INC.,<br><br>Defendant and Appellant. | D066354<br><br><br><br>(Super. Ct. No. CIVSS710814) |

APPEAL from a judgment of the Superior Court of San Bernardino, John M. Pacheco, Judge. Reversed.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff, Catherine J. Coble, Angel H. Ho and Vanessa C. Krumbein for Defendant and Appellant.

Kingsley and Kingsley, Eric B. Kingsley, Darren M. Cohen, Liane Katzenstein Ly and Kelsey M. Szamet for Plaintiff and Respondent.

In this action for alleged Labor Code violations as to meal and rest periods brought by plaintiff Rebecca Renee Gillespie, defendant Western Pacific Housing Management,

Inc. (Western Pacific) brought a motion to compel arbitration, pursuant to a mutual arbitration agreement (MAA). The court denied the motion finding (1) Western Pacific waived its right to enforce the agreement by litigating the action for four years before seeking to compel arbitration, and (2) the MAA was unconscionable.

On appeal Western Pacific asserts the court erred by (1) finding the MAA was unconscionable and (2) finding that it waived the right to compel arbitration. We conclude that Western Pacific did not waive its right to compel arbitration. We also conclude that the MAA is not unconscionable. Further, as we shall discuss, the class action waiver is enforceable. However, we also conclude that the class action waiver cannot apply to Gillespie's claim under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). Accordingly, we reverse the court's order denying the motion to compel arbitration and remand this matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties*

Beginning in March 2006, Gillespie was employed by Western Pacific. Western Pacific is a homebuilding company based in Texas that builds homes in California. Gillespie worked as a sales representative in Southern California selling homes.

B. *The MAA*

Shortly after she was hired, Gillespie signed the MAA.

The MAA provided that all employment-related claims, including those related to wages, were subject to arbitration:

> "Employee and the Company . . . agree that all disputes and claims between them, including those relating to Employee's employment with the Company and any separation therefrom . . . shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator . . . . Claims subject to arbitration under this Agreement include without limitation claims for discrimination or harassment; *wages, benefits of other compensation* . . . ." (Italics added.)

The MAA also provides that the "arbitrator may hear only Employee's individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding."

C. *The Underlying Litigation*

In October 2007 Gillespie filed a class action lawsuit on behalf of herself and all individuals employed by Western Pacific in the position of salesperson within California from four years prior to the filing of the action. The complaint alleged Western Pacific improperly classified her and other salespersons as exempt from overtime law and that, as a result, she and other salespersons did not receive required meal and rest breaks. The complaint asserted causes of action for violation of meal and rest break law, penalties pursuant to Labor Code section 203, and violation of Business and Professions Code section 17200. In November 2007 Gillespie filed a first amended complaint adding a cause of action for violation of Labor Code section 2699. The parties thereafter stipulated to transfer venue from Alameda County to San Bernardino County.

Western Pacific answered the complaint several weeks after the California Supreme Court's decision in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), in which class action waivers in employment agreements were held to be unenforceable,

and, if parties sought to enforce such waivers, they could be forced into class action arbitration. Recognizing that moving to compel arbitration would, in light of *Gentry*, be futile, the parties proceeded to partially litigate Gillespie's claims. The parties agreed (1) to send a precertification notice to putative class members and (2) to the production of basic contact information about putative class members. Western Pacific deposed Gillespie, but Gillespie took no depositions.

D. *The Stay of Proceedings*

In December 2009 Western Pacific filed an ex parte application seeking to stay all proceedings pending the California Supreme Court's resolution of *Brinker v. Superior Court* (2008) 165 Cal.App.4th 25, review granted October 22, 2008, S166350 (*Brinker*), as that decision would impact resolution of this action. Gillespie opposed Western Pacific's ex parte application, asserting *Brinker* was not dispositive of this action.

The trial court denied Western Pacific's ex parte application, but set the matter for a noticed hearing on Western Pacific's motion to stay this litigation. On February 10, 2010, the court granted Western Pacific's motion to stay all proceedings until August 2010, pending the decision by the Supreme Court in *Brinker.* Thereafter, the court stayed the matter several more times, the last stay having been issued April 11, 2012, the day before *Brinker* was decided.

Each time the stay was continued, the trial court and both parties acknowledged *Brinker's* importance to resolution of this action. In its August 9, 2010 order extending the stay, the trial court stated, "Counsel stipulate that the *Brinker* case does apply to the case. . . . Counsel agree the stay i[s] appropriate." In January 2011 the parties stipulated

"[t]he Supreme Court still has not issued a decision in *Brinker*. Accordingly, the parties agree that a further stay of at least 180 days is appropriate, unless the Supreme Court issues a decision sooner. [¶] . . . The Parties thus request that the Court extend the stay of the action until the next Case Management Conference." In August 2011, when continuing the stay, the trial court acknowledged that "[c]ounsel inform[ed] the court they are [still] waiting a decision from the California Supreme Court." In February 2012 the trial court again extended the stay, noting that "[c]ounsel still waiting on decision from the Calif[ornia] Supreme Court." On April 11, 2012, the trial court again continued the stay "at [the] request of counsel for all parties." Gillespie opposed the motion, arguing: (1) the MAA was both procedurally and substantively unconscionable; (2) Western Pacific waived its right to compel arbitration through unreasonable delay and use of the judicial process, to the prejudice of Gillespie; (3) the MAA was in violation of the National Labor Relations Act (NLRA) and was therefore unenforceable; (4) under the holding in *Gentry, supra*, 42 Cal.4th 443, the MAA would be invalidated; and (5) the MAA barred Gillespie from acting as a private attorney general to recover under PAGA based on the holding of *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489.

F. *Court's Ruling*

At the hearing on Western Pacific's motion to compel arbitration, the trial court addressed both the waiver and unconscionability issues raised by Gillespie in her opposition to the motion to compel arbitration. On the issue of waiver, the court noted that "this has been going on for four years." The court noted that the case had been stayed pending the *Brinker* decision, but stated that "a lot of cost and everything has been

expended in litigation and everything, and I just think it's better that I stick with my tentative." As to the issue of unconscionability, the court addressed concerns about the MAA's one-way provision that allowed Western Pacific to terminate the arbitration clause, but "plaintiff does not have that right." The court also inquired about the choice of law provision. Western Pacific acknowledged "[t]he arbitration agreement, it says that either Texas law or the Federal Arbitration Act will apply." However, Western Pacific told the court that, despite what the MAA stated, the claims would be resolved under California law.

Counsel for Gillespie also addressed the clause providing that actions for declaratory relief could be brought in state court, but all other claims must be arbitrated. Counsel pointed out that although that clause was facially neutral, it favored employers as they were the only party likely to seek declaratory relief. The court agreed, stating, "[Y]eah, another reason why it would be unconscionable." The court then took the matter under submission.

Thereafter, the trial court denied Western Pacific's motion finding that "[d]efendant waived [its] right to seek arbitration and the MAA is [u]nconscionable."

DISCUSSION

I. *ANALYSIS*

A. *Waiver*

A trial court may deny a petition to compel arbitration on the ground of waiver. (Code Civ. Proc.,[1] § 1281.2, subd. (a).) Relevant factors to consider in assessing waiver claims include: """(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.""" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

However, courts cannot lightly infer waiver. (*St. Agnes Medical Center v. PacificCare of California, supra*, 31 Cal.4th at p. 1195.) The party asserting waiver bears a heavy burden and "any doubts regarding a waiver allegation should be resolved in favor of arbitration." (*Ibid*.)

---

1 All further undesignated statutory references are to the Code of Civil Procedure.

Here, Gillespie cannot meet this heavy burden. As we have noted, *ante*, Western Pacific filed its motion to compel arbitration shortly after the decision in *Brinker* was issued. As we have also noted, in agreeing to multiple stays of the proceedings in this action, the parties acknowledged the importance of *Brinker* to resolution of this action. Thus, we cannot say that Western Pacific's actions evidenced an intent to waive arbitration.

In finding waiver, the trial court relied on litigation activities and expenses that occurred before the action was stayed. In this regard Gillespie submitted two declarations in opposition to Western Pacific's motion to compel arbitration: a declaration from herself and one from her counsel. Her declaration relates to her participation in discovery before the trial court's initial stay order. Her counsel's declaration similarly relates to litigation activity occurring before the initial stay order, with the exception of a statement that putative class members contacted Gillespie's counsel while the stay was pending. However, this ignores the fact that at the time this action was filed, *Gentry*, *supra*, 42 Cal.4th 443, had held that class action waivers were unenforceable. Therefore, it would have been futile to move to compel arbitration based upon the law existing at that time.

B. *Unconscionabilty*

1. *Applicable authority*

A written contractual provision to submit to arbitration any disputes arising out of the contract is "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281; *Kinney v. United HealthCare*

*Services, Inc.* (1999) 70 Cal.App.4th 1322, 1327.) Unconscionability is one of those grounds. (Civ. Code, § 1670.5, subd. (a); *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099 (*Discover Bank*).)

"'Unconscionability is ultimately a question of law for the court.' [Citation.] However, numerous factual issues may bear on that question. [Citation.] Where the trial court's determination of unconscionability is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89.)

"[T]he doctrine [of unconscionability] '"has both a 'procedural' and a 'substantive' element."'" (*Little v. Auto Steigler, Inc.* (2003) 29 Cal.4th 1064, 1071; *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 114 (*Armendariz*).) "'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

2. *Analysis*

a. *The MAA is not procedurally unconscionable*

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*) *LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) Here, there is no evidence of "surprise" with regard to the formation of the MAA. This element refers to situations where an arbitration provision is hidden in an agreement drafted by the party seeking to enforce it. (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853.)

Here, the MAA is a separate agreement and the arbitration provision is clear and conspicuous. Thus, the MAA's arbitration provision does not contain any element of "surprise."

Likewise, Gillespie there is no evidence of oppression. Indeed, at her deposition, after admitting she signed the MAA, Gillespie conceded that she did not even remember being presented with it. Thus, there is no evidence she signed the MAA unwillingly.

Thus, because there is little or no evidence that the MAA is procedurally unconscionable, Gillespie must demonstrate the MAA's substance was highly unconscionable.

b. *The arbitration provision is not substantively unconscionable*

Substantive unconscionability relates to "the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. . . . [T]he term must be 'so one-sided as to "shock the conscience."' (*Pinnacle, supra,* 55 Cal.4th at p.

246.) For purposes of unconscionability, an arbitration agreement must lack bilateralism. To be enforceable, it must require both parties to submit their claims to arbitration. (*Armendariz, supra,* 24 Cal.App.4th at pp. 117-120.

Here, the MAA meets this requirement. It applies to both Western Pacific and Gillespie and requires them both to arbitrate their disputes arising from her employment.

The trial court's comments at the hearing indicated it was concerned regarding two aspects of the MAA: the modification provision and the carve-out for declaratory and equitable relief in paragraph 2. However, neither of these issues supports a finding of substantive unconscionability.

Paragraph 8 of the MAA grants Western Pacific a limited right to modify the terms of the MAA. It must provide 30 days' notice of the modification and changes may only be prospective. In this regard the MAA provides: "This Agreement may be modified or revoked by the Company by providing thirty days written notice to employees. Any modification or revocation shall not be effective until after the thirty day notice period, *shall be prospective only*, and shall not apply to any claims already initiated by either party." (Italics added.)

This provision is not unconscionable. As long as an employer's ability to modify is appropriately limited so as to ensure good faith and fair dealing, unilateral modification provisions are enforceable:

> """[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."' [Citations.] [The employer's] discretionary power to modify the

> terms of the personnel handbook in writing notice indisputably carries with it the duty to exercise that right fairly and in good faith. [Citation.] . . . So construed, the modification provision does not render the contract illusory." (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1214.)

Thus, the MAA's modification provision is not unconscionable.

At the hearing on Western Pacific's motion to compel arbitration, the trial court indicated it believed the MAA was unconscionable because paragraph 2 excludes from arbitration declaratory or injunctive relief claims regarding confidentiality, non-competition, or similar obligations. This provision does not render the MAA unconscionable.

This is so because even if the MAA's provision excluding such claims from arbitration was improper, the trial court could have severed it, and indeed was required to do so. In *Little v. Auto Steigler, Inc., supra,* 29 Cal.4th 1064, the California Supreme Court considered an employment arbitration agreement that included a provision providing a right to only the employer to appeal an arbitration award in excess of $50,000. (*Id.* at p. 1071.) Recognizing that the appeal was unilateral, and thus unconscionable, the California Supreme Court held that the trial court was required to sever the offending provision and enforce the balance of the agreement. (*Id.* at pp. 1072-1076.)

