No. 20-15114

In the

# United States Court of Appeals for the Ninth Circuit

ROBERT W. AHLSTROM,

*Plaintiff - Appellant,*

vs.

DHI MORTGAGE COMPANY LTD. L.P.

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
HON. BETH LABSON FREEMAN JUDGE PRESIDING
DISTRICT COURT CASE NO. 19-CV-03435-BLF

## APPELLANT'S REPLY BRIEF

**SETAREH LAW GROUP**
Shaun Setareh, SBN 204514
Thomas Segal, SBN 222791
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

*Attorneys for Plaintiff/ Appellant*

## TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………………………...1

**ARGUMENT**………………………………………………………………………………...3

**I. CONTRACT FORMATION IS AN ISSUE FOR THE COURT NOT AN ARBITRATOR**……………………………………………………………………...3

**II. THE ISSUE IN THIS CASE IS AN ISSUE OF CONTRACT FORMATION**…6

**III. ANY DELEGATION WAS NOT CLEAR AND UNMISTAKABLE**…………12

**IV. THIS COURT SHOULD NOT FIND THAT A CONDITION PRECEDENT TO THE OBLIGATION TO ARBITRATE DID NOT OCCUR**………………16

**V. DHI'S NEW ARGUMENT THAT THE PHRASE "THE COMPANY" SHOULD BE INTERPRETED AS INCLUDING AFFILIATES IS BOTH WAIVED AND MERITLESS**…………………………………………………………………...18

**VI. ANY AMBIGUITY SHOULD BE CONSTRUED AGAINST DHI**……………21

**CONCLUSION**……………………………………………………………………………….22

# TABLE OF AUTHORITIES


*Automotive Parts Antitrust Litig.*, 951 F.3d 377, 382 (6th Cir. 2020)……………………3

*AT&T Techs. Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986)…………………..3

*Broad v. Mannesman Anlagen Bau AG, 196 F.3d 1075, 1076 n3 (9th Cir. 1999)*……20

*Circuit City Stores Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002)*…………………8

*Clemens v. Centurylink Inc.*, 847 F.3d 1111, 1117 (9th Cir. 2017)……………………18

*Durruthy v. Charter Communications, LLC, 2020 WL 6871048 *3 (S.D. Cal. 2020)*..16

*Dream Theater Inc. v. Dream Theater*, 124 Cal.App.4th 547, 555-556 (2004)………15

*Facebook Inc. v. Superior Court, 4 Cal.5th 1245, 1283 (2018)*………………………..9

*Fedor v. United Healthcare, 976 F.3d 1100, 1105-1106 (2020)*………………………4

*Founding Members of Newport Beach County Club v. Newport Beach Country Club, 109 Cal.App.4th 944, 955-956 (2003)*…………………………………………17

*Granite Rock Co. v. Int'l Board of Teamsters,* 561 U.S. 287, 296 (2010)………………....4

*International Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038 (9th Cir. May 1, 2020)……………………………………………………………………6

*JMR Constr. Corp. v. Environmental Assessment & Remedial Management, Inc., 243 Cal.App.4th 571, 593 (2017)*……………………………………………………...9

*Johnmohammadi v. Bloomingdales,* 755 F.3d 1072, 1075-1076 (9th Cir. 2014)……………8

*Karminski v. Smitty's Bar, Inc., 246 Cal.App.4th 456, 464 (2016)* …………………….9

*Lamps Plus v. Varela, 139 S.Ct. 1407 (2019)*…………………………………………21

*Mendez v. LoanMe Inc., 2020 WL 6044098 *3 (S.D. Cal. October 13, 2020)*……………10

*Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)………….……1,2,12,16

*Norcia v. Samsung, 845 F.3d 1279, 1283 (9th Cir. 2017)*……………………………..18

*Reichert v. Rapid Investments, Inc.,* 826 Fed.Appx. 656, 658 (9th Cir. October 21, 2020)…5

*Rent-A-Center West Inc. v. Jackson*, 561 U.S. 63 (2010)…………………………………..3

*Roth v. Garcia-Marquez*, 942 F.2d 617, 626-627 (1991)…………………………………...9

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004)*……………………………………………………………………..14

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1140-41 (9th Cir. 1991)*…………………………………………………………………………...6

*Tobacco Cases I, 186 Cal.App.4th 42, 49 (2010)*………………………………………16

*Tuttia Mangia Italian Grill Inc. v. American Textile Maintenance Co., 197 Cal.App.4th773, 740 (2011)*……………………………………………………………………………13

*Volt Info Sys, Inc. v. Bd of Trs. of Leland Stanford Junior Univers.*, 489 U.S. 468, 479 (1989)……………………………………………………………………………..3

**STATUTES**

U.S.C. § 4…………………………………………………………………………...6

Rule 30(b)(6)……………………………………………………………………….20

## INTRODUCTION

Respondent DHI argues at great length that the delegation clause in the arbitration agreement should be enforced because it is "clear and unmistakable." As argued below DHI is wrong about that. But DHI spends much less time addressing a critical antecedent issue, namely whether the issue of whether a contract was formed in the first place can be delegated to an arbitrator. DHI, in effect, puts the cart before the horse.

