U.S. Court of Appeals No. 20-15114
U.S.D.C. Case No. 19-cv-03435-BLF

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT W. AHLSTROM,

*Plaintiff-Appellant,*

vs.

DHI MORTGAGE COMPANY, LTD., L.P.,

*Defendant-Appellee.*

## DEFENDANT-APPELLEE'S PETITION FOR PANEL REHEARING AND PETITION FOR REHEARING *EN BANC*

On Appeal from The United States District Court
For The Northern District of California
Case No. 19-CV-03435-BLF
The Honorable Beth Labson Freeman, Judge Presiding

JACK S. SHOLKOFF, State Bar No. 145097
jack.sholkoff@ogletreedeakins.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant-Appellee
DHI MORTGAGE COMPANY, LTD., L.P.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-appellee DHI Mortgage Company, Ltd., L.P. ("DHIM"), certifies the following:

DHIM has one general partner, DHI Mortgage Company GP, Inc., and one limited partner, DHI Mortgage Company LP, Inc. Both DHI Mortgage Company GP, Inc. and DHI Mortgage Company LP, Inc. are 100 percent owned by DHI Mortgage Company, which is a wholly owned subsidiary of D.R. Horton, Inc., which is a publicly traded entity. Other than these entities, there are no other parents or publicly held corporations that own ten percent or more of DHIM's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

I. INTRODUCTION AND FRAP RULE 35 STATEMENT ..............................1

II. BACKGROUND ...........................................................................................3

A. Ahlstrom Contracts To Arbitrate Claims Against DHIM. ....................3

B. Procedural Background. .......................................................................4

C. The Panel Decision. ..............................................................................5

III. THE COURT SHOULD GRANT REHEARING OR REHEARING *EN BANC*. ...................................................................................................7

A. The Panel Overlooked Key Aspects Of The Record Regarding DHIM's Position. .................................................................................7

B. The Panel Decision Violates Supreme Court Decisions Applying The FAA By Failing To Enforce The Arbitration Agreement According To Its Terms. ....................................................8

C. The Panel's Decision Violates Supreme Court Authority And The FAA By Imposing A New Contractual Requirement Exclusively Applicable To Arbitration Agreements. ...........................11

IV. CONCLUSION .........................................................................................17

CERTIFICATE OF COMPLIANCE .................................................................18

STATEMENT OF RELATED CASES .............................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011)....6, 9, 11, 12

*Chastain v. Robinson-Humphrey Co.*
957 F.2d 851 (11th Cir. 1992)....10

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*
957 F.3d 1038 (9th Cir. 2020)....12

*Knutson v. Sirius XM Radio Inc.*
771 F.3d 559 (9th Cir. 2014)....13

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*
845 F.3d 979 (9th Cir. 2017)....13