Similarly, in *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 985 the Court of Appeal found that a trial court's refusal to sever from an arbitration agreement a provision limiting discovery was an abuse of discretion:

> "Even if we assume the discovery provision to be unconscionable, which we do not, the trial court abused its discretion by refusing to sever it. Where, as here, only one provision of an agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so." (See *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 101-102 [severing provision in employment arbitration agreement requiring employee to pay certain arbitration costs].)

Thus, if the MAA's provision allowing both parties to seek injunctive or declaratory relief in court is unconscionable because it is only likely that Western Pacific would bring such a claim, the court was obligated to sever it and enforce the remainder of the agreement.

C. *The MAA's Class Action Waiver Is Enforceable.*

Gillespie asserts that the class action waiver provision in the MAA is unenforceable under *Gentry, supra,* 42 Cal.4th 443. However, that decision has now been abrogated by *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct 1740] (*Concepcion*) and *Iskanian v. CLS Transportation Los Angeles* (2014) 59 Cal.4th 348 (*Iskanian.)*

In *Iskanian, supra,* 59 Cal.4th 348, the California Supreme Court held that "[u]nder the logic of *Concepcion*, the FAA [Federal Arbitration Act] preempts *Gentry*'s rule against employment class waivers." (*Id*. at p. 364.) As the court explained: "[T]he fact that *Gentry* 's rule against class waiver is stated more narrowly than *Discover Bank* 's rule does not save it from FAA preemption under *Concepcion*. The high court in *Concepcion* made clear that even if a state law rule against consumer class waivers were limited to 'class proceedings [that] are necessary to prosecute small-dollar claims that

might otherwise slip through the legal system,' it would still be preempted because states cannot require a procedure that interferes with fundamental attributes of arbitration 'even if it is desirable for unrelated reasons.' [Citations.] It is thus incorrect to say that the infirmity of *Discover Bank* was that it did not require a case-specific showing that the class waiver was exculpatory. *Concepcion* holds that even if a class waiver is exculpatory in a particular case, it is nonetheless preempted by the FAA." (*Iskanian, supra,* at p. 364.)

The Supreme Court also considered whether the class action waiver was invalid under the NLRA and concluded in light of the FAA's """liberal federal policy favoring arbitration"' (*Concepcion, supra,* [131 S.Ct. at p. 1745]), that sections 7 and 8 of the NLRA do not represent "'a contrary congressional command"' overriding the FAA's mandate [citation]." (*Iskanian, supra,* 59 Cal.4th at p. 373.) The Supreme Court observed that its conclusion was "consistent with the judgment of all the federal circuit courts and most of the federal district courts that have considered the issue." (*Ibid.*)

As the United States Supreme Court held in *Concepcion,* if the state laws, rules, or "judicial policy judgments" "stand as an obstacle to the accomplishment of the FAA's objectives"—to enforce private parties' arbitration agreements—the state law, rule or judicial policy judgment fails. (*Concepcion, supra,* 131 S.Ct. at p. 1748.) States could no longer "'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable . . . .'" (*Id.* at p. 1747.) Thus, *Concepcion* overruled *Gentry,* and the class action waiver is enforceable.

D. *The PAGA Claims*

Gillespie also asserts that even if the MAA prevents her from maintaining a class action against Western Pacific, it does not apply to her PAGA claims under Labor Code section 2698 et seq. Gillespie is correct.

The court in *Iskanian* also addressed the question of whether the plaintiff was required to arbitrate his PAGA claim on an individual basis. Our high court began by summarizing the PAGA provisions: "'Under the legislation, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." [Citation.] [¶] Before bringing a civil action for statutory penalties, an employee must . . . give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency . . . . If the agency notifies the employee and employer that it does not intend to investigate . . . , the employee may commence a civil action.'" (*Iskanian, supra,* 59 Cal.4th at p. 380.) According to the court, these provisions demonstrated that a PAGA representative action is "a type of qui tam action" (*id.* at p. 382) that permits "aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." (*Id.* at p. 379.)

The court then addressed whether California law prohibited the waiver of representative PAGA claims and, if so, whether such a rule was enforceable under the

FAA. The Court first concluded that such claims were unwaivable: "[A]n employment agreement [that] compels the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law." (*Iskanian, supra,* 59 Cal.4th at p. 384.) In reaching its conclusion, the court rejected defendant's assertion that the particular waiver at issue was not against public policy because the plaintiff retained his right to arbitrate his PAGA claim on an individual basis: "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of representative claims frustrates the PAGA's objectives . . . [because] a single-claimant arbitration . . . for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code. That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA, even if an individual claim has collateral estoppel effects. [Citation.] Other employees would still have to assert their claims in individual proceedings.'" (*Ibid*., italics omitted.)

The Court then explained that the FAA did not preempt this rule of California law: "*Concepcion* made clear [that] a state law rule may be preempted when it 'stand[s] as an obstacle to the accomplishment of the FAA's objectives.' [Citation.] . . . [T]he rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of private disputes, whereas a PAGA action is a dispute between an employer and the state Agency." (*Iskanian, supra,* 59 Cal.4th at p. 384, italics omitted.) The Court concluded: "Nothing in the text or

legislative history of the FAA nor in the Supreme Court's construction of the statute suggests that the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions." (*Id*. at p. 387.)

DISPOSITION

The order denying Western Pacific's petition to compel arbitration is reversed, and the court is ordered to grant Western Pacific's motion to compel, with the exception of Gillespie's PAGA claim. The parties shall bear their own costs on appeal.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,

Defendants.

Case No. ___________________________

**NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

*[Filed concurrently with Civil Cover Sheet; Certification of Interested Entities or Persons; Disclosure Statement; Notice of Pendency of Other Action or Proceeding; and Declaration of David Morice.]*

Complaint Filed: March 27, 2019
Trial Date: None

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF ROBERT W. AHLSTROM AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendant DHI Mortgage Company, Ltd., L.P. ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(a), and 1446. In support of such removal, Defendant states as follows:

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

1. On or about March 27, 2019, plaintiff Robert W. Ahlstrom, individually and on behalf of all others similarly situated (hereinafter "Plaintiff"), filed a Complaint in the Superior Court of the State of California, County of Alameda, entitled *Robert W. Ahlstrom, on behalf of himself, all others similarly situated, Plaintiff, vs. DHI Mortgage Company, Ltd., L.P., a Texas Limited Partnership; and DOES 1 to 50, inclusive, Defendants* (the "Complaint"), which was assigned the case number RG19012495, in the Superior Court of Alameda County. Exhibit A contains, among other documents served upon Defendant, Plaintiff's Complaint. (*See* Ex. A.)

2. On May 17, 2019, Defendant received, via its registered agent for service of process, copies of the (i) Summons; (ii) Complaint; (iii) Initial Case Management Order; (iv) Civil Case Cover Sheet; (v) Notice of Hearing; (vi) Notice of Assignment of Judge for All Purposes; and (vii) Order re: Complex Determination, which were served on Defendant on May 17, 2019. (Declaration of David Morice in support of Notice of Removal ["Morice Decl."], ¶ 3.) True and correct copies of each of the foregoing items, as served on Defendant on May 17, 2019, are attached to this Notice of Removal as Exhibit A. (*Id.*)

3. On or about May 23, 2019, Defendant received a copy of the Joint Case Management Conference Statement, which had been filed in the Superior Court for the County of Alameda in connection with a case management conference that had been scheduled to take place on May 28, 2019, but which was continued to July 16, 2019. The Joint Case Management Conference Statement was served on Defendant, through its counsel of record in this action, by

mail, on or about May 21, 2019.[1] A true and correct copy of the Joint Case Management Conference Statement is attached to this Notice of Removal as Exhibit B.

4. The documents attached hereto as Exhibits A and B constitute all pleadings, process, and other documents Defendant has received in this action. (*See* Exs. A, B; Morice Decl., ¶ 4.)

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint.

6. The Complaint asserts a claim for relief against Defendant for Failure to Pay Employees for All Hours Worked in Violation of the Federal Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*). In addition, the Complaint also asserts the following claims for relief against Defendant: (1) Failure to Provide Meal Periods (Cal. Lab. Code §§ 204, 223, 226.7, 512, and 1198); (2) Failure to Provide Rest Periods (Cal. Lab. Code §§ 204, 223, 226.7, and 1198); (3) Failure to Pay Hourly and Overtime Wages (Cal. Lab. Code §§ 223, 510, 1194, 1197, and 1198); (4) Failure to Provide Accurate Written Wage Statements (Cal. Lab. Code § 226); (5) Failure to Timely Pay All Final Wages (Cal. Lab. Code §§ 201–203); (6) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); (7) Breach of Written Contract; and (8) Breach of Implied Covenant of Good Faith and Fair Dealing.

7. On June 14, 2019, Defendant timely served and filed its Answer to Plaintiff's Complaint in the Superior Court for the County of Alameda. A true and correct copy of Defendant's Answer to Plaintiff's Complaint is attached to this Notice of Removal as Exhibit C.

## II. REMOVAL IS TIMELY.

8. A defendant in a civil action has thirty (30) days from the date it is validly served with a summons and complaint to remove the action to federal court. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth

---

[1] Although the Proof of Service on the Joint Case Management Conference Statement declares that it was served by mail on April 17, 2019, the Statement itself was not executed by the parties until May 20, 2019; the mailing envelope is postmarked on May 21, 2019; and Defendant, through its counsel of record, received the document by mail on May 23, 2019.

the claim for relief upon which such action or proceeding is based[.]"). Pursuant to Federal Rule of Civil Procedure 6(a), when the 30th day falls on a Saturday, Sunday, or legal holiday, the deadline is pushed to the "end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1).

9. Here, removal is timely, as it is being filed on June 17, 2019 following service of the Summons and Complaint upon Defendant on May 17, 2019 (Morice Decl., ¶ 3; Ex.A). *See* 28 U.S.C. § 1446(b)(1); Fed. R. Civ. P. 6(a)(1); *see e.g.*, *Malaguit v. Ocwen Loan Servicing, LLC*, No. 515CV01621CASDTBX, 2015 WL 5884856, at *3 (C.D. Cal. Oct. 6, 2015) (declaring removal was timely when filed on Monday, August 10, 2015 when the 30th day following service of the complaint fell on Saturday, August 8, 2015); *Cmty. Hous. P'ship v. Byrd*, No. 13-3031 JSC, 2013 WL 6087350, at *2 (N.D. Cal. Nov. 19, 2013) (same).

10. Defendant comprises the only defendant that has been properly joined and served in this action as of the time Defendant is filing this Notice of Removal. Thus, Defendant, as the only defendant herein, joins in and consents to the timely removal of the action to this Court. *See* 28 U.S.C. § 1446(b)(2)(A)-(2)(B).

## III. <u>THIS ACTION IS PROPERLY REMOVABLE ON THE BASIS OF FEDERAL QUESTION JURISDICTION.</u>

11. This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one that may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1446, in that it arises under the laws of the United States.

12. In the Complaint, Plaintiff asserts a claim against Defendant under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"). Through his seventh cause of action, which Plaintiff asserts on behalf of himself and all other putative members of the purported collective action alleged in the Complaint, Plaintiff asserts that Defendant violated various provisions of the FLSA by failing to pay for all hours worked and at the applicable rate of pay, and failing to keep accurate records of hours worked. (*See* Compl., ¶¶ 137–146.)

13. In asserting claims against Defendant for violations of various provisions of the FLSA, the Complaint itself presents questions of federal law. *See Breuer v. Jim's Concrete of*

*Brevard, Inc.*, 538 U.S. 691, 694-95, 700 (2003) (holding that actions asserting FLSA claims may be properly removed to federal court under 28 U.S.C. § 1441(a)); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1196 (9th Cir. 1988) (identifying the FLSA as one of the federal statutes providing that "claims arising thereunder may be maintained in any state or federal court of competent jurisdiction" and "contain[ing] no limitation on removal, express or otherwise, to bar removal"). Plaintiff's FLSA claims are therefore removable to this Court based on federal question jurisdiction. *See* 28 U.S.C. § 1331; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

14. In the Complaint, Plaintiff also asserts various claims against Defendant under California law, all of which arise out of and are based on the same alleged facts, and the same alleged actions and omissions by Defendant, that underlie Plaintiff's FLSA claim over which the Court has original jurisdiction, as discussed above, and are part of the same case or controversy. Therefore, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law claims alleged in Plaintiff's Complaint, which are so related to the claims over which this Court has original jurisdiction under 28 U.S.C. § 1331 that they form part of the same case or controversy under Article III of the United States Constitution . *See* 28 U.S.C. § 1367(a). Plaintiff's state law claims are thus likewise removable to this Court based on federal question jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.").