The issue of contract formation cannot be delegated to an arbitrator. This is because an arbitrator derives their powers solely from the fact that the parties have agreed to arbitrate disputes. An arbitrator has no power if the parties have not agreed to arbitrate disputes. The Fifth, Sixth and Tenth Circuits have so held in published opinions as this Court has done in unpublished opinions. And the Supreme Court has often stated that arbitration is a matter of consent, a principle which disposes of any argument that contract formation may be delegated to an arbitrator.

DHI asserts that the fact that Ahlstrom signed the agreement at issue shows that there is no contract formation issue. But parties can sign a written instrument which is an agreement to agree, if certain conditions are met. That is what happened here. The agreement contains a condition precedent that the employee/ job applicant must accept or continue employment with a specific entity, DR Horton. It is undisputed that Ahlstrom was never employed by DR Horton. Therefore, there never was an effective agreement because a condition precedent did not occur.

DHI is also wrong in arguing that the delegation provision is clear and unmistakable. The arbitration agreement contains conflicting language including a carve out for motions to compel arbitration. DHI relies on this Court's decision in *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th

Cir. 2016). But *Mohamed* did not hold that a delegation provision can be clear and unmistakable despite conflicting terms elsewhere in the agreement. Instead, it held based on the specific language at issue, (which included a proviso "except as otherwise provided" which eliminated the apparent inconsistency) there was no conflict. But here we have conflicting language without the "except as otherwise provided" language that saved the *Mohamed* delegation clause.

Therefore, this Court should decide the issue of whether the agreement contained a condition precedent, accepting or continuing employment with DR Horton (not DHI) that was not met. The clause at issue contains language virtually identical to that which this Court has previously held constituted a condition precedent to contract formation, and the result should be the same here.

DHI makes a new argument, not made to the district court and therefore waived, that the term "the Company" should be viewed as ambiguous, and potentially referring not just to DR Horton, which is how the agreement expressly defines "the Company" but instead to DR Horton and any related entities. But the agreement elsewhere distinguishes between DR Horton and affiliated entities, showing that the drafter knew how to include affiliated entities, but chose to limit the definition of "the Company" to DR Horton.

Finally, any ambiguity that does exist should be construed against the drafting party at least where whether the parties agreed to arbitrate is in question. Arbitration is a matter of consent, and Ahlstrom should not be forced to arbitration based on ambiguous language, which is the result DHI seeks in arguing that "the Company" is ambiguous, and therefore arbitration

can be ordered notwithstanding the apparent nonoccurrence of a condition precedent.

## ARGUMENT

### I. CONTRACT FORMATION IS AN ISSUE FOR THE COURT NOT AN ARBITRATOR.

Appellee DHI argues that contract formation issues may be validly delegated to an arbitrator. DHI suggests that this Court should not follow the decisions of the Fifth, Sixth and Tenth Circuit holding otherwise. DHI's only argument for this Court now following its sister circuits is that these cases are based on the U.S. Supreme Court's decision in *Rent-A-Center West Inc. v. Jackson*, 561 U.S. 63 (2010) and that case did not squarely address whether a delegation provision applies to contract formation issue. Of course, the fact that the precise issue was not squarely addressed in *Rent-A-Center*, does not render it incorrect for a circuit court to conclude based on *Rent-A-Center* that a court must decide contract formation issues. The issue is whether the reasoning of the Fifth , Sixth, and Tenth Circuits is incorrect. And aside from criticizing reliance on *Rent-A-Center*, DHI provides no argument that the reasoning of the Fifth, Sixth, and Tenth Circuits is incorrect.