*Lamps Plus, Inc. v. Varela*
139 S. Ct. 1407 (2019)....1, 8

*Netbula, LLC v. BindView Dev. Corp.*
516 F.Supp.2d 1137 (N.D. Cal. 2007)....13

*Tompkins v. 23andMe, Inc.*
840 F.3d 1018 (9th Cir. 2016)....9

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*
489 U.S. 468 (1989)....9

*Wolsey, Ltd. v. Foodmaker, Inc.*
144 F.3d 1205 (9th Cir. 1998)....15, 16

**California Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*
24 Cal. 4th 83 (2000)....14

*Donovan v. RRL Corp.*
26 Cal. 4th 261 (2001)....13

*Garner v. Inter-State Oil Co.*
52 Cal. App. 5th 619, 625 (2020) .......... 14

*Stewart v. Preston Pipeline Inc.*
134 Cal. App. 4th 1565 (2005) .......... 13

**Federal Statutes**

9 U.S.C. § 2 .......... 11, 14

**California Statutes**

Cal. Civ. Code § 1550 .......... 12

Cal. Civ. Code § 1565 .......... 13

Cal. Civ. Code § 1636 .......... 15

Cal. Civ. Code § 1641 .......... 16

Cal. Civ. Code § 1643 .......... 15

Cal. Civ. Code § 1653 .......... 16

Cal. Civ. Code § 3541 .......... 16

## I. INTRODUCTION AND FRAP RULE 35 STATEMENT

Nearly 100 years ago, recognizing judicial hostility to arbitration, Congress enacted the Federal Arbitration Act [9 U.S.C. §§ 1, *et seq.*] ("FAA") mandating that courts enforce arbitration agreements *according to their terms* in order to effectuate *the intent of the parties*. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). Nonetheless, the Panel violated the FAA by overlooking key facts in the record and then creating and imposing, without any legal citation, its own novel requirement for enforcing arbitration contracts. Absent rehearing, the Panel's published decision creates confusion and will permit courts throughout the Ninth Circuit to run roughshod over the Supreme Court's FAA jurisprudence. With arbitrations continuing to increase in the country, the Panel's decision undermines the Supreme Court's mandate for consistent and principled enforcement of arbitration agreements pursuant to the FAA and demands rehearing.

1. ***The Panel overlooked key facts in the record.*** The Panel concluded that there was no contract between the parties because it overlooked the evidence and made two erroneous findings: (1) the Mutual Arbitration Agreement ("MAA" or "Agreement") applied only to an employee/employer relationship (Op., at 9); and, (2) appellant Robert Ahlstrom ("Ahlstrom") and appellee DHI Mortgage Company, LTD., L.P. ("DHIM") did not claim that there was *any* relationship between Ahlstrom and D.R. Horton, Inc. ("D.R. Horton") (Op., at 10). The record

actually shows that there was a contractual relationship between Ahlstrom and D.R. Horton. The MAA states that Ahlstrom and D.R. Horton agreed to arbitrate "all disputes and claims between them…and claims by [Ahlstrom] against [D.R. Horton's]…subsidiaries, affiliates[.]" (Excerpts of Record ["ER"] 117.) The record also shows that DHIM has specifically asserted that it was in a *third-party beneficiary* relationship with Ahlstrom. (Appellee's Response Brief ["ARB"], at 49; ER 55-56.) By overlooking these two key factual points, the Panel improperly concluded that the Parties had not formed an enforceable contract.

2. ***The Panel decision contravenes Supreme Court authority and the FAA on an issue of exceptional importance.*** Rejecting the manifest intent of the Parties and the specific terms of the MAA, the Panel held—without citing a single legal authority or item of evidence in the record, and in conflict with the decisions of the Supreme Court—that any court can invalidate an *arbitration* agreement if it determines, *sua sponte*, that the contract does not accurately describe the general "relationship" of the parties. (Op., at 11.) The Panel's decision violates basic contract law as well as the Supreme Court's repeated guidance that courts must, pursuant to the FAA, enforce arbitration agreements pursuant to their terms. With arbitrations on the rise nationwide, the Panel's decision, which suggests that parties can wriggle free of their arbitration commitments by asserting that the contract

does not accurately describe their "relationship," presents an issue of exceptional importance, as it will undermine the enforceability of most arbitration agreements.

Rehearing is proper because the Panel's published decision overlooks key elements of the facts and law, runs contrary to Supreme Court jurisprudence, and reflects precisely the type of judicial hostility to arbitration that motivated the passage of the FAA in the first place. It encourages any court, regardless of the text of the contract or the parties' unequivocal intentions, to refuse to enforce an arbitration agreement merely because the court believes that the contract does not accurately describe the parties' relationship. Rehearing is imperative to ensure compliance with, and enforcement of, the FAA.

## II. BACKGROUND

### A. <u>Ahlstrom Contracts To Arbitrate Claims Against DHIM.</u>

On July 24, 2015, Ahlstrom entered into a binding arbitration agreement with D.R. Horton that, among other things, covered all claims he might have against DHIM, which is an affiliate of D.R. Horton. (ER 108, ¶3; ER 110-111, ¶¶2,8; ER 117-119.) Specifically, Ahlstrom agreed that:

> ***[A]ll legal disputes and claims between them***, including without limitation those relating to Employee's employment with [D.R. Horton] or any separation therefrom and ***claims*** by Employee ***against the Company's parents, subsidiaries, affiliates, directors, employees, or agents***, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein.