## IV. DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS.

15. Venue Is Proper. The Superior Court of California, Alameda County, is located within the Northern District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because the Northern District of California is the "district and

division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

16. As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders served on Defendant in this action. (*See* Exs. A, B; Morice Decl., ¶ 4.) Defendant has not been served with any pleadings, process, or orders besides those attached. (Morice Decl., ¶ 4.)

17. In accordance with 28 U.S.C. § 1446(d), Defendant will promptly give written notice to Plaintiff of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of Alameda.

18. Further, in accordance with Federal Rule of Civil Procedure 7.1 and Northern District of California Local Rule 3-15, respectively, Defendant concurrently files its Disclosure Statement and Disclosure of Non-Party Interested Entities or Persons, and, in accordance with Local Rule 3-13, concurrently files its Notice of Pendency of Other Action or Proceeding.

19. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

DATED: June 17, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Jennifer L. Katz
Jack S. Sholkoff
Jennifer L. Katz
Alexandra C. Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

# EXHIBIT A

05-17-2019 9:05 AM



SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED BY FAX
ALAMEDA COUNTY
March 27, 2019
CLERK OF
THE SUPERIOR COURT
By Shabra Iyamu, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

DHI MORTGAGE COMPANY, Ltd., L.P. a Texas limited partnership; and DOES 1 to 50

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

ROBERT W. AHLSTROM, on behalf of himself, all other similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Rene C. Davidson Courthouse
1225 Fallon Street
Oakland, California 94612

CASE NUMBER: *(Número del Caso):* RG19012495

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Shaun Setareh, Esq. 315 S. Beverly Drive, Suite 315, Beverly Hills California 90212, (310) 888-7771

DATE: *(Fecha)* March 27, 2019   Clerk, by *(Secretario)* S. Iyamu , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: DHI MORTGAGE COMPANY LTD L.P.
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify)*: LTD
4. ☐ by personal delivery on *(date)*:

FILED BY FAX
ALAMEDA COUNTY
March 27, 2019
CLERK OF
THE SUPERIOR COURT
By Shabra Iyamu, Deputy
CASE NUMBER:
RG19012495

Shaun Setareh (SBN 200514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
Farrah Grant (SBN 293898)
farrah@setarehlaw.com
Ashley N. Batiste (SBN 317526)
ashley@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff,
ROBERT W. AHLSTROM

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

**UNLIMITED JURISDICTION**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

*Plaintiff*,

vs.

DHI MORTGAGE COMPANY, Ltd., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,

*Defendants*.

Case No.

**CLASS ACTION**

**COMPLAINT FOR:**

1. Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512, and 1198);
2. Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7, and 1198);
3. Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198);
4. Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a));
5. Failure to Timely Pay All Final Wages (Lab. Code §§ 201-203);
6. Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*);
7. Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201, *et seq.*)
8. Breach of Written Contract
9. Breach of the Implied Covenant of Good

Faith and Fair Dealing

**JURY TRIAL DEMANDED**

Plaintiff Robert W. Ahlstrom (referred to as "Plaintiff"), on behalf of himself, all others similarly situated, complains and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action against defendant DHI MORTGAGE COMPANY, Ltd., L.P., a Texas limited partnership, and Does 1 to 50, inclusive (collectively referred to as "Defendants") for alleged violations of the Labor Code and Business and Professions Code. As set forth below, Plaintiff alleges that Defendants failed to provide him and all other similarly situated individuals with meal periods, failed to provide them with rest periods, failed to pay premium wages for missed meal and/or rest periods, failed to pay them for all hours worked, failed to pay overtime wages at the correct rate, failed to pay double time wages at the correct rate, failed to pay overtime and double time wages at the correct rate by failing to include all applicable remuneration in calculating the regular rate of pay, failed to provide them with accurate written wage statements, and failed to timely pay them all of their final wages following separation of employment. In addition, Plaintiff alleges that Defendants breached the terms of its written agreement with Plaintiff and the putative class along with the implied covenant of good faith and fair dealing by not paying commissions for which Plaintiff and the putative class were the procuring cause and so were equitably entitled to be paid their commissions.

2. Based on these alleged violations, Plaintiff now brings this class action to recover unpaid wages, restitution, and related relief on behalf of himself, all others similarly situated.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction to hear this case because Plaintiff is informed and believes, and based thereon alleges, that the monetary damages and restitution sought herein for Defendants' conduct exceeds the minimal jurisdictional limits of the Superior Court.

4. Venue is proper in Alameda County pursuant to Code of Civil Procedure sections 395(a) and 395.5 in that liability arose in Alameda County because at least some of the transactions that are the subject matter of this Complaint occurred therein and/or each defendant is

found, maintains offices, transacts business, and/or has an agent therein. Plaintiff was employed by Defendant at an office in Pleasanton, California located in Alameda County.

## PARTIES

5. Plaintiff Robert W. Ahlstrom ("Plaintiff") is, and at all relevant times mentioned herein, an individual residing in San Jose, California, County of Santa Clara.

6. Plaintiff is informed and believes, and thereupon alleges that Defendant DHI MORTGAGE COMPANY, Ltd., L.P. is, and at all relevant times mentioned herein, a Texas limited partnership doing business in the State of California.

7. Plaintiff is ignorant of the true names, capacities, relationships, and extent of participation in the conduct alleged herein, of the defendants sued as Does 1 to 50, inclusive, but is informed and believes that said defendants are legally responsible for the conduct alleged herein and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege both the true names and capacities of the Doe defendants when ascertained.

8. Plaintiff is informed and believes that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and that the acts of each defendant are legally attributable to each of the other defendants.

## CLASS ALLEGATIONS

9. This action has been brought and may be maintained as a class action pursuant to Code of Civil Procedure section 382 because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

10. **Relevant Time Period**: The relevant time period is defined as the time period beginning four years prior to August 2, 2017 until judgment is entered.

11. The class and sub-class members are defined as follows:

**DHI Mortgage Class**: All persons employed by Defendants and/or any staffing agencies and/or any other third parties who worked in hourly or non-exempt positions in California during the **Relevant Time Period**.

**<u>DHI Mortgage Meal Period Sub-Class</u>:** All **DHI Mortgage Class** members who worked a shift in excess of five hours during the **Relevant Time Period.**

**<u>DHI Mortgage Rest Period Sub-Class</u>:** All **DHI Mortgage Class** members who worked a shift of at least three and one-half (3.5) hours during the **Relevant Time Period.**

**<u>DHI Mortgage Wage Statement Penalties Sub-Class</u>:** All **DHI Mortgage Class** members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.

**<u>DHI Mortgage Waiting Time Penalties Sub-Class</u>:** All **DHI Mortgage Class** members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.

**<u>UCL Class</u>:** All **DHI Mortgage Class** members employed by Defendants in California during the **Relevant Time Period.**

12. **<u>Reservation of Rights</u>:** Pursuant to Rule of Court 3.765(b), Plaintiff reserves the right to amend or modify the class definitions with greater specificity, by further division into sub0-classes, and/or by limitation to particular issues.

13. **<u>Numerosity</u>:** The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes that the actual number exceeds the minimum required for numerosity under California law.

14. **<u>Commonality and Predominance</u>:** Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These common questions include, but are not limited to:

A. Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

B. Whether Defendants maintained a policy or practice of failing to provide employees with their rest periods;

C. Whether Defendants failed to pay premium wages to class members when they

have not been provided with required meal and/or rest periods;

D. Whether Defendants failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law?

E. Have Defendants used payroll formulas that systematically fail to account for non-discretionary bonuses and/or other applicable remuneration when calculating regular rates of pay for class members?

F. Have Defendants failed to pay overtime wages to class members as a result of incorrectly calculating their regular rates of pay?

G. Whether Defendants have failed to pay premium wages to class members based on their respective "regular rates of compensation" by not including commissions and/or income in calculating the rates at which those wages are paid?

H. Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

I. Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

J. Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

K. Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition.

15. **Typicality**: Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes and thereon alleges that Defendants have a policy or practice of failing to comply with the Labor Code and the Business and Professions Code as alleged herein.

16. **Adequacy of Class Representative**: Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf. Plaintiff

will fairly and adequately represent and protect the interests of the other class members.

17. **Adequacy of Class Counsel**: Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

18. **Superiority**: A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of moneys owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19. Plaintiff was hired by Defendants on or about July 2015 as an hourly, non-exempt employee who worked in California.

### Recording Hours Worked Based on Scheduled Hours

20. Plaintiff and the putative class were regularly scheduled to work eight hour shifts each workday, Monday through Friday.

21. Plaintiff and the putative class were required to utilize written timesheets to report hours worked on a weekly basis.

22. Plaintiff and the putative class regularly worked more than twelve hours each workday, Monday through Friday, with each workday consisting of more than ten consecutive hours.

23. Plaintiff and the putative class were only permitted to record the hours they were

scheduled to work, even though they would regularly work more than their scheduled hours with their supervisors' knowledge and permission.

24. Plaintiff and the putative class were not permitted to record their actual hours worked and were threatened with disciplinary action by their supervisors if they recorded any overtime hours without explicit approval even though these same supervisors were aware of and had knowledge that they worked in excess of their scheduled work hours.

25. As a result of Defendants' practices and policies, Plaintiff and the putative class were required to perform substantial amounts of off-the-clock work that were not compensated by Defendants.

**On-Call Time**

26. Plaintiff and the putative class were assigned to work mandatory on-call shifts during the last weekend of each month and was not compensated for this time.

27. Defendants assigned Plaintiff and the putative class to work mandatory on-call shifts by email sent to all employees informing them of the person selected to cover the on-call shift known as "Loan Officer on Duty."

28. Plaintiff and the putative class typically worked from home and were required to respond to all inquiries received during that weekend they were on-call.

29. Plaintiff and the putative class typically worked 2 to 4 hours each day during each on-call shift. During these mandatory on-call shifts, Plaintiff and putative class would work substantial amount of hours and was not compensated by Defendants.

30. Defendants knowingly assigned Plaintiff and the putative class to work on-call shifts but failed to pay them for this time.

**Missed Meal Periods**

31. Plaintiff and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish

their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

32. As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their meal periods in order to complete their assignments on time.

**Missed Rest Periods**

33. Plaintiff and the putative class members were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each est period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

34. As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their rest periods in order to complete their assignments on time.

**Regular Rate of Pay**

35. The regular rate of pay under California law includes all remuneration for employment paid to, on behalf of, the employee. This requirement includes, but is not limited, to, commissions and non-discretionary bonuses.

36. During the applicable limitations period, Defendants violated the rights of Plaintiff and the putative class under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable

remuneration, including, but not limited to, commissions and non-discretionary bonuses.

**Breach of Contract / Failure to Pay Commissions**

37. Plaintiff was hired by Defendants and was paid an hourly rate plus commissions on each loan transaction that he handled.

38. At the time of termination, Plaintiff had approximately $26,000 in commissionable transactions that were still pending and "in the pipeline."

39. Defendants terminated Plaintiff under false pretenses and claimed that Plaintiff failed to show up to work and that Plaintiff was a "no call / no show" to work.

40. Plaintiff believes that Defendants terminated him so that they did not have to pay Plaintiff his commissions.

**Inaccurate Wage Statements**

41. Plaintiff and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code section 226.

42. Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that:

A. Any applicable meal and rest break premiums were not included;

B. Hourly and overtime wages for off-the-clock work were not included;

C. Time spent working on-call were not included;

D. Regular rate of pay was not properly calculated.

43. Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that:

A. Hourly and overtime wages for off-the-clock work were not included;

B. Time spent working on-call were not included;

C. Regular rate of pay was not properly calculated.

44. Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that:

A. Any applicable meal and rest break premiums were not included;

B. Hourly and overtime wages for off-the-clock work were not included;

C. Time spent working on-call were not included;

D. Regular rate of pay was not properly calculated.

45. Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that:

A. Hourly and overtime wages for off-the-clock work were not included;

B. Time spent working on-call were not included;

C. Regular rate of pay was not properly calculated.

**FIRST CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 204, 223, 226.7, 512 and 1198)**

**(By Plaintiff and DHI Mortgage Meal Break Sub-Class)**

46. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

47. At all relevant times, Plaintiff and the **DHI Mortgage Meal Break Sub-Class** members have been non-exempt employees of Defendants entitled to the full meal period protections of both the Labor Code and the Industrial Welfare Commission Wage Order 5-2001 ("Wage Order").