In *In re Automotive Parts Antitrust Litig.*, 951 F.3d 377, 382 (6th Cir. 2020) the Sixth Circuit based its reasoning on statements from Supreme Court cases that "arbitration is a matter of contract" and "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration" (*AT&T Techs. Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986), that "arbitration is a matter of consent not coercion" (*Volt Info Scis. Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

DHI does not explain how submitting issues of contract formation to an arbitrator can possibly be consistent with the cardinal principle of the FAA that arbitration is a matter of consent. As such DHI offers no reason to disagree with the reasoning of the Sixth Circuit.

In *Fedor v. United Healthcare,* 976 F.3d 1100, 1105-1106 (2020) the Tenth Circuit reached the same conclusion by analyzing the Supreme Court's *Rent-A-Center* decision as well as the Supreme Court's subsequent decision in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287(2010):

> "While the *Rent-A-Center* Court held that a litigant must specifically challenge the delegation clause in order to allow courts to determine the validity of an arbitration contract as a whole, its holding does not apply in situations where a party alleges that no agreement 'was ever concluded' between the parties. *Id.* at 70 n2.
>
> Three days after Rent-A-Center was published, the Supreme Court reaffirmed its position that issues concerning the formation of an arbitration agreement cannot be delegated to an arbitrator. In *Granite Rock,* the Court reversed the Ninth Circuit's judgment compelling the parties to arbitrate their claims even though the formation of the underlying arbitration agreement was at issue. 561 U.S. at 294-295, 313, 130 S.Ct. 2847. And while the arbitration agreement there did not include a delegation clause, the Court's "framework" for deciding the case shows that it would have found the dispute to be un-arbitrable even if a delegation clause was present. *See id*. at 297–99, 130 S.Ct. 2847.

> Under *Granite Rock*'s "proper framework for deciding when disputes are arbitrable," a court cannot order arbitration of a particular dispute unless it is "satisfied that the parties agreed to arbitrate *that dispute*." *Id*. at 297, 130 S.Ct. 2847 (emphasis in original). The Court explained that while issues such as the "scope" and "enforceability" of an arbitration clause can be committed to an arbitrator through a "[delegation] provision," courts must "always" resolve "whether the clause was agreed to" by the parties. *Id*. at 297, 299, 130 S.Ct. 2847 ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.") (emphasis in original)."

DHI asks this Court to reject the holding in *Fedor*, thereby creating a circuit split, but never explains why *Fedor's* interpretation of *Rent-A-Center* and *Granite Rock* is erroneous. DHI cites to a footnote in *Rent-A-Center* which stated: "The issue of the agreement's validity is different than the issue whether any agreement between the parties was ever concluded . . . and we address only the former." *Rent-A-Center supra* at 71 n1. But as *Fedor* recognizes, this foonote indicates that the discussion in *Rent-A-Center* about delegation clauses does not apply to contract formation issues i.e. "whether any agreement between the parties was ever concluded."

And in fact, this Court has reached the same conclusion as the Fifth, Sixth and Tenth Circuits, just not in a published opinion. Most recently, this Court so held in *Reichert v. Rapid Investments, Inc.*, 826 Fed.Appx. 656, 658 (9th Cir. October 21, 2020): "Notwithstanding any delegation clause in the Agreement,

challenges to the existence of a contract as a whole, must be determined by the court prior to ordering arbitration."

This Court has also stated albeit not in a case involving a delegation provision that: "A party who contests the making of a contract concerning an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136, 1140-41 (9th Cir. 1991).

As this Court explained in *Three Valleys*, the rule that DHI urges would lead to absurd results: "Party A could forge Party B's name to a contract and compel Party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prohibited it from engaging in *any* arbitration." *Three Valleys supra* at 1140.

Finally, the issue of whether contract formation is decided by a court or arbitrator is addressed by the text of the Federal Arbitration Act. Specifically, in order to issue an order compelling arbitration, the district court must satisfy itself that: "**<u>the making of the agreement for arbitration</u>** or the failure to comply therewith is not in issue." 9 U.S.C. § 4 (emphasis added). Therefore, the statute itself requires the issue of contract formation to be decided by the court. DHI fails to address, and therefore concedes this point.

## II. THE ISSUE IN THIS CASE IS AN ISSUE OF CONTRACT FORMATION.

DHI also argues that because Ahlstrom signed the arbitration agreement, the issue before the Court is not one of contract formation. However, this is the argument that this Court refuted in *International*

*Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038 (9th Cir. May 1, 2020). Specifically, this Court explained that a signed document can be an agreement to agree if certain conditions occur:

> "The district court's interpretive logic evidently originates from confusion over the nature of a signed instrument containing a condition precedent to formation. In short, such a document is a pre-negotiated agreement that will become effective if some articulated event occurs. It is a proposed contract, not a contract. 'Thus, when the parties to a proposed contract have agree that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed.' Williston on Contracts § 38.7 (4t Ed.)"
>
> *Id.* at 1047.