(ER 117, ¶1 (emphasis added).[1])

Through the MAA, Ahlstrom agreed to waive "the right to file, or participate or obtain relief in, a court action of any nature seeking recovery of money damages or injunctive relief" against D.R. Horton and its affiliates. (ER 117, ¶¶1,3.) The MAA also includes a means by which Ahlstrom could have opted out, even after signing (the "Opt-Out Provision"), and provides that it "shall be construed as a whole, according to its fair meaning, and not for or against any party." (ER 119, ¶¶10,11.) Finally, it provides that it is "covered and governed by Section 2 of the [FAA] and not any state law," and contains a class action waiver. (ER 117, ¶2; ER 118, ¶7.) There is no dispute that the Parties executed the MAA, thereby agreeing to its terms, and that Ahlstrom did not opt out. (ER 111-112, ¶¶8,9; ER 119.)

### B. Procedural Background.

On March 27, 2019, Ahlstrom filed his Complaint in the underlying action alleging nine causes of action against DHIM, all based on California and federal wage-and-hour and contract law. (Supplemental Excerpts ["SER"] 217-244.) The claims arise from his employment with DHIM. (*Id.*) All of Ahlstrom's claims against DHIM, an affiliate of D.R. Horton, fall within the definition of arbitrable claims pursuant to the MAA. (ER 108, ¶3; ER 117, ¶¶1-2.) On July 22, 2019, DHIM, as a third-party beneficiary of the MAA, moved to compel arbitration (ER

[1] All emphasis herein is original unless otherwise noted.

55; ER 111, ¶8), arguing that, pursuant to the FAA, the MAA applies to Ahlstrom's claims and is not unconscionable and the class waiver is enforceable. (ER 35-119; SER 21-208.) Ahlstrom opposed DHIM's motion based on a flawed reading of the MAA's Opt-Out Provision. (ER 25-34.) *Ahlstrom did not contend that the MAA was somehow inapplicable to him, D.R. Horton, or DHIM, nor did he contend that he did not sign the MAA or that he opted out.* (*Id.*) On January 16, 2020, the District Court granted DHIM's motion, sending Ahlstrom's individual claims to arbitration, dismissing his putative class claims, and dismissing the case without prejudice. (ER 16-24.)

### C. <u>The Panel Decision.</u>

Ahlstrom appealed, making only three arguments: (1) a delegation clause cannot apply to issues of contract formation (Appellant's Opening Brief ["AOB"], at 11-16); (2) even if the delegation clause applies to contract formation, the delegation clause in the MAA was not "clear and unmistakable" (AOB, at 16-22); and (3) no agreement to arbitrate was ever formed between Ahlstrom and DHIM *solely* because an express condition to formation did not occur in that the MAA contained a two-part condition precedent to formation in the Opt-Out Provision, which conditions were not satisfied (AOB, at 22-35). *Ahlstrom did not contend that there was no contract because the MAA referred to employment claims and Ahlstrom as an employee.*

At oral argument, the Panel focused on the issues raised in the briefing. The Panel did not discuss the alleged lack of relationship between Ahlstrom and D.R. Horton. Nonetheless, in issuing its Opinion, the Panel ruled that no agreement to arbitrate was formed *between Ahlstrom and D.R. Horton*—a question that was not put before the Court, nor briefed, nor argued.[2] (Op., at 9-11.) In so finding, the Panel, without citing a single legal authority, violated longstanding Supreme Court precedent under the FAA, the core of which is that courts must enforce arbitration agreements "according to their terms[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

With its ruling, the Panel created new doctrine that will effectively vitiate the FAA. Specifically, even though the plain meaning of the Agreement indicates that it is an agreement between D.R. Horton and Ahlstrom to arbitrate their disputes and any disputes involving D.R. Horton's affiliates, including DHIM, the Panel held that because the MAA did not define DHIM as Ahlstrom's employer, and because the Panel erroneously found that the MAA was a contract between an employer and employee, the MAA "describe[d] and govern[ed] a relationship between Ahlstrom and D.R. Horton that [did] not exist." (Op., at 11.) Thus, the

[2] DHIM does not seek rehearing with respect to the Panel's ruling on the delegability of contract formation issues (Op., at 7-9).