48. Labor Code section 512 and section 11 of the applicable Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of ten hours.

49. Labor Code section 226.7 and section 11 of the the applicable Wage Order both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

50. Compensation for missed meal periods constitutes wages within the meaning of

the Labor Code section 200.

51. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

52. Section 11 of the applicable Wage Order states:

> "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 mninutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." 8 Cal. Code Regs. § 11040(11).

53. At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **DHI Mortgage Meal Break Sub-Class** members were not subject to valid on-duty meal period agreements with Defendants.

54. Plaintiff alleges that, at relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **DHI Mortgage Meal Break Sub-Class** with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 and the applicable Wage Order.

55. Plaintiff alleges that at all relevant times during the applicable limitations period and as matters of policy and practice, Defendants have failed to pay premium wages to **DHI Mortgage Meal Break Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

56. Plaintiff alleges that at all relevant times during the applicable limitations period and as matters of policy and practice, Defendants employed **DHI Mortgage Meal Break Sub-Class** members for shifts of ten (10) or more hours without providing them with second meal periods and without paying them premium wages, as required by Labor Code section 512 and the applicable Wage Order.

57. Moreover, Defendants written policies do not provide that employees must take their first meal break before the end of the fifth hour of work, that they are entitled to a second meal break if they work a shift of over ten (10) hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived.

58. At all relevant times, Defendants failed to pay Plaintiff and **DHI Mortgage Meal Break Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

59. Pursuant to Labor Code sections 204, 218.6 and 226.7, Plaintiff, on behalf of himself and the **DHI Mortgage Meal Break Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

60. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the **DHI Mortgage Meal Break Sub-Class** members, seeks to recover reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

## FAILURE TO PROVIDE REST PERIODS

**(Lab. Code §§ 204, 223, 226.7 and 1198)**

**(By Plaintiff and DHI Mortgage Rest Break Sub-Class)**

61. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

62. At all relevant times, Plaintiff and **DHI Mortgage Rest Break Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

63. Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four hour work period, or major portion thereof, that must be in the middle of each work period insofar as is practicable.

64. Labor Code section 226.7 and section 12 of the applicable Wage Order both

prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees regular rate of pay, on each workday that the employee is not provided with the required rest period(s).

65. Compensation for missed rest periods constitutes wages within the meaning of the Labor Code section 200.

66. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

67. Plaintiff alleges that at relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **DHI Mortgage Rest Break Sub-Class** members with net rest periods of a least ten (10) minutes for each four (4) hour work period, or major portion thereof, as required by the Wage Order.

68. At all relevant times, Defendants failed to pay Plaintiff and other **DHI Mortgage Rest Break Sub-Class** members additional premium wages when required rest periods were not provided.

69. Specifically, Defendants written policies do not provide that employees may take a rest break for each four hours worked, or major fraction thereof, and that rest breaks should be taken in the middle of each work period insofar as practicable.

70. Plaintiff and the **DHI Mortgage Rest Break Sub-Class** members were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each est period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

71. As a result of Defendants' policy, Plaintiff and the **DHI Mortgage Rest Break Sub-Class** were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and **DHI Mortgage Rest Break Sub-Class** to work through

their rest periods in order to complete their assignments on time.

72. Pursuant to Labor Code sections 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **DHI Mortgage Rest Break Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

73. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **DHI Mortgage Rest Break Sub-Class** members, seeks to recover reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

## FAILURE TO PAY HOURLY AND OVERTIME WAGES

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(By Plaintiff and DHI Mortgage Class)**

74. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

75. At all relevant times, Plaintiff and **DHI Mortgage Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Orders.

76. Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

77. Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

78. Labor Code section 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Orders.

79. Labor Code section 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in

addition to the underlying unpaid minimum wages and interest thereon.

80. Labor Code section 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Orders for all hours worked during a payroll period.

81. Labor Code section 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person, to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

82. Labor Code section 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Order.

83. Labor Code section 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

84. Labor Code sectopm 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

85. Labor Code section 510 and section 3 of the applicable Wage Order require employers to pay non-exempt employees overtime wages of no less than one and one-half times their respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and/or for the first eight hours worked on the seventh consecutive day of one workweek.

86. Labor Code section 510 and section 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times their respective regular rates of pay.for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during a workweek.

87. Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to him and **DHI Mortgage Class** members

with respect to working conditions and compensation arrangements.

88. At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including, but not limited to, overtime work, at statutory and/or agreed rates by suffering or permitting him to work during unpaid meal periods, and/or by failing to properly pay Plaintiff and **DHI Mortgage Class** members all overtime hours worked.

89. Plaintiff is informed and believes that, at all relevant times and as matters of policy and/or practice, Defendants have failed also to pay hourly wages to **DHI Mortgage Class** members for all time worked, including, but not limited to, overtime work, at statutory and/or agreed rates by suffering or permitting them to work during unpaid meal periods.

90. The regular rate of pay under California law includes all remuneration for employment paid to, on behalf of, the employee. This requirement includes, but is not limited, to, commissions and non-discretionary bonuses.

*91.* During the applicable limitations period, Defendants violated the rights of Plaintiff and the putative class under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, commissions and non-discretionary bonuses.

92. At all relevant times, Plaintiff and **DHI Mortgage Class** members have been non-exempt employees of Defendants and entitled to the full protections of both the Labor Code and the Wage Order.

93. Labor Code § 512 and Section 11 of the Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of five or more hours, and to provide them with two uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of more than ten hours.

94. Labor Code § 226.7 and Section 11 of the Wage Order prohibit an employer from requiring its employees to work during required meal periods and also require employers to pay non-exempt employees an additional hour of premium wages at the

employee's regular rate of compensation on each workday that the employee is not provided with a meal period.

95. Section 12 of the Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four hour work period, or major portion thereof, that must be in the middle of each work period insofar as is practicable.

96. Labor Code § 226.7 and Section 12 of the Wage Order prohibit an employer from requiring its employees to work during required rest periods and also require employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a rest period.

97. California law uses the terms "compensation" and "pay" interchangeably and requires that all applicable remuneration, including, but not limited to, commissions and non-discretionary bonuses, be included when calculating an employee's regular rate of pay.

98. At all relevant times, Defendants paid Plaintiff premium wages based on a rate of compensation that did not reflect, among other things, non-discretionary bonuses and/or shift differential pay as required by Labor Code § 226.7(b) and Sections 11 and 12 of the Wage Order on the occasions when Defendants paid him premium wages in lieu of meal and/or rest periods.

99. Plaintiff is informed and believes and thereon alleges that, at all relevant times, Defendants have maintained a policy and practice of paying **DHI Mortgage Class** members premium wages based on rates of compensation that have not reflected commissions and/or non-discretionary bonuses as required by Labor Code § 226.7(b) and Sections 11 and 12 of the Wage Order on the occasions when Defendants paid them premium wages in lieu of meal and/or rest periods.

100. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **DHI Mortgage Class** members, seeks to recover reasonable attorneys' fees.

///

## FOURTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

### (Lab. Code § 226)

### (By Plaintiff and DHI Mortgage Wage Statement Penalties Sub-Class)

101. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

102. Labor Code § 226(a) states in pertinent part the following:

> "(a) every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for an employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is aid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one time, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision."

103. Plaintiff is informed and believes that, at all relevant times, Defendants have failed to provide **DHI Mortgage Wage Statement Penalties Sub-Class** members with written wage statements as described supra in this complaint.

104. Plaintiff is informed and believes that Defendants' failures to provide him and **DHI Mortgage Wage Statement Penalties Sub-Class** members with accurate written wage statements have been intentional in that Defendants have the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that Defendants have known to not comply with Labor Code 226(a).

105. Plaintiff and **DHI Mortgage Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements has prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to state and federal government agencies.

106. Pursuant to Labor Code § 226(e), Plaintiff, on behalf of himself and **DHI Mortgage Wage Statement Penalties Sub-Class** members, seeks the greater of actual damages or $50.00 for the initial pay period in which a violation of Labor Code § 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of $4000.00 per class member, as well as awards of reasonable costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## FAILURE TO TIMELY PAY ALL FINAL WAGES

**(Lab. Code §§ 201-203)**

**(Plaintiff and DHI Mortgage Waiting Time Penalties Sub-Class)**

107. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

108. At all relevant times, Plaintiff and **DHI Mortgage Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendants, to timely payment of all wages earned and unpaid before termination or resignation.

109. At all relevant times, pursuant to Labor Code section 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

110. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving at least seventy-two (72) hours-notice of resignation have been entitled to payment of all final wages at the time of resignation.

111. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving less than seventy-two (72) hours-notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours of giving notice of resignation.

112. During the applicable limitations period, Defendants failed to pay Plaintiff all of his final wages in accordance with Labor Code section 201 by failing to timely pay him all of his final wages.

113. Plaintiff is informed and believes that, at all relevant times, Defendants have failed to timely pay **DHI Mortgage Waiting Time Penalties Sub-Class** members all of their final wages in accordance with Labor Code sections 201 or 202.

114. Plaintiff is informed and believes that, at all relevant times, Defendants have maintained a policy or practice of paying **DHI Mortgage Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code sections 201 and 202 by failing to timely pay them all final wages.

115. Plaintiff is informed and believes that Defendants' failures to timely pay all final wages to him and **DHI Mortgage Waiting Time Penalties Sub-Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code sections 201 and 202 but have intentionally adopted policies or practice that are incompatible with those requirements.

116. Pursuant to Labor Code sections 203 and 218.6, Plaintiff, on behalf of himself and **DHI Mortgage Waiting Time Penalties Sub-Class** members, seeks waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of 30 days, and interest thereon.

117. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit

doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **DHI Mortgage Waiting Time Penalties Sub-Class** members, seeks awards of reasonable costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**

**UNFAIR COMPETITION**

**(Bus. & Prof. Code §§ 17200, *et seq.*)**

**(By Plaintiff and UCL Class)**

118. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

119. Business and Professions Code section 17200 defines "unfair competition" to include any unlawful business practice.

120. Business and Professions Code sections 17203–17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure section 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

121. California law requires employers to pay hourly, non-exempt, employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonably should know that employees have worked.

122. Plaintiff and the UCL Class realleges and incorporates by reference the FIRST, SECOND and THIRD causes of action herein.

123. Plaintiff lost money or property as a result of the aforementioned unfair competition.

124. Defendants have, or may have, acquired money by means of unfair competition.

125. Plaintiff is informed and believes and theron alleges that, by committing the Labor Code violations described in this complaint, Defendants violated Labor Code sections 215, 216, 225, 226.6, 354, 408, 553, 1175, and/or 1199, which make it a misdemeanor to commit the Labor Code violations mentioned herein.

126. Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free, meal periods of at least thirty minutes for each work period of five or more hours and by failing to pay non-exempt employee for all hours worked and by failing to reimburse them for all expenses.

127. At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees of Defendants and entitled to the full protections of both the Labor Code and the applicable Wage Order.

128. As stated above, Defendants have violated the Labor Code in multiple respects with regard to Plaintiff and **UCL Class** members, including but not limited to failing to pay them wages, failing to reimburse them for expenses, failing to pay them premium wages, and failing to provide them with accurate wage statements, and failing to pay them all wages due upon separation of employment.

129. Defendants have, or may have, acquired money or property from **UCL Class** members by means of unfair competition in that Plaintiff is informed and believes and thereon alleges that Defendants have failed to pay Plaintiff and **UCL Class** members wages and premium wages in for missed meal and/or rest periods.

130. The unlawful conduct of Defendants alleged herein amounts to and constitutes unfair competition within the meaning of Business and Professions Code sections 17200, *et seq*. Business and Professions Code section 17200, *et seq*., protects against unfair competition and allows a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful, or fraudulent business practice to seek restitution on his own behalf and on behalf of other similarly situated persons in a class action proceeding.