This Court further explained:

> "Parties may make the creation of a contract subject to a condition precedent. (citation) A condition precedent is either an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (citation) The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract. . .. There are two species of conditions precedent: conditions precedent to *formation* and conditions precedent to *performance*. (citation) Essentially, where a condition precedent to contract formation is not satisfied, the proposed bargain between the parties does not become a binding contract. (citation)."
>
> *Id.* at 1043

Important in this case is the fact that the condition at issue, either accepting or continuing employment with a specific entity, is contained in an opt out provision. The whole point of an opt-out provision is to enable one of the parties to avoid any obligation to arbitrate if they do not want to arbitrate claims. *See Johnmohammadi v. Bloomingdales,* 755 F.3d 1072, 1075-1076 (9th Cir. 2014). To treat an opt-out provision as not raising an issue of contract formation is to ignore the whole purpose of opt-out provisions. Indeed, in *Circuit City Stores Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) this Court recognized that opt-out provisions raise a contract formation issue: "The circumstances of this case permit us to infer that Najd assented to the DRA by failing to exercise his right to opt-out of the program."

DHI argues that: "There is no mandatory language in the Opt-Out Provision that . . . makes clear that the [Arbitration Agreement] will *only* be effective if employee *both* does not timely opt out *and* accepts employment specifically with D.R. Horton." Appellee's Brief at 39-40.

But that is exactly what the Opt-Out provision says:

> "Employee may opt out of this agreement by delivering, within 30 days of the date this Agreement is provided to Employee, a completed and signed Opt-Out Form to the Company's senior Human Resources Officer at the Company's headquarters. An Opt-Out Form is available from Human Resources upon request. If Employee does not deliver the executed form within 30 days, and if Employee accepts or continues employment with the Company after that date, he or she shall be deemed to have accepted the terms of this Agreement."

ER 119.

This language establishes conditions precedent to the arbitration obligation and to the existence of any agreement to arbitrate. Under California law, a condition precedent is "either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *JMR Constr. Corp. v. Environmental Assessment & Remedial Management, Inc.,* 243 Cal.App.4th 571, 593 (2017). "The existence of a condition precedent normally depends upon the intent of the parties, as determined from the words they have employed in the contract." *Karminski v. Smitty's Bar, Inc.,* 246 Cal.App.4th 456, 464 (2016).

The use of the word "shall" is important. "Shall" is mandatory language. *E.g., Facebook Inc. v. Superior Court,* 4 Cal.5th 1245, 1283 (2018). It also appears in the same sentence as the language about accepting or continuing employment with "the Company."

The word "shall" is also the same word that this Court recognized as creating a condition precedent to contract formation in *Roth v. Garcia-Marquez,* 942 F.2d 617, 619 (1991). The language at issue there was "the Option shall commence upon signature by Gabriel Garcia-Marquez to the formal agreement and the return of said agreement to me or Richard Roth." This fairly mirrors the Opt-Out Provision using the word "shall" as to when the agreement becomes effective and indicating two conditions joined by the conjunctive word "and."

In *Garcia-Marquez,* the party attempting to convince this Court there was no condition precedent attempted to distinguish a federal district court case which had found a condition precedent based on language saying: "This agreement shall become valid and binding upon each party only when, as

and if, it shall be approved by the Commissioner." *Id.* at 626. This Court found that it did not change the outcome that the *Garcia-Marquez* agreement did not contain the words "only when, as and if" but instead only the mandatory word "shall": "Roth attempts to distinguish such a condition precedent by saying that the *Cannon* contract contained the words 'only when, as and if.' We agree, however, with appellees that these are not a required magical incantation." *Id.*

DHI is making the same argument that this Court rejected in *Garcia-Marquez* – that in order for there to be a condition precedent, the word "only' must be used in the clause.

DHI argues that this case is distinguishable from *Garcia-Marquez* because here Plaintiff signed the agreement containing the Opt-Out provision. But in *Garcia-Marquez* the parties signed the agreement containing the condition precedent: "Balcells countersigned the letter . . . ." *Id.* at 619.

And to treat the Opt-Out provision as simply an alternative method of acceptance would defeat the obvious purpose of the provision. Under DHI's interpretation, the Opt-Out provision, obviously intended to give meaningful choice to the employee or applicant, instead inures to the benefit of the employer as an additional method of acceptance.