Panel speciously concluded, the MAA "does not constitute a properly formed agreement to arbitrate." (*Id.*)

## III. THE COURT SHOULD GRANT REHEARING OR REHEARING *EN BANC*

### A. <u>The Panel Overlooked Key Aspects Of The Record Regarding DHIM's Position.</u>

The Panel initially erred by misstating the record and incorrectly stating DHIM's position in this case (Op., at 10). The Panel, without citation, asserts that "no party has taken the position that there is *any* relationship between Ahlstrom and D.R. Horton[.]" (*Id.*) In fact, DHIM contends that Ahlstrom and D.R. Horton *do* have a relationship. DHIM specifically takes the position that, through the MAA, Ahlstrom and D.R. Horton have a contractual agreement to arbitrate claims between them and with individuals and entities related to D.R. Horton: "[Ahlstrom] and [D.R. Horton] both agree that all legal disputes and claims between them…and claims by [Ahlstrom] against [D.R.Horton's] parents, subsidiaries, affiliates…shall be determined exclusively by final and binding arbitration[.]" (ER 117, ¶1; ER 111, ¶8.) Thus, the MAA provides that if Ahlstrom wanted to sue D.R. Horton, which he did in a prior lawsuit (*see* ARB, at 8-9), he would have to arbitrate his claims, even though he was never employed by D.R. Horton. In fact, that is exactly what a court ruled under these precise circumstances. (ER 68-69, ¶8; Motion for Judicial Notice, Ex. 7.) Moreover, the

Agreement makes clear that DHIM, an affiliate of D.R. Horton, is a third-party beneficiary of the MAA between Ahlstrom and D.R. Horton. (ER 55; ER 108, ¶2; ER 111, ¶8.) In deciding that "the MAA, as drafted, describes and governs a relationship between Ahlstrom and D.R. Horton that does not exist," the Panel decision ignores the record demonstrating that an actual contractual relationship exists between the two merely by the fact that both Ahlstrom and D.R. Horton actually signed the agreement, and that DHIM is a third-party beneficiary of the MAA and thus could enforce the MAA on its own behalf.

### B. The Panel Decision Violates Supreme Court Decisions Applying The FAA By Failing To Enforce The Arbitration Agreement According To Its Terms.

In finding that no contract existed based upon its own perception of the contract's description of the Parties, the Panel's ruling directly conflicts with Supreme Court precedent governing judicial enforcement of the FAA. The Panel's decision allows, contrary to Supreme Court authority, any court to refuse to enforce an arbitration agreement by recharacterizing it, neglecting basic contract law, and ignoring its terms. This, of course, is precisely what Congress sought to prevent when it passed the FAA.

The core of Supreme Court FAA jurisprudence is that courts must enforce arbitration agreements in accordance with their agreed-upon terms (subject only to certain protective limitations and due process). *See, e.g.*, *Lamps Plus*, 139 S. Ct. at

1416 ("Parties may generally shape [arbitration] agreements to their liking… Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'") (quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682-84 (2010) (internal citations omitted)); *AT&T Mobility*, 563 U.S. at 339 (noting that Section 2 of the FAA "reflect[s] both a 'liberal federal policy favoring arbitration,'" and "the 'fundamental principle that arbitration is a matter of contract,'" and holding that, "[i]n line with these principles, courts must place arbitration agreements on an equal footing with other contracts" and "enforce them according to their terms") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)); *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) ("[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."). In fact, this Court has held that Congress enacted the FAA precisely "in order to 'counter prevalent judicial refusal to enforce arbitration agreements.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1018, 1022 (9th Cir. 2016) (quoting *Mortensen v. Bresnan Commc'ns*, 722 F.3d 1151, 1157 (9th Cir. 2013)).

Thus, the Panel had to enforce the MAA according to its terms. It did not. Instead, the Panel decided the MAA was never formed because it did not, according to the Panel, accurately describe the parties' relationship. The FAA does not permit

a court to make such a determination. Even if, as the Panel has now held, the Court has the authority to determine issues of contract formation, nothing in the FAA or interpretive law gives the Court the authority to disregard a lawful, signed arbitration agreement merely because the Court disagrees with how the parties have chosen to define themselves therein. Indeed, as the Eleventh Circuit has cogently held:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. [¶] The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration.

*Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (emphases in original) (internal citations omitted).