131. As a result of Defendants' violations of the Labor Code during the applicable limitations period as alleged herein, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages. Specifically, Plaintiff has lost money or property as a result of the aforementioned conduct.

132. Plaintiff is informed and believes that other similarly situated persons

have been subject to the same unlawful policies or practices of Defendants.

133. Due to its unfair and unlawful business practices in violation of the Labor Code as alleged herein, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations under the Labor Code.

134. Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of himself and the other members of the **UCL Class**, seeks declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

135. Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and the other members of the **UCL Class** are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PAY EMPLOYEES FOR ALL HOURS WORKED**

**IN VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT**

**(29 .S.C. §§ 201, *et seq.*)**

136. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

137. At all material times herein, Plaintiff and all similarly situated **DHI Mortgage Class** members who submit "Consents to Become Party Plaintiffs" are or were employed by and engaged in providing services necessary to description of duties by Defendants, and have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

138. The FLSA requires, among other things, that employers pay employees the minimum wage for all time worked plus overtime. 29 U.S.C. §§ 206, 207, 215.

139. At all material times, the (example: start-end travel time, inspection time, and meeting time described above) is necessarily and directly related to the principal activities of the

employee's duties, and thus constitutes compensable time under the FLSA and is subject to the FLSA's overtime requirements. 29 C.F.R. § 785.38.

140. At all material times herein, Defendants have violated the FLSA by failing to to pay Plaintiff for all hours worked and at the applicable rate of pay.

141. At all material times herein, Defendants have violated the FLSA by failing to pay **DHI Mortgage Class** at one-and-one-half (1.5) times the regular rate of pay when meeting time causes an employee's total hours worked to exceed forty (40) hours in a week.

142. Defendants have also violated the FLSA by failing to keep required, accurate records of all hours worked by **DHI Mortgage Class**. 29 U.S.C. § 2ll(c).

143. Plaintiffs and all similarly situated employees are victims of a uniform and entity-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to all employees employed by Defendants.

144. Plaintiffs and all similarly situated individuals are entitled to damages equal to the mandated pay and overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard of whether their conduct was prohibited by the FLSA.

145. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. Plaintiffs and other similarly situated individuals are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation, including overtime pay, and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

146. As a result of violations of the FLSA's minimum wage and overtime pay provisions, Defendants have unlawfully withheld compensation from Plaintiffs and all similarly situated individuals. Defendants are liable for unpaid compensation, together with an amount equal as liquidated damages, attorneys' fees and costs of this action. 29 U.S.C.§ 216(b).

## <u>EIGHTH CAUSE OF ACTION</u>

## BREACH OF WRITTEN CONTRACT

**(By Plaintiff and DHI Mortgage Commission Class)**

147. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

148. On or about July 2015, Plaintiff entered into a written employment agreement with Defendants under which he was hired as a Loan Officer.

149. Pursuant to the express terms of this written agreement, Plaintiff was to be paid an hourly rate for all hours worked, plus commissions based on each funded loan transaction for which he was the procuring cause.

150. Plaintiff has performed all of his obligations, covenants, and conditions required of him under the written employment agreement, except to the extent any such obligations, covenants or conditions have been excused, prevented or waived by Defendants' acts or omissions.

151. Defendants have breached the written employment agreement by failing to pay Plaintiff the agreed upon hourly rate for all hours worked, in addition to not paying Plaintiff for all commissions for each and every transaction for which he handled or performed substantial work.

152. Upon information and belief, Plaintiff alleges that Defendants' policy and/or practice is not to pay Plaintiff and the putative class for any commissions on loan transactions that have not closed within thirty (30) days after they are no longer employed with Defendants.

153. As a result of Defendants' conduct and breach as set forth above, Plaintiff and the putative class has been damagd in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(By Plaintiff and DHI Mortgage Commission Class)**

154. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

155. Plaintiff and the putative class entered into written contracts of employment with Defendants which sets forth the rights and obligations of each party. Every contract imposes the duty of good faith and fair dealing upon the parties in performance and enforcement of the

contract.

156. Defendants have acted in bad faith by not giving equal consideration to the interests of Plaintiff and the putative class as they have their own interests. Defendants have wrongfully and intentionally breached the duty of good faith and fair dealing by denying Plaintiff and the putative class the benefits to which they are entitled to received under their respective employment agreements.

157. As a result of Defendants' conduct and breach as set forth above, Plaintiff and the putative class has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, prays for relief and judgment against Defendants as follows:

A. An order that the action be certified as a class action;

B. An order that Plaintiff be appointed class representative;

C. An order that counsel for Plaintiff be appointed class counsel;

D. Unpaid Wages;

E. Actual Damages;

F. Liquidated Damages;

G. Restitution;

H. Declaratory relief;

I. Pre-judgment interest;

J. Statutory penalties;

K. Civil penalties;

L. Costs of suit;

M. Reasonable attorneys' fees; and

N. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, all others similarly situated, hereby demands a jury trial

on all issues so triable.

DATED: March 12, 2019

SETAREH LAW GROUP

BY ______________________

SHAUN SETAREH
Attorneys for Plaintiff,
ROBERT W. AHLSTROM

*14963104*

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

FILED
ALAMEDA COUNTY
MAY 0 3 2019
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

| | |
|---|---|
| AHLSTROM, Plaintiffs | Case No. RG19012495 |
| DHI MORTGAGE COMPANY, LTD, L.P. Defendants | INITIAL CASE MANAGEMENT ORDER<br><br>ASSIGNED FOR ALL PRE-TRIAL PURPOSES TO: JUDGE BRAD SELIGMAN, DEPARTMENT 23 |

The following order shall apply to all parties in this action:

1. CASE MANAGEMENT CONFERENCES

At Case Management Conferences the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750. Counsel thoroughly familiar with the case shall attend the Case Management Conferences. See LRC, Rule 3.290.

At the Initial CCMC, the parties must be prepared to discuss at length the nature of the case, both factually and legally, as well as the projected management of the case at each stage. This is not a perfunctory exercise. The primary objective of the CCMC is to develop a comprehensive plan for a just, speedy and economical determination of the litigation.

Courtesy copies of statements must be delivered directly to Dept. 23. The filing and delivery date is not later than five court days before the conference.

The Court strongly prefers joint CCMC statements prepared in narrative form, and not using Form CM-110, after counsel have met and conferred as required by CRC 3.724. CCMC statements must address the following issues when applicable:

A. A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B. The number of parties and their posture, including a proposed structure of representation, (e.g., liaison/lead counsel or by committee) if applicable;

C. Deadlines and limits on joinder of parties and amended or additional pleadings;

D. Class discovery and class certification, if applicable;

E. A proposed schedule for the conduct of the litigation including, but not limited to, a discovery plan, a plan for hearing remaining law and motion, and a projected trial date;

F. An identification of all potential evidentiary issues involving confidentiality or protected evidence;

G. A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1) unserved parties and the reasons for the failure to serve;

(2) unserved and/or unfiled cross-complaints;

(3) related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4) any possible jurisdictional or venue issues that may arise;

(5) the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6) unresolved law and motion matters;

(7) requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8) severance of issues for trial; and

(9) calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H. Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

Parties are advised to check the court's register of action before appearing at any case management conference, including the Initial Case Management, at least one day before any scheduled appearance to determine if the court has issued a tentative case management order. If published, this tentative case management order will become the order of the Court unless counsel or self represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management

Orders are found in the Register of Action). Department 23 may be reached at Dept.23@alameda.courts.ca.gov.

2. NOTICE OF FEE CHANGES - JURY TRIAL FEE

Effective July 2, 2012, the advance jury fee is fixed at $150.00, and is no longer refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. See, C.C.P. 631(b).

3. DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the court until after an informal discovery conference pursuant to revised Local Rule 3.31 (January 1, 2019) except a party may request a discovery conference in a Case Management Conference Statement. The discovery conference is not a pro forma step before a motion. Requests for a discovery conference may be made, after meaningful meet and confer, by sending an email to the department clerk, copied to all counsel. The court will provide proposed dates. Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. Upon request, the court will consider telephonic appearances as well as calls from depositions in progress.

4. EMAILS TO COURT

Emails to the court are not part of the court record in this case and may be deleted without notice. Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 23 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the court's calendar, to give

notice that a hearing has been dropped or a settlement reached, to request a discovery conference, emergency scheduling issues (i.e. running late to a hearing), to give notice that a litigant intends to appear to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 23, to communicate with the courtroom clerk regarding department 23 procedures, or other matters that the court has expressly authorized in this case.

5. Pro Hac Vice Process

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order shortening time must be submitted. Applications will not be considered on an ex parte basis. CRC 9.40.

6. NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will be published in the Court's website in the Register of Action for this case. The clerk of the court WILL NOT serve each party a copy of future orders. Instead, unless otherwise ordered, counsel shall obtain copies of all future orders from the Register of Action in this case.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The clerk is directed to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: May 3, 2019

BRAD SELIGMAN, JUDGE

---

## CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Dated: May 3, 2019

Jhalisa Castaneda
Courtroom Clerk, Dept. 23

Shaun Setareh — shaun@setarehlaw.com
Thomas Segal — thomas@setarehlaw.com
Farrah Grant — farrah@setarehlaw.com
Ashley N. Batiste — ashley@setarehlaw.com
Setareh Law Group
315 S. Berverly Drive, Suite 315
Beverly Hills, CA 90212

*Attorneys for Plaintiff Robert W. Ahlstrom*

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Shaun Setareh (SBN 204514)
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
TELEPHONE NO.: (310) 888-7771 FAX NO.: (310) 888-0109
ATTORNEY FOR (Name): Robert W. Ahlstrom

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

CASE NAME:
AHLSTROM v. DHI MORTGAGE COMPANY, LTD., L.P.

FILED BY FAX
ALAMEDA COUNTY
March 27, 2019
CLERK OF THE SUPERIOR COURT
By Shabra Iyamu, Deputy
CASE NUMBER:
RG19012495

## CIVIL CASE COVER SHEET

- [x] Unlimited (Amount demanded exceeds $25,000)
- [ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
- [ ] Counter
- [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER:
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (*not specified above*) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [x] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (*specify*): Nine (9)
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: March 12, 2019
Shaun Setareh, Esq.
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

Setareh Law Group
Attn: Setareh, Shaun
315 South Beverly Drive
Suite 315
Beverly Hills, CA 90212

DHI Mortgage Company, LTD, L.P.;
aTexas limited partnership

# Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Ahlstrom
Plaintiff/Petitioner(s)
vs.
DHI Mortgage Company, LTD, L.P., aTexas limited
Defendant/Respondent(s)
(Abbreviated Title)

No. RG19012495

NOTICE OF HEARING

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 04/30/2019 TIME: 03:00 PM DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
1221 Oak Street, Oakland

Case Management Conference:
DATE: 05/28/2019 TIME: 03:00 PM DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions. Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For

further information, go to **Direct Calendar Departments** at **http://apps.alameda.courts.ca.gov/domainweb**.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept.23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated: 03/28/2019 Chad Finke Executive Officer / Clerk of the Superior Court

By Michelle Bark
Digital
Deputy Clerk

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 03/29/2019.

By Michelle Bark
Digital
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**
COUNTY OF ALAMEDA
Rene C. Davidson Courthouse
1225 Fallon Street
Oakland, CA 94612

U.S. POSTAGE
ZIP 94612 $0
02 1W
0001397391 APR

RECEIVED

APR 08 2019

9021234309 C083

## *Superior Court of California, County of Alameda*

## *Notice of Assignment of Judge for All Purposes*

Case Number: RG19012495
Case Title: Ahlstrom VS DHI Mortgage Company, LTD, L.P., aTexas limited
Date of Filing: 03/27/2019

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| **Judge:** | **Brad Seligman** |
| **Department:** | **23** |
| **Address:** | **Administration Building**<br>**1221 Oak Street**<br>**Oakland CA 94612** |
| **Phone Number:** | **(510) 267-6939** |
| **Fax Number:** | **0** |
| **Email Address:** | **Dept.23@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law. (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

**General Procedures**

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Brad Seligman
DEPARTMENT 23

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's website also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

You may schedule case management hearings, law & motion hearings and other calendar events with Department 23 by EMAIL ONLY. The use of email is not a substitute for filing pleadings or filing other documents. You must provide copies of all email communications to each party (or the party's attorney if the party is represented) at the same time that you send the email to the Court and you must show that you have done so in your email. Courtesy copies of all moving, opposition and reply papers should be delivered directly to Dept. 23 in the Administration Building 1221 Oak St. 4th Floor Oakland, CA 94612.