A district court recently addressed a very similar issue in *Mendez v. LoanMe Inc.,* 2020 WL 6044098 *3 (S.D. Cal. October 13, 2020) holding that a delegation clause did not apply to a determination of whether the plaintiff had opted out of the arbitration provision:

> "Defendants' attempt to apply the delegation clause from the Arbitration Provision to the instant dispute is improper because it necessarily assumes Plaintiff's consent to – and therefore the

> existence of – the Arbitration Provision itself. However, the dispute over Plaintiff's opt-out directly implicates the existence of an arbitration agreement between the parties. Whether or not Plaintiff assented to the Arbitration Provision – including the delegation clause – is wholly contingent on whether or not he opted out of the arbitration provision."

In arguing that the Opt-Out provision is simply an additional method of acceptance, DR Horton resorts to misquoting Appellant's Brief, claiming that Ahlstrom admitted that: "he did accept the arbitration agreement by signing it." The passage DR Horton quotes says:

> Ahlstrom did accept the arbitration agreement by signing it, but what he accepted was an agreement to be bound by the arbitration agreement if the stated conditions occurred. One of the stated conditions, employment with D.R. Horton, Inc. did not occur. AOB at 26.

Finally, the fallacy of the "additional method of acceptance" argument can be shown by the following hypothetical: What if an employee or applicant refuses to sign the arbitration agreement? Are they then bound if they accept or continue employment, since this is an "additional method of acceptance"? DHI states that: "Ahlstrom could have refused to sign [the arbitration agreement] and still worked at DHIM." Appellee's Brief at 7. Therefore, DHI's "additional method of acceptance" argument makes no sense.

As this Court held in *Teamsters,* it makes more sense to interpret the signed instrument as an agreement to agree, if the conditions precedent are

met. Therefore, the issue is one of contract formation i.e. were the conditions precedent met, and is for a court not an arbitrator.

## III. ANY DELEGATION WAS NOT CLEAR AND UNMISTAKABLE.

Even if the issue of contract formation is delegable to the arbitrator, (or for the matter if the issue is not seen as one of contract formation) the delegation clause should not be enforced because it is not clear and unmistakable.

DHI relies on this Court's decision in *Mohamed v. Uber Technologies, Inc.,* 848 F.3d 1201 (9th Cir. 2016). But that decision turned on a fact specific determination that what the plaintiff pointed to as language that conflicted with the delegation provision did not in fact conflict and that any conflicts were "artificial":

> The district court determined that the delegation provisions themselves were "unambiguous," but it nonetheless held that they conflicted with venue provisions elsewhere in the 2013 and 2014 Agreements. *Mohamed,* 109 F.Supp.3d at 1199. Both venue provisions stated that "any disputes, actions, claims, or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco." The district court concluded that the language in the venue provisions granting state or federal courts in San Francisco "exclusive jurisdiction" over "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement" was "inconsistent and in considerable tension with the language of the delegation clauses, which provide[d] that 'without

limitation' arbitrability will be decided by an arbitrator." *Id.* at 1201. The court also identified an inconsistency between the "without limitation" language and the carve-out provision in the 2013 Agreement granting courts jurisdiction over challenges to the PAGA waiver. *Id.* at 1201–02.

These conflicts are artificial. The clause describing the scope of the arbitration provision was prefaced with "[e]xcept as it otherwise provides," which eliminated the inconsistency between the general delegation provision and the specific carve-out in the 2013 Agreement.

Here, the arbitration provision, in listing claims not subject to arbitration expressly exempts: "actions to compel arbitration." ER 117 ¶ 2. Unlike the carve out in the Uber agreement for challenges to the PAGA waiver, there is no "except as it otherwise provides" language to eliminate the inconsistency between the PAGA waiver and the delegation provision. Therefore, the holding of *Mohamed* is not applicable, and the carve out for "actions to compel arbitration" is flatly inconsistent with the delegation clause.

DHI attempts to explain the inconsistency between the "carve out" for motions to compel arbitration and a delegation clause by asserting that the arbitrator would lack jurisdiction over a party who refuses to arbitrate and therefore a court would need to hear the motion to compel.

But this is untrue. The arbitration provision here is self-executing because it specifies the rules under which arbitration is to be conducted. *Tuttia Mangia Italian Grill Inc. v. American Textile Maintenance Co.*, 197 Cal.App.$4^{th}$773, 740 (2011): "A 'self-executing' arbitration clause is one which permits and provides for arbitration under rules therein incorporated." In *Tutti Mangia*, the California Court of Appeal held that a motion to compel

arbitration is not necessary where the arbitration agreement is self-executing, instead the party seeking arbitration can simply submit the dispute to arbitration. *Id.* at 739-740.