Even Ahlstrom did not assert the position taken by the Panel. And, as shown *supra*, the Panel overlooked key evidence that the MAA did not improperly describe the relationship between DHIM and Ahlstrom. At its worst, the Panel's ruling opens the door to any court to refuse to enforce an arbitration agreement by

finding that the relationship between the parties is not accurately reflected in the contract as interpreted by the court, even in a situation in which the provision sought to be enforced has nothing to do with that relationship.

### C. The Panel's Decision Violates Supreme Court Authority And The FAA By Imposing A New Contractual Requirement Exclusively Applicable To Arbitration Agreements.

FAA Section 2 requires courts to enforce arbitration agreements unless "such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Thus, if state law would invalidate a contract, it will also invalidate an arbitration contract, *provided the law does not only apply to arbitration agreements*. *AT&T Mobility*, 563 U.S. at 339. If state law requires enforcement of a contract, courts cannot refuse to enforce the contract simply because the contract at issue is an arbitration agreement. *Id.*

Yet, this is what the Panel did here, concluding, without any citation, that the parties had not formed a contract solely based on its own conclusion—even though neither party had argued the issue—that "the MAA, as drafted, *describes and governs a relationship* between Ahlstrom and D.R. Horton that does not exist and thus does not constitute a properly formed *agreement to arbitrate.*" (Op., at 11.) The Panel's announcement that a contract must, in the court's view, describe and govern the parties' relationship in a particularized way to the court's satisfaction creates a new contractual requirement for arbitration agreements that is not only

without any basis in California law, but actually conflicts with hundreds of years of established California contract law.

The Panel determined that the parties had not formed an agreement because the MAA appeared to be between an employer and employee, and D.R. Horton did not employ Ahlstrom. (Op., at 9-10.) Since no other court has imposed a requirement that the contracting parties' "relationship" be described in a particular way—*and the Panel's decision cites none*—the Panel appears to have done precisely what it could not: create specialized requirements for arbitration agreements that do not apply to non-arbitration contracts. *AT&T Mobility*, 563 U.S. at 339.

Indeed, the Panel's extraordinary decision is without precedent. California law[3] does not require that parties describe their relationship in a particular way in order to create a valid contract, arbitration or otherwise. Instead, in California, the four elements of a contract are "1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration." Cal. Civ. Code § 1550. The element of consent is often described as "mutual assent," which "usually is manifested by an offer communicated to the offeree and an acceptance

[3] *See Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1041 (9th Cir. 2020) ("To determine whether the parties formed an agreement to arbitrate, courts 'apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

communicated to the offeror." *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270-71 (2001); *see also* Cal. Civ. Code § 1565 ("The consent of the parties to a contract must be: 1. Free; 2. Mutual; and, 3. Communicated by each to the other."); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 984 (9th Cir. 2017) ("'Contract formation requires mutual consent, which cannot exist unless the parties agree upon the same thing in the same sense.'") (quoting *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 208 (2006)). "The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Donovan*, 26 Cal.4th at 271; *see also Netbula, LLC v. BindView Dev. Corp.*, 516 F.Supp.2d 1137, 1155 (N.D. Cal. 2007) ("Mutual assent is determined from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understandings.").

As this Court has noted, "'[m]utual assent may be manifested by written or spoken words, or by conduct,'" and "acceptance of contract terms may be implied through action or inaction[.]" *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *Binder v. Aetna Life Ins. Co.*, 75 Cal.App.4th 832, 850 (1999)). It is the job of the courts to "determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.*; *Stewart v. Preston Pipeline Inc.,* 134 Cal.App.4th

1565, 1587 (2005) (holding the defendant established mutual assent where agreement was signed by the plaintiff and "there was no indication from the document that it was conditional or that plaintiff did not intend to be bound by its terms").

Nothing more is required under California law to find that a contract exists. Here, there can be no doubt that all of the elements of a contract are present. The MAA—a mutual agreement to arbitrate "*all* legal disputes and claims between them" (ER 117, ¶1)—was entered into by Ahlstrom, a competent adult with a high school diploma or GED applying for a job with DHIM as a Mortgage Loan Originator. (ER 110-111, ¶¶2,7-8; ER 114-115, 117-119.) The MAA was signed on July 24, 2015. (ER 111, ¶8; ER 119.) And, the voluntary, mutual agreement to arbitrate claims is unquestionably a lawful object for which the MAA provides sufficient consideration. 9 U.S.C. § 2; *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 115 (2000) ("Arbitration is favored…as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification."); *Garner v. Inter-State Oil Co.*, 52 Cal.App.5th 619, 625 (2020) (finding sufficient consideration in an arbitration agreement where "the parties made mutual, obligating promises to arbitrate").