**Schedule for Department 23**

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Mondays through Thursdays from 9:00 am - 1:30 pm.
- Case Management Conferences are held: Tuesdays beginning at 3:00 pm.
- Asbestos Cases Fridays 9:15 am
- Law and Motion matters are heard: Tuesdays beginning at 3:00 pm. Asbestos Cases Fridays 9:30 am; in exceptional circumstances, motions may be set at other times.
- Settlement Conferences are heard: N/A
- Ex Parte matters are heard: Tuesdays at 3:00 pm. Asbestos Cases Fridays 9:00 am
- Pro Hac Vice Process: Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order

shortening time must be submitted. Applications will not be considered on an exparte basis. CRC 9.40.

**Law and Motion Procedures**

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email: Dept23@alameda.courts.ca.gov

  Reservations by email only. No discovery motions will be scheduled prior to conference with the court. Email to schedule a conference.

- Ex Parte Matters
  Email: Dept23@alameda.courts.ca.gov

  Reservations by email only.

**Tentative Rulings**

The court may issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 23
- Phone: 1-866-223-2244

Dated: 05/01/2019

Facsimile

Presiding Judge,
Superior Court of California, County of Alameda

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as attached hereto and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 05/02/2019

By ______________________ digital
Deputy Clerk

| SHORT TITLE: Ahlstrom VS DHI Mortgage Company, LTD, L.P., aTexas limited | CASE NUMBER: RG19012495 |
|---|---|

ADDITIONAL ADDRESSEES

Setareh Law Group
Attn: Setareh, Shaun
315 South Beverly Drive
Suite 315
Beverly Hills, CA 90212

RECEIVED
MAY 03 2019

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA
Rene C. Davidson Courthouse
1225 Fallon Street
Oakland, CA 94612

U.S. POSTAGE PITNEY BOWES
ZIP 94612 $ 000.50⁰
02 1W
0001397391 MAY. 01. 2019

RECEIVED

MAY 03 2019

90212$4309 C0B3

Setareh Law Group
Attn: Setareh, Shaun
315 South Beverly Drive
Suite 315
Beverly Hills, CA 90212

DHI Mortgage Company, LTD, L.P.,
aTexas limited partnership

**Superior Court of California, County of Alameda**
**Rene C. Davidson Alameda County Courthouse**

| | |
|---|---|
| Ahlstrom<br>Plaintiff/Petitioner(s)<br>vs.<br>DHI Mortgage Company, LTD, L.P., aTexas limited<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG19012495<br>Order<br>Complaint - Other Employment |

The Complex Determination Hearing was set for hearing on 04/30/2019 at 03:00 PM in Department 23 before the Honorable Brad Seligman. The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Dated: 04/30/2019

facsimile

Judge Brad Seligman

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG19012495
Order After Hearing Re: of 04/30/2019

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 05/02/2019.

Chad Finke Executive Officer / Clerk of the Superior Court

By [signature]

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA
Rene C. Davidson Courthouse
1225 Fallon Street
Oakland, CA 94612

U.S. POSTAGE PITNEY BOWES
ZIP 94612 $ 000.50⁰
02 1W
0001397391 MAY. 06 2019

RECEIVED

MAY 0 9 2019

SD21234309 C083

# EXHIBIT B

Shaun Setareh (SBN 200514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
Farrah Grant (SBN 293898)
farrah@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
ROBERT W. AHLSTROM

Jack S. Sholkoff (SBN 145097)
jack.sholkoff@ogletree.com
Jennifer L. Katz (SBN 258917)
jennifer.katz@ogletree.com
Alexandra Aurisch (SBN 296525)
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone (213) 239-9800
Facsimile (213) 239-9045

Attorneys for specially appearing Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

UNLIMITED JURISDICTION

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>DHI MORTGAGE COMPANY, Ltd., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,<br><br>*Defendants.* | Case No. RG19012495<br><br>Assigned For All Purposes to the Honorable Brad Seligman, Department 23<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: May 28, 2019<br>Time: 3:00 p.m.<br>Department: 23 |

Plaintiff ROBERT H. AHLSTROM ("Plaintiff") and specially appearing defendant DHI MORTGAGE COMPANY, LTD., L.P. ("Defendant") (collectively referred to as the "Parties") submit this Joint Case Management Conference Statement in advance of the Case Management Conference currently set for May 28 at 3:00 p.m. in Department 23.

## A. FACTUAL AND LEGAL ISSUES

**Plaintiff's Position**

Plaintiff filed his initial complaint on March 27, 2019 as a class action to recover unpaid wages, and related relief on behalf of putative class members. Plaintiff asserts that Defendants failed to provide meal and rest breaks, failed to pay hourly wages, failed to provide legally compliant wage statements, failed to pay former employee's their final wages in a timely fashion. Plaintiff seeks costs and of suit and reasonable attorney's fees.

**Defendant's Position**

Defendant was first served with the Summons and Complaint in this action on Friday, May 17, 2019, and has not yet appeared in this action. In addition, Defendant's counsel was first provided with a copy of the Court's Initial Case Management Order in this case on the afternoon of May 17, 2019. Thus, Defendant contends that it is premature to conduct a case management conference at the present time, and requests that the conference be continued by at least 60 days.

Moreover, this conference is premature for the additional reason that there is federal jurisdiction over this case, and Defendant intends to remove the matter to federal court on or before its statutory deadline to do so.

Finally, Plaintiff signed a Mutual Arbitration Agreement with class action waiver, which contained an opt-out provision that Plaintiff did not utilize. The Northern District of California, Judge Beth Labson Freeman, has already dismissed these identical putative class and collective action claims as filed by Plaintiff in an earlier substantively identical complaint against two other entities related to Defendant – D.R. Horton, Inc. and DHI Mortgage Company GP, Inc. – and compelled Plaintiff's individual claims against those entities to arbitration. *See Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018). Thus, Defendant intends to seek to have this matter compelled to arbitration on an individual basis and to

have the class and collective claims dismissed.

Notwithstanding the above, Defendant disagrees with and disputes each and every allegation in Plaintiff's Complaint.

**B. PARTIES AND POSTURE**

Shaun Setareh (SBN 200514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
Farrah Grant (SBN 293898)
farrah@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
ROBERT W. AHLSTROM

Jack S. Sholkoff (SBN 145097)
jack.sholkoff@ogletree.com
Jennifer L. Katz (SBN 258917)
jennifer.katz@ogletree.com
Alexandra Aurisch (SBN 296525)
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone (213) 239-9800
Facsimile (213) 239-9045

Attorneys for specially appearing Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**C. ADDIING PARTIES AND AMENDMENT OF PLEADINGS**

Plaintiff does not intend to add any additional parties at this time.

**D. CLASS DISCOVERY AND CLASS CERTIFICATION**

**Plaintiff's Position**

Plaintiff will file a motion for class certification. Pursuant to the claims alleged, Plaintiff anticipates discovery on subjects pertaining to the claims and defenses alleged by the parties. Plaintiff anticipates seeking discovery regarding: (i) the identity of putative class members; (ii) Defendants' relevant wage and hour policies; (iii) Defendants' treatment of the putative class; and (iv) wage statements, paystubs and time records for the putative class. Plaintiff requires a deposition

of Defendants' person(s) most knowledgeable regarding the matters at issue in this case. Plaintiff does not propose that discovery be conducted in phases or limited to particular issues.

Plaintiff requires class contact information from the Defendants' records. Plaintiff proposes using an "opt-out" notice process with a third-party administrator. Plaintiff is willing to share the cost of the opt out notice.

**Defendant's Position**

For the reasons stated above, Defendant is not presently in a position to opine on this issue, as it was first served with the Summons and Complaint in this action on Friday, May 17, 2019, and has not yet appeared in this action; thus, evaluation of this issue is premature at the present time.

Nonetheless, Defendant believes there is no basis for proceeding as a class or collective action, as Plaintiff entered into a Mutual Arbitration Agreement with class action waiver, and Defendant intends to move to compel individual arbitration and seek dismissal of the class and collective action claims once it has removed the action to federal court. Should this matter end up proceeding before this Court as a putative class and/or collective action, Defendant intends to request that discovery be phased such that class discovery come before discovery on the merits of Plaintiff's claims.

## E. PROPOSED SCHEDULE

**Defendant's Position**

For the reasons stated above, Defendant believes it is premature to set a schedule in this case, other than to continue the status conference to a date at least 60 days in the future.

## F. IDENTIFICATION OF ALL POTENTIAL EVIDENTIARY ISSUES

**Plaintiff's Position**

Plaintiff anticipates there may be discovery disputes concerning the privacy interests of non-parties.

**Defendant's Position**

For the reasons stated above, Defendant is not presently in a position to opine on this issue, as it was first served with the Summons and Complaint in this action on Friday, May 17, 2019, and has not yet appeared in this action; thus, evaluation of this issue is premature at the present time.

**G. PROCEDURAL STATUS**

**Unserved Parties**

All parties to this action have been served. There are no outstanding service issues.

Defendant was first served with the Summons and Complaint in this action on Friday, May 17, 2019.

**Unserved and/or Unfiled Cross-Complaints**

The Parties have not filed any cross-complaints and do not anticipate filing any cross-complaints.

**Related Actions**

A representative action is currently pending in the Santa Clara Superior Court, *Ahlstrom v. DHI Mortgage Company GP, INC., et al.*, Case No. 17CV317032.

**Jurisdictional or Venue Issues**

Plaintiff's Position

Plaintiff is not currently aware of any jurisdictional or venue issues.

Defendant's Position

Defendant intends to remove the matter to federal court on or before its statutory deadline to do so. Moreover, it is Defendant's position that Plaintiff's class and collective claims must be dismissed and that Plaintiff's individual claims must be compelled to arbitration pursuant to the Mutual Arbitration Agreement between the Parties, which Judge Beth Labson Freeman has already ruled on in an identical action Plaintiff previously filed in the Northern District of California against two other entities related to Defendant – D.R. Horton, Inc. and DHI Mortgage Company GP, Inc. *See Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018). Thus, once this matter is in federal court, Defendant intends to seek to have this matter compelled to arbitration on an individual basis and to have the class and collective claims dismissed.

**Status of Discovery**

Plaintiff's Position

Plaintiff has not served any written discovery on Defendant. Plaintiff anticipates serving written

discovery within the next few weeks.

Defendant's Position

For the reasons stated above, Defendant is not presently in a position to opine on this issue, as it was first served with the Summons and Complaint in this action on Friday, May 17, 2019, and has not yet appeared in this action; thus, evaluation of this issue is premature at the present time.

**Law and Motion**

Plaintiff's Position

Plaintiff is uncertain as to the timing of nature of any motions that may be filed by Plaintiff.

Defendant's Position

For the reasons stated above, Defendant is not presently in a position to opine on this issue, as it was first served with the Summons and Complaint in this action on Friday, May 17, 2019, and has not yet appeared in this action; thus, evaluation of this issue is premature at the present time.

Moreover, Defendant intends to remove the matter to federal court on or before its statutory deadline to do so.

Nonetheless, should this matter end up proceeding before this Court, Defendant will move to compel arbitration of Plaintiff's individual claims and to dismiss his putative class and collective action claims, and will seek to do so at the earliest possible time.

**ADR**

Plaintiff's Position

Plaintiff is open to engaging in private mediation to facilitate settlement on behalf of all putative class members.

Defendant's Position

For the reasons stated above, Defendant is not presently in a position to opine on this issue, as it was first served with the Summons and Complaint in this action on Friday, May 17, 2019, and has not yet appeared in this action; thus, evaluation of this issue is premature at the present time.

Nonetheless, Defendant may be amenable to engaging in private mediation with Plaintiff as to his individual claims at a later phase of this action, but is not agreeable to mediation at the present time. Specifically, Defendant believes that any mediation would be premature at this time given the number

of outstanding substantive legal issues in dispute – including the issue of the arbitrability of Plaintiff's claims and the improper filing of the instant complaint in light of Judge Freeman's ruling compelling his claims to arbitration.

**Severance of Issues for Trial**

The Parties are not currently aware of any issues suitable for severance for trial.