Here the arbitration agreement expressly incorporates the Employment Rules of the American Arbitration Association. ER 117-118, ¶ 5. Therefore, it is a self-executing arbitration agreement, and there is no need for a carve out simply to enforce the agreement. Further, the language carving out motions to compel arbitration does not limit what issues a trial court can rule upon in determining a motion to compel arbitration.

Of course, given DHI's position that even issues of contract formation are delegable to the arbitrator, one wonders what the trial court would rule upon. Under DHI's position, the trial court would be required to grant any motion to compel arbitration that is filed, since it cannot rule on contract formation, or any challenges of any kind to the arbitration agreement. According to DHI the district court's role is purely ministerial. But the provision itself carves out motions to compel arbitration without any limitation on what the trial court may address. Unlike the PAGA carve out in *Mohamed,* the carve out for motions to compel arbitration cannot be reconciled with the delegation provision.

And, of course, a motion to compel arbitration is never necessary to enforce an arbitration agreement. If the arbitration agreement provides that claims must be arbitrated rather than litigated, that can be enforced through a motion to dismiss an action improperly filed in court. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004). The exclusion for motions to compel arbitration suggests that a court can decide issues of arbitrability.

Similarly, the arbitration provision expressly includes actions to "enforce" the agreement. A court cannot enforce the agreement without interpreting it, and enforcing the agreement would certainly encompass a determination of whether conditions precedent to the arbitration obligation have occurred.

The other provision at issue in *Mohamed* was a venue provision stating that: "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco." *Id.* at 1209. As to that venue provision, this Court explained as follows:

> As for the venue provision, the California Court of Appeal has observed that "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 21 Cal.Rptr.3d 322, 328 (2004), *as modified on denial of reh'g* (Dec. 28, 2004). It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration agreement. That does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments.

Here, the other conflicting provision is not a venue provision. Instead it states:

> "Similarly, should a court determine that arbitration pursuant to this agreement is unavailable for any reason, the parties agree and stipulate that they hereby waive any right to a jury, and instead agree and stipulate that the claim(s) at issue will be heard only by a judge." ER 118.

Unlike the broad venue provision in *Mohamed,* it expressly contemplates a court finding that the arbitration agreement is unenforceable. It is a real conflict, not an artificial conflict.

A recent district court decision recognized that the result in *Mohamed* was dictated by the specific language of the provisions at issue, which meant that there actually was no conflicting language: "Defendant's reliance on *Mohamed v. Uber Technologies,* claiming that the apparent conflict is artificial (citation) is distinguishable from this controversy, (citation). In *Mohamed,* the allegedly conflicting clause contained a stipulation that eliminated the inconsistency." *Durruthy v. Charter Communications, LLC,* 2020 WL 6871048 *3 (S.D. Cal. 2020). *Mohamed* does not state a legal rule that conflicting language is irrelevant. Instead it merely held that the language at issue was not conflicting in one case because the "except as otherwise provided" language eliminated any conflict, and in another case because of the broad nature of a venue provision. Neither reason applies here.

## IV. THIS COURT SHOULD FIND THAT A CONDITION PRECEDENT TO THE OBLIGATION TO ARBITRATE DID NOT OCCUR.

While the district court ruled that issues of interpretation and contract formation were for the arbitrator, the district court in fact interpreted the agreement but did so erroneously:

> Ahlstrom also argues that he did not accept the [arbitration agreement] because he did not comply with both requirements in the [arbitration agreement]'s opt out provision, and therefore his acceptance was never effective. (citation) This Court already rejected this argument before (citation) and it does so again here. Ahlstrom accepted the [arbitration agreement] when he signed on the dotted line. By its very name and nature, the 'opt-out' provision provided an opportunity for Ahlstrom to opt out of his previously rendered acceptance.
>
> ER 15.

This was error. The Opt-Out provision contains two conditions precedent, not returning the Opt-Out form and accepting employment with DR Horton. DHI argues that this Court should treat the language making employment with DR Horton a condition as "surplusage." DHI thus asks this Court to disregard one of the core canons of contractual interpretation under California law, namely that a court interpreting a contract should avoid interpretations that make a part of the contract surplusage. *E.g., In re Tobacco Cases I,* 186 Cal.App.4th 42, 49 (2010): "We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage."