Ahlstrom provided no evidence or argument to the contrary. In fact, in his Opening Brief, Ahlstrom acknowledged that he "did accept the arbitration

agreement by signing it[.]" (AOB, at 26.) Nonetheless, the Panel ignored the long-established California contract law, and instead added a *new fifth element for arbitration agreements*: the correct description in the agreement of the relationship between and among the parties. This holding is without support in any statute or case law. And the Panel cites none.

The Panel thus fundamentally erred by establishing a novel standard for determining whether a contract exists that, in essence, disregards the intentions of the parties on the basis that *the Court* believes there is no relationship between the parties. This is a blatant violation of California principles of contract interpretation, which, *inter alia*, require that "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643. Indeed, as this Court has expressly recognized, "[u]nder California contract law, the court must 'endeavor[] to effectuate the mutual intent of the parties.'" *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (quoting *City of El Cajon v. El Cajon Police Officers' Ass'n*, 49 Cal.App.4th 64, 71 (1996)) (first alteration added). "The 'paramount consideration' [in interpreting an agreement] is 'the parties' objective intention at the time of contracting.'" *Id.* (quoting *Porreco v. Red Top RV Center*, 216 Cal.App.3d 113, 119 (1989)); *see also* Cal. Civ. Code § 1636 ("A contract must be

so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."); *see also id.* § 3541 ("An interpretation which gives effect is preferred to one which makes void."); *id.* § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *id.* § 1653 ("Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected.").

Here, there is no evidence in the record to indicate that Ahlstrom *did not* intend to enter into an agreement to arbitrate his claims against D.R. Horton and/or its subsidiaries and affiliates—including his actual employer, DHIM—as is expressly provided for in the MAA. In fact, Ahlstrom put forth no evidence at all regarding his state of mind or intention at the time of contracting. *See Wolsey*, 144 F.3d at 1210 ("Under California law, '[t]he rule is well-settled that in construing the terms of a contract the construction given it by the acts and conduct of the parties with knowledge of its terms...is admissible on the issue of the parties' intent.'") (quoting *So. Cal. Edison Co. v. Superior Court*, 37 Cal.App.4th 839, 851 (1995)) (alterations in original). Without any such evidence, the Court cannot presume Ahlstrom's intent at the time of executing the MAA *other than from the undisputed fact of his signature on the Agreement*.

In short, the Panel's insistence upon a new requirement for arbitration contracts—defining the parties' relationships in a manner that satisfies the court—violates basic principles of the FAA and Supreme Court authority.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant rehearing of its Order in this action or grant rehearing *en banc*.

DATED: January 27, 2022

*Respectfully submitted,*

By: /s/ Jack S. Sholkoff
Jack S. Sholkoff
Jennifer L. Katz

Attorneys for Defendant-Appellee
DHI MORTGAGE COMPANY, LTD., L.P.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 40(b)(1) because this brief contains 3,893 words, excluding the parts of the brief exempted by the Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in a 14-point Times New Roman font (a proportionally-spaced font).

DATED: January 27, 2022

*Respectfully submitted,*

By: /s/ Jack S. Sholkoff
Jack S. Sholkoff
Jennifer L. Katz

Attorneys for Defendant-Appellee
DHI MORTGAGE COMPANY, LTD., L.P.

## STATEMENT OF RELATED CASES
## (Circuit Rule 28-2.6)

DHIM is currently unaware of any cases related to this action pending in this Court, as defined in Circuit Rule 28-2.6.

DATED: January 27, 2022

*Respectfully submitted,*

By: /s/ Jack S. Sholkoff
Jack S. Sholkoff
Jennifer L. Katz

Attorneys for Defendant-Appellee
DHI MORTGAGE COMPANY, LTD., L.P.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 27, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Jack S. Sholkoff*
Jack Sholkoff
Attorney for Defendant-Appellee