**Calendar Conflicts**

The Parties are not currently aware of any calendar conflicts.

DATED: May 20, 2019

SETAREH LAW GROUP

Ashley N. Batte for

SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiff
ROBERT W. AHLSTROM

DATED: May 20, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

JACK S. SHOLKOFF
JENNIFER L. KATZ
ALEXANDRA AURISCH
Attorneys for specially appearing Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**PROOF OF SERVICE**

I am a citizen of the United States and am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 315 South Beverly Drive, Suite 315 Beverly Hills, CA 90212.

On April 17, 2019, I served the foregoing documents described as:

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

in this action by transmitting a true copy thereof enclosed in a sealed envelope addressed as follows:

Jack S. Sholkoff (SBN 145097)
jack.sholkoff@ogletree.com
Jennifer L. Katz (SBN 258917)
jennifer.katz@ogletree.com
OGLETREE, DEAKINS,
NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite
1200
Los Angeles, California 90071

**[X] BY MAIL**

I am readily familiar with the practice of Setareh Law Group for the collection and processing of correspondence for mailing with the United States Postal Service. It is the practice that correspondence is deposited with United States Postal Service the same day it is submitted for mailing with postage thereon fully prepaid at Beverly Hills, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[X] STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 17, 2019, at Beverly Hills, California.

JUANITA FERNANDEZ

RECEIVED
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

SETAREH LAW GROUP
315 S. BEVERLY DRIVE STE. 315
BEVERLY HILLS, CA 90212

Jack S. Sholkoff Esq
Jennifer Katz Esq.
OGLETREE DEAKINS NASH SMOAK & STEWART
400 S Hope St, Ste 1200
Los Angeles CA 90071-2818

# EXHIBIT C

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

ENDORSED
FILED
ALAMEDA COUNTY
JUN 14 2019
CLERK OF THE SUPERIOR COURT
By TANIA PIERCE Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

vs.

DHI MORTGAGE COMPANY, Ltd., L.P., a Texas limited liability partnership; and DOES 1 to 50, inclusive,

Defendants.

Case No. RG19012495

**DEFENDANT DHI MORTGAGE COMPANY, LTD., L.P.'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT**

[Assigned for all purposes to The Honorable Brad S. Seligman, Dept. 23]

Action Filed: March 27, 2019
Trial Date: None

FAXED

Defendant DHI MORTGAGE COMPANY, LTD., L.P. ("Defendant") hereby responds to the unverified Complaint ("Complaint") of plaintiff Robert W. Ahlstrom ("Plaintiff") as follows:

**GENERAL DENIAL**

Pursuant to the provisions of *California Code of Civil Procedure* section 431.30, subdivision (d), Defendant denies, generally and specifically, each and every allegation of Plaintiff's unverified Complaint and further denies, generally and specifically, that Plaintiff and the putative members of the purported class and/or collective action have been injured in the amount and/or manner alleged, or in any other manner whatsoever, and that Plaintiff and the putative members of the purported class and/or collective action are entitled to damages or to any other relief whatsoever by reason of the alleged acts and/or omissions of Defendant, or by reason of the alleged acts and/or omissions of any current or former agent or employee of Defendant.

**AFFIRMATIVE DEFENSES**

Without waiving the foregoing, Defendant asserts the following separate and distinct affirmative defenses to Plaintiff's Complaint, and to each purported cause of action therein, and prays for judgment as set forth below:

**FIRST AFFIRMATIVE DEFENSE**

**(Agreements to Arbitrate)**

1. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that Plaintiff's claims are barred because Plaintiff and the putative members of the purported class and/or collective action each executed binding arbitration agreements which govern all of their claims that are the subject of Plaintiff's Complaint; as has already been held by Judge Beth Labson Freeman in the matter of *Ahlstrom v. DHI Mortgage Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018), such arbitration agreements mandate that Plaintiff and the putative members of the purported class and/or collective action arbitrate, on an individualized basis, any and all previously unasserted claims, disputes, or controversies arising out of or relating to their employment with Defendant. Any California state law limiting the enforceability of the arbitration agreement is preempted by the Federal Arbitration

Act. Defendant expressly does not waive its right to compel Plaintiff to arbitrate the instant action pursuant to the DRA and DRRP.

**SECOND AFFIRMATIVE DEFENSE**

**(Statutes Of Limitations)**

2. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or members of the putative class are barred, in whole or in part, by one or more of the applicable statutes of limitations, including, but not limited to: 29 U.S.C. § 255, subdivision (a); California Labor Code §§ 201, 202, 203, 204, 215, 216, 223, 225, 226, 226.6, 226.7, 354, 408, 510, 512, 553, 1175, 1194, 1194.2, 1197, 1197.1, 1198, and 1199; California Business and Professions Code § 17208; and California Code of Civil Procedure §§ 312; 337; 338, subdivision (a); 339; 340, subdivision (a); and 343.

**THIRD AFFIRMATIVE DEFENSE**

**(Lack Of Standing – Class And Collective Action)**

3. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff on behalf of putative members of the purported class and/or collective action, Defendant alleges that Plaintiff lacks standing and cannot represent the interests of the other alleged class and/or collective action members as to some or all of the purported class and/or collective claims.

**FOURTH AFFIRMATIVE DEFENSE**

**(Consent)**

4. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred, in whole or in part, by the doctrine of consent.

/ / / /

**FIFTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

5. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that Plaintiff and/or putative members of the purported class and/or collective action are barred from recovery on their monetary claims, in whole or in part, by their failure to exercise diligence to mitigate any damages allegedly incurred, if any.

**SIXTH AFFIRMATIVE DEFENSE**

**(Laches)**

6. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred, in whole or in part, by the doctrine of laches.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

7. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred, in whole or in part, because such claims have been waived, discharged, and/or abandoned.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

8. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred, in whole or in part, by the doctrine of estoppel.

**NINTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

9. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred, in whole or in part, by their own unclean hands and/or their inequitable or wrongful conduct.

**TENTH AFFIRMATIVE DEFENSE**

**(Failure To Exhaust Internal And/Or Administrative Remedies)**

10. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred to the extent that they failed to timely and/or properly exhaust their internal and/or administrative remedies.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Due Process / Class Certification)**

11. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class action, Defendant alleges that certification of a class action would be an unconstitutional denial of Defendant's right to due process under the Fourteenth Amendment to the United States Constitution and the California Constitution.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Adequate Remedy At Law)**

12. As a separate and affirmative defense to Plaintiff's Sixth Cause of Action for Unfair Competition in violation of California Business and Professions Code § 17200, *et seq.*, Defendant alleges that the claims of Plaintiff and putative members of the purported class action are barred in light of the fact that Plaintiff and the putative class members have an adequate remedy at law.

/ / / /

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Lack Of Standing – California Business & Professions Code §§ 17200, *et seq.*)**

13. As a separate and affirmative defense to Plaintiff's Sixth Cause of Action for Unfair Competition in violation of California Business and Professions Code §§ 17200, *et seq.*, Defendant alleges that the claims of Plaintiff and putative members of the purported class action are barred in light of the fact that Plaintiff and the putative class members lack standing to seek restitution or any other relief under California Business and Professions Code §§ 17200, *et seq.*, because Plaintiff and putative members of the purported class action have not suffered any injury in fact or lost money or property as a result of any purported unfair competition alleged in the Complaint.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Statute Of Frauds)**

14. As a separate and affirmative defense to Plaintiff's Eighth Cause of Action for Breach of Written Contract and Ninth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing, Defendant alleges that the claims of Plaintiff and the putative members of the purported class and/or collective action related to Defendant's alleged failure to pay commissions are barred by the doctrine of the statute of frauds.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(No Acceptance And/Or Consent)**

15. As a separate and affirmative defense to Plaintiff's Eighth Cause of Action for Breach of Written Contract and Ninth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing, Defendant alleges that the claims of Plaintiff and the putative members of the purported class and/or collective action related to Defendant's alleged failure to pay commissions are barred to the extent the alleged agreements are unenforceable due to lack of acceptance and/or consent.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Parol Evidence Rule)**

16. As a separate and affirmative defense to Plaintiff's Eighth Cause of Action for Breach of Written Contract and Ninth Cause of Action for Breach of Implied Covenant of Good

Faith and Fair Dealing, Defendant alleges that the claims of Plaintiff and the putative members of the purported class and/or collective action related to Defendant's alleged failure to pay commissions are barred by the parol evidence rule.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(No Consideration For Agreement)**

17. As a separate and affirmative defense to Plaintiff's Eighth Cause of Action for Breach of Written Contract and Ninth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing, Defendant alleges that the claims of Plaintiff and the putative members of the purported class and/or collective action related to Defendant's alleged failure to pay commissions are barred to the extent that the alleged agreements lacked consideration.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Failure To Perform)**

18. As a separate and affirmative defense to Plaintiff's Eighth Cause of Action for Breach of Written Contract and Ninth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing, Defendant alleges that the claims of Plaintiff and the putative members of the purported class and/or collective action related to Defendant's alleged failure to pay commissions are barred by the failure of Plaintiff and/or the putative members of the purported class and/or collective action to perform the conditions precedent.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Excuse For Non-Performance)**

19. As a separate and affirmative defense to Plaintiff's Eighth Cause of Action for Breach of Written Contract and Ninth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing, Defendant alleges that the claims of Plaintiff and the putative members of the purported class and/or collective action related to Defendant's alleged failure to pay commissions are barred because Defendant performed and discharged each and every obligation owed to Plaintiff and the putative members of the purported class and/or collective action, if any, except such obligations as Defendant was excused from performing as a result of the conduct and failure to perform obligations by Plaintiff and/or the putative members of the purported class

and/or collective action themselves.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Doctrine Of Avoidable Consequences)**

20. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims brought by Plaintiff and/or putative members of the purported class and/or collective action are barred, in whole or in part, under California law by the doctrine of avoidable consequences on the grounds that Plaintiff and the putative members of the purported class and/or collective action unreasonably failed to make use of Defendant's practices and/or procedures by failing to timely and properly report any purportedly unlawful actions and/or omissions alleged in the Complaint.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Setoff And Recoupment)**

21. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that, if any damages have been sustained by Plaintiff and/or any putative members of the purported class and/or collective action, although such is specifically denied, Defendant is entitled under the equitable doctrine of setoff and recoupment to offset all extra payments or overpayments and/or all obligations of Plaintiff or any putative members of the purported class and/or collective action owed to Defendant against any judgment that may be entered against Defendant.

**TWENTY-SECOND AFFIRMATIVE DEFENSEAFFIRMATIVE DEFENSE**

**(Exclusions, Exceptions, Credits, And/Or Offsets)**

22. As a separate and affirmative defense to Plaintiff's Seventh Cause of Action for Failure to Pay Employees for All Hours Worked in Violation of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, Defendant alleges that Plaintiff's claims and the claims of the alleged collective action members are barred in whole or in part by exclusions, exceptions, credits, and/or offsets permissible under the Fair Labor Standards Act.

**TWENTY-THIRD AFFIRMATIVE DEFENSEAFFIRMATIVE DEFENSE**

**(Other Opt-Ins)**

23. As a separate and affirmative defense to Plaintiff's Seventh Cause of Action for Failure to Pay Employees for All Hours Worked in Violation of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, Defendant alleges that although Plaintiff is not similarly situated to other putative members of the purported collective action alleged in the Complaint, should other individuals opt into this case, Defendant asserts the separate defenses set forth herein as to those persons.

**TWENTY-FOURTH AFFIRMATIVE DEFENSEAFFIRMATIVE DEFENSE**

**(No Joinder Of Claims)**

24. As a separate and affirmative defense to Plaintiff's Seventh Cause of Action for Failure to Pay Employees for All Hours Worked in Violation of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, Defendant alleges that Plaintiff's claims cannot be properly joined with the claims of any potential opt-ins.