//

//

//

//

//

//

As noted above, this Court's decision in *Garcia-Marquez* indicates that the contractual language at issue states a condition precedent:

| **GARCIA-MARQUEZ LANGUAGE** | **DR HORTON LANGUAGE** |
|---|---|
| The option **shall** commence upon signature by Gabriel Garcia-Marquez **and** the return of said agreement to me or Richard Roth | If Employee does not deliver the executed form within 30 days **and** if Employee accepts or continues employment with the Company after that date he or she **shall** be deemed to have accepted the terms of this Agreement. |

Under California law, contracts are interpreted according to their plain language and the subjective intent of the parties is irrelevant. *Founding Members of Newport Beach County Club v. Newport Beach Country Club*, 109 Cal.App.4th 944, 955-956 (2003): "California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation."

Here, the language of the relevant provision is clear just as it was in *Garcia-Marquez.* The Employee "shall" be deemed to have accepted the Agreement if the Employee does not deliver the executed [opt-out form] within 30 days "and" if Employee accepts or continues employment with "the Company" after that date. And, "the Company" is clearly defined as DR Horton, not as DHI.

Finally, DHI suggests that Plaintiff as the party opposing arbitration has the burden of proof. But the opposite is true. DHI as the party seeking to compel arbitration has the burden. *Norcia v. Samsung,* 845 F.3d 1279, 1283 (9th Cir. 2017): "As the party seeking to compel arbitration, Samsung bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." This Court should find that a condition precedent did not occur, and reverse the order dismissing the case in favor of arbitration.

## V. DHI'S NEW ARGUMENT THAT THE PHRASE "THE COMPANY" SHOULD BE INTERPRETED AS INCLUDING AFFILIATES IS BOTH WAIVED AND MERITLESS.

DHI introduces a new argument not raised in the district court and therefore waived. *E.g, Clemens v. Centurylink Inc.,* 847 F.3d 1111, 1117 (9th Cir. 2017). DHI argues that this Court should view the term "the Company" as ambiguous and therefore potentially including not just DR Horton but also all affiliated entities. Appellee's Brief at 34: "Here it can be argued that the use of the term "the Company" in the Opt-Out provision was ambiguous .. . .."

But "the Company" is a defined term in the arbitration agreement. The prefatory unnumbered first paragraph defines "the Company" as "DR Horton Inc." ER 117. It is clear that limiting the definition of "the Company" to DR Horton only is a deliberate choice because of the immediately following paragraph, numbered Paragraph 1 which states:

> "Except as provided below, Employee and the Company both agree all legal rights and claims between them, including without limitation those related to Employee's employment with the Company or any separation therefrom, and claims by

> Employee against the Company's parents', subsidiaries, affiliates, directors, employees or agents . . . ." ER 117.

If "the Company" in fact meant DR Horton and its affliates, there would be no need for Paragraph 1 to address "the Company's" parents, subsidiaries, affiliates, etc. Paragraph 1 shows that DR Horton in drafting the agreement knew how to distinguish between itself and its affiliates, and did so when it wanted to

It should be noted that this argument that the phrase "the Company" is ambiguous conflicts with what DHI says elsewhere in the same brief. Specifically, DHI Horton states that: "the [arbitration agreement] is not uncertain or ambiguous." Appellee's Brief at 50.

In fact, while as argued below, any ambiguity in the agreement should be construed against the drafting party, DHI is correct that the agreement is not ambiguous. The term "the Company" is defined. It plainly refers only to DR Horton. It specifies that it applies to claims regarding "Employee's" employment with "the Company" and any claims that Employee may bring against parents, subsidiaries or affliates of "the Company." It plainly requires employment with DR Horton for there to be an effective arbitration agreement. It contemplates that if an employee of DR Horton sues an affiliated entity or agent or employee of DR Horton the claim will be arbitrable. But the language of the agreement does not contemplate an obligation to arbitrate if the applicant never becomes employed by DR Horton.

It would have been easy enough for the drafter of the arbitration agreement, presumably a DR Horton employee, to define "the Company" as DR Horton, and "any parents, subsidiaries, or affiliates." But this is not how the agreement defines it.

DHI's newly raised contention that the defined phrase "the Company" is ambiguous would require factual development including potentially a deposition of the drafter of the agreement, and a deposition of a Rule 30(b)(6) designee on why the phrase "the Company" is defined as it is. While this Court has discretion to consider new arguments raised for the first time on appeal where it is a pure issue of law, where the new argument requires factual development it should not be considered. *Broad v. Mannesman Anlagen Bau AG,* 196 F.3d 1075, 1076 n3 (9th Cir. 1999).