**TWENTY-FIFTH AFFIRMATIVE DEFENSEAFFIRMATIVE DEFENSE**

**(Good Faith / No Willful Violation Of The Fair Labor Standards Act)**

25. As a separate and affirmative defense to Plaintiff's Seventh Cause of Action for Failure to Pay Employees for All Hours Worked in Violation of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, Defendant alleges that Plaintiff and the putative members of the purported collective action are not entitled to rely on a three-year statute of limitations or to recover any liquidated damages as prayed for in the Complaint under the Fair Labor Standards Act because Defendant acted in good faith and did not willfully fail to comply with the federal wage and hour laws alleged in the Complaint. Moreover, Defendant had reasonable grounds for believing that its actions and/or omissions, if any, did not violate the provisions of the Fair Labor Standards Act.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Exempt Status)**

26. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or

collective action, Defendant alleges that Plaintiff and the putative members of the purported class and/or collective action defined in the Complaint were exempt from coverage of the California and federal wage-and-hour laws alleged in the Complaint by virtue of one or more statutory exemptions.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Accord And Satisfaction)**

27. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that the claims of Plaintiff and/or the putative members of the purported class and/or collective action defined in the Complaint are barred, in whole or in part, by the principles of accord and satisfaction, and payment.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(No Knowing, Intentional, And/Or Willful Conduct)**

28. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class action, Defendant alleges that Plaintiff and the putative members of the purported class are not entitled to any penalty award under any section of the California Labor Code because, at all relevant times, Defendant did not willfully, knowingly, and/or intentionally fail to comply with the compensation provisions of the California Labor Code, but rather acted in good faith and had reasonable grounds for believing that it did not violate those provisions.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(*De Minimis*)**

29. As a separate and affirmative defense to Plaintiff's Complaint and to any wage claims alleged therein, Defendant alleges that, to the extent that Plaintiff and/or any putative member of the purported class or collective action was harmed in any way (which Defendant specifically denies), the damages of Plaintiff and/or any putative member of the purported class or collective action are *de minimis* and, thus, not legally cognizable or not capable of determination.

/ / / /

**THIRTIETH AFFIRMATIVE DEFENSE**

**(Third-Party Liability)**

30. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that Plaintiff's Complaint is barred, in whole or in part, because any alleged injuries suffered by Plaintiff and the putative members of the purported class and/or collective action were proximately caused, in whole or in part, by the acts and/or omissions of persons and/or entities other than Defendant, including by the acts and/or omissions of Plaintiff and/or putative members of the purported class and/or collective action themselves.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(Good Faith Dispute That Wages Are Due)**

31. As a separate and affirmative defense to Plaintiff's Fifth Cause of Action for Failure to Timely Pay All Final Wages in violation of California Labor Code §§ 201–203, Defendant alleges that Plaintiff and the putative members of the purported class action are not entitled to any penalties under California Labor Code § 203 because, at all relevant times, there has been a good faith dispute that any wages are or have been due, thereby precluding the imposition of any waiting time penalties against Defendant.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

**(Excessive Fine)**

32. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that an award of penalties against Defendant, under the circumstances of this case, would constitute an excessive fine and otherwise would be in violation of Defendant's due process and other rights under the United States and California Constitutions.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(Releases)**

33. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or

collective action, Defendant alleges that the causes of action stated in the Complaint are barred, in whole or in part, to the extent that individuals who Plaintiff wish to represent as putative class members may have released some or all of the claims against Defendant that are being asserted in Plaintiff's Complaint.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(Additional Affirmative Defenses)**

34. As a separate and affirmative defense to Plaintiff's Complaint and to each purported cause of action alleged therein by Plaintiff and the putative members of the purported class and/or collective action, Defendant alleges that it currently has insufficient information upon which to form a belief as to whether it may have additional, as yet unstated, defenses. Defendant reserves the right to assert additional defenses in the event discovery indicates additional defenses are appropriate.

WHEREFORE, Defendant prays for judgment as follows:

1. That the Court deny any request(s) by Plaintiff and/or putative members of the purported class and/or collective action to certify this action as a class and/or collective action;
2. That Plaintiff and members of the putative class and collective action take nothing by the Complaint;
3. That Plaintiff's Complaint herein be dismissed in its entirety, with prejudice;
4. That judgment be entered against Plaintiff and in favor of Defendant on all causes of action asserted in the Complaint;
5. That Defendant be awarded its attorneys' fees incurred herein;
6. That Defendant be awarded its costs of suit herein; and

/ / / /

/ / / /

/ / / /

7. For such other and further relief as this Court may deem just and proper.

DATED: June 14, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: ______________________

Jack S. Sholkoff
Jennifer L. Katz
Alexandra C. Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**PROOF OF SERVICE**
*Robert W. Ahlstrom v. DHI Mortgage Company, Ltd., L.P., et al.*
Case No. RG19012495

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Los Angeles, in the office of a member of the bar of this court at whose direction the service was made. My business address is 400 South Hope Street, Suite 1200, Los Angeles, CA 90071.

On June 14, 2019, I served the following document(s):

DEFENDANT DHI MORTGAGE COMPANY, LTD., L.P.'S
ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated on the attached mailing list.

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at 400 South Hope Street, Suite 1200, Los Angeles, CA 90071.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Los Angeles, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY FACSIMILE** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐ the written confirmation of counsel in this action:

☐ **[State Court motion, opposition or reply only]** Code of Civil Procedure section 1005(b):

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Shaun Setareh, Esq.
Thomas Segal, Esq.
Farrah Grant, Esq.
Ashley N. Batiste, Esq.
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
Email: shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com
ashley@setarehlaw.com

Attorneys for Plaintiff
Robert W. Ahlstrom, on behalf of himself, all others similarly situated

☒ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 14, 2019, at Los Angeles, California.

Anneliese Bradley
Type or Print Name

Anneliese Bradley
Signature

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

Plaintiff,

v.

DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,

Defendants.

Case No. ______________________

**DECLARATION OF DAVID MORICE IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

*[Filed concurrently with Notice of Removal; Civil Cover Sheet; Certification of Interested Entities or Persons; Disclosure Statement; and Notice of Pendency of Other Action or Proceeding.]*

Complaint Filed: March 27, 2019
Trial Date: None

## DECLARATION OF DAVID MORICE

I, DAVID MORICE, declare and state as follows:

1. I currently am employed by D.R. Horton, Inc. as its Vice President & Legal Counsel. In this position, I deal with various types of legal matters for D.R. Horton, Inc. and its related entities, including DHI Mortgage Company, Ltd., L.P. ("Defendant"), the named defendant in this action, and I am responsible for managing the instant litigation on Defendant's behalf. I have personal knowledge of the matters contained herein, and if called, I would and could testify competently and truthfully thereto.

2. I regularly receive copies of lawsuits filed against Defendant via Defendant's registered agent for service of process, CT Corporation.

3. On May 17, 2019, Defendant was personally served, through CT Corporation, with the Summons and Complaint in the matter of *Robert W. Ahlstrom, on behalf of himself, all others similarly situated, Plaintiff, vs. DHI Mortgage Company, Ltd., L.P., a Texas Limited Partnership; and DOES 1 to 50, inclusive, Defendants* (the "Complaint"), which was assigned the case number RG19012495, filed in the Superior Court for the State of California, County of Alameda, on March 27, 2019. In addition to the Summons and Complaint, Defendant also received service of the Initial Case Management Order, the Civil Case Cover Sheet, the Notice of Hearing, the Notice of Assignment of Judge for All Purposes, and the Order re: Complex Determination. True and correct copies of all documents served on Defendant on May 17, 2019, including the Summons and Complaint, are attached to the concurrently filed Notice of Removal as **Exhibit A**.

/ / / /

/ / / /

/ / / /

/ / / /

4. The documents attached as Exhibits A and B to the Notice of Removal constitute all pleadings, process, and other documents Defendant has received in this action, and Defendant has not been served with any pleadings, process, or orders in this action other than those attached as Exhibits A and B.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on June 17, 2019, at Arlington, Texas.

DAVID MORICE

JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
ALEXANDRA C. AURISCH, CA Bar No. 296525
alexandra.aurisch@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHI MORTGAGE COMPANY, LTD., L.P., a Texas limited partnership; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. ______________________<br><br>**DEFENDANT'S NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING (LOCAL RULE 3-13)**<br><br>*[Filed concurrently with Notice of Removal; Civil Cover Sheet; Certification of Interested Entities or Persons; Disclosure Statement; and Declaration of David Morice.]*<br><br>Complaint Filed: March 27, 2019<br>Trial Date: None |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF ROBERT W. AHLSTROM AND HIS ATTORNEYS OF RECORD:**

Pursuant to Northern District of California Local Rule 3-13, the undersigned, counsel of record for defendant DHI Mortgage Company, Ltd., L.P. ("DHIM"), hereby gives notice that the following civil actions involve all or a material part of the same subject matter and all or substantially all of the same parties as the instant action:

1. The matter of *Robert W. Ahlstrom v. DHI Mortgage Company GP, Inc., et al.*, Case No. 5:17-cv-04383-BLF, was filed in the Northern District of California on or about August 2, 2017, and proceeded before the Honorable Beth Labson Freeman at the San Jose Courthouse, Courtroom 3 - 5th Floor, 280 South 1st Street, San Jose, CA 95113 (the "Original Putative Class Action"). The Original Putative Class Action alleged the identical claims and causes of action set forth in the instant matter against two different entities related to DHIM – DHI Mortgage Company GP, Inc. (which is the general partner of DHIM) and D.R. Horton, Inc. – on behalf of the same named plaintiff and the same putative class alleged in the instant action. The claims asserted by Plaintiff Robert W. Ahlstrom ("Plaintiff") against DHI Mortgage Company GP, Inc. and D.R. Horton, Inc. in the Original Putative Class Action comprised (1) Failure to Provide Meal Periods (Cal. Lab. Code §§ 204, 223, 226.7, 512, and 1198); (2) Failure to Provide Rest Periods (Cal. Lab. Code §§ 204, 223, 226.7, and 1198); (3) Failure to Pay Hourly and Overtime Wages (Cal. Lab. Code §§ 223, 510, 1194, 1197, and 1198); (4) Failure to Provide Accurate Written Wage Statements (Cal. Lab. Code § 226); (5) Failure to Timely Pay All Final Wages (Cal. Lab. Code §§ 201–203); (6) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); (7) Failure to Pay Employees for All Hours Worked in Violation of the Federal Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*); (8) Breach of Written Contract; and (9) Breach of Implied Covenant of Good Faith and Fair Dealing. On the basis of a pre-dispute arbitration agreement with a class action waiver and delegation clause, or about November 30, 2018, Judge Freeman entered an order dismissing Plaintiff's putative class and collective action claims and compelling Plaintiff's individual claims to arbitration. *See Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-cv-04383-BLF, 2018 WL

6268876 (N.D. Cal. Nov. 30, 2018). In order to conserve resources and promote efficiency, DHIM believes that the instant matter should also be assigned to Judge Freeman, as the identical arbitration agreement will be at issue in the instant action as was ruled upon in the Original Putative Class Action.

2. The matter of *Robert W. Ahlstrom v. DHI Mortgage Company GP, Inc., et al.*, Case No. 17CV317032, was filed on or about October 6, 2017 and is currently pending in the Santa Clara County Superior Court, 191 North First Street, San Jose, CA 95113 (the "PAGA Matter"). The PAGA Matter comprises a single cause of action against DHI Mortgage Company GP, Inc.; D.R. Horton, Inc.; and DHI Mortgage Company Ltd., L.P., for violation of the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA"), based upon the following alleged violations of the Labor Code: failure to provide meal periods, failure to provide rest periods, failure to pay premium wages for missed meal and/or rest periods, failure to pay for all hours worked, failure to pay overtime and double time wages at the correct rate, failure to provide accurate wage statements, and failure to pay all wages owed at termination. The named plaintiff in the instant action is the same as the named plaintiff in the PAGA Matter, and the defendant in the instant action – DHIM – is also a named defendant in the PAGA Matter, along with DHI Mortgage Company GP, Inc. and D.R. Horton, Inc., the named defendants in the Original Putative Class Action. In order to conserve resources and promote efficiency, DHIM believes that it may be appropriate for the PAGA Matter to be coordinated in with the instant action.

/ / / /

/ / / /

/ / / /

/ / / /

Other than the above-described matters, DHIM is not aware of any action currently pending before any other federal or state court that involves all or a material part of the same subject matter and all or substantially all of the same parties as this action.

DATED: June 17, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Jennifer L. Katz
Jack S. Sholkoff
Jennifer L. Katz
Alexandra C. Aurisch

Attorneys for Defendant
DHI MORTGAGE COMPANY, LTD., L.P.

9th Circuit Case Number(s) 20-15114

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) November 2, 2020 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) s/ Jennifer L. Katz

*********************************************************************************

## CERTIFICATE OF SERVICE
## When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) ____________ .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)