The distinction between DR Horton and DHI cannot be treated as meaningless, just because it is convenient for DHI's present purposes. After all DHI criticizes Ahlstrom for filing a new lawsuit suing DHI after the district court granted the motion to compel filed by DR Horton. But, this was because the district court itself stated that the outcome of the motion might be different had Ahlstrom sued DHI rather than DR Horton:

> The MAA here was a purported contract between Plaintiff and D.R. Horton. Had Plaintiff sued DHI Ltd. and had DHI Ltd. attempted to enforce the MAA at issue, a different analysis would be required.

Motion for Judicial Notice, Exh. 7 at 4.

Finally, since the defined term "the Company" is used throughout the arbitration agreement, redefining it as DHI proposes would create uncertainty. For example, the Opt-Out provision requires that the Opt-Out form be returned to "the Company's senior Human Resources officer at the Company's headquarters." ER 94, ¶ 11. If we adhere to the plain meaning of the defined term "Company" this means "DR Horton's senior Human Resources officer at DR Horton's headquarters." But if not, then where and to whom should the Opt-Out form be returned? Therefore, this Court should deem the contention waived, but in any event deem it meritless.

## VI. ANY AMBIGUITY SHOULD BE CONSTRUED AGAINST DHI.

While Ahlstrom does not believe that the arbitration agreement is ambiguous, any ambiguity should be construed against the drafter.

DHI argues that this would contravene the decision of the U.S. Supreme Court in *Lamps Plus v. Varela,* 139 S.Ct. 1407 (2019). This is a misreading of *Varela* which supports reading any ambiguity against DHI. In *Varela,* the Supreme Court held that under the FAA the doctrine of *contra preferentum* -which is rooted in policy considerations rather than aimed at discerning the intent of the parties – cannot be used to compel class arbitration because arbitration is a matter of consent. "At issue in this case is the interaction between a state contract principle for addressing ambiguity, and a rule of fundamental importance under the FAA namely that arbitration is a matter of consent." *Id.* at 1415. "Consent is essential under the FAA because arbitrators wield only the authority they are given." *Id.* In Varela, the Supreme Court explained that its conclusion that consent to class arbitration could not be inferred based on ambiguity: "aligns with our refusal to infer consent when it comes to other fundamental arbitration questions." *Id.* at 1416.

Therefore, in this specific context, where the issue is whether an effective arbitration agreement was formed, any ambiguity must be construed in favor of Ahlstrom, otherwise this Court would be inferring that Ahlstrom consented to arbitration. Whether there is an effective arbitration agreement is a fundamental arbitration question, and therefore under Supreme Court precedent, consent cannot be inferred.

DHI cites to language in *Varela* stating that: "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Id.* at 1418. But a court reaches the issue of the scope of an arbitration

provision only after deciding that the parties have agreed to arbitrate. The *Varela* rule based on the cardinal principle of consent, and a refusal to infer consent, suggests strongly that arbitration cannot be compelled if the contractual language makes it ambiguous whether the parties have actually agreed to arbitrate.

## CONCLUSION

The district court's order granting the motion to compel arbitration and dismissing the case without prejudice should be reversed.

Dated: December 23, 2020

Respectfully submitted,
SETAREH LAW GROUP

By: /s/ Shaun Setareh
Shaun Setareh
Thomas Segal
Attorneys for Appellant
Robert Ahlstrom

## CERTIFICATIONS

**Typeface and Size**: The typeface selected for this Brief is 14 point Times New Roman. The font used in the preparation of this Brief is proportionately spaced.

**Word Count**: The word count for this Brief, excluding Table of Contents, Table of Authorities, Certifications, and the Cover is approximately 5980 words. This count was calculated utilizing the word count feature of Microsoft Word for Office 365.

**Virus Scanning**: The PDF generated from the Word version of this Petition and Brief was scanned with antivirus software.

Dated: December 23, 2020. Respectfully submitted,

SETAREH LAW GROUP

By: /s/ Shaun Setareh

Shaun Setareh
Thomas Segal
Attorneys for Appellant
Robert Ahlstrom

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 23, 2020.

I certify that, other than the individuals listed below, participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I certify that I caused to be mailed a copy of the electronically filed document to the individuals listed below:

NO MAIL SERVICE REQUIRED

Dated: December 23, 2020 Respectfully submitted,

SETAREH LAW GROUP

By: /s/ Shaun Setareh
Shaun Setareh
Thomas Segal
Attorneys for Appellant
Robert Ahlstrom